UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| DELPHI BEHAVIORAL HEALTH GROUP, LLC, *et al.*,[1] | Case No. 23-_____ |
| | (Joint Administration Pending) |
| Debtors. | |

_____/

**DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO
THE STALKING HORSE BID AGREEMENT WITH THE STALKING HORSE
BIDDER, SUBJECT TO THE BIDDING PROCEDURES AND THE SALE
HEARING, (II) APPROVING BIDDING PROCEDURES, (III) SCHEDULING
THE BID DEADLINES AND THE AUCTION, (IV) SCHEDULING A HEARING
TO CONSIDER THE TRANSACTION, (V) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, (VI) APPROVING CONTRACT PROCEDURES,
(VII) APPROVING A DEADLINE FOR INTERESTED PARTIES
TO SUBMIT BIDS TO PURCHASE ANY OF THE DEBTORS' REMAINING
ASSETS WHICH ARE NOT PURCHASED ASSETS SUBJECT TO THE
STALKING HORSE BID AGREEMENT, AND (VIII) GRANTING RELATED RELIEF**
(Expedited Hearing Requested)

**Statement of Exigent Circumstances**

The Debtors respectfully request the Court conduct an expedited hearing on this
Motion.  Bankruptcy Rule 6003 prohibits the use, sale, or lease of property
outside the ordinary course of business within the first twenty-one (21) days of

---

[1]     The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

the Petition Date, except as necessary to prevent immediate and irreparable harm. Similarly, Bankruptcy Rules 6004(a) and 2002(a)(2) require twenty-one (21) days' notice of a proposed use, sale, or lease of property outside the ordinary course of business absent approval of the Court. Further, Bankruptcy Rules 6004(h) and 6006(d), respectively, stay for 14 days, unless the court orders otherwise, all orders authorizing (i) the use, sale, or lease of property other than cash collateral, and (ii) a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code. *See* Fed. R. Bankr. P. 6004(h) and 6006(d). Because delay in implementing the Sale process would result in a diminishment in value of the assets to be disposed of thereby, the Debtors submit that the relief requested herein is necessary to prevent immediate and irreparable harm to the Debtors' estates, and thus request a waiver of those Bankruptcy Rules. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

The above-captioned, affiliated, debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned proposed counsel, file this expedited motion (the "Motion") seeking the entry of an order, substantially in the form attached hereto as **Exhibit "A"** (the "Bidding Procedures Order"): (a) authorizing and approving the Debtors' entry into that certain *Asset Purchase Agreement* (substantially in the form attached as Exhibit "A" to the Sale Motion (defined herein) (the "Stalking Horse Bid Agreement")[2] between and among three of the Debtors (each, a "Seller" and collectively, the "Sellers")[3], Lender AcquisitionCo LLC (together with its permitted successors, designees and assigns, whether by sale, contribution, merger or otherwise, and each of their respective affiliates, collectively, the "Stalking Horse Bidder") and Brightwood Loan Services LLC (solely for the purposes stated expressly in the Stalking Horse Bid

---

[2]    The Stalking Horse Bid Agreement, attached as Exhibit "A" to the Sale Motion (defined below and filed contemporaneously herewith), is incorporated herein by reference. Except where otherwise indicated, capitalized terms used but not defined in this Motion have the meanings ascribed to them in, as applicable, the Stalking Horse Bid Agreement, the Bidding Procedures, or the Sale Motion.

[3]    The Sellers are the following Debtors: (i) Union Fresh Start LLC (d/b/a Serenity at Summit); (ii) Summit Behavioral Health Limited Liability Company (d/b/a Summit Behavioral Health Princeton Junction); and (iii) SBH Haverhill, LLC (d/b/a Serenity at Summit New England).

Agreement, the "Administrative Agent"), subject to the Bidding Procedures (defined herein) and the Sale Hearing (defined herein); (b) authorizing and approving the procedures in connection with the solicitation and acceptance of higher or otherwise better bids with respect to the Sale of the Purchased Assets (the "Bidding Procedures") substantially in the form annexed as Exhibit "1" to the Bidding Procedures Order, including the Expense Reimbursement as defined and set forth in the Stalking Horse Bid Agreement with respect to the proposed sale (the "Sale") of three of the Debtors' inpatient or outpatient, substance use disorder treatment facilities (each, a "SUD" and collectively, the "SUDs") located in Massachusetts and New Jersey, identified on Schedule 1 of the Bidding Procedures, and all related assets (collectively, the "Purchased Assets"); (c) seeking entry of an order, substantially in the form attached hereto as **Exhibit "B"** (the "Scheduling Order"),[4] shortening notice and scheduling the hearing to consider this Motion, including approving the bid deadlines and the Auction (as defined below) on shortened notice in connection with the Sale; (d) scheduling a hearing to consider the approval of the Sale (the "Sale Hearing") and setting objection deadlines[5] with respect to the Sale; (e) approving the form and manner of notice of the Sale and related auction (the "Auction") for the Purchased Assets, substantially in the form annexed as Exhibit "3" to the Bidding Procedures Order (the "Sale Notice"); (f) establishing the procedures and deadlines (the "Assumption and Assignment Procedures") for objections related to the potential assumption and assignment of certain executory contracts and unexpired leases of the Debtors (collectively, the "Assumed Contracts"), including, but not limited to, determining the cure costs that the Debtors believe must be paid to cure all prepetition defaults

---

[4]    At the initial hearing to be held by the Court in this matter, the Debtors will request the entry of the Scheduling Order that, subject to the Court's schedule, sets the hearing on this Motion on shortened notice and provides for an objection deadline.

[5]    Such proposed deadlines are summarized on Exhibit "2" to the Bidding Procedures Order.

under each Assumed Contract (the "Cure Amount") and approving the form and manner of the related contract notice (the "Assumption Notice"), substantially in the form annexed as Exhibit "4" to the Bidding Procedures Order; (g) approving a deadline detailed herein (the "Other Assets Bid Deadline") for interested parties to submit bids to purchase any of the Debtors' remaining assets which are not Purchased Assets subject to the Stalking Horse Bid Agreement (collectively, the "Other Assets"); and (h) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' bankruptcy cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors consent to the entry of a final order on this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      The statutory predicates for the relief requested herein are (i) sections 105, 363, 365, 503, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) rules 2002, 6003, 6004, 6006, 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (iii) rules 2002-1(C)(2) and 6004-1 of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules").

## PROCEDURAL BACKGROUND

3.      On the date hereof (the "Petition Date"), each of the Debtors commenced the above-captioned cases by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      As of the date of this Motion, no trustee, examiner or statutory committee has been appointed in the Debtors' bankruptcy cases.

6.      For a detailed description of the Debtors, the circumstances leading to the commencement of these bankruptcy cases and information regarding the Debtors' businesses and capital structure, the Debtors respectfully refer the Court and parties-in-interest to the *Declaration of Edward A. Phillips in Support of Chapter 11 Petitions and First Day Filings* (the "First Day Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

**THE DEBTORS PREPETITION MARKETING EFFORTS
LEADING TO THE STALKING HORSE BID AGREEMENT
AND THE SELECTION OF THE STALKING HORSE BIDDER**

7.      As described in the First Day Declaration, as well as in the *Supplemental Declaration* of Harvey Tepner in support of the Motion which is filed concurrently herewith (the "Supplemental Declaration"), the Debtors, in the exercise of their reasonable business judgment, have determined after a thorough prepetition strategic review and marketing process that the most effective way to maximize the value of the Debtors' estates for the benefit of their stakeholders is to seek bankruptcy protection and to sell the Purchased Assets through the Sale pursuant to section 363 of the Bankruptcy Code.  In order to satisfy the requirements of the DIP Facility (defined below), to maintain the support of the DIP Lenders (as defined in the Stalking Horse Bid Agreement), clients and vendors, and to retain the Debtors' employee base, it is in the best interests of the Debtors and their estates to move expeditiously with a sale process, as discussed herein.

8.      On June 28, 2022, the Debtors retained FTI Consulting, Inc. ("FTI") to provide the Debtors with certain advisory and consulting services, specifically to assist management and the

board with identifying, planning and implementing strategic alternatives, including, as applicable, marketing the Debtors' business or assets for sale.

9.      Consistent with terms of the retention of FTI, the Debtors began a formal marketing process during August, 2022, to sell the Debtors' business or assets, including but not limited to the Purchased Assets.  During its retention, FTI approached 54 potential purchasers between August and December, 2022, including both strategic and financial buyers.  After its initial reach out, FTI then contacted additional potential purchasers during the second half of October, 2022 that FTI identified in the behavioral space segment of the economy in which the Debtors operate.

10.      As a result of these efforts, the Debtors executed confidentiality agreements with 15 potential interested parties, all of whom were provided preliminary confidential information through access to a virtual data room maintained by the Debtors.  FTI undertook diligence calls and meetings with all 15 parties during August through December, 2022, to facilitate the diligence needed to submit non-binding proposals.

11.      The Debtors ultimately received six non-binding letters of intent between October and December, 2022, for various combinations of assets.  In the Debtors' reasonable business judgment, the Debtors have decided to move forward with the Sale transaction proposed in the Stalking Horse Bid Agreement, subject to the Bidding Procedures and the Sale Hearing, as the most effective way to maximize the value of the Debtors' estates for the benefit of their stakeholders.

12.      During the Debtors' cases, Mr. Tepner will lead additional marketing of the Debtors' assets during the postpetition period with the support of the Debtors and their professionals with the goal of obtaining competing bids by the Bid Deadline that will occur during the latter part of March, 2023.  As a part of the postpetition marketing process, the Debtors will

6

consult with any official committee of creditors appointed in these bankruptcy cases and will reach out to any additional parties interested in submitting bids for the Purchased Assets that such committee suggests should be contacted.

13.     The Debtors believe that the marketing period for the Purchased Assets, which will have spanned more than seven months covering the period both before the commencement of, and during, these bankruptcy cases by the time any proposed Auction is held during late March, 2023, represents a reasonable and sufficient period during which to solicit bids on the Purchased Assets. The Debtors believe that the marketing efforts will be sufficient to ensure the highest or otherwise best offer.

14.     The Debtors also believe that the Bidding Procedures negotiated with the Stalking Horse Bidder will result in the highest or otherwise best offer for the Purchased Assets.

## **PROPOSED SALE**

15.     As set forth in the Stalking Horse Bid Agreement, the proposed Sale includes all of the Purchased Assets for each of the Sellers, including, among others: (i) cash (except Retained Cash); (ii) accounts receivable; (iii) deposits, credits, and prepaid charges and expenses; (iv) claims related to the business; (v) royalties, advances, prepaid assets and other current assets; (vi) medical supplies and other inventory; (vii) machinery, furniture, equipment, and fixtures; (viii) Assumed Contracts; (ix) intellectual property (including that of the Debtors other than the Sellers); (x) leased real property; (xi) certain claims and causes of action under Chapter 5 of the Bankruptcy Code; and (xii) all other assets or rights of every kind and description of the Sellers (but not the other Debtors) related to their business, wherever located, whether real, personal or mixed, tangible or intangible.  *See* Stalking Horse Bid Agreement at 2.1.

16.     The Debtors have filed contemporaneously herewith the *Debtors' Motion for Entry of an Order (i) Approving Stalking Horse Bid Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (ii) Authorizing the Sale of Assets Free and Clear of All Claims and Liens Except for Permitted Liens, Encumbrances and Assumed Liabilities, (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (iv) Granting Related Relief* (the "Sale Motion"), which is incorporated in its entirety herein by reference.

17.     As described herein and in the Sale Motion, the Debtors, in the exercise of their reasonable business judgment, have determined that the most effective way to maximize the value of the Debtors' estates for the benefit of their constituents is to sell the Purchased Assets through the Sale pursuant to section 363 of the Bankruptcy Code.  In order to satisfy the requirements of the DIP Facility and to maintain the support of the DIP Lenders, clients and vendors, and maintain the Debtors' employee base, the Debtors believe that it is in the best interests of the Debtors and their estates to move expeditiously with a sale process, as discussed herein.

18.     Pursuant to the terms of the Stalking Horse Bid Agreement, the Stalking Horse Bidder has agreed to purchase the Purchased Assets in exchange for the sum of the following consideration (the "Purchase Price"): (i) a credit bid equal to the aggregate outstanding amount of the Protective Advances, in order of priority starting with the Super Priming Protective Advances, up to five million dollars ($5,000,000) (the "Credit Bid Amount"); *plus* (ii) the assumption by Buyer of funded Debt obligations in an aggregate principal amount equal to ten million dollars ($10,000,000), inclusive of not more than $10,000,000 of the DIP Facility (collectively, the "Assumed Debt"); *plus* (iii) the assumption by Buyer of the other Assumed Liabilities.  *See* Stalking Horse Bid Agreement at 3.2(a).  The Debtors respectfully submit that the sale of the

Purchased Assets pursuant to the Bidding Procedures and on the timeline proposed herein represents the best opportunity to maximize the value of the Purchased Assets for all interested parties.

## PROPOSED BIDDING PROCEDURES

19.    The Debtors seek to conduct a fair and transparent sale process pursuant to which the Successful Bidder will enter into an agreement, substantially in the form of the Stalking Horse Bid Agreement, for the purchase of the Purchased Assets, free and clear of certain liens, claims, encumbrances, and interests with such liens, claims, encumbrances, and interests attaching to the sale proceeds.

20.    The Bidding Procedures (as summarized below) were developed consistent with the Debtors' need to proceed with an expedited sale process to preserve the going-concern value of the Debtors' business and the objective of promoting active bidding that will result in the highest or otherwise best offer for the Purchased Assets.  Moreover, the Bidding Procedures reflect the Debtors' objective of conducting the Auction in a fair and transparent fashion that promotes interest in the Purchased Assets by financially capable, motivated bidders who are likely to close the Sale.

21.    The Debtors have developed the Bidding Procedures, attached as Exhibit "1" to the Bidding Procedures Order, to govern the Auction and bidding process.  The Debtors designed the Bidding Procedures to encourage all qualified entities to expeditiously submit their bids in order to maximize the value of the Debtors' estates through a competitive Auction process.  The Bidding Procedures are intended to permit a fair, efficient, and competitive process, consistent with the

timeline of the sale process, to help determine the highest or otherwise best bid for the Purchased Assets. The Bidding Procedures establish, among other things, the following.[6]

(a) **Potential Bidders**. The requirements that a party have to satisfy in order to become a Preliminary Interested Investor and be permitted to participate in the bidding process and to receive access to due diligence information;[7]

(b) **Due Diligence**. The availability of, access to, and conduct during due diligence by Preliminary Interested Investors;[8]

(c) **Bid Qualification Process**. The deadlines and requirements for Preliminary Interested Investors to submit competing bids and the method and criteria by which such competing bids are deemed to be "Competing Qualified Bids" sufficient to trigger an Auction, including the minimum consideration that must be provided, the terms and conditions that must be satisfied, and the deadline that must be met by any Preliminary Interested Investor (other than the Stalking Horse Bidder) to be considered a "Competing Qualified Bidder".

(d) **Right to Credit Bid**. Credit bids shall be accepted in accordance with section 363(k) of the Bankruptcy Code (a "Credit Bid"), subject to certain requirements. The Stalking Horse Bid Agreement is, in part, a Credit Bid;[9] For a "Bid" that consists in whole or in part of a Credit Bid to be considered a "Competing Qualified Bid", such Bid must satisfy, among other requirements, a cash purchase price sufficient to pay in full the sum of the following, (a) all amounts being paid in full in cash as part of the Purchase Price under the Stalking Horse Bid Agreement (excluding, for the avoidance of doubt, any Assumed Liabilities to be assumed by the Stalking Horse Bidder pursuant to the Stalking Horse Bid Agreement), *plus* (b) all obligations under the DIP Facility, *plus* (c) all obligations secured by senior or *pari passu* liens on the Purchased Assets (e.g., the Loan Debt) to be purchased pursuant to such Credit Bid, *plus* (d) the Expense Reimbursement;[10]

(e) **Competing Qualified Bid Evaluation**. The manner in which Competing Qualified Bids will be evaluated by the Debtors, in consultation with the

---

[6] This summary is qualified in its entirety by the Bidding Procedures attached as <u>Exhibit "1"</u> to the Bidding Procedures Order and incorporated herein by reference. To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

[7] *See* Bid. Proc., "Access to Diligence Materials".

[8] *See* Bid. Proc., "Access to Diligence Materials".

[9] *See* Bid. Proc., "Bid Qualification Process", Part IV.

[10] *See* Bid. Proc., "Bid Qualification Process", Parts I-IV.

11780453-13

Consultation Parties, to determine the Auction Baseline Bid (i.e., the highest or otherwise best Competing Qualified Bid to commence the Auction);[11]

(f)     **Auction**.  The conditions for having an Auction and procedures for conducting the Auction;[12]

(g)     **Successful Bidder Selection**.  The criteria by which the Successful Bidder will be selected by the Debtors, in consultation with the Consultation Parties;[13] and

(h)     **Expense Reimbursement**.  The criteria for payment of the Expense Reimbursement (if any) to the Stalking Horse Bidder.[14]

22.     Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals, and, as noted, preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

23.     Other than as expressly set forth in the Bidding Procedures, the Debtors (in consultation with the Consultation Parties) reserve the right to: (a) determine which bidders are Competing Qualified Bidders; (b) determine which Bids are Competing Qualified Bids; (c) determine which Competing Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Stalking Horse Bidder; (f) extend the deadlines set forth in the Bidding Procedures; and (g) adjourn or cancel the

---

[11]    *See* Bid. Proc., "Bid Qualification Process", Part V.

