UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                                  Case No. 23-_____
GROUP, LLC, *et al.*,[1]
                                                         (Joint Administration Pending)

      Debtors.

_____/

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## AUTHORIZING AND APPROVING A KEY EMPLOYEE RETENTION PLAN
### (Expedited Hearing Requested)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by

and through their proposed undersigned counsel, pursuant to sections 105(a), 363(b), 503(b)(1)(A)

and 503(c)(3) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), file this

*Debtors' Motion for Entry of an Order Authorizing and Approving a Key Employee Retention Plan*

(this "Motion") seeking entry of an order (the "Order") authorizing the Debtors to establish and

implement a key employee retention plan (the "KERP") for certain non-officer, non-insider

employees (collectively, the "KERP Participants"), employed by Delphi Behavioral Health Group,

---

[1] The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309. The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

11770645-3

LLC ("DBHG") and granting administrative expense status to the retention payments paid thereunder.  In support of this Motion, the Debtors rely upon the *Declaration of Edward A. Phillips in Support of Debtors' Motion for Entry of an Order Authorizing and Approving a Key Employee Retention Plan* (the "Phillips Declaration"), attached hereto as **Exhibit "A"**.  In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 503(b)(1)(A), and 503(c)(3) of the Bankruptcy Code.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of Edward A. Phillips in Support of Chapter 11 Petitions and First Day Pleadings* (the First Day Declaration"),[2] which is incorporated herein by reference.

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to such terms in the First Day Declaration.

**RELIEF REQUESTED**

7.     By this Motion, the Debtors request entry of the Order, pursuant to sections 105(a), 363(b), 503(b)(1)(A), and 503(c)(3) of the Bankruptcy Code, approving and authorizing the implementation of the KERP to provide retention payments to the KERP Participants.

8.     In addition, the Debtors request that all amounts payable under the KERP be afforded administrative expense priority under sections 503(b)(1)(A) of the Bankruptcy Code for all purposes in the Chapter 11 Cases.

**THE KERP**

9.     Recognizing that employee morale and retention is critical to maximizing the value of the Debtors' estates, the Debtors undertook a deliberative process to design an effective and appropriate KERP intended to assist in retaining necessary, non-officer, non-insider employees comprising the accounting department of Delphi Behavioral Health Group, LLC, the corporate back-office for each of the Debtors, specifically including those Debtors which continue to operate substance abuse treatment facilities, until the Effective Date of a confirmed Chapter 11 plan. Collectively, the KERP Participants maintain valuable industry expertise and specific knowledge of the Debtors' business, specifically including all accounting-related functions, and are vital to the success of the Debtors' ability to operate and generate revenue through conclusion of the sale and confirmation processes. The Debtors believe that the KERP will help prevent significant and costly turnover of accounting personnel during the most critical parts of these Chapter 11 Cases, thus preserving value for the Debtors, their estates, and their stakeholders.

**A.     Terms of the KERP**

10.     The key terms of the KERP are as follows:

(a)     <u>Eligible Participants</u>:  The KERP Participants are comprised of eight (8) non-officer, non-insider employees in the Debtors' accounting department.

(b)   KERP Payments:  The KERP payments represent fixed cash amounts (each, a "KERP Payment") payable in three (3) lump sums based on the continued employment of the KERP Participant through the Effective Date of a confirmed chapter 11 plan. The aggregate amount of the KERP Payments for all KERP Participants is $65,350. Individual KERP Payments range from approximately $5,750 to $17,850 per KERP Participant, and average approximately $8,168.75 per KERP Participant.

(c)   Payment Dates:  Subject to the KERP Participants' continued employment on the applicable payment date (each date, the "KERP Retention Date"), the KERP Payments will be paid as follows:

    i.    upon entry of the Order, each KERP Participant shall be paid 33% of their aggregate KERP Payment (the "Initial KERP Payment");

    ii.    on March 31, 2023, each KERP Participant shall be paid 33% of their aggregate KERP Payment; and

    iii.    on the Effective Date of a plan of reorganization each KERP Participant shall be paid the remaining balance of their respective KERP Payment.