[12]    *See* Bid. Proc., "Bid Qualification Process", Part V.

[13]    *See* Bid. Proc., "Bid Qualification Process", Parts V(h), XI, and XII.

[14]    *See* Bid. Proc., "Bid Qualification Process", Part VI.

Auction at the Auction and/or the Sale Hearing in open court without further notice or by filing a notice on the docket (in consultation with the Stalking Horse Bidder and the Consultation Parties).

24.    The Stalking Horse Bidder is a Competing Qualified Bidder, and the Stalking Horse Bidder's bid is a Competing Qualified Bid.

## THE EXPENSE REIMBURSEMENT

25.    The Stalking Horse Bidder has requested the Expense Reimbursement for actual reasonable and documented out-of-pocket costs and expenses in connection with the Sale payable to the Stalking Horse Bidder upon the terms and conditions set forth in Sections 7.1 and 9.2 of the Stalking Horse Bid Agreement to partially defray the substantial out-of-pocket costs the Stalking Horse Bidder has and is expected to incur in this process.  The Debtors are requesting that the Court approve an Expense Reimbursement in the amount of $375,000.00, subject to the right of the Stalking Horse Bidder to request approval of up to $500,000.00 at the Sale Hearing.  The Expense Reimbursement that a Preliminary Interested Investor shall use solely for the purpose of the amount of the "Expense Reimbursement" referenced in the "Amount of Bid" set forth in paragraph II.b of the Bidding Procedures is set at $375,000.00.  *See* Stalking Horse Bid Agreement at Defined Terms ("Expense Reimbursement").

26.    The other primary terms of the proposed Expense Reimbursement provide that: (i) the Stalking Horse Bidder will provide the Debtors and U.S. Trustee with documentation supporting the payment of the Expense Reimbursement up to $500,000.00 five business days prior to the Sale Hearing; (ii) the U.S. Trustee may only seek to challenge the Expense Reimbursement on the grounds of amounts sought for reimbursement over $375,000.00; (iii) the Stalking Horse Bidder may only seek reimbursement of fees incurred in connection to the Stalking Horse Bid Agreement and the Sale Hearing; (iv) nothing precludes the right of the Stalking Horse Bidder to

seek reimbursement in excess of $500,000.00 in establishing the reasonableness of the Expense Reimbursement (to the extent applicable), however the Stalking Horse Bidder shall only be entitled to actual payment and reimbursement up to $500,000.00; (v) the Expense Reimbursement shall constitute an allowed administrative expense claim against each Debtors' bankruptcy estates under sections 503(b) and 507 of the Bankruptcy Code (without the need to file a proof of claim); and (vi) the obligation of the Debtors to pay the Expense Reimbursement shall survive termination of the Stalking Horse Bid Agreement.

27.     As explained in further detail below, the Expense Reimbursement is warranted here in consideration of the Stalking Horse Bidder's substantial expenditure of time, energy and resources, and the benefits to the Debtors' estates of securing a "stalking horse" or guaranteed minimum bid and setting a floor price at the Auction.  The payment of the Expense Reimbursement shall be subject to the terms of the Stalking Horse Bid Agreement.

## **CREDIT BIDDING**

28.     As stated above and in the Bidding Procedures, and in connection with the Sale of the Purchased Assets, secured credit parties, which hold perfected security interests in the Purchased Assets, may seek to submit credit bids for such Purchased Assets.  For this reason, the Debtors request that the Court: (i) authorize credit bidding in connection with the Sale to the fullest extent permitted by Bankruptcy Code section 363(k); and (ii) for purposes of valuing credit bids, deem the full face amount of a credit bid satisfying the requirements set forth in the Bidding Procedures and, as applicable, the Interim DIP Order or Final DIP Order, to have the same value as the equivalent amount of cash, provided, that any such credit bid (other than the Stalking Horse Bidder's bid as set forth in the Stalking Horse Bid Agreement) shall include a cash purchase price sufficient to pay in full the sum of the following, (a) all amounts being paid in full in cash as part

13

of the Purchase Price under the Stalking Horse Bid Agreement (excluding, for the avoidance of doubt, any Assumed Liabilities to be assumed by the Stalking Horse Bidder pursuant to the Stalking Horse Bid Agreement), *plus* (b) all obligations under the DIP Facility, *plus* (c) all obligations secured by senior or *pari passu* liens on the Purchased Assets (e.g., the Loan Debt) to be purchased pursuant to such Credit Bid, *plus* (d) the Expense Reimbursement.

## NOTICE OF AUCTION AND SALE

29.     The Debtors seek to have the Auction commence not later than **March 27, 2023**, a date that falls 49 days from the Petition Date, subject to the right of the Debtors, in the exercise of their reasonable business judgment, to adjourn the Auction to a later date in consultation with the Stalking Horse Bidder.   Within three (3) business days following the entry of the Bidding Procedures Order, the Debtors will serve by ECF notification (as applicable) and first class mail, copies of (i) the Bidding Procedures Order and (ii) the Sale Notice upon the following entities: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee for the Southern District of Florida; (c) counsel to the Stalking Horse Bidder; (d) counsel to the Administrative Agent for the Prepetition Lenders; (e) counsel to the Administrative Agent for the DIP Lenders; (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (g) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Purchased Assets, known to the Debtors that may reasonably have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or have any known interest in the relief requested by the Motion, which shall include the attorney generals for the states of California, Florida, Maryland, Massachusetts, and New Jersey;

14

(h) all counterparties to any executory contract or unexpired leases currently known to exist by the Debtors; and (i) all potential bidders previously identified or otherwise known to the Debtors[15] (collectively, the "Sale Notice Parties").

30.    The Debtors further request, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March 19, 2023** (the "Sale Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW

---

[15]    With respect to serving all potential bidders previously identified or otherwise known to the Debtors, these are the investors who entered into non-disclosure agreements with the Debtors, and the Debtors request authorization herein to file under seal that part of the service list providing the names and email addresses for all such parties which will be served *via* email with the Sale Notice and this Order at the email address(es) maintained for each such investor by, respectively, either FTI or the Debtors.

11780453-13

First Avenue, Room 1204, Miami, Florida 33130; and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

### PROVISIONS RELATING TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING THE DETERMINATION OF CURE AMOUNTS AND DEADLINES FOR OBJECTION TO ASSUMPTION AND ASSIGNMENT OF ALL ASSUMED CONTRACTS

31.     Given the number of executory contracts and unexpired leases to which the Debtors are party, the Debtors seek to establish (a) procedures for determining the Cure Amounts, and (b) the deadline for objections to the Cure Amounts and/or the proposed assumption and assignment of executory contracts and unexpired leases (collectively, the "Assumption and Assignment Procedures").

32.     The "Available Contracts" are the executory contracts and unexpired leases of non-residential real property to which one or more Sellers is a party.  *See* Stalking Horse Bid Agreement, Defined Terms ("Available Contracts").  The Stalking Horse Bidder shall determine which of the Available Contracts it wishes to have the Debtors assume and assign to it as a part of the Sale and the remainder shall be considered to be "Excluded Assets".  *See* Stalking Horse Bid Agreement at 2.5(a).

33.     On or before three (3) Business Days after the entry of the Bidding Procedures Order, the Debtors shall file an assumption notice (the "Assumption Notice") substantially in the form attached as Exhibit "4" to the Bidding Procedures Order, on all non-Debtor parties to the Available Contracts (the "Non-Debtor Counterparties").  *See* Stalking Horse Bid Agreement at 2.5(e).  In addition to listing all of the Available Contracts, the Assumption Notice shall set forth a good faith estimate of the amount of the Cure Amounts applicable to each such Available Contract.  *See id*.

11780453-13

34.     Any objection to the Cure Amount or to the potential assumption and assignment of an Available Contract to the Stalking Horse Bidder, including with respect to adequate assurance of future performance of the Stalking Horse Bidder (collectively, a "Contract Objection"), must: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March 19, 2023** (the "Contract Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLP, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130, and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

35.     To facilitate a prompt resolution of (i) disputes relating to the Cure Amounts and (ii) any other objections relating to the assumption and assignment of a Assumed Contract, the Debtors propose the following procedures:

11780453-13

- Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Available Contract believes is required (in all cases with appropriate documentation in support thereof). If no Contract Objection is timely received, the Cure Amount set forth in the Assumption Notice shall be controlling, and binding with respect to the Non-Debtor Counterparty notwithstanding anything to the contrary in the Available Contract or other related documents as of the date of the Assumption Notice. The Assumption Notice shall also provide that the Contract Objection to any Cure Amount or assumption and assignment will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors. If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then the deadline to object to assumption and assignment (solely on the grounds of adequate assurance of future performance) shall be extended to the Sale Hearing, <u>provided, however, that the deadline to object to the Cure Amount shall not be extended</u>.

- Unless a Non-Debtor Counterparty to any Available Contract files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be:

  (a) forever barred from objecting to the Cure Amount and

  (b) forever barred and estopped from asserting or claiming (i) any Cure Amount, other than the Cure Amount on the schedule of the Assumption Notice, against the Debtors, the Stalking Horse Bidder, or any Successful Bidder or any other assignee of the relevant contract or lease, or (ii) that the assignee that any additional pre-assignment amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under an Available Contract, that any related right or benefit under such Available Contract cannot or will not be available to the relevant assignee, or that the assignee failed to provide any Non-Debtor Counterparty with adequate assurance of future performance.

- Unless a Non-Debtor Counterparty to any Available Contract files a timely objection to the assumption and assignment of the contract to the Stalking Horse Bidder or the other Successful Bidder, then such counterparty shall be deemed to have consented to the assumption and assignment to the Successful Bidder (including the transfer of any related rights and benefits thereunder).

*Designation by the Stalking Horse Bidder or other Competing Qualified Bidder*

36. By the date that is three (3) business days prior to the closing of the Sale or such shorter period if consented to by the Non-Debtor Counterparty (the "<u>Closing</u>") (such date, the

11780453-13

"Determination Date"), the Stalking Horse Bidder shall designate in writing (each such writing, a "Designation Notice") which Available Contracts that the Stalking Horse Bidder wishes the Debtors to assume and assign to the Stalking Horse Bidder at the Closing (the "Assumed Contracts").  *See* Stalking Horse Bid Agreement at 2.5(a).

37.     Not later than one (1) business day following the Determination Date, the Debtors will file with the Bankruptcy Court an amended and restated Assumption Notice, which notice will set forth only the Assumed Contracts (and exclude all other Available Contracts).  *See* Stalking Horse Bid Agreement at 2.5(f).

38.     On the date of the Closing (the "Closing Date"), with respect to Cure Amounts not disputed as of the Closing Date, the Debtors shall pay all Cure Amounts in accordance with the Approved Budget to the applicable counterparty and the Stalking Horse Bidder shall have no liability therefor.  With respect to Cure Amounts that are disputed as of the Closing Date, the Debtors and the Successful Bidder shall cooperate and diligently pursue resolution of such disputes.  Upon the resolution of any disputed Cure Amount (with the consent of such Successful Bidder) following the Closing, the Debtors shall pay such Cure Amount promptly, and in no event later than two (2) business days following such resolution.  *See* Stalking Horse Bid Agreement at 2.5(g).

39.     Upon payment by the Debtors of any Cure Amount (through resolution of a Cure Objection or otherwise), all defaults under the Assumed Contracts (monetary or otherwise) and all actual or pecuniary losses that have or may have resulted from such defaults will be deemed cured, including any Tax, rental obligation, common area maintenance, percentage rent, base rent or utility payments, whether or not such obligation became due, or accrued, after the effective date

of the assignment of such Assumed Contracts, as the case may be. *See* Stalking Horse Bid Agreement at 2.5(h).

## PROVISIONS RELATING TO THE DIP LENDER

40.    Concurrently with the filing of this Motion, the Debtors filed the *Emergency Motion (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Senior Secured Lenders, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* (the "DIP Financing Motion").

41.    In the DIP Financing Motion, the Debtors requested authority for the Debtors to receive senior secured debtor-in-possession term loan financing (the "DIP Financing") in an aggregate principal amount of up to $11 million of commitments to make term loans (the "DIP Facility") all on the terms and conditions set forth in the proposed interim and final orders and documents related to the DIP Financing (the "DIP Loan Facility").

42.    The Debtors have included in the Bidding Procedures the right, subject to the order approving the DIP Financing Motion, of the Senior Secured Lenders (as defined in the DIP Financing Motion) and/or the DIP Lenders to Credit Bid all or any portion of the aggregate amount of their applicable outstanding secured obligations, notwithstanding any earlier or lower Credit Bid of any portion of their applicable outstanding secured obligations.

## OTHER ASSETS & OTHER ASSETS BID DEADLINE

43.    The Other Assets represent assets of the Debtors other than the Purchased Assets which are the subject of the Sale and the Stalking Horse Bid Agreement. The Other Assets are mostly comprised of the Debtors' rights in certain unexpired leases of non-residential real estate and other assets related to the operations of the Debtors at locations which were wound down prior

to the Petition Date.  The Debtors have marketed the Other Assets as a part of the overall pre-filing market and sale process described above, and the Debtors will continue to do so during the post-petition period.  The Debtors have been communicating with certain parties which have indicated preliminary interest in potentially purchasing some of the Other Assets.  By this Motion, the Debtors request the Court to set not later than **March 23, 2023**, as the Other Assets Bid Deadline, a date that falls 45 days after the Petition Date, for parties to submit bids for Other Assets.  The Debtors will consider any timely bids received to purchase Other Assets, and if the Debtors decide to move forward with any such bids, the Debtors will file one or more separate motions with the Court seeking approval of such sale(s) of Other Assets.

## **RELIEF REQUESTED**

44.    By this Motion, the Debtors seek the entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit "A"**: (a) authorizing and approving the Debtors' entry into the Stalking Horse Bid Agreement, subject to the Bidding Procedures and the Sale Hearing; (b) authorizing and approving the Bidding Procedures in connection with the solicitation and acceptance of higher and better bids, including the Expense Reimbursement, with respect to the Sale of the Purchased Assets, (c) entry of the Scheduling Order, substantially in the form attached hereto as **Exhibit "B"**[16] (with dates to be determined at the initial hearing in these cases), scheduling the hearing to consider this Motion, including setting the bid deadlines and the Auction, on shortened notice, (d) scheduling the Sale Hearing on **March 31, 2023** to approve the Sale (subject to the availability of the Court) and setting objection deadlines with respect to the Sale, (e) approving the form and manner of notice of the Sale and related Assumption and

---

[16]    As indicated above, at the initial hearing to be held by the Court in this matter, the Debtors will request the entry of the Scheduling Order that, subject to the Court's schedule, sets the hearing on this Motion on shortened notice and provided for an objection deadline.

Assignment Procedures and Auction for the Purchased Assets, (f) establishing the Assumption and Assignment Procedures in connection with any Sale transaction, procedures to determine Cure Amounts, deadlines and resolution procedures for objections to the potential assumption and assignment of the Assumed Contracts, (g) approving not later than **March 23, 2023**, as the Other Assets Bid Deadline for interested parties to submit bids to purchase any of the Other Assets; and (h) granting related relief.

45.     For the reasons stated herein, the Debtors request, pursuant to Bankruptcy Rule 2002 and 9006(c), to have this Motion heard on shortened notice.

### **RELIEF REQUESTED SHOULD BE GRANTED**

**A.    The Court Should Approve the Debtors' Entry into the Stalking Horse Bid Agreement, Subject to the Bidding Procedures and the Sale Hearing, Because the Sale Represents a Sound Exercise of the Debtors' Business Judgment**.

46.     As set forth herein, as well as in Supplemental Declaration and the Sale Motion (each of which is incorporated herein in its entirety), the Debtors respectfully request the Court to approve the Debtors' entry into the Stalking Horse Purchase Agreement, subject to the Bidding Procedures and the Sale Hearing, as a proper exercise of the Debtors' business judgment. *See, e.g.,* Sale Motion at ¶¶ 20-48.[17]

**B.    The Bidding Procedures are Fair and Reasonable, Designed to Maximize the Value Received by the Debtors' Estates, and Consistent with the Debtors' Reasonable Business Judgment**.

47.     The Bidding Procedures are designed to promote the paramount goal of any

---

[17]    For the avoidance of doubt, the Debtors do not seek by this Motion the Court's final approval of the Stalking Horse Bid Agreement, but rather, approval of the Sellers' entry into the Stalking Horse Bid Agreement, subject to the Bidding Procedures and the Sale Hearing.  For brevity, the Debtors do not repeat here all of the reasons set forth in detail in the Sale Motion in support of the Debtors' entry into the Stalking Horse Bid Agreement and the Sale. All rights of all parties to object to the Stalking Horse Bid Agreement, or a higher or otherwise better offer obtained at an Auction (if one is held) are expressly preserved.

22

proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"), *appeal dismissed* 3 F.3d 49 (2d Cir. 1993); *see also In re Metaldyne Corp.,* 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer").  Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate. *See Integrated Resources*, 147 B.R. at 659 (observing that sale procedures "encourage bidding" and "maximize the value of the debtor's assets").

48.     The Debtors believe that the Bidding Procedures represent a valid and reasonable exercise of their business judgment because they are designed to maximize the value received for the Purchased Assets and prevent any chilling of potential bids by establishing a transparent, competitive and fair bidding process.  Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Innkeepers USA Trust*, 448 B.R. 131, 146 (Bankr. S.D.N.Y. 2011) ("the Debtors have appropriately exercised their business judgment in determining to . . . propose the revised Bidding Procedures"); *Integrated Resources*, 147 B.R. at 656-657 (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *see also In re Ashley Consulting*, *LLC*, Case No. 14-13406 (MG), 2015 WL 6848113, at

*3 (Bankr. S.D.N.Y. Nov. 6, 2015) (noting, *in dicta*, that proposed bidding procedures are evaluated using the business judgment standard).