(d)   Termination of Employment for Without Cause:  In the event a KERP Participant's employment is terminated by Delphi Behavioral Health Group, LLC without cause or due to the KERP Participant's death/disability, then the KERP Participant shall be entitled to a pro-rata portion of his/her respective KERP Payment based on the number of days worked from the prior KERP Retention Date.

(e)   Termination of Employment for With Cause:  In the event a KERP Participant voluntarily resigns from employment or is terminated by Delphi Behavioral Health Group, LLC for cause, then the KERP Payment shall not be eligible for any portion of unpaid KERP Payment, and Delphi Behavioral Health Group, LLC shall maintain the right to recoup and claw back the Initial KERP Payment made upon entry of the Order from such KERP Participant.  Any unused funds allocated towards a KERP Participant who has voluntarily resigned or is terminated for cause by Delphi Behavioral Health Group, LLC may be allocated towards another KERP Participant absent further relief and in Delphi Behavioral Health Group, LLC's sole discretion, *provided that*, in no event shall the aggregate cost of the KERP exceed $65,350.

11.   The Debtors submit that the total proposed KERP of $65,350, with the highest proposed payout of $17,850 for the Controller, is exceedingly modest in scope, and is limited to eight (8) employees whose positions in DBHG's accounting department are critical to maintaining

operations through the process of selling substantially all of the Debtors' assets and confirming a Chapter 11 liquidating plan.

**B.     The KERP Participants**

12.     The KERP Participants are comprised of eight (8) non-officer personnel currently employed by DBHG. The Debtors and their advisors selected the KERP Participants based on their status as critical, non-insider, hard-to-replace employees who are not members of senior management.  No KERP Participant is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code.

13.     The KERP Participants comprise the accounting department and have developed valuable institutional knowledge regarding the Debtors' ongoing business operations.  Several have longstanding relationships with the Debtors' vendors and customers that would be difficult and expensive to replace.  Preserving this institutional knowledge and these relationships is crucial to the successful administration of the Debtors' operations over the coming months, the preservation of the value of the Debtors' estates, and, ultimately, the efficient administration of the Chapter 11 Cases.

**C.     Necessity and Development of the KERP**

14.     The Debtors seek to implement the KERP to motivate key personnel to remain employed with DBHG through the contemplated sale and confirmation processes. To date, due to ongoing wind-down process for facilities not being sold, there has been a significant reduction in the number of employees, resulting in a high degree of uncertainty among the Debtors' remaining employees regarding their job security, and consequently, impacting overall employee morale and productivity.  The Debtors are concerned that, absent authority to implement the KERP, some or all of the KERP Participants may similarly leave the employment of DBHG which has historically functioned as the decision-making center for all of the Debtors, most critically those operating

substance abuse treatment facilities. Each of the KERP Participants works out of the corporate headquarters in Fort Lauderdale and undertakes accounting functions for all of the Debtors.

15.     Additionally, in connection with the Chapter 11 Cases, KERP Participants have been called upon to undertake additional responsibilities, thus further impacting morale and potentially compromising employee retention.  For example: the KERP Participants have been called upon to spend substantial time responding to inquires and providing documents and information in the run-up to the filing of these Chapter 11 Cases, including compiling and analyzing financial data in order to comply with the Debtors' various reporting obligations under the Bankruptcy Code, as well as to analyze numerous of contracts and leases with, among others, vendors, and landlords to determine whether such contracts or leases should be assumed or rejected in the Chapter 11 Cases.

16.     The Debtors are concerned that, absent the implementation of an appropriate retention program, the Debtors may lose at least some of the KERP Participants, which would detrimentally impact recoveries for all parties-in-interest, including in connection with the contemplated sale, as well as the broader Chapter 11 restructuring.  Accordingly, the Debtors have determined that implementation of the KERP is necessary to motivate and retain the KERP Participants through the Effective Date of a Chapter 11 plan to ensure that the Debtors' anticipated business needs will be met during the most critical time of their Chapter 11 Cases.

## **AUTHORITY FOR RELIEF**

**A.     The KERP Does Not Provide for Payments to Insiders and Thus Should Not Be Governed by Bankruptcy Code Sections 503(c)(1) and 503(c)(2)**

17.     Section 503(c) of the Bankruptcy Code provides criteria for courts to use in approving certain types of payments to insiders and "other transfers of obligations that are outside of the ordinary course of business."  11 U.S.C. § 503(c).  Section 503(c)(1) contains a general

prohibition of retention plans for insiders of a debtor.  Section 503(c)(2) contains limitations on severance payments to insiders of a debtor.