49.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by a debtor's estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Ruden McClosky P.A.*, No. 11-40603-BKC-RBR, 2012 WL 668019, at *1 (Bankr. S.D. Fla. Feb. 23, 2012) (approving bidding procedures that "are reasonably designed to maximize the value to be achieved" for the assets subject to the sale); *In re Dunhill Entities, L.P.*, No. 10-01342, 2010 WL 6982623, at *1 (Bankr. S.D. Ala. Apr. 13, 2010) (approving bidding procedures that are "designed to maximize the [d]ebtors' recovery on the [a]ssets"); *In re Robb & Stucky Ltd. LLLP*, No. 8:11-bk-02801-CED, 2001 WL 36371214, at *1 (Bankr. M.D. Fla. Feb. 18, 2001) (same); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and … [should] provide for a fair and efficient resolution of bankrupt estates").

50.     The Debtors believe that the Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of the Purchased Assets for the benefit of the Debtors' estates.  The Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers to purchase the Purchased Assets.  The Bidding Procedures were developed consistent with the Debtors' need to proceed with an expedited sale process designed to preserve the going-concern value of the Debtors' business.  The process set forth in the Bidding Procedures allows for a timely and efficient auction process given

24

the circumstances facing the Debtors, while providing bidders with ample time and information to submit a timely bid and perform diligence.  The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and transparent fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a Sale.  In particular, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

51.     The Debtors also submit that the Bidding Procedures are designed to ensure that the Purchased Assets will be sold for the highest or otherwise best possible purchase price by subjecting the value of the Purchased Assets to market testing and permitting prospective buyers to bid on the Purchased Assets.  Furthermore, the Debtors and all parties-in-interest can be assured that the consideration received for the Purchased Assets will be fair and reasonable and that the proposed Bidding Procedures will not chill bidding by any potential bidders.  As such, the Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy cases and are consistent with the controlling legal standard.  Accordingly, the Debtors respectfully submit that the Court should approve the Bidding Procedures as a valid and reasonable exercise of the Debtors' business judgment.

52.     The Debtors propose to commence the Auction not later than **March 27, 2023**, a timeline that the Debtors believe is workable given their marketing efforts to date and will continue to undertake postpetition, as described herein.  Significantly, maximizing the value of the Debtors' estates requires that the Debtors proceed swiftly to consummate the Sale, thereby minimizing the incremental costs associated with these bankruptcy cases and preserving the value of the Debtors'

business.  The Bidding Procedures are designed to—and the Debtors believe the Bidding Procedures will operate to—maximize the likelihood of a competitive bidding process for all of the Purchased Assets.

53.    Procedures to dispose of assets, similar to the proposed Bidding Procedures have been approved by bankruptcy courts in other large, complex bankruptcy cases.  *See, e.g., In re TAM Winddown LLC,* Case No. 20-23346-PDR (Bankr. S.D. Fla. Dec. 31, 2020); *In re Just One More Restaurant Corp. et al.*, Case No. 9:19-bk-1947 (Bankr. M.D. Fla. Feb. 25, 2020); *In re Bertucci's Holdings, Inc*., Case No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018); *In re Saladworks*, Case No. 15-10327 (LSS) (Bankr. D. Del. Mar. 12, 2015); *In re TLO, LLC*, Case No. 13-20853-PGH (Bankr. S.D. Fla. Oct. 24, 2013); *In re Ruden McClosky P.A.*, Case No. 11-40603-RBR (Bankr. S.D. Fla.  Nov. 8, 2011); *In re Global Energies, LLC,* 10-28935-BKC-RBR (Bankr. S.D. Fla. Oct. 21, 2010); *In re Fontainebleu Las Vegas Holdings, LLC,* Case No. 09-21481-AJC (Bankr. S.D. Fla. Nov. 24, 2009).

54.    In sum, the Debtors believe that the proposed Bidding Procedures provide an appropriate framework for expeditiously establishing that the Debtors' estates are receiving the best or otherwise highest offer for the Purchased Assets.  Accordingly, the proposed Bidding Procedures are reasonable, appropriate and within the Debtors' reasonable exercise of their sound business judgment under the circumstances.

**C.**    **Credit Bidding Should Be Authorized**.

55.    A secured creditor is allowed to "credit bid" the amount of its allowed claim in a sale under section 363 of the Bankruptcy Code.  Section 363(k) of the Bankruptcy Code provides, in relevant part, that, unless the court for cause orders otherwise, the holder of an allowed claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such

26

claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured, as determined in accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such creditor to bid the full face value of its claim for its collateral and does not limit the credit bid to the claim's secured portion. *See Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 459 (3d Cir. 2006) (explaining that "[i]t is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)."); *In re Suncruz Casinos, LLC*, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003).

56.    Pursuant to the Bidding Procedures, the Administrative Agent for the Prepetition Lenders and/or the Administrative Agent for the DIP Lenders are each entitled to credit bid the claims they represent for the respective collateral pursuant to section 363(k) of the Bankruptcy Code. Because the Administrative Agent for the Prepetition Lenders and/or the Administrative Agent for the DIP Lenders each represent claims that are secured by certain of the Purchased Assets, such lenders should be allowed to credit bid up to the full face amount of its respective secured claims (notwithstanding any earlier or lower Credit Bid), in order to purchase such assets and to have such credit bids be deemed to have the same value as the equivalent amount of cash.

**D.    The Overbid Protections Are Appropriate Under the Circumstances**.

57.    The Minimum Overbid Increment (defined in the Bidding Procedures) in the amount of $500,000.00 is appropriate under the circumstances and will enable the Debtors simultaneously to maximize the value of the Debtors' assets while limiting the chilling effect in the marketing process. This provision also is consistent with the overbid increments previously approved by bankruptcy courts in other large, complex bankruptcy cases. *See, e.g., In re TAM Winddown LLC,* Case No. 20-23346-PDR (Bankr. S.D. Fla. Dec. 31, 2020); *In re Just One More*

27

*Restaurant Corp. et al.*, Case No. 9:19-bk-1947 (Bankr. M.D. Fla. Feb. 25, 2020); *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018); *Saladworks*, Case No. 15-10327 (LSS) (Bankr. D. Del. Mar. 11, 2015).

**E.    The Expense Reimbursement Is an Actual and Necessary Cost of Preserving the Debtors' Estates**.

58.    Bid incentives such as the Expense Reimbursement encourage a potential buyer to invest the time, money and effort required to negotiate with a debtor's representatives, and to perform the necessary due diligence attendant to the acquisition of a debtor, despite the inherent risks and uncertainties of the chapter 11 process.  The Debtors submit that approval of the Expense Reimbursement is justified by the facts and circumstances of these bankruptcy cases, whether considered under the business judgment rule or as an administrative expense of the estates.

59.    The Debtors believe that granting authority to pay the Expense Reimbursement represents a reasonable exercise of their business judgment and will maximize the proceeds from the sale process.  The payment of the Expense Reimbursement, like that proposed here, in a bidding process is appropriate under section 363(b) of the Bankruptcy Code so long as such payment is a valid exercise of a debtor's business judgment by providing a benefit to a debtor's estate.  *See, e.g., In re Bouchard Transportation Co., Inc.*, 639 B.R. 697, 710 (S.D. Tex. 2022); *In re Antaramian Properties, LLC*, 564 B.R. 762, 766 (M.D. Fla. 2016).  Under section 363(b), the debtors may use, sell, or lease estate property outside of the ordinary court of business so long as they articulate a sound business reason for doing so.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983).

60.    As detailed above, the Stalking Horse Bidder has agreed to cap the Expense Reimbursement, for purposes of the Bidding Procedures stage of the process, to $375,000.00, with

28

the right to request to come before this Court at the Sale Hearing, *if necessary*, and request up to

an additional $125,000.00 in Expense Reimbursement, for a total Expense Reimbursement in the

amount of $500,000.00.    *See* Stalking Horse Bid Agreement at Defined Terms ("Expense

Reimbursement"); Bidding Procedures at VI.    As such, the Expense Reimbursement of

$375,000.00 represents a mere 2.5% of $15 million, an amount representing the sum of just two

components (i.e., Credit Bid Amount and Assumed Debt) of the Purchase Price, well within the

amounts approved by Courts in this District and elsewhere.[18]    *See, e.g., In re Antaramian*

*Properties*, 564 B.R. at 768 (*citing In re Sea Island Co.* 2010 WL 4393269, at *3 (Bankr. S.D. Ga.

Sept. 15, 2010), for the proposition that a 3% breakup fee "constituted a fair and reasonable

percentage of the proposed purchase price"); *Just One More Restaurant Corp. et al.*, Case No.

9:19-bk-1947 (Bankr. M.D. Fla. Feb. 25, 2020) (court approves break-up fee and expenses

reimbursement representing 3.05% of the purchase price); *In re HRI Holding Corp.*, Case No. 19-

12415 (MFW) (Bankr. D. Del. Dec. 5, 2019) (authorizing break-up fee and expense reimbursement

of approximately 3.75% of purchase price related to the sale of the Houlihan's restaurant chain);

*In re RM Holdco LLC*, Case No. 18-11795 (MFW) (Bankr. D. Del. Sept. 6, 2018) (authorizing

break-up fee of 3% of the purchase price in the chapter 11 bankruptcy case involving one of the

largest full service Mexican casual dining restaurant chains with 80 restaurants located throughout

the United States); *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del.

May 7, 2018) (authorizing break-up fee and expense reimbursement of approximately 5.0% of

purchase price).    The Debtors submit that the combined amounts of break-up fees and expense

---

[18]    Moreover, the amount of the Expense Reimbursement as a percentage of the Purchase Price would even be smaller
than the 2.5% if the third component of the Purchase Price (Assumed Liabilities) is included in the calculation.

reimbursements approved by these courts are consistent with general recent caselaw on this issue, and probative of whether an expense reimbursement provides a benefit to the Debtors' estates.

61.     Additionally, the agreement of the Stalking Horse Bidder to cap the amount of the Expense Reimbursement at $375,000.00 for purposes of the Bidding Procedures provides total clarity for the Auction process.  Specifically, Preliminary Interested Investors (i.e., the parties that will be submitting Bids) will know that, for purposes of making a potential Competing Qualified Bid, the amount of the Expense Reimbursement is set at $375,000.00, even if the actual amount of the Expense Reimbursement is eventually higher than this amount.

62.     The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the Debtors will receive the best possible price for the Purchased Assets.  Furthermore, approval of the Bidding Procedures, including the Expense Reimbursement, is required by the Stalking Horse Bid Agreement as a condition to the Stalking Horse Bidder's obligation to proceed with the transaction contemplated in the Stalking Horse Bid Agreement.

63.     The Debtors believe that the Expense Reimbursement is fair and reasonable in view of (a) the analysis and negotiation undertaken by the Stalking Horse Bidder in connection with the transaction and (b) the fact that, if the Expense Reimbursement is triggered, the Stalking Horse Bidder's efforts will have influenced the chances that the Debtors will receive the highest or otherwise best offer for the Purchased Assets to the benefit of all of the Debtors' stakeholders.

64.     In light of the benefit to the Debtors' estates that will be realized by having a signed purchase agreement, enabling the Debtors to preserve the value of their estates and promote more competitive bidding, ample support exists for the approval of the Expense Reimbursement.  The estates' payment of the Expense Reimbursement under the circumstances described herein is (i)

an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning

of Bankruptcy Code sections 503(b) and 507, (ii) of substantial benefit to the Debtors' estates, and

(iii) reasonable and appropriate in light of the efforts and the significant due diligence costs and

expenses that have been and will be expended by the Stalking Horse Bidder.  Thus, the Debtors

request that the Court approve and authorize payment of the Expense Reimbursement pursuant to

the terms of the Stalking Horse Bid Agreement.

F.      **The Form and Manner of the Notice and Related Sale Deadlines Should Be Approved**.

        65.     The Debtors submit that the Sale Objection Deadline is reasonable and appropriate

under the circumstances.  Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to

provide creditors with twenty-one days' notice of the Auction.  Pursuant to Bankruptcy Rule

2002(c), such notice must include the time and place of the Auction and the deadline for filing any

objections to the relief requested herein.  As noted above, the proposed Sale Hearing on **March

31, 2023** (subject to the Court's availability) is more than twenty-one (21) days from notice of this

Motion and the proposed **March 19, 2023** Sale Objection Deadline has been scheduled **twelve

(12) days** in advance thereof.  Moreover, the Sale Notice, to which the Debtors should be

authorized to make non-substantive or immaterial changes prior to service, provides the time and

place of the Auction and the Sale Objection Deadline.  As such, the Debtors submit that the

proposed Sale Objection Deadline meets the requirements of the Bankruptcy Rules and the Local

Rules.

        66.     The Debtors believe that sufficient cause exists to shorten the notice period for a

hearing on this Motion.  In view of the need to immediately pursue a value-maximizing transaction

to protect the value of the Debtors' interests in their business, and at the same time, ensure

sufficient time to explore market interest and conduct a competitive bidding process, the Debtors

believe that the proposed timeline for the bidding and sale process is both reasonable and necessary under the circumstances.  Additionally, commencing the bidding process and conducting the Auction on the proposed timeline is necessary to comply with the Milestones under the DIP Loan Facility.  Absent the bidding and sale process on the timeline contemplated by the Bidding Procedures, the Debtors believe they will be unable to maximize the value of the business operations covered by the Purchased Assets as a going concern for the benefit of all stakeholders.  Accordingly, the Debtors submit that the prompt approval of the Bidding Procedures and the occurrence of the Auction are critical, and respectfully request the Court to hear this Motion on shortened notice, and seek entry of the Scheduling Order, substantially in the form attached hereto as **Exhibit "B"**, shortening notice and scheduling the hearing to consider this Motion.

67.    The Debtors also submit that the Sale Objection Deadline is reasonable and appropriate under the circumstances.  The Debtors further submit that the notice to be provided through the Sale Notice and the method of service proposed herein fully complies with the requirements set forth in Bankruptcy Rule 2002 and constitute good and adequate notice of the Bidding Procedures and the subsequent proceedings related thereto, including the proposed dates for: (a) the Bid Deadline; (b) the Sale Objection Deadline; (c) the Contract Objection Deadline; and (d) the Sale Hearing.  Therefore, the Debtors respectfully request the Court approve the proposed notice procedures.

**G.    The Assumption and Assignment Provide Adequate Notice and Opportunity to Object and Should be Approved**.

68.    Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a).  The Debtors respectfully submit that the proposed Assumption and Assignment Procedures are appropriate and reasonably tailored to

provide each Non-Debtor Counterparty with adequate notice of the proposed assumption and assignment of the applicable Contract, as well as proposed Cure Amounts, if applicable. Each Non-Debtor Counterparty will then be given an opportunity to object to such notice. The Assumption and Assignment Procedures further provide that, in the event an objection is not resolved, the Court will determine related disputed issues (including any adequate assurance of future performance issues). Accordingly, the Debtors submit that implementation of the proposed Assumption and Assignment Procedures is appropriate in these chapter 11 cases.

69.    The Assumption and Assignment Procedures comport with the requirements of Bankruptcy Code section 365 and Bankruptcy Rule 6006, and the Non-Debtor Counterparties' rights to adequate assurance are unaffected and fully preserved. The Debtors respectfully submit that the notices required by the Assumption and Assignment Procedures are sufficient to assume and assign the Assumed Contracts because they are reasonably tailored to provide notice and an opportunity to object to the proposed assumption and assignment. Thus, the Debtors submit that the Assumption and Assignment Procedures should be approved.

**H.    The Court Should Approve the Other Assets Bid Deadline with Respect to the Other Assets.**

70.    As stated above, the Debtors seek approval by the Court to set not later than **March 23, 2023**, a day that falls 45 days after the Petition Date, as the Other Assets Bid Deadline for interested parties to submit bids to purchase any of the Other Assets. The Other Assets are comprised mostly of the Debtors' interests in unexpired leases of non-residential real property and related assets related to the locations where the Debtors wound down their operations prior to the Petition Date. However, the Debtors are still paying rent on such leases and are incurring expenses related to the Other Assets. By establishing the Other Assets Bid Deadline, all interested parties will have clear notice of the deadline to come forward and submit bids for any of the Other Assets

33

which they wish to purchase, and if the Debtors receive any acceptable bids, the Debtors will file one or more motions with the Court seeking authorization to approve such other sale(s). The Debtors submit that creating a brief period for interested parties to submit bids for the Other Assets, compared to the alternative approach (e.g., immediately seeking to reject all of the leases associated with the Other Assets on the Petition Date which could be sold as Other Assets) will maximize the Debtors' estates for their constituents, and therefore, represents a valid exercise of the Debtors' business judgment.

## IMMEDIATE RELIEF IS REQUIRED
## TO AVOID IMMEDIATE AND IRREPARABLE HARM

71.      Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate," before twenty-one (21) days after filing of the petition. The Court may grant interim relief in respect of a motion filed pursuant to section 363(c) or 364 of the Bankruptcy Code, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2). As described herein, the Debtors risk a significant disruption in business operations and substantial harm to their enterprise absent an immediate Sale process. The Debtors have an immediate need for the Bidding Procedures and proposed timeline to be approved to, among other things, avoid the long-term disruption to the continued operation of their business, maintain important client relationships, meet payroll, satisfy working capital and operational needs, all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest during the Sale process. Accordingly, the Debtors respectfully request the Court to hear this Motion on shortened notice, and seek entry of the Scheduling Order,

substantially in the form attached hereto as **Exhibit "B"** (with dates to be determined at the initial hearing in these cases) shortening notice and scheduling the hearing to consider this Motion.