18.    The Bankruptcy Code defines an "insider" to include, among other things, an "officer of the debtor" and a "person in control of the debtor."  11 U.S.C. § 101(31).  Courts have also concluded that an employee may be an "insider" if such employee has "at least a controlling interest in the debtor or . . . exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets."  *In re Velo Holdings, Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (citations omitted).  It is well-established that an employee's job title, alone, does not make such employee an "insider" as defined by the Bankruptcy Code.  *See In re Borders Grp. Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (noting that "[c]ompanies often give employees the title 'director' or 'director-level,' but do not give them decision-making authority akin to an executive" and concluding that certain "director level" employees in that case were not insiders).

19.    The KERP Participants do not constitute "insiders," as such term is defined in section 101(31) of the Bankruptcy Code.  *First*, none of the KERP Participants has discretionary control over any substantial budgetary amounts or the ability to dictate company policy.  *Second*, such employees must obtain approval from senior management before taking any action with respect to the disposition of significant assets.  *Third*, none of the KERP Participants is an officer or participates in the Debtors' corporate governance. *Fourth*, none of the KERP Participants had input on any aspect of the KERP or its ultimate formulation.[3]

---

[3]    In addition, none of the KERP Participants have any pre-existing connections with Getzler Henrich & Associates or the Debtors recently installed Interim Chief Executive Officer, Edward A. Phillips, a Managing Director at Getzler Henrich.

20.     Accordingly, neither section 503(c)(1) nor section 503(c)(2) of the Bankruptcy Code are applicable in evaluating the KERP because none of the KERP Participants are insiders, and payments to be made under the KERP do not constitute severance payments.

**B.      The KERP Satisfies the Requirements of Section 503(c)(3) of the Bankruptcy Code**

21.     Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Bankruptcy courts routinely hold that whether payments to employees are justified by the "facts and circumstances" of a case is to be determined by application of the business judgment rule. *See In re Velo Holdings, Inc.*, 472 B.R. at 209 ("[The] 'facts and circumstances' language of 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."); *In re Borders Grp. Inc.*, 453 B.R. at 473–74 (evaluating debtors' KERP under business judgment rule).

22.     Courts have generally utilized the six factors identified in *In re Dana Corp.* when determining if the structure of a compensation proposal and the process for its development meet the business judgment test. 358 B.R. 576-77 (Bankr. S.D.N.Y. 2006); *see, e.g.*, *In re Residential Capital, LLC*, 491 B.R. 73, 85-86 (Bankr. S.D.N.Y. 2013) (applying the *Dana* factors to the debtors' retention plan for non-insiders and approving the plan as an exercise of sound business judgment); *In re Borders Grp. Inc.*, 453 B.R. at 473-74 (same).

23.     In *In re Dana Corp.*, the court set forth the following six factors for evaluating whether a debtor has satisfied the "sound business judgment" test for purposes of the approval of a compensation plan under section 503(c)(3) of the Bankruptcy Code:

> (a)     Is there a reasonable relationship between the plan proposed and the results to be obtained, *i.e.*, will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

(b)     Is the cost of the plan reasonable in the context of the debtor's assets, liabilities, and earning potential?

(c)     Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

(d)     What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available?

(e)     Is the plan or proposal consistent with industry standards?

(f)     Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*In re Dana Corp.*, 358 B.R. at 576–77 (citations omitted).

24.     The Debtors submit that these factors are satisfied as to the KERP.

25.     *First*, the KERP is designed to retain a limited number of Delphi Behavioral Health Group, LLC's employees pending the Effective Date of a Chapter 11 plan. For example, the three-payment tiered structure incentivizes the KERP Participants to remain with Delphi Behavioral Health Group, LLC during the most critical aspects of the restructuring process, that is, a sale of substantially all of the Debtors' assets and confirmation of a liquidating Chapter 11 plan. And, notably, the last payment will be made at the conclusion of the retention period, that is, on the effective date of a Chapter 11 plan which will occur after the contemplated sales process has been concluded.