### REQUEST FOR RELIEF UNDER BANKRUPTCY RULES 6004(h) AND 6006(d)

72.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."[19] The Debtors request that the Bidding Procedures Order be effective immediately upon entry by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

### RESERVATION OF RIGHTS

73.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against any Debtor; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code other than the

---

[19]     The primary purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* 10 COLLIER ON BANKRUPTCY ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2011) ("COLLIER"); *see also In re Fisherman's Pier, Inc.*, 460 F.Supp.3d 1345, 1354 (S.D. Fla. 2020); Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, COLLIER suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." *See* COLLIER at ¶ 6004.11. Furthermore, COLLIER provides that if an objection is filed and overruled, and the objecting party informs the Court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *See id.*

Assumed Contracts; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**WHEREFORE**, the Debtors respectfully request the Court (a) grant this Motion, (b) authorize and approve the Debtors' entry into the Stalking Horse Bid Agreement, subject to the Bidding Procedures and the Sale Hearing, (c) enter the Bidding Procedures Order substantially the form attached hereto as **Exhibit "A"**, (d) authorize and approve the Bidding Procedures in connection with the solicitation and acceptance of higher or otherwise better bids, including the Expense Reimbursement, with respect to the Sale of the Purchased Assets, (e) enter the Scheduling Order, substantially the form attached hereto as **Exhibit "B"** (with dates to be determined at the initial hearing in these cases), scheduling the hearing to consider this Motion, including setting the bid deadlines and the Auction, on shortened notice, (f) schedule the Sale Hearing and setting objection deadlines with respect to the Sale, (g) approve the form and manner of notice of the Sale and related Assumption and Assignment Procedures and Auction, (h) establish procedures to determine Cure Amounts and deadlines for objections to the potential assumption and assignment

of the Assumed Contracts, (i) approve the Other Assets Bid Deadline for interested parties to submit bids to purchase any of the Other Assets, and (j) grant such other and further relief as the Court deems just and proper.

Dated: February 6, 2023                               Respectfully submitted,

BERGER SINGERMAN LLP
*Proposed Counsel for the Debtors and*
*Debtors-in-Possession*
1450 Brickell Avenue, Suite 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:  *Christopher Andrew Jarvinen*
      Paul Steven Singerman
      Florida Bar No. 0378860
      singerman@bergersingerman.com
      Christopher Andrew Jarvinen
      Florida Bar No. 021745
      cjarvinen@bergersingerman.com

11780453-13

**Exhibit "A"**

**Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                                  Case No. 23-_____
GROUP, LLC, *et al.*,[1]
                                                         (Jointly Administered)

            Debtors.
_____/

## ORDER GRANTING
## DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER

---

[1]    The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Undion IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

11844825-13

**(I) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO
THE STALKING HORSE BID AGREEMENT WITH THE STALKING HORSE
BIDDER, SUBJECT TO THE BIDDING PROCEDURES AND THE SALE
HEARING, (II) APPROVING BIDDING PROCEDURES, (III) SCHEDULING
THE BID DEADLINES AND THE AUCTION, (IV) SCHEDULING A HEARING
TO CONSIDER THE TRANSACTION, (V) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, (VI) APPROVING CONTRACT PROCEDURES,
(VII) APPROVING A DEADLINE FOR INTERESTED PARTIES
TO SUBMIT BIDS TO PURCHASE ANY OF THE DEBTORS' REMAINING
ASSETS WHICH ARE NOT PURCHASED ASSETS SUBJECT TO THE
<u>STALKING HORSE BID AGREEMENT, AND (VIII) GRANTING RELATED RELIEF</u>**

**THIS MATTER** came before the Court on February __, 2023 at _____ a.m./p.m. (the "<u>Hearing</u>") upon the *Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. __] (the "<u>Motion</u>")[2] filed by the above-captioned, affiliated, debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), by the authority granted to the Debtors by chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Motion requests the entry of an order: (a) authorizing and approving the Debtors' entry into the Stalking Horse Bid Agreement, subject to the Bidding Procedures attached hereto as **Exhibit "1"** (the "<u>Bidding Procedures</u>") and the Sale Hearing; (b) approving the Bidding Procedures in connection with the solicitation and acceptance of higher or

---

[2]    Any capitalized term not explicitly defined herein shall have the meaning ascribed to it, as applicable, in (i) the Motion, (ii) the Bidding Procedures attached hereto as **Exhibit "1"**, or (iii) the Stalking Horse Bid Agreement (as such term is defined in the Motion).

11844825-13

otherwise better bids, with respect to the Sale of the Purchased Assets; (c) approving the Expense Reimbursement; (d) scheduling on shortened notice the bid deadlines and the Auction; (e) scheduling the Sale Hearing to approve the Sale, and setting objection deadlines with respect to the Sale; (f) approving the form and manner of notice of the Sale Notice and related Auction for the Purchased Assets; (g) establishing the Assumption and Assignment Procedures of the Assumed Contracts; and (h) approving the Other Assets Bid Deadline for interested parties to submit bids to purchase any of the Other Assets; and (i) granting related relief, all as more fully set forth in the Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having considered the First Day Declaration of Edward A. Phillips [ECF No. __] and the Supplemental Declaration of Harvey Tepner [ECF No. __], each in support of the relief sought by the Debtors in the Motion, and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Hearing; and after due deliberation and sufficient cause appearing therefor, does for the reasons stated in the Motion and on the record of the Hearing, all of which are incorporated herein:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

      A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To

11844825-13

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Motion and the transactions contemplated by the Stalking Horse Bid Agreement pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion are: (i) sections 105, 363, 365, 503 and 507 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002, 6003, 6004, 6006, 9006, 9007 and 9014; and (iii) rules 2002-1(C)(2) and 6004-1 of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules").

D.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required except as set forth herein with respect to the hearing to be conducted to approve the transactions contemplated by the Stalking Horse Bid Agreement (the "Sale Hearing").  A reasonable and fair opportunity to object or be heard regarding the Motion and the relief provided in this Order have been afforded to parties in interest under the circumstances.

E.      The Debtors' proposed notice of the Bidding Procedures, the Auction and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Debtors' assets subject to the Stalking Horse Bid Agreement (the "Purchased Assets"), the auction for all of the Purchased Assets (the "Auction"), and the Bidding Procedures to be employed in connection therewith, and the Sale Hearing.

11844825-13

F.      The form and manner of service of the Sale Notice as proposed in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Bidding Procedures, and the Assumption and Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time and place of the Sale Hearings; (iv) reasonably specific identification of the Purchased Assets, including the sale of certain of the Debtors' or their estates' causes of actions and (v) the representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims and encumbrances attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

G.      The Assumption Notice (as defined below) is appropriate and reasonably calculated to provide each non-debtor party to any Available Contracts (such parties, collectively, the "Non-Debtor Counterparties") with proper notice of the potential assumption and assignment of the applicable Available Contract, the proposed Cure Amount (as defined in the Motion), and the Assumption and Assignment Procedures.  The inclusion of any particular contract or lease on an Assumption Notice shall not be deemed to be an admission that such contract or lease is an executory contract or unexpired lease of property or require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the Debtors with respect to the foregoing are reserved.

H.      The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation: (i) approval of the Bidding Procedures; (ii) setting the Sale Hearing and approving the manner of notice of the

5

Motion and the Sale Hearing; (iii) approval of the Sale Notice and the Assumption Notice; (iv) approving the Assumption and Assignment Procedures set forth herein and in the Stalking Horse Bid Agreement, including the procedures set forth in the Stalking Horse Bid Agreement with respect to the Stalking Horse Bidder's rights to designate or change the character of such Assumed Contracts by the Determination Date; (v) approving the payment of the Expense Reimbursement on the terms set forth in the Stalking Horse Bid Agreement and in this Order; and (vi) all related relief as set forth herein.

I.      The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code.

J.      Under the circumstances, the Debtors' marketing process for the Purchased Assets has been reasonably calculated to maximize value for the benefit of all stakeholders.

K.      Under the circumstances, the Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value to be achieved for the Purchased Assets. The Bidding Procedures were negotiated by the parties at arms' length and in good faith by the Debtors and the Stalking Horse Bidder.

L.      The Debtors have demonstrated a compelling and sound business justification for the Court to approve the payment of the Expense Reimbursement on the terms set forth in the Stalking Horse Bid Agreement. The Expense Reimbursement: (i) is payable as provided in Sections 7.1 and 9.2 of the Stalking Horse Bid Agreement; (ii) shall be granted allowed administrative expense status under sections 503(b) and 507 of the Bankruptcy Code and shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (iii) is of substantial benefit to the Debtors' estates; (iv) is reasonable and appropriate, including in light of the size and nature of the sale and the efforts that

6

have been or will be expended by the Stalking Horse Bidder notwithstanding that the proposed sale is subject to higher or otherwise better offers for the Purchased Assets; (v) was negotiated by the parties at arm's length and in good faith; and (vi) is necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed acquisition of the Purchased Assets contemplated by the Stalking Horse Bid Agreement.  The Expense Reimbursement is a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the Stalking Horse Bid Agreement.

M.     The entry of this Order is in the best interests of the Debtors, their estates, creditors and other parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is **GRANTED** to the extent set forth herein.

2.     Except as explicitly provided in this Order, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled through language in this Order, and all reservations of rights included therein, including [TBD], are overruled and denied on the merits with prejudice.

**The Stalking Horse Bid Agreement**

3.     The Debtors are authorized to enter into the Stalking Horse Bid Agreement attached as Exhibit "A" to the Sale Motion, subject to higher or otherwise better offers received from Competing Qualified Bidders at the Auction, provided, that the rights of all parties to object to the Sale contemplated by the Stalking Horse Bid Agreement are expressly preserved. Lender AcquisitionCo LLC, together with its permitted successors, assigns and designees, is approved as the Stalking Horse Bidder for the Purchased Assets, pursuant to the terms of the Stalking Horse Bid Agreement and this Order.  The Debtors are authorized to perform any obligations of the

Debtors set forth in the Stalking Horse Bid Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order, without further order of the Court.

4.      The Expense Reimbursement is approved on the terms set forth in the Stalking Horse Bid Agreement; including the amount of the Expense Reimbursement that a Preliminary Interested Investor shall use solely for the purpose of the amount of the "Expense Reimbursement" referenced in the "Amount of Bid" set forth in paragraph II.b of the Bidding Procedures is set at $375,000.00; provided further, the Stalking Horse Bidder shall provide the Debtors and U.S. Trustee with documentation supporting the payment of the Expense Reimbursement up to $500,000.00 five business days prior to the Sale Hearing; provided further, that the U.S. Trustee may only seek to challenge on the grounds of amounts sought for reimbursement over $375,000.00; provided further, that the Stalking Horse Bidder may only seek reimbursement of fees incurred in connection to the Stalking Horse Bid Agreement and the Sale Hearing.  Nothing herein precludes the right of the Stalking Horse Bidder to seek reimbursement in excess of $500,000.00 in establishing the reasonableness of the Expense Reimbursement (to the extent applicable), however it shall only be entitled to actual payment and reimbursement up to $500,000.00.  The Expense Reimbursement shall constitute an allowed administrative expense claim against each Debtors' bankruptcy estates under sections 503(b) and 507 of the Bankruptcy Code (without the need to file a proof of claim).  The obligation of the Debtors to pay  the Expense Reimbursement shall survive termination of the Stalking Horse Bid Agreement.

5.      Subject to the terms of the Stalking Horse Bid Agreement, the Debtors shall pay the Expense Reimbursement out of the proceeds of an Alternate Transaction to the Stalking Horse Bidder by wire transfer of immediately available funds to the account specified by the Stalking Horse Bidder to the Debtors in writing and shall be paid to the Stalking Horse Bidder prior to the

8

payment of the proceeds of such sale to any third party asserting a lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Expense Reimbursement).  No further or additional order from this Court shall be required in order to give effect to such provisions relating to the terms of payment of the Expense Reimbursement and the Stalking Horse Bidder's professional advisors are not obligated to comply with any provisions of the Bankruptcy Code regarding Court approval of professional fees payable by the Debtors' estates and included in the Expense Reimbursement.

6.      The obligation of the Debtors' estates to pay the Expense Reimbursement, as provided by the Stalking Horse Bid Agreement and this Order, is hereby approved in all respects and shall survive termination of the Stalking Horse Bid Agreement and shall be payable out on the terms set forth in the Stalking Horse Bid Agreement.

### The Bidding Procedures

7.      The Bidding Procedures, attached hereto as **Exhibit "1"**, are hereby approved in their entirety, are incorporated herein by reference and shall govern the bids and proceedings related to the Sale and the Auction.  The failure to recite or reference any particular provision of the Bidding Procedures in this Order shall not diminish the effectiveness of such provision, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

8.      The "Bidding Procedures Key Dates", attached hereto as **Exhibit "2"**, are hereby approved in their entirety.

9.      The Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith, the Stalking Horse Bid Agreement, and the timeline below.

11844825-13

10.     The Bid Deadline is **March __, 2023 at 5:00 p.m. (prevailing Eastern Time)**.

11.     Subject to any applicable financing orders entered in the Debtors' bankruptcy cases, holders of claims secured by unavoidable, properly perfected liens on all or a portion of the Purchased Assets shall, pursuant to section 363(k) of the Bankruptcy Code, be permitted, but not compelled, to credit bid up to the full amount of their secured claims for any such Purchased Assets (such bid, a "Credit Bid"), including, the Prepetition Lenders and the DIP Lenders.

12.     A Credit Bid, other than the Stalking Horse Bid Agreement, must: (i) contain evidence sufficient to the Debtors, after consultation with the Consultation Parties, to demonstrate that the secured claims subject to such Credit Bid are secured by unavoidable, properly perfected liens on the Purchased Assets subject to such Credit Bid; and (ii) include a cash purchase price sufficient to pay in full the sum of the following: (a) all amounts being paid in full in cash as part of the Purchase Price under the Stalking Horse Bid Agreement (excluding, for the avoidance of doubt, any Assumed Liabilities to be assumed by the Stalking Horse Bidder pursuant to the Stalking Horse Bid Agreement), *plus* (b) all obligations under the DIP Facility, *plus* (c) all obligations secured by senior or *pari passu* liens on the Purchased Assets (e.g., the Loan Debt) to be purchased pursuant to such Credit Bid, *plus* (d) the Expense Reimbursement (in addition to the other requirements in the Bidding Procedures).

13.     The Stalking Horse Bid Agreement is, in part, a Credit Bid, notwithstanding any earlier Bids.  Further, any Credit Bid, including the Stalking Horse Bid, shall be permitted to increase its Credit Bid up to the full amount of its applicable outstanding secured obligations.  For purposes of valuing Competing Qualified Bids and determining the Successful Bid, the full face amount of a Credit Bid satisfying the requirements set forth in the Bidding Procedures and this Order shall be deemed to have the same value as the equivalent amount of cash.  In the event the

10

Purchased Assets are acquired in an Alternate Transaction, the Successful Bidder shall be responsible for the payment of the Expense Reimbursement per the terms of the Stalking Horse Bid Agreement and this Order.

14.     For the avoidance of doubt, each Competing Qualified Bid must be for all of the Purchased Assets and must include (i) cash consideration of not less than the sum of (a) the Purchase Price (including the amount of the Assumed Debt as of the Closing Date) *plus* (b) all amounts outstanding under the DIP Facility, *plus* (c) the Expense Reimbursement in the amount of $375,000.00, *plus* (d) an initial cash overbid of $500,000.00, and (ii) assumption of the Assumed Liabilities (other than the Assumed Debt). The Debtors shall make the precise dollar amount of the cash portion of a Competing Qualified Bid available to any interested bidder upon request.

15.     If the Debtors receive more than one Competing Qualified Bid (as defined in the Bidding Procedures) by the Bid Deadline, an Auction shall take place on **March __, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Berger Singerman LLP, located at 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, or such other place and time, or by electronic means (e.g., Zoom), as the Debtors shall notify all Competing Qualified Bidders, including the Stalking Horse Bidder, counsel for the Stalking Horse Bidder and other invitees in accordance with the Bidding Procedures, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date. The Auction shall be conducted in accordance with the Bidding Procedures. Each Competing Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures, (c) has consented to the core jurisdiction of this Court, (d) intends to consummate the Sale transaction if selected as the

Successful Bidder and (e) agrees to serve as a Backup Bidder if the Competing Qualified Bidder's Competing Qualified Bid is the next highest and best bid after the Successful Bid with respect to the Purchased Assets.

16.    The Sale Hearing shall be held before this Court on **March __, 2023 at _____ (prevailing Eastern Time)**.  The Sale Hearing may be adjourned from time to time by the Debtors, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date in consultation with the Stalking Horse Bidder, subject to the availability of the Court.  If there is no Auction, the Debtors will serve and file a notice with this Court not later than **March ___, 2023 at 3:00 p.m. (prevailing Eastern Time)** stating that there will be no Auction and the Debtors are moving forward with the Sale Hearing with the Stalking Horse Bidder, subject to the proviso in the immediately preceding sentence.