26.     *Second*, the costs of the KERP are reasonable given the Debtors' financial situation which led to these Chapter 11 filings. More specifically, the total KERP of $65,350 requested is 0.0012103% of 2022 gross revenue of approximately $53,994,940.

27.     *Third*, the scope of the KERP is fair and reasonable. In connection with the development of the KERP, the Debtors, together with their advisors, analyzed their workforce to determine which non-officer, non-insider employees are critical to the Debtors' operations and

reorganization process, and should therefore be included as KERP Participants. The Debtors selected the KERP Participants based on their status as critical, non-insider, hard-to-replace employees comprising the critical accounting department, none of whom is a member of senior management, and the KERP payment amounts were determined based upon the KERP Participants' salaries.

28.     *Fourth*, the Debtors recognize the critical need to make payments under the KERP. As described herein and in the Phillips Declaration, the Debtors have incurred significant employee turnover, which has directly impacted employee morale.  KERP Participants have also been called upon to undertake additional responsibilities in connection with the Chapter 11 Cases. Absent approval of the KERP, the Debtors may well incur employee attrition in the accounting department, negatively impacting the Debtors' ability to operate their business through the sale and confirmation process.

29.     *Fifth*, based upon my extensive experience in the restructuring industry, the KERP is consistent with industry standards for retention payments for companies in chapter 11.

30.     *Finally*, the KERP was formulated by the Debtors with input from their various professionals.

31.     For all these reasons, the Debtors submit that the KERP satisfies the requirements of section 503(c)(3) of the Bankruptcy Code.

**C.     Implementation of the KERP is a Sound Exercise of the Debtors' Business Judgment and Should Be Approved Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code**

32.     The Court may authorize the Debtors to implement the KERP under sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides, in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

33.     Section 363(b)(1) of the Bankruptcy Code provides that the debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The use, sale, or lease of property of the estate, outside the ordinary course of business, is authorized if the debtor demonstrates a "sound business purpose."  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."). Once a debtor articulates a valid business purpose for use of the property, a presumption arises that the debtor's decision is made on an informed basis, in good faith, and in the honest belief that the action is in the best interest of the estate and its constituents.  *See In re Integrated Res. Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (noting the business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.") (citations omitted); *In re Friedman's, Inc.*, 363 B.R. 891, 895 (Bankr. S.D. Ga. 2005) ("Courts should approve an exercise of a debtor's business judgment unless it is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.") (citations omitted).

34.     Furthermore, courts have approved much more substantial retention programs as valid exercises of a debtor's business judgment.  *See, e.g.*, *In re Vital Pharmaceuticals, Inc., et al.*, No. 22-17842-PDR (Bankr. S.D. Fla. Dec. 2, 2022) (approving proposed KERP comprised of payments totaling approximately $2.7 million to 151 employees as administrative expenses of the debtors' estates); *In re Liberty Power Holdings, LLC*, No. 21-13797-SMG (Bankr. S.D. Fla. June

16, 2021) (approving proposed KERP comprised of payments totaling up to $750,000 to 29 employees as administrative expenses of the debtors' estates); *In re 1 Global Capital LLC*, No. 18-19121-RBR (Bankr. S.D. Fla. Nov. 15, 2018) (approving proposed KERP comprised of payments totaling up to $199,900 to 30 remaining employees as administrative expenses of the debtors' estates, with a range from $3,200 to $15,000 with the average retention payment equaling $6,663); *see also In re Adinath Corp. and Simply Fashion Stores, Ltd*., No. 15- 16885-LMI (Bankr. S.D. Fla. June 8, 2015) (approving an employee incentive program "intended to retain the Plan Participants during the Debtors' liquidation process").

**D.     Obligations Made Under the KERP Should be Afforded Administrative Expense Priority Status Under Sections 503(b)(1)(A) and 502(a)(7) of the Bankruptcy Code**

35.     Under section 503(b)(1)(A) of the Bankruptcy Code, "actual, necessary costs and expenses of preserving the estate" may be allowed as administrative expenses of a debtor.  11 U.S.C. § 503(b)(1)(A).  Administrative expenses allowed under section 503(b) of the Bankruptcy Code are afforded priority status pursuant to section 507(a)(2) of the Bankruptcy Code.  11 U.S.C. § 507(a)(2).