17.    Objections, if any, to the sale of the Purchased Assets and the Sale contemplated by the Stalking Horse Bid Agreement, or the relief requested in the Sale Motion must: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March __, 2023** (the "Sale Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq.

12

(rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

### Sale Notice

18.     The sale notice, substantially in the form attached hereto as **Exhibit "3"** (the "Sale Notice"), is hereby approved and the Debtors are authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service or publication of the Sale Notice.

19.     On or before three (3) business days after the entry of this Order, the Debtors will file the Sale Notice with the Bankruptcy Court and shall serve the Sale Notice by first-class mail, to the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee for the Southern District of Florida; (c) counsel to the Stalking Horse Bidder; (d) counsel for the Administrative Agent for the DIP Lenders; (e) counsel for the Administrative Agent for the Prepetition Lenders; (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (g) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Purchased Assets, known to the Debtors that may reasonably have claims, contingent or otherwise, in connection with the Debtors'

11844825-13

ownership of the Purchased Assets or have any known interest in the relief requested by the Motion, which shall include the attorneys general for the states of California, Florida, Maryland, Massachusetts, and New Jersey; (h) the Non-Debtor Counterparties; and (i) all potential bidders previously identified or otherwise known to the Debtors.[3]

### Assumption & Assignment Procedures

20.     The proposed procedures related to the assumption and assignment of the Assumed Contracts (the "Assumption and Assignment Procedures"), and the payment by the Debtors of any related Cure Amounts, as set forth in the Stalking Horse Bid Agreement and the Motion, are approved.

21.     The notice, substantially in the form attached hereto as **Exhibit "4"** (the "Assumption Notice"), of potential assumption and assignment of certain of the Debtors' executory contracts and unexpired leases to be listed in the Assumption Notice (collectively, the "Available Contracts"), is hereby approved in its entirety.  The Debtors are authorized to make non-substantive or immaterial changes to the Assumption Notice to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service or publication of the Assumption Notice.  The Assumption and Assignment Procedures, including but not limited to, with respect to the Stalking Horse Bidder's rights to designate or change the Assumed Contracts

---

[3]   With respect to serving all potential bidders previously identified or otherwise known to the Debtors, these are the investors who entered into non-disclosure agreements with the Debtors, and the Debtors are authorized to file under seal that part of the service list providing the names and email addresses for all such parties which will be served *via* email with the Sale Notice and this Order at the email address(es) maintained for each such investor by, respectively, either FTI or the Debtors.

by the date that is three (3) business days prior to the closing of the Sale, or such shorter period if consented to by the Non-Debtor Counterparty (the "Determination Date"), are approved.[4]

22.     On or before three (3) business days after the entry of this Order, the Debtors shall file the Assumption Notice with the Bankruptcy Court and shall serve the Assumption Notice via first class mail on each Non-Debtor Counterparty to an Available Contract listed thereon.  In the event that the Debtors later identify any Non-Debtor Counterparty which was not served with the Assumption Notice, the Debtors may subsequently serve such Non-Debtor Counterparty with the Assumption Notice substantially in the form attached hereto as the Assumption Notice (each, a "Supplemental Assumption Notice"), and the Assumption and Assignment Procedures will nevertheless apply to such Non-Debtor Counterparty; provided, that the Contract Objection Deadline with respect to such Non-Debtor Counterparty listed on a Supplemental Assumption Notice shall be 4:00 p.m. (prevailing Eastern Time) on the date that is the later of the Contract Objection Deadline or fourteen (14) days following the date of service of a Supplemental Assumption Notice (each, a "Supplemental Contract Objection Deadline").  Each Supplemental Assumption Notice shall (i) identify the relevant Available Contract(s), (ii) set forth a good faith estimate of the Cure Amount(s), (iii) include a statement that assumption and assignment of each such Available Contract is not required nor guaranteed, and (iv) inform such Non-Debtor Counterparty of the requirement to file any Contract Objection(s) by the Supplemental Contract Objection Deadline.

---

[4]     The Stalking Horse Bid Agreement provides, among other things, that the Stalking Horse Bidder has the right to elect to have the Debtors assume and assign to the Stalking Horse Bidder some or all of the Available Contracts and that the Debtors shall be responsible for payment of the Cure Amounts of the Assumed Contracts.

23.     Not later than one business day following the Determination Date, the Debtors shall file with the Bankruptcy Court an amended and restated Assumption Notice, which notice shall set forth only the Assumed Contracts (and exclude all other Available Contracts).

24.     Any objection to the Cure Amount or to the assumption and assignment of an Available Contract to the Stalking Horse Bidder, including with respect to adequate assurance of future performance of the Stalking Horse Bidder (collectively, a "Contract Objection"), must: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March __, 2023** (the "Contract Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

16

25.     Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Available Contract believes is required (in all cases with appropriate documentation in support thereof).  If no Contract Objection is timely received, the Cure Amount set forth in the Assumption Notice shall be controlling, notwithstanding anything to the contrary in the Available Contract or other related documents as of the date of the Assumption Notice.  The Assumption Notice shall also provide that the Contract Objection to any Cure Amount or assumption and assignment of an Available Contract will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors and the applicable counterparty in consultation with the Stalking Horse Bidder.  If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then in such case only the deadline to object to assumption and assignment (solely on the grounds of adequate assurance of future performance) of an Available Contract shall be the Sale Hearing.

26.     **Unless a Non-Debtor Counterparty to any Available Contract files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Available Contract, other than the Cure Amount on the Assumption Notice, in the event it is assumed and/or assigned by the Debtors, and the Debtors and the assignee of the Available Contract shall be entitled to rely solely upon the Cure Amounts scheduled on the Assumption Notice; and (b) be deemed to have consented to the assumption, assignment and/or transfer of such Available Contract (including the transfer of any related rights and benefits thereunder) to the relevant assignee and shall be forever barred and estopped from asserting or claiming against the Debtors or the assignee that any additional pre-assignment amounts are due or defaults exist, or**

17

**conditions to assumption, assignment, and/or transfer must be satisfied under such Available Contract, that any related right or benefit under such Available Contract cannot or will not be available to the relevant assignee, or that the assignee failed to provide such Non-Debtor Counterparty with adequate assurance of future performance**.

27.      **Unless a Non-Debtor Counterparty to any Available Contract files a timely Contract Objection to the assumption and assignment of the applicable Available Contract by the Stalking Horse Bidder or the other Successful Bidder, then such Non-Debtor Counterparty shall be deemed to have (i) consented to the assumption and assignment of the applicable Available Contract to the Stalking Horse Bidder or the other Successful Bidder with the Cure Amount set forth in the Assumption Notice and (ii) waived and released any and all other rights to object to the Cure Amount or the assumption and assignment of the Available Contract to the Stalking Horse Bidder or the other Successful Bidder**.

28.      On the date of the Closing of the Sale (the "Closing Date"), with respect to Cure Amounts not disputed as of the Closing Date, the Debtors shall pay all Cure Amounts in accordance with the Approved Budget to the applicable Non-Debtor Counterparty and the Stalking Horse Bidder shall have no liability therefor. With respect to Cure Amounts that are disputed as of the Closing Date and that were submitted in accordance with these Assumption and Assignment Procedures, the Debtors and the Successful Bidder shall cooperate and diligently pursue resolution of such disputes in good faith to attempt to resolve any such objection without court intervention. If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, then the Court shall make all necessary determinations relating to such objection at a hearing scheduled pursuant to the following paragraph.

18

29.     Consideration of unresolved Contract Objections relating to Available Contract assignment, if any, unless otherwise ordered by the Court or with the consent of the parties that to any Available Contract that are subject to a Contract Objection relating to an Available Contract assignment, shall be adjourned to a date to be determined and shall not proceed at the Sale Hearing; provided, however, that (i) any Available Contract that is the subject of a Contract Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to resolution of such objection, and (ii) the Debtors shall pay any undisputed Cure Amount on or before the Closing Date in accordance with the Approved Budget and shall appropriately reserve funding for the disputed portion of the Cure Amount. A timely filed and properly served Contract Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Available Contract, but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

30.     Upon the resolution of any disputed Cure Amount (with the consent of such Successful Bidder) following the Closing, the Debtors shall pay such Cure Amount promptly, and in no event later than two business days following such resolution.

31.     Upon payment by the Debtors of a Cure Amount (through resolution of a Cure Objection or otherwise), all defaults under the Assumed Contracts (monetary or otherwise) and all actual or pecuniary losses that have or may have resulted from such defaults shall be deemed cured, including any Tax, rental obligation, common area maintenance, percentage rent, base rent or utility payments, whether or not such obligation became due, or accrued, after the effective date of the assignment of such Assumed Contracts, as the case may be.

32.     The Debtors' assumption and/or assignment of an Available Contract is subject to approval by this Court and consummation of the Sale. Absent consummation of the Sale and entry

19

of a Sale Order approving the assumption and/or assignment of the Available Contracts, the Available Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

### Other Assets Bid Deadline

33.     The Other Assets Bid Deadline (i.e., the deadline for interested parties to submit bids to purchase any of the Other Assets of the Debtors which are not Purchased Assets subject to the Stalking Horse Bid Agreement) is March ___, 2023 at 4:00 p.m. (prevailing Eastern Time).

### Other Relief

34.     Subject to the other requirements in these Bidding Procedures, and in connection with the Sale of the Purchased Assets, secured credit parties, which hold security interests in the Purchased Assets, may submit Credit Bids for such Purchased Assets.  The Stalking Horse Bid Agreement is, a Credit Bid.  Subject to each Bid and Competing Qualified Bid satisfying the requirements of these Bidding Procedures, the Debtors shall treat comparable Credit Bids and cash bids as equivalent and no Credit Bid shall be considered inferior to a cash bid merely because it is a Credit Bid.  Notwithstanding anything to the contrary contained herein, but subject in all respects to the challenge period as set forth in any DIP Order, the Administrative Agent for the DIP Lender and/or the Administrative Agent for the Prepetition Lenders shall have the right to Credit Bid all or any portion of the aggregate amount of their applicable outstanding secured obligations, notwithstanding any earlier or lower Credit Bid of any portion of their applicable outstanding secured obligations.

35.     Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtors' proposed sale of the Purchased Assets free and clear of certain liens, claims, interests and encumbrances as set forth in the Stalking Horse Bid Agreement, pursuant to

11844825-13

Bankruptcy Code section 363(f) and otherwise, and except as set forth in this Order, no other or further notice of the sale shall be required to be provided by the Debtors.

36.     For the reasons stated in the Motion and at the Hearing or any prior hearing, the Court grants the Debtors' request for shortened notice with respect to the relief requested in the Motion.

37.     The Stalking Horse Bidder is entitled to make any additional bids at the Auction in compliance with the Bidding Procedures. For purposes of any Overbid, the Stalking Horse Bidder shall be entitled to a credit in the amount of the Expense Reimbursement.

38.     The Sale Hearing may be continued, from time to time in consultation with the Stalking Horse Bidder, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or announced by the Debtors in open court.

39.     Except for the Stalking Horse Bidder, no other party submitting an offer or Bid for the Purchased Assets or a Competing Qualifying Bid shall be entitled to any expense reimbursement, breakup, termination, or similar fee or payment. Moreover, all Competing Qualifying Bidders (excluding any Bid Protections approve by this Court) waive any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code, or the payment of any broker fees or costs, unless specifically agreed to by the Debtors, upon consultation with the Consultation Parties, or upon further order of the Court.

40.     Except as otherwise provided in the Stalking Horse Bid Agreement or this Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of the Debtors' estates (in consultation with the Consultation Parties) to: (a) determine which Bidders are Competing Qualified Bidders; (b) determine which Bids are Competing Qualified

21

Bids; (c) determine which Competing Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Stalking Horse Bidder; (f) extend the deadlines set forth herein; and (g) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice or by filing a notice on the docket. Before extending any deadline, the Debtors shall consult with the Stalking Horse Bidder and the Consultation Parties.

41.     All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Purchased Assets, the Auction and any transaction contemplated herein.

42.     To the extent that any order confirming any plan of reorganization or liquidation in the Debtors' cases or any other order in these cases (including any order entered after any conversion of these chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control.  The Debtors' obligations under this Order, the provisions of this Order and the portions of the Stalking Horse Bid Agreement pertaining to the Bidding Procedures shall survive conversion of these chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code, confirmation of any plan of reorganization or liquidation, or discharge of claims thereunder and shall be binding upon the Debtors, any Chapter 7 trustee, the reorganized or reconstituted debtors, as the case may be, after the effective date of a confirmed plan or plans in the Debtors' cases

(including any order entered after any conversion of the cases of the Debtors to cases under Chapter 7 of the Bankruptcy Code)

43.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Order.

44.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

45.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

46.     In the event there is any inconsistency between the Stalking Horse Bid Agreement, the Motion, the Bidding Procedures, and/or this Order, the terms of this Order shall govern.

47.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

#    #    #

Submitted by:
Christopher Andrew Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Tel. (305) 755-9500
Fax (305) 714-4340
Email: cjarvinen@bergersingerman.com

*(Attorney Jarvinen is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

# EXHIBIT "1"

**Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| DELPHI BEHAVIORAL HEALTH GROUP, LLC, *et al.*,[1] | Case No. 23-_____ |
| | (Jointly Administered) |
| Debtors. | |
| _____/ | |

**BIDDING PROCEDURES**[2]

On February _____, 2023 (the "Petition Date"), each of the above-captioned, affiliated, debtors and debtors-in-possession (collectively, the "Debtors") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

On February _____, 2023, the Debtors filed the *Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not*

---

[1] The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309. The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Undion IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

[2] Any capitalized term not explicitly defined herein shall have the meaning ascribed to it in, as applicable, the Stalking Horse Bid Agreement, the Bidding Procedures Motion or the Bidding Procedures Order (as each is defined herein).

11843540-13

*Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. __] (the "Bidding Procedures Motion").

The Bidding Procedures Motion sought approval of, among other things, the procedures through which the Debtors, in the reasonable exercise of their business judgment, will determine the highest or otherwise best bid for the sale (the "Sale") of three of the Debtors' inpatient and outpatient substance use disorder treatment facilities (each, a "SUD", and collectively, the "SUDs") located in Massachusetts and New Jersey, identified on **Schedule 1** annexed hereto, and all related assets (collectively, the assets subject to the Sale are the "Purchased Assets", as such term is defined in the Stalking Horse Bid Agreement (defined herein)).

On February ____, 2023, three of the Debtors (each, a "Seller" and collectively, the "Sellers")[3] entered into that certain *Asset Purchase Agreement* (the "Stalking Horse Bid Agreement"), a copy of which is attached as Exhibit "A" to the Sale Motion (such bid, the "Stalking Horse Bid"), by and among Lender AcquisitionCo LLC, as purchaser (together with each of its permitted successors, assigns and designees, collectively, the "Stalking Horse Bidder") and Brightwood Loan Services LLC, solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Administrative Agent").

On February ___, 2023, the Bankruptcy Court entered an order approving the Bidding Procedures Motion [ECF No. __] (the "Bidding Procedures Order" and the procedures set forth herein, the "Bidding Procedures"), which, among other things, authorizes the Debtors to determine the highest or otherwise best bid for the Purchased Assets through the process and the procedures set forth in these Bidding Procedures, and authorized the Debtors' entry into the Stalking Horse Bid Agreement, pursuant to which the Stalking Horse Bidder has committed to (a) purchase, acquire, and take assignment and delivery of the Purchased Assets, free and clear of all liens, claims, encumbrances, and other interests (except as otherwise expressly provided in the Stalking Horse Bid Agreement), and (b) assume certain liabilities associated with the Debtors' operations involving the Purchased Assets as set forth in the Stalking Horse Bid Agreement, in the form of a credit bid.

Unless expressly indicated, the following Bidding Procedures apply to all bidders regardless of the phase of the Auction in which the bidder intends to participate.

### Key Dates

| Event | Date |
|---|---|
| Hearing on the Motion for Bidding Procedures | February __, 2023 at ___ a.m./p.m. (prevailing Eastern Time) |
| Service of (i) Bidding Procedures Order, and (ii) Assumption Notice | Within three (3) business days after the Bankruptcy Court's entry of the Bidding Procedures Order. |

---

[3]   The Sellers are the following Debtors: Debtors: (i) Union Fresh Start LLC (d/b/a Serenity at Summit); (ii) Summit Behavioral Health Limited Liability Company (d/b/a Summit Behavioral Health Princeton Junction); and (iii) SBH Haverhill, LLC (d/b/a Serenity at Summit New England).

2

| Contract Objection Deadline | March __, 2023 at 4:00 p.m. (prevailing Eastern Time) |
|---|---|
| Sale Objection Deadline | March __, 2023 at 4:00 p.m. (prevailing Eastern Time) |
| Bid Deadline | March __, 2023 at 5:00 p.m. (prevailing Eastern Time) |
| Notice of No Auction to be Held (if applicable) | March __, 2023 at 3:00 p.m. (prevailing Eastern Time) |
| Notification of Auction Baseline Bid to all Competing Qualified Bidders | March __, 2023 at 5:00 p.m. (prevailing Eastern Time) |
| Auction | March __, 2023 at 10:00 a.m. (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date.  If an Auction is to be held, it shall take place at the offices of the Debtors' counsel, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131), and/or by electronic means (e.g., Zoom). |
| Debtors File Notice Identifying the Successful Bidder and any Backup Bidders | Within one (1) business days following the conclusion of the Auction. |
| Sale Hearing | March __, 2023 at ___ a.m./p.m. (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court. |
| Adequate Assurance Objection (in the event the Stalking Horse Bidder is not the Successful Bidder) | At or before the Sale Hearing. |
| Deadline to Close the Sale | April __, 2023, subject to the right of the Debtors, in the reasonable exercise of their business judgment and the consent of the Stalking Horse Bidder, to agree to a later date. |

### Access to Diligence Materials.

To participate in the bidding process and to receive access to due diligence information, including access to the electronic data room being maintained by Berger Singerman LLP (the Debtors' counsel), and to additional non-public information regarding the Debtors and their business (collectively, the "Diligence Materials"), a party must deliver to the Debtors: (i) an executed confidentiality agreement in the form and substance satisfactory in the sole discretion of the Debtors (the "Confidentiality Agreement"); (ii) written evidence demonstrating such party's financial capability to close a transaction involving the Purchased Assets (an "Alternate Transaction"), as determined by the Debtors, in consultation with the Consultation Parties; and (iii) any other evidence that the Debtors, in consultation with the Consultation Parties, may reasonably request (any such party that satisfies the foregoing, a "Preliminary Interested Investor").