36.     The retention payments to be paid pursuant to the KERP are intended to incentivize the KERP Participants to remain with DBHG through the Chapter 11 confirmation process and to compensate them for the risk of uncertain future employment.  The KERP Participants' continued employment will not only contribute to the preservation of estate assets but will also serve to improve creditor recoveries. The obligations to make the KERP payments should therefore be considered allowed administrative expenses and afforded priority status with respect to distributions from the estates.

## RESERVATION OF RIGHTS

37. Nothing contained herein is intended to limit or impair DBHG from seeking additional relief for authority to make additional retention payments to its employees.

**WHEREFORE**, the Debtors respectfully requests the entry of the Order in the form attached hereto as **Exhibit "B"**, (a) approving the KERP, and (b) granting the Debtors such other and further relief to which they are entitled.

Dated: February 6, 2023

Respectfully submitted,

BERGER SINGERMAN LLP
*Proposed Counsel for the Debtors and*
*Debtors-in-Possession*
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By: _/s/ Paul Steven Singerman_
Paul Steven Singerman
Florida Bar No. 378860
singerman@bergersingerman.com
Paul A. Avron
Florida Bar No. 50814
pavron@bergersingerman.com
Robin J. Rubens
Florida Bar No. 959413
rrubens@bergersingerman.com

# EXHIBIT "A"

## (Declaration of Edward A. Phillips)

11770645-3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                                  Case No. 23-_____
GROUP, LLC, *et al.*,[1]
                                                          (Joint Administration Pending)

        Debtors.

_____/

## DECLARATION OF EDWARD A. PHILLIPS, INTERIM CHIEF EXECUTIVE OFFICER, IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING A KEY EMPLOYEE RETENTION PLAN

        Under 28 U.S.C. § 1746, Edward A. Phillips hereby declares as follows under the penalty

of perjury:

        1.      I am the Interim Chief Executive Officer of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (collectively, the

"Chapter 11 Cases").  As such, I am familiar with the Debtors' day-to-day operations, businesses,

and financial affairs.

---

[1]  The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

11905263-2

2.      In addition to my current role with the Debtors, I am a Managing Director of Getzler Henrich & Associates, LLC ("GHA"). GHA and its professionals and employees have a wealth of experience in providing interim management services to distressed organizations, including those operating as chapter 11 debtors-in-possession. I am a Certified Turnaround Professional, Certified Insolvency and Restructuring Advisor, Certified Public Accountant (licensed in Pennsylvania) and a Certified Fraud Examiner.  I am a Managing Director at GHA and have over twenty-five (25) years of experience in finding solutions to problems in restructuring, insolvency, liquidation and forensic accounting matters. I have more than 30 years of experience counseling companies, secured creditors and unsecured creditors' committees through financial restructurings, and bankruptcy assignments in both out-of-court and in-court situations.  I have served more than 100 debtors, committees, trustees and other parties-in-interest, functioning for many as a chief restructuring strategist.

3.      Except as otherwise specified herein, all the facts set forth in this declaration (the "Declaration") are based upon my personal knowledge, my discussions with members of the Debtors' management team and the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

4.      I submit this Declaration in support of the relief requested in the *Debtors' Motion for Entry of an Order Authorizing and Approving a Key Employee Retention Plan* (the "Motion").[2]

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

**THE KERP**

5.      As set forth in the Motion, under my direction and control, the Debtors have identified eight (8) key employees (the "<u>KERP Participants</u>") who are critical to the continued operation of the Debtors' business and, importantly, the success of the Chapter 11 Cases.  The Debtors seek authority to implement the KERP and make the KERP Payments thereunder.

6.      The aggregate amount of the KERP Payments is $65,350, with individual KERP Payments ranging from approximately $5,750 to $17,850 per participant and averaging approximately $8,168.75.

7.      Subject to each KERP Participant's continued employment with the Debtors on the applicable payment date, the KERP Payments will be paid as follows:

    (a)     upon entry of the Order, KERP Participants shall be paid 33% of their individual aggregate KERP Payment;

    (b)     on March 31, 2023, KERP Participants shall be paid an additional 33% of their individual aggregate KERP Payment; and

    (c)     on the Effective Date of a plan of reorganization each KERP Participant shall be paid the remaining balance of their respective KERP Payment.