Only a Preliminary Interested Investor may proceed to conduct due diligence.  Only a Preliminary Interested Investor may submit a Bid (as defined below).

11843540-13

All due diligence requests must be directed to the Debtors to the attention of Mr. Harvey Tepner (htepner@delphihealthgroup.com). To the extent reasonably practicable, Mr. Tepner will also facilitate meetings between any interested Preliminary Interested Investor and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their sole discretion. The Debtors shall promptly provide the Stalking Horse Bidder with any information provided to a prospective bidder or Competing Qualified Bidder that has not already been provided to the Stalking Horse Bidder.

The due diligence period will end on the Bid Deadline (as defined below), and, subsequent to the Bid Deadline, the Debtors and their representatives, including but not limited to the Debtors' Advisors (as defined below), will have no obligation to furnish any due diligence information to any party. For the avoidance of doubt, no due diligence will continue after the Bid Deadline.

Neither the Debtors nor any of their respective representatives, including the Debtors' Advisors, will be obligated to furnish any information relating to the Purchased Assets other than to Preliminary Interested Investors. The Debtors and the Debtors' Advisors make no representations or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in any definitive agreement entered into with a Successful Bidder.

The Debtors and the Debtors' Advisors will coordinate all reasonable requests from Preliminary Interested Investors for additional information and due diligence access; provided that the Debtors may decline to provide such information to Preliminary Interested Investors who, at such time and in the Debtors' reasonable exercise of their business judgment, have not established, or who have raised doubt, that such Preliminary Interested Investor intends in good faith to, or has the capacity to, consummate an Alternate Transaction.

**For any Preliminary Interested Investor or Competing Qualified Bidder who, in the Debtors' determination, is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, or to delay providing, in their sole discretion, and subject to any requirements under applicable law, <u>any</u> Diligence Materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Preliminary Interested Investor or Competing Qualified Bidder, at any such time.**

**<u>All parties, Preliminary Interested Investors, and Competing Qualified Bidders are prohibited from communicating with any of the Debtors' employees, directors, officers, landlords, vendors, suppliers, agents, existing lender(s), interest or equity holders, or with any other potential bidder, Preliminary Interested Investor, or Competing Qualified Bidder with respect to any Bid or Alternate Transaction absent the prior written consent (email shall suffice) of the Debtors; provided that if such consent is given a representative of the Debtors shall be present for, or party to, any such communications (unless otherwise waived in writing (email shall suffice) by the Debtors in their sole discretion).</u>**

Each Preliminary Interested Investor and Competing Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or the Debtors' Advisors regarding such Preliminary Interested Investor or Competing Qualified Bidder.

4

Notwithstanding anything to the contrary herein, the Stalking Horse Bidder shall be qualified as a Preliminary Interested Investor and a Competing Qualified Bidder.

<b><u>Bid Qualification Process</u></b>

**I.     <u>Bid Deadline</u>**.

A Preliminary Interested Investor that desires to make a proposal, solicitation, or offer for all or substantially all of the Purchased Assets (each, a "<u>Bid</u>") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be actually received by the following parties on or before **March __, 2023, at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>"):

    a.    *Bankruptcy Counsel to the Debtors*:  Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens (rrubens@bergersingerman.com); and

    b.    *The Interim Chief Executive Officer for the Debtors:* c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) (and together with Berger Singerman LLP, collectively, the "<u>Debtors' Advisors</u>").

**II.     <u>Bid Requirements</u>**.

To be eligible to participate in the Auction (defined below), other than with respect to the Stalking Horse Bid, each Bid by a Preliminary Interested Investor (a "<u>Bidder</u>") must be submitted in writing and satisfy each of the following requirements (collectively, the "<u>Bid Requirements</u>"):

    a.    <u>Same or Better Terms</u>.  The Bid must be on terms that are substantially the same or better than the terms of the Stalking Horse Bid Agreement, as determined by the Debtors in their sole discretion (in consultation with the Consultation Parties) and the Bid must identify which assets the Bidder intends to purchase and include executed transaction documents (as defined herein, an Alternate Transaction).  A Bid shall include both a clean version (in MS-Word) and a blackline against the Stalking Horse Bid Agreement marked to show all changes requested by the Bidder. A Bid will not be considered qualified for the Auction if: (i) such Bid contains additional material representations and warranties, covenants, closing conditions (including, but not limited to, any contingency involving the need to obtain any license in any way related to the operations of the Purchased Assets), termination rights, financing, or due diligence contingencies other than as may be included in the Stalking Horse Bid Agreement (it being agreed and understood that such Bid shall modify the Stalking Horse Bid Agreement as needed to comply in all respects with the Bidding Procedures Order (including removing any termination rights in conflict with the Bidding Procedures Order) and will remove provisions that apply only to the Stalking Horse Bidder, as the stalking horse bidder, such as the Expense

5

Reimbursement); (ii) such Bid is not received by each of the Debtors' Advisors in writing on or prior to the Bid Deadline; (iii) such Bid does not provide for payment of the Expense Reimbursement in cash upon closing; and (iv) such Bid does not contain evidence that the Bidder(s) has/have received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof that the Earnest Money Deposit (defined below) has been made.

b.    Amount of Bid.  Each Bid must be for all of the Purchased Assets and shall clearly show the amount of the purchase price.  In addition, a Bid must include (i) cash consideration of not less than the sum of (a) the Purchase Price (including the Credit Bid Amount and the amount of the Assumed Debt, as each term is defined in the Stalking Horse Bid Agreement), *plus* (b) all additional amounts outstanding under the DIP Facility not included in the Assumed Debt, *plus* (c) the Expense Reimbursement in the amount of $375,000.00, *plus* (d) an initial cash overbid of $500,000.00, and (ii) assumption of the Assumed Liabilities (other than the Assumed Debt).

c.    Earnest Money Deposit.  Each Bid, must be accompanied by a cash deposit in the amount equal to ten (10%) percent of the aggregate value of the cash and non-cash consideration of the Bid (the "Earnest Money Deposit") to be deposited with an escrow agent selected by the Debtors (the "Escrow Agent"), *provided that, for the avoidance of doubt,* the Stalking Horse Bidder will not be required to provide an Earnest Money Deposit.

d.    Proof of Financial Ability to Perform.  The Bid must include written evidence that the Debtors conclude in their sole discretion demonstrates that the Bidder has the necessary financial ability to close the Alternate Transaction and to provide adequate assurance of future performance under all executory contracts and unexpired leases to be assumed and assigned in such Alternate Transaction (i.e., the Assumed Contracts).

e.    Identity.  Each Bid must fully disclose the identity of each person and entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder, including if such Bidder is an entity formed for the purpose of consummating the proposed Alternate Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' Advisors should contact regarding such Bid. Nothing herein shall preclude multiple Preliminary Interested Investors from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.  Each Bid must also fully disclose any past or present agreements with or connections to the Debtors or their non-debtor affiliates, the Stalking Horse Bidder, any other known prospective bidder or Competing

6

Qualified Bidder, any of the owners of the Debtors or their non-debtor affiliates, and/or any officer or director of the foregoing.

f.  <u>Authorization</u>.  Each Bid must contain written evidence acceptable to the Debtors in their sole discretion that the Bidder has obtained appropriate authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Alternate Transaction contemplated in such Bid.

g.  <u>Contingencies</u>.  A Bid will not be considered qualified for the Auction if it (i) contains any of the contingencies set forth above in sub-paragraph "a", or (ii) is conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties set forth in any definitive agreement entered into by the Debtors with a Successful Bidder at the Closing.

h.  <u>Irrevocable</u>.  A Bid must be irrevocable through the Auction, <u>provided</u>, <u>however</u>, that if such Bid is accepted as the Successful Bid or a Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

i.  <u>Adequate Assurance of Future Performance</u>.  To the extent applicable, each Bid must contain evidence that the Bidder has the ability to comply with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code (the "<u>Adequate Assurance Information</u>") with respect to the Assumed Contracts.  Such Adequate Assurance Information may include: (i) information about the Bidder's financial condition, such as federal tax returns for two (2) years, a current  financial statement, or bank account statements; (ii) information demonstrating (as determined by the Debtors in the reasonable exercise of their business judgment (in consultation with the Consultation Parties)) that the Bidder has the financial capacity to consummate the proposed Alternate Transaction; (iii) evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with  respect to the submission of its Bid; (iv) the identity and exact name of the Bidder (including any equity holder or other financial backer if the Bidder is an entity formed for the purpose of consummating the proposed Alternate Transaction; (v) such additional information regarding the Bidder as the Bidder may elect to include; and (vi) such other documentation that the Debtors may request.  By submitting a Bid, the Bidder(s) agree that the Debtors may disseminate their Adequate Assurance Information to affected landlords and contract counterparties in the event that the Debtors determine such Bid to be a Qualified Bid.

j.  <u>As-Is, Where-Is</u>. Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the assets prior to making its Bid; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents

and/or the asset(s) in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's mark-up of the Stalking Horse Bid Agreement.

k.    <u>Affirmative Statement</u>.  Each Bid shall be accompanied by an affirmative statement in which the Bidder explicitly agrees that: (i) it has and will continue to comply with these Bidding Procedures; (ii) the Bid it submits does not entitle such Bidder (and if it becomes a Competing Qualified Bidder) to any breakup fee, expense reimbursement, termination payment, or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under Bankruptcy Code section 503(b) related to bidding for the Purchased Assets.

l.    <u>Time Frame for Closing</u>. A Bid must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors after consultation with the Consultation Parties, which time frame shall include a closing by no later than **April __, 2023**.

m.    <u>Adherence to Bid Procedures</u>. By submitting a Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and after the conclusion of the Auction, if any, agrees not to submit a Bid, or seek to reopen the Auction.

n.    <u>Non-License Government Approvals</u>. Each Bid must include a description of all governmental, regulatory, or other approvals or consents that are required to close the proposed Alternate Transaction (other than any license related in any way to the operations of the Purchased Assets), together with evidence satisfactory to the Debtors, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals; provided, however, as set forth above in sub-paragraphs "a" and "g", a Bid will not be considered qualified for the Auction if, among other things, it contains any contingency described therein, including but not limited to, the need to obtain any license in any way related to the operations of the Purchased Assets.

o.    <u>Non-License Government Approvals Timeframe</u>. Each Bid must set forth an estimated timeframe for obtaining any required, governmental, regulatory or other approvals or consents for consummating any proposed Sale; provided, however, as set forth above in sub-paragraphs "a" and "g", a Bid will not be considered qualified for the Auction if, among other things, it contains any contingency described therein, including but not limited to, the need to obtain any license in any way related to the operations of the Purchased Assets.

11843540-13

p.      <u>Consent to Jurisdiction</u>. By submitting a Bid, each Bidder agrees and shall be deemed to have agreed, to submit to the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Debtors' qualification of bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Alternate Transaction documents, and the Closing, as applicable

q.      <u>Credit Bid</u>.  If a Bid, other than the Stalking Horse Bid Agreement, consists in whole or in part of a credit bid pursuant to section 363(k) of the Bankruptcy Code (a "<u>Credit Bid</u>"): (i) it contains evidence sufficient to the Debtors, after consultation with the Consultation Parties, to demonstrate that the secured claims subject to such Credit Bid are secured by unavoidable, properly perfected liens on the Purchased Assets subject to such Credit Bid; and (ii) it includes a cash purchase price sufficient to pay in full the sum of the following, (a) all amounts being paid in full in cash as part of the Purchase Price under the Stalking Horse Bid Agreement (excluding, for the avoidance of doubt, any Assumed Liabilities to be assumed by the Stalking Horse Bidder pursuant to the Stalking Horse Bid Agreement), *plus* (b) all obligations under the DIP Facility, *plus* (c) all obligations secured by senior or *pari passu* liens on the Purchased Assets (e.g., the Loan Debt) to be purchased pursuant to such Credit Bid, *plus* (d) the Expense Reimbursement (in addition to the requirements set forth in (b) above).  The Stalking Horse Bid Agreement is, in part, a Credit Bid, notwithstanding any earlier Bids.  Further, any Credit Bid, including the Stalking Horse Bid, shall be permitted to increase its Credit Bid up to the full amount of its applicable secured obligations.

r.      <u>Transition Services</u>. Each bid must state or otherwise estimate the types of transition services, if any, the prospective bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the prospective bidder's bid were selected as the Successful Bid for the applicable Purchased Assets.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures, including but not limited to, refraining from, after the conclusion of the Auction, either submitting a Bid or seeking to reopen the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Purchased Assets (or assets) as reflected in such Bid**.

## III.    **Designation of Competing Qualified Bidders**

The Debtors will review each Bid received from a Bidder.  A Bid will be considered a "<u>Competing Qualified Bid</u>," and each Bidder that submits a Competing Qualified Bid will be considered a "<u>Competing Qualified Bidder</u>," if the Debtors determine, in their sole discretion and in the reasonable exercise of their business judgment (in consultation with the Consultation Parties), that such Bid was received before the Bid Deadline and satisfies each of the Bid Requirements set forth above.

Notwithstanding anything herein to the contrary, the Stalking Horse Bid Agreement submitted by the Stalking Horse Bidder shall be deemed a Competing Qualified Bid, and the Stalking Horse Bidder is a Competing Qualified Bidder for each phase of the Auction.

No later than three (3) business days after the receipt of a Bid, the Debtors will notify the relevant Bidder whether or not its Bid has been designated as a Competing Qualified Bid.

Upon the receipt of any competing Bid(s), the Debtors shall immediately provide counsel for the Stalking Horse Bidder copies of any blackline of the Stalking Horse Bid Agreement received by the Debtors from such Bidder(s).

If any Bid is determined by the Debtors not to be a Competing Qualified Bid, the Escrow Agent will refund such Bidder's Earnest Money Deposit on the date that is three (3) business days after the Debtors inform the Bidder that its Bid is not a Competing Qualified Bid, or as soon as is reasonably practicable thereafter.

Between the date that the Debtors notify a Bidder that it is a Competing Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Competing Qualified Bid from a Competing Qualified Bidder. Without the prior written consent of the Debtors, a Competing Qualified Bidder may not modify, amend, or withdraw its Competing Qualified Bid, except for proposed amendments to increase the purchase price, or otherwise improve the terms of, the Competing Qualified Bid, during the period that such Competing Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Competing Qualified Bid may be improved at the Auction as set forth herein. Any improved Competing Qualified Bid must continue to comply with the requirements for Competing Qualified Bids set forth in these Bidding Procedures.

## IV.    **Right to Credit Bid**.

Subject to the other requirements in these Bidding Procedures, and in connection with the Sale of the Purchased Assets, secured credit parties, which hold perfected security interests in the Purchased Assets, may seek to submit Credit Bids for such Purchased Assets. The Stalking Horse Bid Agreement is, in part, a Credit Bid. Subject to a Bid and Competing Qualified Bid satisfying the requirements of these Bidding Procedures, the Debtors shall treat comparable Credit Bids and cash bids as equivalent and no Credit Bids shall be considered inferior to a cash bid merely because it is a Credit Bid.

Notwithstanding anything to the contrary contained herein, but subject in all respects to the challenge period as set forth in any Interim DIP Order or Final DIP Order, the Administrative Agent for the Prepetition Lenders and/or the Administrative Agent for the DIP Lenders shall have the right to Credit Bid all or any portion of the aggregate amount of their respective applicable outstanding secured obligations to the maximum extent permitted by section 363(k) of the Bankruptcy Code, notwithstanding any earlier or lower Credit Bid of any portion of their respective applicable outstanding secured obligations.

10

V.    **The Auction**.

If one or more Competing Qualified Bids (other than the Stalking Horse Bid Agreement submitted by the Stalking Horse Bidder) are received by the Bid Deadline, the Debtors will conduct an auction (the "Auction") to determine the highest or otherwise best Competing Qualified Bid. If no Competing Qualified Bid (other than the Stalking Horse Bid Agreement) is received by the Bid Deadline, no Auction shall be conducted and the Stalking Horse Bid Agreement shall be deemed to be the Successful Bid and the Stalking Horse Bidder shall be deemed to be the Successful Bidder.  Only Competing Qualified Bidders (including, but not limited to the Stalking Horse Bid) may participate in the Auction.

No later than **March __, 2023 at 5:00 p.m. (prevailing Eastern Time)**, the Debtors will notify all Competing Qualified Bidders of the highest or otherwise best pre-Auction, Competing Qualified Bid, as determined by the Debtors in the reasonable exercise of their business judgment, in consultation with the Consultation Parties (the "Auction Baseline Bid"), and will provide copies of the documents supporting the Auction Baseline Bid to all Competing Qualified Bidders.