8.      The proposed KERP also provides that if a KERP Participant's employment is terminated by the Debtors without cause or due to the KERP Participant's death/disability, then the KERP Participant shall be entitled to a pro-rata portion of his/her respective KERP Payment based on the number of days worked from the prior KERP Retention Date.  In the event a KERP Participant resigns from his/her employment or is terminated by the Debtors for cause, then the KERP Participant shall not be eligible for any unpaid portion of his/her KERP Payment. Furthermore, in the event that a KERP Participant resigns from his/her employment or is terminated by the Debtors for cause, the Debtors shall maintain the right to recoup and claw back the initial KERP Payment made upon entry of the Order from such KERP Participant.  Finally,

3

any unused funds (e.g., payments earmarked for a particular KERP Participant who voluntarily resigns) may, after notice and consultation with the Committee, be allocated towards another KERP Participant absent further relief and in the Debtors' sole discretion, *provided that*, in no event shall the aggregate cost of the KERP exceed $65,350.

9.     The Debtors and their advisors, under my direction, worked diligently to narrowly tailor the KERP size and structure in line with the stated goals of the KERP of retaining and incentivizing the KERP Participants who make up the accounting department of DBHG.  As such, I believe the proposed KERP is well within the range of reasonableness for comparable retention plans, including that to which I was pointed to by counsel, in *In re 1 Global Capital LLC*, No. 18-19121-RBR (Bankr. S.D. Fla. Nov. 15, 2018) (approving proposed KERP comprised of payments totaling up to $199,900 to 30 remaining employees as administrative expenses of the debtors' estates, with a range from $3,200 to $15,000 with the average retention payment equaling $6,663). The total KERP of $65,350 requested is 0.0012103% of 2022 gross revenue of approximately $53,994,940.

## THE KERP PARTICIPANTS

10.     The KERP Participants comprise the accounting department and have developed valuable institutional knowledge regarding the Debtors' ongoing business operations.  Several have longstanding relationships with the Debtors' vendors and customers that would be difficult and expensive to replace. Several have longstanding relationships with the Debtors' vendors and customers that would be difficult and expensive to replace. I believe that preserving this institutional knowledge and these relationships is crucial to the successful administration of the Debtors' operations over the coming months, the preservation of the value of the Debtors' estates, and, ultimately, the efficient administration of the Chapter 11 Cases.

4

11.     It is my understanding that none of the KERP Participants is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code.  *First*, none of the KERP Participants has discretionary control over any substantial budgetary amounts or the ability to dictate company policy.  *Second*, although certain of the KERP Participants hold a title of "manager" or "director," such employees must obtain approval from senior management before taking any action with respect to the disposition of significant assets.  *Third*, none of the KERP Participants is an officer, member of the Debtors' board of directors, or participates in the Debtors' corporate governance.  *Finally*, none of the KERP Participants had any input on any aspect of the KERP or its ultimate formulation.  In addition, it is my understanding that none of the KERP Participants have any pre-existing connections with Getzler Henrich & Associates, my employer, or myself.

## THE NEED FOR THE KERP

12.     The Debtors seek to implement the KERP to motivate the KERP Participants to remain employees with DBGH through the sale and confirmation process.

13.     The Debtors seek to implement the KERP to motivate key personnel to remain employed with Delphi Behavioral Health Group, LLC in its accounting department through the contemplated sale and confirmation process. To date, due to ongoing wind-down process for facilities not being sold, there has been a significant reduction in the number of employees, resulting in a high degree of uncertainty among the Debtors' remaining employees regarding their job security, and consequently, impacting overall employee morale and productivity.  The Debtors are concerned that, absent authority to implement the KERP, the KERP Participants may similarly leave the employment of Delphi Behavioral Health Group, LLC which has historically functioned as the decision-making center for the Debtors. Each of the KERP Participants works out of the corporate headquarters in Fort Lauderdale and undertake accounting functions for all of the Debtors.