The determination of which Competing Qualified Bid constitutes the Auction Baseline Bid and which Competing Qualified Bid constitutes the Successful Bid (defined herein) shall take into account any factors that the Debtors deem in their sole discretion to be relevant to the value of the Competing Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Purchased Assets (or assets) sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Competing Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Auction Baseline Bid; (e) the tax consequences of such Competing Qualified Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; (h) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed, including the assumption of collective bargaining agreements; and (i) regulatory authorizations from any relevant government agency and all other applicable governmental entities relating to the services and products provided by or on behalf of the Debtors, including approvals, authorizations, certificates, registrations, licenses, exemptions, permits, clearances, and consents (collectively, the "Bid Assessment Criteria").

The Auction (if any) shall take place on **March __, 2023 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, or such other date and time and/or place or by electronic means (e.g., Zoom) as selected by the Debtors (in consultation with the Consultation Parties), and the Debtors shall notify all Competing Qualified Bidders, including the Stalking Horse Bidder, counsel for the Stalking Horse Bidder, and other invitees of the time and place of the Auction in accordance with these Bidding Procedures, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date.

The Auction shall be conducted according to the following procedures:

11

a.    The Debtors Shall Conduct the Auction.

The Debtors and their professionals, including but not limited to the Debtors' Advisors, shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall announce which Competing Qualified Bid is deemed to be the Auction Baseline Bid.

Only (i) the Debtors, (ii) the Stalking Horse Bidder, (iii) other Competing Qualified Bidders, (iv) the Consultation Parties, and (v) with respect to (i) through (iv), each of their respective representatives and legal and financial advisors, shall be entitled to attend the Auction, and the Competing Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.

b.    No Collusion; Good-Faith *Bona Fide* Offer.

Each Competing Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding or sale of the Purchased Assets, and (ii) its Competing Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed transaction for the Purchased Assets if selected as the Successful Bidder.

c.    Terms of Overbids.

An "Overbid" means any bid made at the Auction by a Competing Qualified Bidder subsequent to the Debtors' announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(i)    Minimum Overbid Increment.  Any Overbid following the Auction Baseline Bid shall be no less than the value of the $500,000.00, as determined by the Debtors in the reasonable exercise of their business judgment.  Additional consideration in excess of the amount set forth in an Auction Baseline Bid, including each Overbid, may include cash, credit bids and/or other noncash consideration, or any combination of the foregoing, as determined by the Debtors in the reasonable exercise of their business judgment.  For purposes of the Overbid, the Stalking Horse Bidder shall be entitled to a dollar for dollar credit in the amount of the Expense Reimbursement.

(ii)    Remaining terms are the same as for Competing Qualified Bids.  Except as modified herein, an Overbid must comply with the conditions for a Competing Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid or have a Backup Bidder (as defined below).  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Competing Qualified Bid or Overbid, as determined by the Debtors in the reasonable exercise of their

12

business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

      d.    <u>Consideration of Overbids</u>.

The Debtors reserve the right, in the reasonable exercise of their business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times, to, among other things, to (i) facilitate discussions between the Debtors and the Competing Qualified Bidders, (ii) allow Competing Qualified Bidders to consider how they wish to proceed, and (iii) provide Competing Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in the reasonable exercise of their business judgment, may require, that the relevant Competing Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed purchase of the Purchased Assets at the prevailing Overbid amount.

Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in the reasonable exercise of their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Auction Baseline Bid, or, (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>"). The Debtors shall describe to all Competing Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

      e.    <u>Backup Bidder</u>.

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Competing Qualified Bid at the Auction, as determined by the Debtors, in the reasonable exercise of their business judgment (in consultation with the Consultation Parties), will be designated as the backup bidder (the "<u>Backup Bidder</u>"). The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "<u>Backup Bid</u>") open and irrevocable until the earlier of 4:00 p.m. (prevailing Eastern Time) on the date that is the earlier of sixty (60) days after the conclusion of the Auction (the "<u>Outside Backup Date</u>") or the closing of the Alternate Transaction with the Successful Bidder. For the avoidance of doubt, the Debtors may not designate the Stalking Horse Bidder as a Backup Bidder without its express written consent.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, the Debtors may designate (in consultation with the Consultation Parties) the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder. A hearing to authorize a sale to the Backup

13

Bidder will be held by the Bankruptcy Court on no less than three (3) days' notice, with supplemental objections due at least two (2) days prior to such hearing (the "Backup Sale Hearing").  For the avoidance of doubt, only parties who timely filed an objection to the Sale by the Sale Objection Deadline may supplement their original objection with respect to the Backup Bidder and all such issues shall be limited to issues relating to the identity of the Backup Bidder. In such case, the defaulting Successful Bidder's Earnest Money Deposit shall be forfeited to the Debtors.  The Debtors also specifically reserve the right to seek all available damages from the defaulting Successful Bidder.  The Earnest Money Deposit of the Backup Bidder shall be held by the Debtors until the earlier of one (1) business day after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.

      f.      Additional and Modified Procedures.

The Debtors (in consultation with the Consultation Parties and the Stalking Horse Bidder) may announce at the Auction additional or modified rules and procedures that are reasonable under the circumstances (e.g., limitations on the amount of time to make subsequent Overbids, changes in minimum Overbid increments, etc.) for conducting the Auction so long as such rules are not inconsistent with the Bidding Procedures or the Stalking Horse Bid Agreement.

      g.      Consent to Jurisdiction as Condition to Bidding.

The Stalking Horse Bidder and all Competing Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection any disputes relating to these Bidding Procedures, the Auction, or the construction and enforcement of any documents relating to an Alternate Transaction.

      h.      Closing the Auction.

The Auction shall continue until the Debtors determine, in the reasonable exercise of their business judgment (in consultation with the Consultation Parties), that there is a highest or otherwise best Competing Qualified Bid or Competing Qualified Bids at the Auction for all or substantially all of the Purchased Assets (each a "Successful Bid" and each Bidder submitting such Successful Bid, a "Successful Bidder").  The Auction shall not close unless and until all Bidders who have submitted Competing Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbids and the Successful Bidder has submitted fully executed sale and transaction documents memorializing the terms of the Successful Bid. Within one (1) business day following the conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket in the lead case for the Debtors identifying the Successful Bidder for the Purchased Assets and any applicable Backup Bidders.  The Debtors shall not consider any Bids submitted after the conclusion of the Auction and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Competing Qualified Bid.

Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Auction Baseline Bid, all Overbids, all Prevailing Highest Bids, the Successful Bid and any Backup Bid.

## VI.    **Expense Reimbursement**.

The Stalking Horse Bidder is entitled to payment of the Expense Reimbursement pursuant to the terms of the Stalking Horse Bid Agreement; provided, however that the amount of the Expense Reimbursement that a Preliminary Interested Investor shall use solely for the purpose of the amount of the "Expense Reimbursement" referenced in the "Amount of Bid" set forth in paragraph II.b of these Bidding Procedures is set at $375,000.00; provided further, the Stalking Horse Bidder shall provide the Debtors and the U.S. Trustee with documentation supporting the payment of the Expense Reimbursement up to $500,000.00 five business days prior to the Sale Hearing; provided further, that the U.S. Trustee may only seek to challenge on the grounds of amounts sought for reimbursement over $375,000.00; provided further, that the Stalking Horse Bidder may only seek reimbursement of fees incurred in connection to the Stalking Horse Bid Agreement and the Sale Hearing.  Nothing herein precludes the right of the Stalking Horse Bidder to seek reimbursement in excess of $500,000.00 in establishing the reasonableness of the Expense Reimbursement (to the extent applicable), however it shall only be entitled to actual payment and reimbursement up to $500,000.00.

The Debtors recognize the value and benefits that the Stalking Horse Bidder has provided to the Debtors' estates by entering into the Stalking Horse Bid Agreement, as well as the Stalking Horse Bidder's expenditure of time, energy and resources.  Therefore, subject to the terms of the Stalking Horse Bid Agreement, the Debtors shall pay the Expense Reimbursement on the terms set forth in the Stalking Horse Bid Agreement and shall be paid to the Stalking Horse Bidder prior to the payment of the proceeds of such sale to any third party asserting a lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Expense Reimbursement.)

The Expense Reimbursement shall constitute an allowed administrative expense claim against the each of the Debtors pursuant to section 503(b) and 507 of the Bankruptcy Code (without the need to file a proof of claim).

Except for the Stalking Horse Bidder, no other party submitting an offer or Bid for the Purchased Assets or a Competing Qualifying Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

In the event no Competing Qualified Bid, other than the Stalking Horse Bid, is received, the Debtors reserve the right to request (in consultation with the Consultation Parties) that the Bankruptcy Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

The Sale Hearing may be adjourned or rescheduled from time to time.

## VII.    Sale Hearing.

Objections, if any, to the Sale and/or the sale of the Purchased Assets to the Successful Bidder and the transaction contemplated by the Stalking Horse Bid Agreement must be: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Procedure and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March __, 2023** (the "Sale Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

If no Auction is to be held, the Debtors will file a notice **no later than 3:00 p.m. (prevailing Eastern Time) on March __, 2023** with the Court in the lead case for the Debtors stating that there will be no Auction (the notice will be posted at the Court's website https://ecf.flsb.uscourts.gov/ which requires a court-issued login and passcode to access the notice).

The Debtors will seek a hearing (the "Sale Hearing") on **March __, 2023 at _____ a.m./p.m. (prevailing Eastern Time)**, at which the Debtors will seek approval of the transactions contemplated by the Stalking Horse Bid Agreement (or Alternate Transaction) with the Successful Bidder, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court.

**The Sale Hearing may be continued to a later date by the Debtors by either filing a notice with the Bankruptcy Court prior to, or making an announcement in open court at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

The approved Sale shall close not later than **April __, 2023**, unless the Debtors, with the consent of the Stalking Horse Bidder, agree to a later date.

## VIII.    Return of Earnest Money Deposit.

The Earnest Money Deposit for each Competing Qualified Bidder (i) shall be held by the Escrow Agent in one or more interest-bearing escrow accounts on terms acceptable to the Debtors

16

in their sole discretion, (ii) shall not become property of the Debtors' estates absent further order of the Bankruptcy Court, and (iii) shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) by the Escrow Agent on the date that is three (3) business days after the Sale Hearing, or as soon as is reasonably practicable thereafter.

The Earnest Money Deposits of any Competing Qualified Bidder shall be forfeited if any such Competing Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures and the Debtors are not in violation of these Bidding Procedures. The Debtors and their estates shall be entitled to retain the Competing Qualified Bidder's Earnest Money Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of the Competing Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid. In the event that a Competing Qualified Bidder's Earnest Money Deposit is deemed forfeited, such Competing Qualified Bidder's Earnest Money Deposit shall be released by the Escrow Agent by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after receipt of written notice to the Escrow Agent by an authorized office of the Debtors stating that the applicable Competing Qualified Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Qualified Bid.

The Earnest Money Deposit of the Backup Bidder shall be returned to the Backup Bidder by the Escrow Agent on the date that is the earlier of one (1) business day after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date. If the Successful Bidder timely closes its winning transaction, its Earnest Money Deposit shall be credited towards its purchase price.

Upon the return of the Earnest Money Deposit, the applicable Competing Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors and the Escrow Agent will not have any obligation to return the Earnest Money Deposit deposited by such Successful Bidder, which may be retained by the Debtors' estates as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed Alternate Transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## IX.    **Consultation Parties**.

Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith. The term "Consultation Parties" as used in these Bidding Procedures shall mean (a) the Administrative Agent for the DIP Lenders (and its advisors), (b) the Administrative Agent for the Prepetition Lenders (and its advisors), and (c) any statutory committee of unsecured creditors (and its advisors). During any period in which a Consultation Party or an affiliate thereof (i) has submitted a Qualified Bid and has become a Qualified Bidder hereunder, or (ii) submits (or indicates its intent to submit) a credit bid, such

17

Consultation Party shall no longer be considered a Consultation Party for purposes of these Bidding Procedures unless and until such party unequivocally revokes its Bid and waives its right to continue in the Auction process.

## X.    **Free and Clear Sale**.

Except as otherwise provided in the Stalking Horse Bid Agreement, the applicable purchase agreement of a different Successful Bidder, or the Sale Order, all of the Debtors' rights, title, and interests in the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Encumbrances") in accordance with section 363 of the Bankruptcy Code and any definitive agreement entered into by the Debtors with the Successful Bidder with respect to a Sale, with such Encumbrances to attach to the net proceeds (if any) of the sale of the Purchased Assets.

## XI.    **Fiduciary Duties**.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law.

## XII.    **Reservation of Rights**.

Except as otherwise provided in Stalking Horse Bid Agreement, or the Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine at any time, whether before, during or after the Auction, in the exercise of the Debtors' business judgment (in consultation with the Consultation Parties) to: (a) determine which Bidders are Competing Qualified Bidders; (b) determine which Bids are Competing Qualified Bids and reject any or all Bids or Competing Qualified Bids; (c) determine which Competing Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Stalking Horse Bidder; (f) modify these Bidding Procedures and/or implement additional procedural rules that the Debtors determine will better promote the goals of the bidding process, including but not limited to adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (g) extend the deadlines set forth in these Bidding Procedures; and (h) adjourn or cancel the Auction at the Auction and/or the Sale Hearing in open court without further notice or by filing a notice on the docket (in consultation with the Stalking Horse Bidder and the Consultation Parties).

11843540-13

## Schedule 1

## SUDs in the Stalking Horse Bid

| # | Debtor | Doing Business As (d/b/a) | Inpatient or Outpatient | Street Address | City | State | Zip Code |
|---|--------|--------------------------|-------------------------|----------------|------|-------|----------|
| 1 | Union Fresh Start, LLC | Serenity at Summit | Inpatient | 1000 Galloping Hill Road | Union | NJ | 07083 |
| 2 | Summit Behavioral Health Limited Liability Company | Summit Behavioral Health Princeton Junction | Outpatient | 4065 Quakerbridge Road Suite 102 | Princeton Junction | NJ | 08550 |
| 3 | SBH Haverhill, LLC | Serenity at Summit New England | Inpatient | 61 Brown Street | Haverhill | MA | 01830 |

19

## EXHIBIT "2"

### Bidding Procedures Key Dates

### Key Dates

| Event | Date |
|---|---|
| Hearing on the Motion for Bidding Procedures | February __, 2023 at ___ a.m./p.m. (prevailing Eastern Time) |
| Service of (i) Bidding Procedures Order, and (ii) Assumption Notice | Within three (3) business days after the Bankruptcy Court's entry of the Bidding Procedures Order. |
| Contract Objection Deadline | March __, 2023 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | March __, 2023 at 4:00 p.m. (prevailing Eastern Time) |
| Bid Deadline | March __, 2023 at 5:00 p.m. (prevailing Eastern Time) |
| Notice of No Auction to be Held (if applicable) | March __, 2023 at 3:00 p.m. (prevailing Eastern Time) |
| Notification of Auction Baseline Bid to all Competing Qualified Bidders | March __, 2023 at 5:00 p.m. (prevailing Eastern Time) |
| Auction | March __, 2023 at 10:00 a.m. (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date.  If an Auction is to be held, it shall take place at the offices of the Debtors' counsel, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131), and/or by electronic means (e.g., Zoom). |
| Debtors File Notice Identifying the Successful Bidder and any Backup Bidders | Within one (1) business days following the conclusion of the Auction. |
| Sale Hearing | March __, 2023 at ___ a.m./p.m. (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court. |
| Adequate Assurance Objection (in the event the Stalking Horse Bidder is not the Successful Bidder) | At or before the Sale Hearing. |
| Deadline to Close the Sale | April __, 2023, subject to the right of the Debtors, in the reasonable exercise of their business judgment and the consent of the Stalking Horse Bidder, to agree to a later date. |

# EXHIBIT "3"

**Notice of Sale of Certain Assets at Auction**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| DELPHI BEHAVIORAL HEALTH GROUP, LLC, *et al.*,[1] | Case No. 23-_____ |
| | (Jointly Administered) |
| Debtors. | |
| _____/ | |

## NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE THAT:

1. Pursuant to the *Order Granting Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. __] (the "Bidding Procedures Order")[2] entered by the United States Bankruptcy Court for the Southern District of Florida (the "Court") on February __, 2023, three of the above-captioned, affiliated, debtors and debtors-in-possession (each, a "Seller" and collectively, the "Sellers", and together with the remaining above-captioned, affiliated, debtors and debtors-in-possession, collectively, the "Debtors"), have entered into an *Asset Purchase Agreement* (the "Stalking Horse Bid Agreement") with Lender AcquisitionCo LLC (together with each of its permitted successors, assigns and

---

[1]   The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309. The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Undion IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

[2]   All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them, as applicable, in the Bidding Procedures Order, the Motion (as defined in the Bidding Procedures Order) or the Stalking Horse Bid Agreement (as defined in the Bidding Procedures Order).

11844825-13

designees, the "Stalking Horse Bidder") and Brightwood Loan Services LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Administrative Agent"), for the (the "Sale") of three of the Debtors' inpatient and outpatient substance use disorder treatment facilities (each, a "SUD" and collectively, the "SUDs") located in Massachusetts and New Jersey, identified on **Schedule 1** hereof, and all related assets (collectively, the "Purchased Assets"), subject to a competitive bidding process as set forth in the Bidding Procedures Order.

2.      Copies of (i) the Motion, (ii) the Stalking Horse Bid Agreement, (iii) the proposed Sale Order, (iv) the Bidding Procedures, and (v) the Bidding Procedures Order can be obtained by contacting the Debtors at either (i) the Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com), or (ii) *the bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com).