5

14.     Additionally, in connection with the Chapter 11 Cases, KERP Participants have been called upon to undertake additional responsibilities, thus further impacting morale and potentially compromising employee retention. These additional duties have impacted KERP Participants across nearly all departments.  For example: the KERP Participants have been called upon to spend substantial time responding to inquires and providing documents and information in the run-up to the filing of these Chapter 11 Cases, including compiling and analyzing financial data in order to comply with the Debtors' various reporting obligations under the Bankruptcy Code, as well as to analyze numerous of contracts and leases with, among others, vendors, and landlords to determine whether such contracts or leases should be assumed or rejected in the Chapter 11 Cases.

15.     Thus, the workloads of all KERP Participants have been directly impacted by these Chapter 11 Cases.

16.     I am concerned that, absent the implementation of an appropriate retention program, the Debtors will lose at least some of the KERP Participants, which would detrimentally impact the Debtors' reorganization efforts, including in connection with the contemplated sale process.  Accordingly, the Debtors have determined that implementation of the KERP is necessary to motivate and retain the KERP Participants through the Effective Date of a Chapter 11 plan to ensure that the Debtors' anticipated business needs will be met during the most critical time of their Chapter 11 Cases. In sum, I believe the KERP (a) will motivate and retain the KERP Participants throughout the sale and confirmation processes, (b) is modest and limited in scope, and (c) helps ensure that the Debtors' anticipated business needs will be met during the sale and confirmation process, preserving value for all stakeholders.

## **CONCLUSION**

17.     Based on the foregoing, my experience, and the terms and provisions of the KERP, I believe that the KERP is reasonable, appropriately designed, and narrowly tailored to incentivize the KERP Participants for the benefit of the Debtors, their stakeholders, and the successful administration of these Chapter 11 Cases.

Dated:  February 6, 2023     Respectfully submitted,

DELPHI BEHAVIORAL HEALTH GROUP, LLC,
*et al.*, Debtors
1901 West Cypress Creek Road
Suite 500
Fort Lauderdale, FL 33309

By:     */s/ Edward A. Phillips*
        Edward A. Phillips
        Interim Chief Executive Officer

11905263-2

# EXHIBIT "B"

## (Proposed Order)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                        Case No. 23-_____
GROUP, LLC, *et al.*,[1]

                                                (Joint Administration Pending)

          Debtors.
_____/

## ORDER GRANTING DEBTORS' MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING AND APPROVING A KEY EMPLOYEE RETENTION PLAN

---

[1]   The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

11770645-3

**THIS MATTER** came before this Court on February ___, 2023, at _____ _.m. in Fort Lauderdale, Florida, upon the *Debtors' Motion for Entry of an Order Authorizing and Approving a Key Employee Retention Plan* [ECF No. ____] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors").  The Motion seeks entry of an order (this "Order") (a) approving and authorizing the implementation of the Debtors' proposed retention plan for certain non-insider employees (the "KERP"), and (b) granting administrative expense status to retention payments made thereunder.  The Court finds that (a) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (c) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (d) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (e) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (f) upon review of the record before the Court, including the legal and factual bases set forth in the Motion, the Phillips Declaration, and the First Day Declaration and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion.  Accordingly, it is

**ORDERED** as follows:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Debtors' proposed KERP is **APPROVED**.

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

3.      Delphi Behavioral Health Group, LLC is authorized to (a) adopt and implement the KERP; (b) make payments consistent with the KERP in accordance with the terms of the KERP; and (c) take such other actions as may be necessary to implement the KERP.

4.      Retention payments to be paid pursuant to the KERP shall be allowed as administrative expenses of the Debtors' estates under section 503(b) and 507(a)(2) of the Bankruptcy Code for all purposes in the Chapter 11 Cases and in any other cases under the Bankruptcy Code in the event the Chapter 11 Cases are converted.

5.      Neither this Order nor any performance by the Debtors authorized hereunder shall be deemed an assumption of any executory contract or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract.

6.      Nothing contained in this Order or the Motion is intended to limit or impair the Debtors from seeking additional relief for authority to make additional retention payments to the Debtors' employees.

7.      The KERP Payments shall be in compliance with any interim or final order entered by the Court approving the Debtors' entry into any post-petition debtor in possession financing facility.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # #

Submitted by:
Paul Steven Singerman, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  singerman@bergersingerman.com

*(Attorney Singerman is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11770645-3