3.      All interested parties are invited to make an offer to purchase the Purchased Assets in accordance with the terms and conditions approved by the Court (the "Bidding Procedures") by **5:00 p.m. (prevailing Eastern Time) on March __, 2023**. Pursuant to the Bidding Procedures, the Debtors may conduct an Auction for the Purchased Assets (the "Auction") beginning at **10:00 a.m. (prevailing Eastern Time) on March __, 2023** at the offices of Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (or by other electronic means (e.g., Zoom)), or such later time or other place as the Debtors notify all Competing Qualified Bidders who have submitted Competing Qualified Bids, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date. Interested bidders are encouraged to read the Bidding Procedures carefully and, for further information, are invited to contact the bankruptcy counsel for the Debtors at Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com) and Robin J. Rubens, Esq. (rrubens@bergersingerman.com), or the Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com).

4.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.

5.      If no Auction is held, the Debtors will file a notice **no later than 3:00 p.m. (prevailing Eastern Time) on March __, 2023** with the Court in each of the Debtors' bankruptcy cases stating that there will be no Auction (the notice will be posted at the Court's website https://ecf.flsb.uscourts.gov/ which requires a court-issued login and passcode to access the notice). The Debtors will seek approval of the Sale of the Purchased Assets to the Stalking Horse Bidder at a hearing before the Court proposed to be held, in Courtroom ___, United States Courthouse, 299 East Broward Blvd., Ft. Lauderdale, Florida 33301, before the Honorable _____, United States Bankruptcy Judge, at **_____ (prevailing Eastern Time) on March __, 2023** (the "Sale Hearing"). The Sale Hearing may be adjourned without notice other than adjournment in open court or as identified on the agenda, and for the avoidance of any doubt,

the Sale Hearing is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court. Any party opposing the relief sought at the Sale Hearing must appear at the Sale Hearing or any objections or defenses may be deemed waived. You are reminded that Local Rule 5072-2 restricts the entry of cellular telephones, cameras, recording devices or other electronic devices (such as computers or MP3 players) into the Courthouse absent a specific order of authorization issued beforehand by the presiding judge, a valid Florida Bar identification card, or *pro hac vice* order. Please take notice that as an additional security measure a photo ID is required for entry into the Courthouse.

6.      **Objections, if any, to the proposed Sale and/or the sale of the Purchased Assets to the Successful Bidder and the transaction contemplated by the Stalking Horse Bid Agreement must be: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court <u>on or before 4:00 p.m. (prevailing Eastern Time) on March    , 2023 (the "Sale Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon</u>**: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (i) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

7.      This notice is qualified in its entirety by the Bidding Procedures Order.

Dated: February __, 2023
Miami, Florida

**BERGER SINGERMAN LLP**
*Counsel for the Debtors and*
*Debtors-in-Possession*
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:     <u>Christopher Andrew Jarvinen</u>
         Paul Steven Singerman
         Florida Bar No. 0378860
         singerman@bergersingerman.com
         Christopher Andrew Jarvinen
         Florida Bar No. 021745
         cjarvinen@bergersingerman.com

## Schedule 1

## SUDs in the Stalking Horse Bid

| # | Debtor | Doing Business As (d/b/a) | Inpatient or Outpatient | Street Address | City | State | Zip Code |
|---|--------|--------------------------|-------------------------|----------------|------|-------|----------|
| 1 | Union Fresh Start, LLC | Serenity at Summit | Inpatient | 1000 Galloping Hill Road | Union | NJ | 07083 |
| 2 | Summit Behavioral Health Limited Liability Company | Summit Behavioral Health Princeton Junction | Outpatient | 4065 Quakerbridge Road Suite 102 | Princeton Junction | NJ | 08550 |
| 3 | SBH Haverhill, LLC | Serenity at Summit New England | Inpatient | 61 Brown Street | Haverhill | MA | 01830 |

## EXHIBIT "4"

**Notice of Assumption and Cure Amount with Respect to Available Contracts**
**(i.e., Executory Contracts or Unexpired Lease Potentially to be Assumed and Assigned in**
**Connection with Sale of Debtors' Assets)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                      Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                                    Case No. 23-_____
GROUP, LLC, *et al.*,[3]
                                                           (Jointly Administered)
        Debtors.

_____/

**NOTICE OF ASSUMPTION AND CURE AMOUNT WITH RESPECT TO
EXECUTORY CONTRACTS OR UNEXPIRED LEASES POTENTIALLY TO BE
ASSUMED AND ASSIGNED IN CONNECTION WITH SALE OF DEBTORS' ASSETS**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO
AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR
MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

---

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the *Order Granting Debtors' Expedited Motion for Entry of an Order
(I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the
Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving
Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a
Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI)
Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit
Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not Purchased Assets Subject
to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. __] [ECF No.

---

[3]     The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of
        the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street
        Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough
        Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas
        Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery
        Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi
        Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC
        (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland
        House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze
        Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735),
        (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii)
        Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Undion IOP, LLC (4139), (xxx) Summit at
        Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762),
        (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

__ ] (the "Bidding Procedures Order")[4] entered by the United States Bankruptcy Court for the Southern District of Florida (the "Court") on February __, 2023, three of the above-captioned, affiliated, debtors and debtors-in-possession (each, a "Seller" and collectively, the "Sellers", and together with the remaining affiliated, debtors and debtors-in-possession, collectively, the "Debtors"), have entered into an *Asset Purchase Agreement* (the "Stalking Horse Bid Agreement") with Lender AcquisitionCo LLC (together with each of its permitted successors, assigns and designees, the "Stalking Horse Bidder") and Brightwood Loan Services LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Administrative Agent"), for the (the "Sale") of three of the Debtors' inpatient and outpatient substance use disorder treatment facilities (each, a "SUD" and collectively, the "SUDs") located in Massachusetts and New Jersey, identified on **Schedule 1** hereof, and all related assets (collectively, the "Purchased Assets"), subject to a competitive bidding process as set forth in the Bidding Procedures Order.

2.      Copies of (i) the Motion, (ii) the Stalking Horse Bid Agreement, (iii) the proposed Sale Order, (iv) the Bidding Procedures, and (v) the Bidding Procedures Order can be obtained by contacting the Debtors at either (i) the Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com), or (ii) *the bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com).

3.      The Debtors hereby provide notice of their intent to potentially assume and assign the prepetition executory contracts or unexpired leases (collectively, the "Available Contracts") listed on **Exhibit "A"** hereto to the Stalking Horse Bidder or the Successful Bidder, as the case may be.  The inclusion of any executory contract or unexpired lease on **Exhibit "A"** hereto does not require or guarantee that such executory contract or unexpired lease will be assumed or assigned (i.e., be an Assumed Contract under the Stalking Horse Bid Agreement), or that said contact or lease is executory, and all rights of the Debtors with respect thereto are reserved.

4.      Pursuant to the terms of the Stalking Horse Bid Agreement (or any asset sale and purchase agreement that the Debtors may enter into with the Successful Bidder), the Debtors may seek to assume and assign one or more of the Available Contracts to the Stalking Horse Bidder or the Successful Bidder, as the case may be, subject to approval at the hearing proposed to be held at _____ **a.m./p.m. (prevailing Eastern Time) on March __, 2023** (the "Sale Hearing") before the Court.  On the date of the closing of the transactions contemplated by the Stalking Horse Bid Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, the Debtors will pay the amount the Debtors' records reflect is owing for prepetition arrearages, if any, as set forth on **Exhibit A** hereto (the "Cure Amount").  The Debtors' records reflect that all post-petition amounts owing under the Available Contracts have been paid and will continue to be paid until the assumption and assignment of the Available Contracts (i.e., if an Available Contract becomes

---

[4]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them, as applicable, in the Bidding Procedures Order, the Motion (as defined in the Bidding Procedures Order) or the Stalking Horse Bid Agreement (as defined in the Bidding Procedures Order).

an Assumed Contract) and that, other than the Cure Amount, there are no other defaults under the Assumed Contracts.

5.     **Objections, if any, to the Cure Amount or to the assumption and assignment of an Available Contract to the Stalking Horse Bidder or a different Successful Bidder, including with respect to adequate assurance of future performance of the Stalking Horse Bidder or a different Successful Bidder (collectively, a "Contract Objection"), must: (a) be in writing; (b) state the basis of such objection with specificity, including, if applicable, the Cure Amount asserted to be required; (c) include appropriate documentation thereof; (d) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (e) be filed with the Court on or before 4:00 p.m. (prevailing Eastern Time) on March     , 2023 (the "Contract Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon**: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

6.     **Objections, if any, related solely to the adequate assurance of future performance provided by the Successful Bidder, if the Successful Bidder is not the Stalking Horse Bidder, must be made prior to or at the Sale Hearing.**

7.     If an objection to the assumption and assignment of an Available Contract is timely submitted in accordance with paragraphs 5 and 6 hereof, a hearing with respect to the objection will be held before the Court at the Sale Hearing, or as may be continued by the Debtors and noticed on the agenda filed on the docket, or such date and time as the Court may schedule. If no objection is timely received, the Non-Debtor Counterparty to the Available Contract will be deemed to have consented to the assumption and assignment of the Available Contract with the Cure Amount set forth herein and the Non-Debtor Counterparty will forever will be barred from asserting any other claims, including but not limited to the propriety or effectiveness of the assumption and assignment of the Available Contract, against the Debtors, the Stalking Horse Bidder, the Successful Bidder or the property of any of them in respect of the Available Contract.

8.     Pursuant to Bankruptcy Code section 365, there is adequate assurance of future performance that the Cure Amount set forth in the Assumption Notice will be paid in accordance with the terms of the Stalking Horse Bid Agreement and the Sale Order. There is adequate assurance of the Stalking Horse Bidder's future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Stalking Horse Bidder. If necessary, the Debtors will adduce facts at the hearing on any objection

demonstrating the financial wherewithal of the Successful Bidder, and its willingness and ability to perform under the Available Contracts to be assumed and assigned to it (i.e., the Assumed Contracts).

9.       If an objection to the Cure Amount is timely filed and received and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365, if any, with respect to such objection will be determined at a hearing to be requested by the Debtors.  At the Stalking Horse Bidder's or the Successful Bidder's discretion, and provided the Debtors escrow the disputed portion of the Cure Amount, the hearing regarding the Cure Amount may be continued until after the Closing Date and the Available Contract(s) subjected to such Cure Amount shall, with the consent of the Stalking Horse Bidder or the Successful Bidder, be assumed and assigned to the Stalking Horse Bidder or the Successful Bidder at or following the closing of the Sale per the procedures set forth in Section 2.5 of the Stalking Horse Bid Agreement and the Sale Order.

10.       **If no objection is timely received, the Cure Amount set forth in Exhibit "A" hereto will be controlling, notwithstanding anything to the contrary in any Available Contract or any other related document, and the Non-Debtor Counterparty to the Available Contract will be deemed to have consented to the Cure Amount for the purposes of the Sale and will be forever barred from asserting any other claims in respect of such Available Contract or the Cure Amount against the Debtors, the Stalking Horse Bidder, or the Successful Bidder (as appropriate), or the property of any of them.  The failure of any objecting person or entity to timely file its objection will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Sale or the Debtors' consummation of and performance under the Stalking Horse Bid Agreement (including the transfer of the Purchased Assets and the Assumed Contracts free and clear of all claims, liens, encumbrances, and interests), if authorized by the Court**.

11.       **Unless a Non-Debtor Counterparty to any Available Contract files a timely Contract Objection to the assumption and assignment of the applicable Available Contract by the Stalking Horse Bidder or the other Successful Bidder, then such Non-Debtor Counterparty shall be deemed to have (i) consented to the assumption and assignment of the applicable Available Contract to the Stalking Horse Bidder or the other Successful Bidder with the Cure Amount set forth in the Assumption Notice and (ii) waived and released any and all other rights to object to the Cure Amount or the assumption and assignment of the Available Contract to the Stalking Horse Bidder or the other Successful Bidder.**

[This section intentionally left blank]

12.     Prior to the date of the closing of the Sale, the Debtors may amend their decision with respect to the assumption and assignment of any Available Contract, including amending the Cure Amount, and provide a new notice amending the information provided in this notice, including, without limitation, a determination not to assume certain contracts.

Dated: February __, 2023
Miami, Florida

**BERGER SINGERMAN LLP**
*Counsel for the Debtors and*
*Debtors-in-Possession*
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:     Christopher Andrew Jarvinen
        Paul Steven Singerman
        Florida Bar No. 0378860
        singerman@bergersingerman.com
        Christopher Andrew Jarvinen
        Florida Bar No. 021745
        cjarvinen@bergersingerman.com

## Schedule 1

## SUDs in the Stalking Horse Bid

| # | Debtor | Doing Business As (d/b/a) | Inpatient or Outpatient | Street Address | City | State | Zip Code |
|---|--------|--------------------------|-------------------------|----------------|------|-------|----------|
| 1 | Union Fresh Start, LLC | Serenity at Summit | Inpatient | 1000 Galloping Hill Road | Union | NJ | 07083 |
| 2 | Summit Behavioral Health Limited Liability Company | Summit Behavioral Health Princeton Junction | Outpatient | 4065 Quakerbridge Road Suite 102 | Princeton Junction | NJ | 08550 |
| 3 | SBH Haverhill, LLC | Serenity at Summit New England | Inpatient | 61 Brown Street | Haverhill | MA | 01830 |

11844825-13

**Exhibit "A"**

**Available Contracts and Cure Amounts**

**Exhibit "B"**

**Scheduling Order**

11780453-13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

DELPHI BEHAVIORAL HEALTH
GROUP, LLC, *et al.*,[1]

       Debtors.

_____/

Chapter 11 Cases

Case No. 23-_____

(Jointly Administered)

**ORDER SHORTENING NOTICE AND SCHEDULING HEARING ON
DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER**

---

[1]    The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

11845290-13

**(I) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO THE STALKING HORSE BID AGREEMENT WITH THE STALKING HORSE BIDDER, SUBJECT TO THE BIDDING PROCEDURES AND THE SALE HEARING, (II) APPROVING BIDDING PROCEDURES, (III) SCHEDULING THE BID DEADLINES AND THE AUCTION, (IV) SCHEDULING A HEARING TO CONSIDER THE TRANSACTION, (V) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (VI) APPROVING CONTRACT PROCEDURES, (VII) APPROVING A DEADLINE FOR INTERESTED PARTIES TO SUBMIT BIDS TO PURCHASE ANY OF THE DEBTORS' REMAINING ASSETS WHICH ARE NOT PURCHASED ASSETS SUBJECT TO THE STALKING HORSE BID AGREEMENT, AND (VIII) GRANTING RELATED RELIEF**

**THIS MATTER** having come before the Court on February __, 2023 at _____ a.m./p.m. in Fort Lauderdale, Florida, upon the *ore tenus* motion (the "Motion") of the above-captioned, affiliated, debtors and debtors-in-possession to shorten notice and schedule a hearing on the *Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. __] (the "Bidding Procedures Motion");[2] and this Court having jurisdiction to consider the Motion and the relief requested by the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion, and the additional reasons in support of the request for shortened notice set forth in the Bidding Procedures Motion, and the

---

[2] Any capitalized term not explicitly defined herein shall have the meaning ascribed to it, as applicable, in (i) the Motion, (ii) Bidding Procedures Motion, (iii) the proposed Bidding Procedures, in substantially the form as attached as Exhibit "1" to the proposed Bidding Procedures Order, or (iv) the Stalking Horse Bid Agreement (as such term is defined in the Motion).

2

relief requested by the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue of the Debtors' Chapter 11 bankruptcy cases is proper before this Court pursuant to 28 U.S.C. § 1408; and it appearing that proper and adequate notice of the Motion has been given and that no other and further notice is necessary; and upon all of the proceedings had before this Court and after due deliberation thereon, all of which are incorporated herein by reference; and good and sufficient cause appearing therefore, it is

**ORDERED** that:

1.      The Motion is **GRANTED** as set forth herein.

2.      A hearing (the "Hearing") to consider the Bidding Procedures Motion will be held in Courtroom ___, United States Courthouse, 299 East Broward Blvd., Ft. Lauderdale, Florida 33301, before the Honorable _____, United States Bankruptcy Judge, at **_____ a.m./p.m. (prevailing Eastern Time) on February    , 2023**.  The Hearing may be adjourned without notice other than adjournment in open court or as identified on the agenda.

3.      Written objections, if any, to the relief requested in the Bidding Procedures Motion must be: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court **on or before 4:00 p.m. (prevailing Eastern Time) on February    , 2023** (the "Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq.

3

(rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and (4) *counsel to any statutory committee appointed in the Debtors' bankruptcy cases*.

4.      Any party opposing the relief sought in the Bidding Procedures Motion must appear at the Hearing or any objections or defenses may be deemed waived.  You are reminded that Local Rule 5072-2 restricts the entry of cellular telephones, cameras, recording devices or other electronic devices (such as computers or MP3 players) into the Courthouse absent a specific order of authorization issued beforehand by the presiding judge, a valid Florida Bar identification card, or *pro hac vice* order.  Please take notice that as an additional security measure a photo ID is required for entry into the Courthouse.  The formalities of the courtroom must be observed. All participants must dress appropriately, exercise civility, and otherwise conduct themselves in a manner consistent with the dignity of the Court.

#   #   #

Submitted by:

Christopher Andrew Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340
Email:  cjarvinen@bergersingerman.com

Copies furnished to:
Christopher Andrew Jarvinen, Esq.

*(Attorney Jarvinen is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

4

11845290-13