

**ORDERED in the Southern District of Florida on March 7, 2023.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| DELPHI BEHAVIORAL HEALTH GROUP, LLC, *et al.*,[1] | Case No. 23-10945-PDR |
| | (Jointly Administered) |
| Debtors. | |

_____/

**ORDER GRANTING
DEBTORS' EXPEDITED MOTION FOR ENTRY OF AN ORDER**

---

[1]    The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

11844825-15

**(I) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO
THE STALKING HORSE BID AGREEMENT WITH THE STALKING HORSE
BIDDER, SUBJECT TO THE BIDDING PROCEDURES AND THE SALE
HEARING, (II) APPROVING BIDDING PROCEDURES, (III) SCHEDULING
THE BID DEADLINES AND THE AUCTION, (IV) SCHEDULING A HEARING
TO CONSIDER THE TRANSACTION, (V) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, (VI) APPROVING CONTRACT PROCEDURES,
(VII) APPROVING A DEADLINE FOR INTERESTED PARTIES
TO SUBMIT BIDS TO PURCHASE ANY OF THE DEBTORS' REMAINING
ASSETS WHICH ARE NOT PURCHASED ASSETS SUBJECT TO THE
STALKING HORSE BID AGREEMENT, AND (VIII) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court on March 6, 2023 at 11:00 a.m. (the "Hearing")
upon the *Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the
Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to
the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling
the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V)
Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and
(VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors'
Remaining Assets Which Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement,
and (VIII) Granting Related Relief* [ECF No. 21] (the "Motion")[2] filed by the above-captioned,
affiliated, debtors and debtors-in-possession (collectively, the "Debtors"), by the authority granted
to the Debtors by chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The
Motion requests the entry of an order: (a) authorizing and approving the Debtors' entry into the
*Asset Purchase Agreement*, dated February 19, 2023 [ECF No. 111] (the "Stalking Horse Bid
Agreement"), subject to the Bidding Procedures attached hereto as **Exhibit "1"** (the "Bidding
Procedures") and the Sale Hearing; (b) approving the Bidding Procedures in connection with the

---

[2]    Any capitalized term not explicitly defined herein shall have the meaning ascribed to it, as applicable, in (i) the
Motion, (ii) the Bidding Procedures attached hereto as **Exhibit "1"**, or (iii) the Stalking Horse Bid Agreement (as
such term is defined in the Motion).

solicitation and acceptance of higher or otherwise better bids, with respect to the Sale of the Purchased Assets; (c) approving the Expense Reimbursement; (d) scheduling on shortened notice the bid deadlines and the Auction; (e) scheduling the Sale Hearing to approve the Sale, and setting objection deadlines with respect to the Sale; (f) approving the form and manner of notice of the Sale Notice and related Auction for the Purchased Assets; (g) establishing the Assumption and Assignment Procedures of the Assumed Contracts; and (h) approving the Other Assets Bid Deadline for interested parties to submit bids to purchase any of the Other Assets; and (i) granting related relief, all as more fully set forth in the Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having set this Hearing pursuant to the order dated February 10, 2023 [ECF No. 80] (the "Scheduling Order"); and this Court having considered the First Day Declaration of Edward A. Phillips [ECF No. 9], the Supplemental Declaration of Harvey Tepner [ECF No. 22], the *Debtors' Notice of Filing (I) Revised Stalking Horse Bid Agreement and (II) Sellers' Disclosure Schedules* [ECF No. 111] (the "Stalking Horse Bid Agreement/Schedules Notice"), the *Notice of Filing Proposed Key Dates* [ECF No. 168] and the *Debtors' Notice of Filing Schedule Supplement to Sellers' Disclosure Schedules* [ECF No.182], each in support of the relief sought by the Debtors in the Motion, and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and upon all of the proceedings had before this Court and

at the Hearing; and after due deliberation and sufficient cause appearing therefor, does for the reasons stated in the Motion and on the record of the Hearing, all of which are incorporated herein:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction over the Motion and the transactions contemplated by the Stalking Horse Bid Agreement pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases for the relief requested in the Motion are: (i) sections 105, 363, 365, 503 and 507 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002, 6003, 6004, 6006, 9006, 9007 and 9014; and (iii) rules 2002-1(C)(2) and 6004-1 of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules").

D.     Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required except as set forth herein with respect to the hearing to be conducted to approve the transactions contemplated by the Stalking Horse Bid Agreement (the "Sale Hearing").  A

4

reasonable and fair opportunity to object or be heard regarding the Motion and the relief provided in this Order have been afforded to parties in interest under the circumstances.

E.    The Debtors' proposed notice of the Bidding Procedures, the Auction and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Debtors' assets subject to the Stalking Horse Bid Agreement (the "Purchased Assets"), the auction for all of the Purchased Assets (the "Auction"), and the Bidding Procedures to be employed in connection therewith, and the Sale Hearing.

F.    The form and manner of service of the Sale Notice as proposed in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Bidding Procedures, and the Assumption and Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time and place of the Sale Hearings; (iv) reasonably specific identification of the Purchased Assets, including the sale of certain of the Debtors' or their estates' causes of actions; and (v) the representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims and encumbrances attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

G.    The Assumption Notice (as defined below) is appropriate and reasonably calculated to provide each non-debtor party to any Available Contracts (such parties, collectively, the "Non-Debtor Counterparties") with proper notice of the potential assumption and assignment of the applicable Available Contract, the proposed Cure Amount (as defined in the Motion), and the Assumption and Assignment Procedures.  The inclusion of any particular contract or lease on an

5

Assumption Notice shall not be deemed to be an admission that such contract or lease is an executory contract or unexpired lease of property or require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the Debtors with respect to the foregoing are reserved.

H.       The Debtors have demonstrated a compelling and sound business justification for the Court to grant the relief requested in the Motion, including, without limitation: (i) approval of the Bidding Procedures; (ii) setting the Sale Hearing and approving the manner of notice of the Motion and the Sale Hearing; (iii) approval of the Sale Notice and the Assumption Notice; (iv) approving the Assumption and Assignment Procedures set forth herein and in the Stalking Horse Bid Agreement, including the procedures set forth in the Stalking Horse Bid Agreement with respect to the Stalking Horse Bidder's rights to designate or change the character of such Assumed Contracts by the Determination Date; (v) approving the payment of the Expense Reimbursement on the terms set forth in the Stalking Horse Bid Agreement and in this Order; and (vi) all related relief as set forth herein.

I.       The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code.

J.       Under the circumstances, the Debtors' marketing process for the Purchased Assets has been reasonably calculated to maximize value for the benefit of all stakeholders.

K.       Under the circumstances, the Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value to be achieved for the Purchased Assets. The Bidding Procedures were negotiated by the parties at arms' length and in good faith by the Debtors and the Stalking Horse Bidder.

11844825-15

L.      The Debtors have demonstrated a compelling and sound business justification for the Court to approve the payment of the Expense Reimbursement on the terms set forth in the Stalking Horse Bid Agreement.  The Expense Reimbursement: (i) is payable as provided in Sections 7.1 and 9.2 of the Stalking Horse Bid Agreement; (ii) shall be granted allowed administrative expense status under sections 503(b) and 507 of the Bankruptcy Code and shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (iii) is of substantial benefit to the Debtors' estates; (iv) is reasonable and appropriate, including in light of the size and nature of the sale and the efforts that have been or will be expended by the Stalking Horse Bidder notwithstanding that the proposed sale is subject to higher or otherwise better offers for the Purchased Assets; (v) was negotiated by the parties at arm's length and in good faith; and (vi) is necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed acquisition of the Purchased Assets contemplated by the Stalking Horse Bid Agreement.  The Expense Reimbursement is a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the Stalking Horse Bid Agreement.

M.      The entry of this Order is in the best interests of the Debtors, their estates, creditors and other parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is **GRANTED** to the extent set forth herein.

2.      Except as explicitly provided in this Order, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled through language in this Order, and all reservations of rights included therein, are overruled and denied on the merits with prejudice.

11844825-15

**The Stalking Horse Bid Agreement**

3.        The Debtors are authorized to enter into the Stalking Horse Bid Agreement attached as Exhibit "A" to the Stalking Horse Bid Agreement/Schedules Notice, subject to higher or otherwise better offers received from Competing Qualified Bidders at the Auction, provided, that the rights of all parties to object to the Sale contemplated by the Stalking Horse Bid Agreement are expressly preserved. Delphi Lender AcquisitionCo LLC, together with its permitted successors, assigns and designees, is approved as the Stalking Horse Bidder for the Purchased Assets, pursuant to the terms of the Stalking Horse Bid Agreement and this Order.  The Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Bid Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order, without further order of the Court.

4.        The Expense Reimbursement is approved on the terms set forth in the Stalking Horse Bid Agreement; including the amount of the Expense Reimbursement that a Preliminary Interested Investor shall use solely for the purpose of the amount of the "Expense Reimbursement" referenced in the "Amount of Bid" set forth in paragraph II.b of the Bidding Procedures is set at $375,000.00; provided further, the Stalking Horse Bidder shall provide the Debtors and U.S. Trustee with documentation supporting the payment of the Expense Reimbursement up to $500,000.00 five business days prior to the Sale Hearing; provided further, that the U.S. Trustee may seek to challenge the Expense Reimbursement on the grounds of lack of sufficient supporting documentation and/or reasonableness; provided further, that the Stalking Horse Bidder may only seek reimbursement of fees incurred in connection to the Stalking Horse Bid Agreement and the Sale Hearing.  Nothing herein precludes the right of the Stalking Horse Bidder to seek reimbursement in excess of $500,000.00 in establishing the reasonableness of the Expense

8

Reimbursement (to the extent applicable), however it shall only be entitled to actual payment and reimbursement up to $500,000.00.  The Expense Reimbursement shall constitute an allowed administrative expense claim against each Debtors' bankruptcy estates under sections 503(b) and 507 of the Bankruptcy Code (without the need to file a proof of claim).  The obligation of the Debtors to pay  the Expense Reimbursement shall survive termination of the Stalking Horse Bid Agreement.

5.       Subject to the terms of the Stalking Horse Bid Agreement, the Debtors shall pay the Expense Reimbursement out of the proceeds of an Alternate Transaction to the Stalking Horse Bidder by wire transfer of immediately available funds to the account specified by the Stalking Horse Bidder to the Debtors in writing and shall be paid to the Stalking Horse Bidder prior to the payment of the proceeds of such sale to any third party asserting a lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Expense Reimbursement).  No further or additional order from this Court shall be required in order to give effect to such provisions relating to the terms of payment of the Expense Reimbursement and the Stalking Horse Bidder's professional advisors are not obligated to comply with any provisions of the Bankruptcy Code regarding Court approval of professional fees payable by the Debtors' estates and included in the Expense Reimbursement.

6.       The obligation of the Debtors' estates to pay the Expense Reimbursement, as provided by the Stalking Horse Bid Agreement and this Order, is hereby approved in all respects and shall survive termination of the Stalking Horse Bid Agreement and shall be payable out on the terms set forth in the Stalking Horse Bid Agreement.

**The Bidding Procedures**

7.       The Bidding Procedures, attached hereto as **Exhibit "1"**, are hereby approved in

11844825-15

their entirety, are incorporated herein by reference and shall govern the bids and proceedings related to the Sale and the Auction. The failure to recite or reference any particular provision of the Bidding Procedures in this Order shall not diminish the effectiveness of such provision, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

8.    The "Bidding Procedures Key Dates", attached hereto as **Exhibit "2"**, are hereby approved in their entirety.

9.    The Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures, in accordance therewith, the Stalking Horse Bid Agreement, and the timeline below.

10.    The Bid Deadline is **March 23, 2023 at 5:00 p.m. (prevailing Eastern Time)**.

11.    Subject to any applicable financing orders entered in the Debtors' bankruptcy cases, holders of claims secured by unavoidable, properly perfected liens on all or a portion of the Purchased Assets shall, pursuant to section 363(k) of the Bankruptcy Code, be permitted, but not compelled, to credit bid up to the full amount of their secured claims for any such Purchased Assets (such bid, a "Credit Bid"), including, the Prepetition Lenders and the DIP Lenders.

12.    A Credit Bid, other than the Stalking Horse Bid Agreement, must: (i) contain evidence sufficient to the Debtors, after consultation with the Consultation Parties, to demonstrate that the secured claims subject to such Credit Bid are secured by unavoidable, properly perfected liens on the Purchased Assets subject to such Credit Bid; and (ii) include a cash purchase price sufficient to pay in full the sum of the following: (a) all amounts being paid in full in cash as part of the Purchase Price under the Stalking Horse Bid Agreement (excluding, for the avoidance of doubt, any Assumed Liabilities to be assumed by the Stalking Horse Bidder pursuant to the

Stalking Horse Bid Agreement), *plus* (b) all obligations under the DIP Facility, *plus* (c) all obligations secured by senior or *pari passu* liens on the Purchased Assets (e.g., the Loan Debt) to be purchased pursuant to such Credit Bid, *plus* (d) the Expense Reimbursement (in addition to the other requirements in the Bidding Procedures).

13.     The Stalking Horse Bid Agreement is, in part, a Credit Bid, notwithstanding any earlier Bids.  Further, any Credit Bid, including the Stalking Horse Bid, shall be permitted to increase its Credit Bid up to the full amount of its applicable outstanding secured obligations.  For purposes of valuing Competing Qualified Bids and determining the Successful Bid, the full face amount of a Credit Bid satisfying the requirements set forth in the Bidding Procedures and this Order shall be deemed to have the same value as the equivalent amount of cash.  In the event the Purchased Assets are acquired in an Alternate Transaction, the Successful Bidder shall be responsible for the payment of the Expense Reimbursement per the terms of the Stalking Horse Bid Agreement and this Order.

14.     For the avoidance of doubt, each Competing Qualified Bid must be for all of the Purchased Assets and must include (i) cash consideration of not less than the sum of (a) the Purchase Price (including the amount of the Assumed Debt as of the Closing Date) *plus* (b) all amounts outstanding under the DIP Facility, *plus* (c) the Expense Reimbursement in the amount of $375,000.00, *plus* (d) an initial cash overbid of $500,000.00, and (ii) assumption of the Assumed Liabilities (other than the Assumed Debt).  The Debtors shall make the precise dollar amount of the cash portion of a Competing Qualified Bid available to any interested bidder upon request.

15.     If the Debtors receive more than one Competing Qualified Bid (as defined in the Bidding Procedures) by the Bid Deadline, an Auction shall take place on **March 27, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Berger Singerman LLP, located at 1450 Brickell

11844825-15

Avenue, Suite 1900, Miami, Florida 33131, or such other place and time, or by electronic means (e.g., Zoom), as the Debtors shall notify all Competing Qualified Bidders, including the Stalking Horse Bidder, counsel for the Stalking Horse Bidder and other invitees in accordance with the Bidding Procedures, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date. The Auction shall be conducted in accordance with the Bidding Procedures. Each Competing Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures, (c) has consented to the core jurisdiction of this Court, (d) intends to consummate the Sale transaction if selected as the Successful Bidder and (e) agrees to serve as a Backup Bidder if the Competing Qualified Bidder's Competing Qualified Bid is the next highest and best bid after the Successful Bid with respect to the Purchased Assets.

16. The Sale Hearing shall be held before this Court on **March 28, 2023 at 10:00 a.m. (prevailing Eastern Time)**. The Sale Hearing may be adjourned from time to time by the Debtors, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date in consultation with the Stalking Horse Bidder, subject to the availability of the Court. If there is no Auction, the Debtors will serve and file a notice with this Court not later than **March 26, 2023 at 3:00 p.m. (prevailing Eastern Time)** stating that there will be no Auction and the Debtors are moving forward with the Sale Hearing with the Stalking Horse Bidder, subject to the proviso in the immediately preceding sentence.

11844825-15

17.     Objections, if any, to the sale of the Purchased Assets and the Sale contemplated by the Stalking Horse Bid Agreement, or the relief requested in the Sale Motion must: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March 21, 2023** (the "Sale Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); and (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130.

### Sale Notice

18.     The sale notice, substantially in the form attached hereto as **Exhibit "3"** (the "Sale Notice"), is hereby approved and the Debtors are authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service or publication of the Sale Notice.

11844825-15

19.     On or before one (1) business day after the entry of this Order, the Debtors will file the Sale Notice with the Bankruptcy Court and shall serve the Sale Notice by first-class mail, to the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee for the Southern District of Florida; (c) counsel to the Stalking Horse Bidder; (d) counsel for the Administrative Agent for the DIP Lenders; (e) counsel for the Administrative Agent for the Prepetition Lenders; (f) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (g) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Purchased Assets, known to the Debtors that may reasonably have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or have any known interest in the relief requested by the Motion, which shall include the attorneys general for the states of California, Florida, Maryland, Massachusetts, and New Jersey; (h) the Non-Debtor Counterparties; and (i) all potential bidders previously identified or otherwise known to the Debtors.[3]

### Assumption & Assignment Procedures

20.     The proposed procedures related to the assumption and assignment of the Assumed Contracts (the "Assumption and Assignment Procedures"), and the payment by the Debtors of any related Cure Amounts, as set forth in the Stalking Horse Bid Agreement and the Motion, are approved.

---

[3]   With respect to serving all potential bidders previously identified or otherwise known to the Debtors, these are the investors who entered into non-disclosure agreements with the Debtors, and the Debtors are authorized to file under seal that part of the service list providing the names and email addresses for all such parties which will be served *via* email with the Sale Notice and this Order at the email address(es) maintained for each such investor by, respectively, either FTI or the Debtors.

21.     The notice, substantially in the form attached hereto as **Exhibit "4"** (the "Assumption Notice"), of potential assumption and assignment of certain of the Debtors' executory contracts and unexpired leases to be listed in the Assumption Notice (collectively, the "Available Contracts"), is hereby approved in its entirety.  The Debtors are authorized to make non-substantive or immaterial changes to the Assumption Notice to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service or publication of the Assumption Notice.  The Assumption and Assignment Procedures, including but not limited to, with respect to the Stalking Horse Bidder's rights to designate or change the Assumed Contracts by the date that is three (3) business days prior to the closing of the Sale, or such shorter period if consented to by the Non-Debtor Counterparty (the "Determination Date"), are approved.[4]

22.     On or before one (1) business day after the entry of this Order, the Debtors shall file the Assumption Notice with the Bankruptcy Court and shall serve the Assumption Notice via overnight mail on each Non-Debtor Counterparty to an Available Contract listed thereon.  In the event that the Debtors later identify any Non-Debtor Counterparty which was not served with the Assumption Notice, the Debtors may subsequently serve such Non-Debtor Counterparty with the Assumption Notice substantially in the form attached hereto as the Assumption Notice (each, a "Supplemental Assumption Notice"), and the Assumption and Assignment Procedures will nevertheless apply to such Non-Debtor Counterparty; provided, that the Contract Objection Deadline with respect to such Non-Debtor Counterparty listed on a Supplemental Assumption Notice shall be 4:00 p.m. (prevailing Eastern Time) on the date that is the later of the Contract Objection Deadline or fourteen (14) days following the date of service of a Supplemental

---

[4]     The Stalking Horse Bid Agreement provides, among other things, that the Stalking Horse Bidder has the right to elect to have the Debtors assume and assign to the Stalking Horse Bidder some or all of the Available Contracts and that the Debtors shall be responsible for payment of the Cure Amounts of the Assumed Contracts.

Assumption Notice (each, a "Supplemental Contract Objection Deadline"). Each Supplemental Assumption Notice shall (i) identify the relevant Available Contract(s), (ii) set forth a good faith estimate of the Cure Amount(s), (iii) include a statement that assumption and assignment of each such Available Contract is not required nor guaranteed, and (iv) inform such Non-Debtor Counterparty of the requirement to file any Contract Objection(s) by the Supplemental Contract Objection Deadline.

23.      Not later than one business day following the Determination Date, the Debtors shall file with the Bankruptcy Court an amended and restated Assumption Notice, which notice shall set forth only the Assumed Contracts (and exclude all other Available Contracts).

24.      Any objection to the Cure Amount or to the assumption and assignment of an Available Contract to the Stalking Horse Bidder, including with respect to adequate assurance of future performance of the Stalking Horse Bidder (collectively, a "Contract Objection"), must: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March 21, 2023** (the "Contract Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*,

16

King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); and (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130.

25.     Any Contract Objection must state the basis for such objection and state with specificity what Cure Amount the party to the Available Contract believes is required (in all cases with appropriate documentation in support thereof).  If no Contract Objection is timely received, the Cure Amount set forth in the Assumption Notice shall be controlling, notwithstanding anything to the contrary in the Available Contract or other related documents as of the date of the Assumption Notice.  The Assumption Notice shall also provide that the Contract Objection to any Cure Amount or assumption and assignment of an Available Contract will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors and the applicable counterparty in consultation with the Stalking Horse Bidder.  If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then in such case only the deadline to object to assumption and assignment (solely on the grounds of adequate assurance of future performance) of an Available Contract shall be the Sale Hearing.

26.     **Unless a Non-Debtor Counterparty to any Available Contract files an objection to the Cure Amount by the applicable objection deadline, then such counterparty shall be (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Available Contract, other than the Cure Amount on the Assumption Notice, in the event it is assumed and/or assigned by the Debtors, and the Debtors and the assignee of the Available Contract shall be entitled to rely solely upon the Cure Amounts scheduled on the Assumption Notice; and (b) be deemed to**

17

**have consented to the assumption, assignment and/or transfer of such Available Contract (including the transfer of any related rights and benefits thereunder) to the relevant assignee and shall be forever barred and estopped from asserting or claiming against the Debtors or the assignee that any additional pre-assignment amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Available Contract, that any related right or benefit under such Available Contract cannot or will not be available to the relevant assignee, or that the assignee failed to provide such Non-Debtor Counterparty with adequate assurance of future performance.**

27.     **Unless a Non-Debtor Counterparty to any Available Contract files a timely Contract Objection to the assumption and assignment of the applicable Available Contract by the Stalking Horse Bidder or the other Successful Bidder, then such Non-Debtor Counterparty shall be deemed to have (i) consented to the assumption and assignment of the applicable Available Contract to the Stalking Horse Bidder or the other Successful Bidder with the Cure Amount set forth in the Assumption Notice and (ii) waived and released any and all other rights to object to the Cure Amount or the assumption and assignment of the Available Contract to the Stalking Horse Bidder or the other Successful Bidder.**

28.     On the date of the Closing of the Sale (the "Closing Date"), with respect to Cure Amounts not disputed as of the Closing Date, the Debtors shall pay all Cure Amounts in accordance with the Approved Budget to the applicable Non-Debtor Counterparty and the Stalking Horse Bidder shall have no liability therefor.  With respect to Cure Amounts that are disputed as of the Closing Date and that were submitted in accordance with these Assumption and Assignment Procedures, the Debtors and the Successful Bidder shall cooperate and diligently pursue resolution of such disputes in good faith to attempt to resolve any such objection without court intervention.

If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, then the Court shall make all necessary determinations relating to such objection at a hearing scheduled pursuant to the following paragraph.

29.     Consideration of unresolved Contract Objections relating to Available Contract assignment, if any, unless otherwise ordered by the Court or with the consent of the parties that to any Available Contract that are subject to a Contract Objection relating to an Available Contract assignment, shall be adjourned to a date to be determined and shall not proceed at the Sale Hearing; provided, however, that (i) any Available Contract that is the subject of a Contract Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to resolution of such objection, and (ii) the Debtors shall pay any undisputed Cure Amount on or before the Closing Date in accordance with the Approved Budget and shall appropriately reserve funding for the disputed portion of the Cure Amount. A timely filed and properly served Contract Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Available Contract, but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

30.     Upon the resolution of any disputed Cure Amount (with the consent of such Successful Bidder) following the Closing, the Debtors shall pay such Cure Amount promptly, and in no event later than two business days following such resolution.

31.     Upon payment by the Debtors of a Cure Amount (through resolution of a Cure Objection or otherwise), all defaults under the Assumed Contracts (monetary or otherwise) and all actual or pecuniary losses that have or may have resulted from such defaults shall be deemed cured, including any Tax, rental obligation, common area maintenance, percentage rent, base rent or

11844825-15

utility payments, whether or not such obligation became due, or accrued, after the effective date of the assignment of such Assumed Contracts, as the case may be.

32.     The Debtors' assumption and/or assignment of an Available Contract is subject to approval by this Court and consummation of the Sale. Absent consummation of the Sale and entry of a Sale Order approving the assumption and/or assignment of the Available Contracts, the Available Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

### Other Assets Bid Deadline

33.     The Other Assets Bid Deadline (i.e., the deadline for interested parties to submit bids to purchase any of the Other Assets of the Debtors which are not Purchased Assets subject to the Stalking Horse Bid Agreement) is **March 23, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

### Other Relief

34.     Subject to the other requirements in these Bidding Procedures, and in connection with the Sale of the Purchased Assets, secured credit parties, which hold security interests in the Purchased Assets, may submit Credit Bids for such Purchased Assets.  The Stalking Horse Bid Agreement is, a Credit Bid.  Subject to each Bid and Competing Qualified Bid satisfying the requirements of these Bidding Procedures, the Debtors shall treat comparable Credit Bids and cash bids as equivalent and no Credit Bid shall be considered inferior to a cash bid merely because it is a Credit Bid.  Notwithstanding anything to the contrary contained herein, but subject in all respects to the challenge period as set forth in any DIP Order, the Administrative Agent for the DIP Lender and/or the Administrative Agent for the Prepetition Lenders shall have the right to Credit Bid all or any portion of the aggregate amount of their applicable outstanding secured obligations,

notwithstanding any earlier or lower Credit Bid of any portion of their applicable outstanding secured obligations.

35.     Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtors' proposed sale of the Purchased Assets free and clear of certain liens, claims, interests and encumbrances as set forth in the Stalking Horse Bid Agreement, pursuant to Bankruptcy Code section 363(f) and otherwise, and except as set forth in this Order, no other or further notice of the sale shall be required to be provided by the Debtors.

36.     For the reasons stated in the Motion and at the Hearing or any prior hearing, the Court grants the Debtors' request for shortened notice with respect to the relief requested in the Motion.

37.     The Stalking Horse Bidder is entitled to make any additional bids at the Auction in compliance with the Bidding Procedures.  For purposes of any Overbid, the Stalking Horse Bidder shall be entitled to a credit in the amount of the Expense Reimbursement.

38.     The Sale Hearing may be continued, from time to time in consultation with the Stalking Horse Bidder, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or announced by the Debtors in open court.

39.     Except for the Stalking Horse Bidder, no other party submitting an offer or Bid for the Purchased Assets or a Competing Qualifying Bid shall be entitled to any expense reimbursement, breakup, termination, or similar fee or payment. Moreover, all Competing Qualifying Bidders (excluding any Bid Protections approve by this Court) waive any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code, or the payment

of any broker fees or costs, unless specifically agreed to by the Debtors, upon consultation with the Consultation Parties, or upon further order of the Court.

40.    Except as otherwise provided in the Stalking Horse Bid Agreement or this Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of the Debtors' estates (in consultation with the Consultation Parties) to: (a) determine which Bidders are Competing Qualified Bidders; (b) determine which Bids are Competing Qualified Bids; (c) determine which Competing Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Stalking Horse Bidder; (f) extend the deadlines set forth herein; and (g) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice or by filing a notice on the docket. Before extending any deadline, the Debtors shall consult with the Stalking Horse Bidder and the Consultation Parties.

41.    All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Purchased Assets, the Auction and any transaction contemplated herein.

42.    To the extent that any order confirming any plan of reorganization or liquidation in the Debtors' cases or any other order in these cases (including any order entered after any conversion of these chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall

control.  The Debtors' obligations under this Order, the provisions of this Order and the portions of the Stalking Horse Bid Agreement pertaining to the Bidding Procedures shall survive conversion of these chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code, confirmation of any plan of reorganization or liquidation, or discharge of claims thereunder and shall be binding upon the Debtors, any Chapter 7 trustee, the reorganized or reconstituted debtors, as the case may be, after the effective date of a confirmed plan or plans in the Debtors' cases (including any order entered after any conversion of the cases of the Debtors to cases under Chapter 7 of the Bankruptcy Code)

43.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Order.

44.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

45.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

46.     In the event there is any inconsistency between the Stalking Horse Bid Agreement, the Motion, the Bidding Procedures, and/or this Order, the terms of this Order shall govern.

47.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order. All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing

11844825-15

an adversary proceeding.

#   #   #

<u>Submitted by:</u>
Christopher Andrew Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Tel. (305) 755-9500
Fax (305) 714-4340
Email:  cjarvinen@bergersingerman.com

*(Attorney Jarvinen is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11844825-15

**EXHIBIT "1"**

**Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| DELPHI BEHAVIORAL HEALTH GROUP, LLC, *et al.*,[1] | Case No. 23-10945-PDR |
| | (Jointly Administered) |
| Debtors. | |

_____/

## BIDDING PROCEDURES[2]

On February 6, 2023 (the "Petition Date"), each of the above-captioned, affiliated, debtors and debtors-in-possession (collectively, the "Debtors") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

On February 6, 2023, the Debtors filed the *Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not*

---

[1]    The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

[2]    Any capitalized term not explicitly defined herein shall have the meaning ascribed to it in, as applicable, the Stalking Horse Bid Agreement, the Bidding Procedures Motion or the Bidding Procedures Order (as each is defined herein).

*Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. 21] (the "Bidding Procedures Motion").

The Bidding Procedures Motion sought approval of, among other things, the procedures through which the Debtors, in the reasonable exercise of their business judgment, will determine the highest or otherwise best bid for the sale (the "Sale") of three of the Debtors' inpatient and outpatient substance use disorder treatment facilities (each, a "SUD", and collectively, the "SUDs") located in Massachusetts and New Jersey, identified on **Schedule 1** annexed hereto, and all related assets (collectively, the assets subject to the Sale are the "Purchased Assets", as such term is defined in the Stalking Horse Bid Agreement (defined herein)).

On February 19, 2023, three of the Debtors (each, a "Seller" and collectively, the "Sellers")[3] executed that certain *Asset Purchase Agreement* [ECF No. 111] (the "Stalking Horse Bid Agreement"), a copy of which is attached as Exhibit "A" to the *Debtors' Notice of Filing (I) Revised Stalking Horse Bid Agreement and (II) Sellers' Disclosure Schedules* [ECF No. 111] (the "Stalking Horse Bid Agreement/Schedules Notice"; and such bid, the "Stalking Horse Bid"), by and among Delphi Lender AcquisitionCo LLC, as purchaser (together with each of its permitted successors, assigns and designees, collectively, the "Stalking Horse Bidder"), DR Parent, LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Parent"), and Brightwood Loan Services LLC, solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Administrative Agent").

On March ___, 2023, the Bankruptcy Court entered an order approving the Bidding Procedures Motion [ECF No. ___] (the "Bidding Procedures Order" and the procedures set forth herein, the "Bidding Procedures"), which, among other things, authorizes the Debtors to determine the highest or otherwise best bid for the Purchased Assets through the process and the procedures set forth in these Bidding Procedures, and authorized the Debtors' entry into the Stalking Horse Bid Agreement, pursuant to which the Stalking Horse Bidder has committed to (a) purchase, acquire, and take assignment and delivery of the Purchased Assets, free and clear of all liens, claims, encumbrances, and other interests (except as otherwise expressly provided in the Stalking Horse Bid Agreement), and (b) assume certain liabilities associated with the Debtors' operations involving the Purchased Assets as set forth in the Stalking Horse Bid Agreement, in the form of a credit bid.

Unless expressly indicated, the following Bidding Procedures apply to all bidders regardless of the phase of the Auction in which the bidder intends to participate.

---

[3]    The Sellers are the following Debtors: Debtors: (i) Union Fresh Start LLC (d/b/a Serenity at Summit); (ii) Summit Behavioral Health Limited Liability Company (d/b/a Summit Behavioral Health); and (iii) SBH Haverhill, LLC (d/b/a Serenity at Summit).

## Key Dates

| Event | Date |
|---|---|
| Hearing on the Motion for Bidding Procedures | March 6, 2023 at 11:00 a.m. (prevailing Eastern Time) |
| Service of (i) Bidding Procedures Order, and (ii) Assumption Notice | Within one (1) business day after the Bankruptcy Court's entry of the Bidding Procedures Order. |
| Contract Objection Deadline | **March 21, 2023 at 4:00 p.m.** (prevailing Eastern Time) |
| Sale Objection Deadline | **March 21, 2023 at 4:00 p.m.** (prevailing Eastern Time) |
| Bid Deadline | **March 23, 2023 at 5:00 p.m.** (prevailing Eastern Time) |
| Notice of No Auction to be Held (if applicable) | **March 26, 2023 at 3:00 p.m.** (prevailing Eastern Time) |
| Notification of Auction Baseline Bid to all Competing Qualified Bidders | **March 26, 2023 at 5:00 p.m.** (prevailing Eastern Time) |
| Auction | **March 27, 2023 at 10:00 a.m.** (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date. If an Auction is to be held, it shall take place at the offices of the Debtors' counsel, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131), and/or by electronic means (e.g., Zoom). |
| Debtors File Notice Identifying the Successful Bidder and any Backup Bidders | Within one (1) business days following the conclusion of the Auction. |
| Sale Hearing | **March 28, 2023 at 10:00 a.m.** (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court. |
| Adequate Assurance Objection (in the event the Stalking Horse Bidder is not the Successful Bidder) | At or before the Sale Hearing. |
| Deadline to Close the Sale | **April 19, 2023**, subject to the right of the Debtors, in the reasonable exercise of their business judgment and the consent of the Stalking Horse Bidder, to agree to a later date. |

## Access to Diligence Materials.

To participate in the bidding process and to receive access to due diligence information, including access to the electronic data room being maintained by Berger Singerman LLP (the Debtors' counsel), and to additional non-public information regarding the Debtors and their business (collectively, the "Diligence Materials"), a party must deliver to the Debtors: (i) an executed confidentiality agreement in the form and substance satisfactory in the sole discretion of the Debtors (the "Confidentiality Agreement"); (ii) written evidence demonstrating such party's financial capability to close a transaction involving the Purchased Assets (an "Alternate Transaction"), as determined by the Debtors, in consultation with the Consultation Parties; and

(iii) any other evidence that the Debtors, in consultation with the Consultation Parties, may reasonably request (any such party that satisfies the foregoing, a "<u>Preliminary Interested Investor</u>").

Only a Preliminary Interested Investor may proceed to conduct due diligence.  Only a Preliminary Interested Investor may submit a Bid (as defined below).

All due diligence requests must be directed to the Debtors to the attention of Mr. Harvey Tepner (htepner@delphihealthgroup.com).  To the extent reasonably practicable, Mr. Tepner will also facilitate meetings between any interested Preliminary Interested Investor and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their sole discretion. The Debtors shall promptly provide the Stalking Horse Bidder with any information provided to a prospective bidder or Competing Qualified Bidder that has not already been provided to the Stalking Horse Bidder.

The due diligence period will end on the Bid Deadline (as defined below), and, subsequent to the Bid Deadline, the Debtors and their representatives, including but not limited to the Debtors' Advisors (as defined below), will have no obligation to furnish any due diligence information to any party.  For the avoidance of doubt, no due diligence will continue after the Bid Deadline.

Neither the Debtors nor any of their respective representatives, including the Debtors' Advisors, will be obligated to furnish any information relating to the Purchased Assets other than to Preliminary Interested Investors.  The Debtors and the Debtors' Advisors make no representations or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in any definitive agreement entered into with a Successful Bidder.

The Debtors and the Debtors' Advisors will coordinate all reasonable requests from Preliminary Interested Investors for additional information and due diligence access; provided that the Debtors may decline to provide such information to Preliminary Interested Investors who, at such time and in the Debtors' reasonable exercise of their business judgment, have not established, or who have raised doubt, that such Preliminary Interested Investor intends in good faith to, or has the capacity to, consummate an Alternate Transaction.

**For any Preliminary Interested Investor or Competing Qualified Bidder who, in the Debtors' determination, is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, or to delay providing, in their sole discretion, and subject to any requirements under applicable law, <u>any</u> Diligence Materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Preliminary Interested Investor or Competing Qualified Bidder, at any such time.**

**<u>All parties, Preliminary Interested Investors, and Competing Qualified Bidders are prohibited from communicating with any of the Debtors' employees, directors, officers, landlords, vendors, suppliers, agents, existing lender(s), interest or equity holders, or with any other potential bidder, Preliminary Interested Investor, or Competing Qualified Bidder with respect to any Bid or Alternate Transaction absent the prior written consent (email</u>**

**shall suffice) of the Debtors; provided that if such consent is given a representative of the Debtors shall be present for, or party to, any such communications (unless otherwise waived in writing (email shall suffice) by the Debtors in their sole discretion).**

Each Preliminary Interested Investor and Competing Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or the Debtors' Advisors regarding such Preliminary Interested Investor or Competing Qualified Bidder.

Notwithstanding anything to the contrary herein, the Stalking Horse Bidder shall be qualified as a Preliminary Interested Investor and a Competing Qualified Bidder.

**Bid Qualification Process**

I.    **Bid Deadline**.

A Preliminary Interested Investor that desires to make a proposal, solicitation, or offer for all or substantially all of the Purchased Assets (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be actually received by the following parties on or before **March 23, 2023, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"):

a.    *Bankruptcy Counsel to the Debtors*:  Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens (rrubens@bergersingerman.com); and

b.    *The Interim Chief Executive Officer for the Debtors:* c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) (and together with Berger Singerman LLP, collectively, the "Debtors' Advisors").

II.   **Bid Requirements**.

To be eligible to participate in the Auction (defined below), other than with respect to the Stalking Horse Bid, each Bid by a Preliminary Interested Investor (a "Bidder") must be submitted in writing and satisfy each of the following requirements (collectively, the "Bid Requirements"):

a.    Same or Better Terms.  The Bid must be on terms that are substantially the same or better than the terms of the Stalking Horse Bid Agreement, as determined by the Debtors in their sole discretion (in consultation with the Consultation Parties) and the Bid must identify which assets the Bidder intends to purchase and include executed transaction documents (as defined herein, an Alternate Transaction).  A Bid shall include both a clean version (in MS-Word) and a blackline against the Stalking Horse Bid Agreement marked to show all changes requested by the Bidder.  A Bid will not be considered qualified for the Auction if: (i) such Bid contains additional material representations and warranties, covenants, closing conditions

5

(including, but not limited to, any contingency involving the need to obtain any license in any way related to the operations of the Purchased Assets), termination rights, financing, or due diligence contingencies other than as may be included in the Stalking Horse Bid Agreement (it being agreed and understood that such Bid shall modify the Stalking Horse Bid Agreement as needed to comply in all respects with the Bidding Procedures Order (including removing any termination rights in conflict with the Bidding Procedures Order) and will remove provisions that apply only to the Stalking Horse Bidder, as the stalking horse bidder, such as the Expense Reimbursement); (ii) such Bid is not received by each of the Debtors' Advisors in writing on or prior to the Bid Deadline; (iii) such Bid does not provide for payment of the Expense Reimbursement in cash upon closing; and (iv) such Bid does not contain evidence that the Bidder(s) has/have received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof that the Earnest Money Deposit (defined below) has been made.

b.    <u>Amount of Bid</u>.  Each Bid must be for all of the Purchased Assets and shall clearly show the amount of the purchase price.  In addition, a Bid must include (i) cash consideration of not less than the sum of (a) the Purchase Price (including the Credit Bid Amount and the amount of the Assumed Debt, as each term is defined in the Stalking Horse Bid Agreement), *plus* (b) all additional amounts outstanding under the DIP Facility not included in the Assumed Debt, *plus* (c) the Expense Reimbursement in the amount of $375,000.00, *plus* (d) an initial cash overbid of $500,000.00, and (ii) assumption of the Assumed Liabilities (other than the Assumed Debt).

c.    <u>Earnest Money Deposit</u>.  Each Bid, must be accompanied by a cash deposit in the amount equal to ten (10%) percent of the aggregate value of the cash and non-cash consideration of the Bid (the "<u>Earnest Money Deposit</u>") to be deposited with an escrow agent selected by the Debtors (the "<u>Escrow Agent</u>"), *provided that, for the avoidance of doubt,* the Stalking Horse Bidder will not be required to provide an Earnest Money Deposit.

d.    <u>Proof of Financial Ability to Perform</u>.  The Bid must include written evidence that the Debtors conclude in their sole discretion demonstrates that the Bidder has the necessary financial ability to close the Alternate Transaction and to provide adequate assurance of future performance under all executory contracts and unexpired leases to be assumed and assigned in such Alternate Transaction (i.e., the Assumed Contracts).

e.    <u>Identity</u>.  Each Bid must fully disclose the identity of each person and entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder, including if such Bidder is an entity formed for the purpose of consummating the proposed Alternate Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity

6

holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' Advisors should contact regarding such Bid. Nothing herein shall preclude multiple Preliminary Interested Investors from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein. Each Bid must also fully disclose any past or present agreements with or connections to the Debtors or their non-debtor affiliates, the Stalking Horse Bidder, any other known prospective bidder or Competing Qualified Bidder, any of the owners of the Debtors or their non-debtor affiliates, and/or any officer or director of the foregoing.

f.    Authorization. Each Bid must contain written evidence acceptable to the Debtors in their sole discretion that the Bidder has obtained appropriate authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Alternate Transaction contemplated in such Bid.

g.    Contingencies. A Bid will not be considered qualified for the Auction if it (i) contains any of the contingencies set forth above in sub-paragraph "a", or (ii) is conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties set forth in any definitive agreement entered into by the Debtors with a Successful Bidder at the Closing.

h.    Irrevocable. A Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or a Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

i.    Adequate Assurance of Future Performance. To the extent applicable, each Bid must contain evidence that the Bidder has the ability to comply with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code (the "Adequate Assurance Information") with respect to the Assumed Contracts. Such Adequate Assurance Information may include: (i) information about the Bidder's financial condition, such as federal tax returns for two (2) years, a current financial statement, or bank account statements; (ii) information demonstrating (as determined by the Debtors in the reasonable exercise of their business judgment (in consultation with the Consultation Parties)) that the Bidder has the financial capacity to consummate the proposed Alternate Transaction; (iii) evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid; (iv) the identity and exact name of the Bidder (including any equity holder or other financial backer if the Bidder is an entity formed for the purpose of consummating the proposed Alternate Transaction; (v) such additional information regarding the Bidder as the Bidder may elect to include; and (vi) such other documentation that the Debtors may request. By submitting a Bid, the

7

Bidder(s) agree that the Debtors may disseminate their Adequate Assurance Information to affected landlords and contract counterparties in the event that the Debtors determine such Bid to be a Qualified Bid.

j.      <u>As-Is, Where-Is</u>. Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the assets prior to making its Bid; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the asset(s) in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's mark-up of the Stalking Horse Bid Agreement.

k.      <u>Affirmative Statement</u>. Each Bid shall be accompanied by an affirmative statement in which the Bidder explicitly agrees that: (i) it has and will continue to comply with these Bidding Procedures; (ii) the Bid it submits does not entitle such Bidder (and if it becomes a Competing Qualified Bidder) to any breakup fee, expense reimbursement, termination payment, or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under Bankruptcy Code section 503(b) related to bidding for the Purchased Assets.

l.      <u>Time Frame for Closing</u>. A Bid must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors after consultation with the Consultation Parties, which time frame shall include a closing by no later than **April 19, 2023**.

m.      <u>Adherence to Bid Procedures</u>. By submitting a Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and after the conclusion of the Auction, if any, agrees not to submit a Bid, or seek to reopen the Auction.

n.      <u>Non-License Government Approvals</u>. Each Bid must include a description of all governmental, regulatory, or other approvals or consents that are required to close the proposed Alternate Transaction (other than any license related in any way to the operations of the Purchased Assets), together with evidence satisfactory to the Debtors, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals; provided, however, as set forth above in sub-paragraphs "a" and "g", a Bid will not be considered qualified for the Auction if, among other things, it contains any contingency described therein, including but not limited to, the need to obtain any license in any way related to the operations of the Purchased Assets.

8

o.  <u>Non-License Government Approvals Timeframe</u>. Each Bid must set forth an estimated timeframe for obtaining any required, governmental, regulatory or other approvals or consents for consummating any proposed Sale; provided, however, as set forth above in sub-paragraphs "a" and "g", a Bid will not be considered qualified for the Auction if, among other things, it contains any contingency described therein, including but not limited to, the need to obtain any license in any way related to the operations of the Purchased Assets.

p.  <u>Consent to Jurisdiction</u>. By submitting a Bid, each Bidder agrees and shall be deemed to have agreed, to submit to the jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Debtors' qualification of bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Alternate Transaction documents, and the Closing, as applicable

q.  <u>Credit Bid</u>.  If a Bid, other than the Stalking Horse Bid Agreement, consists in whole or in part of a credit bid pursuant to section 363(k) of the Bankruptcy Code (a "<u>Credit Bid</u>"): (i) it contains evidence sufficient to the Debtors, after consultation with the Consultation Parties, to demonstrate that the secured claims subject to such Credit Bid are secured by unavoidable, properly perfected liens on the Purchased Assets subject to such Credit Bid; and (ii) it includes a cash purchase price sufficient to pay in full the sum of the following, (a) all amounts being paid in full in cash as part of the Purchase Price under the Stalking Horse Bid Agreement (excluding, for the avoidance of doubt, any Assumed Liabilities to be assumed by the Stalking Horse Bidder pursuant to the Stalking Horse Bid Agreement), *plus* (b) all obligations under the DIP Facility, *plus* (c) all obligations secured by senior or *pari passu* liens on the Purchased Assets (e.g., the Loan Debt) to be purchased pursuant to such Credit Bid, *plus* (d) the Expense Reimbursement (in addition to the requirements set forth in (b) above).  The Stalking Horse Bid Agreement is, in part, a Credit Bid, notwithstanding any earlier Bids.  Further, any Credit Bid, including the Stalking Horse Bid, shall be permitted to increase its Credit Bid up to the full amount of its applicable outstanding secured obligations.

r.  <u>Transition Services</u>. Each bid must state or otherwise estimate the types of transition services, if any, the prospective bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the prospective bidder's bid were selected as the Successful Bid for the applicable Purchased Assets.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures, including but not limited to, refraining from, after the conclusion of the Auction, either submitting a Bid or seeking to reopen the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Purchased Assets (or assets) as reflected in such Bid**.

**III.**     **Designation of Competing Qualified Bidders**.

The Debtors will review each Bid received from a Bidder.  A Bid will be considered a "Competing Qualified Bid," and each Bidder that submits a Competing Qualified Bid will be considered a "Competing Qualified Bidder," if the Debtors determine, in their sole discretion and in the reasonable exercise of their business judgment (in consultation with the Consultation Parties), that such Bid was received before the Bid Deadline and satisfies each of the Bid Requirements set forth above.

Notwithstanding anything herein to the contrary, the Stalking Horse Bid Agreement submitted by the Stalking Horse Bidder shall be deemed a Competing Qualified Bid, and the Stalking Horse Bidder is a Competing Qualified Bidder for each phase of the Auction.

No later than three (3) business days after the receipt of a Bid, the Debtors will notify the relevant Bidder whether or not its Bid has been designated as a Competing Qualified Bid.

Upon the receipt of any competing Bid(s), the Debtors shall immediately provide counsel for the Stalking Horse Bidder copies of any blackline of the Stalking Horse Bid Agreement received by the Debtors from such Bidder(s).

If any Bid is determined by the Debtors not to be a Competing Qualified Bid, the Escrow Agent will refund such Bidder's Earnest Money Deposit on the date that is three (3) business days after the Debtors inform the Bidder that its Bid is not a Competing Qualified Bid, or as soon as is reasonably practicable thereafter.

Between the date that the Debtors notify a Bidder that it is a Competing Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Competing Qualified Bid from a Competing Qualified Bidder.  Without the prior written consent of the Debtors, a Competing Qualified Bidder may not modify, amend, or withdraw its Competing Qualified Bid, except for proposed amendments to increase the purchase price, or otherwise improve the terms of, the Competing Qualified Bid, during the period that such Competing Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Competing Qualified Bid may be improved at the Auction as set forth herein.  Any improved Competing Qualified Bid must continue to comply with the requirements for Competing Qualified Bids set forth in these Bidding Procedures.

**IV.**     **Right to Credit Bid**.

Subject to the other requirements in these Bidding Procedures, and in connection with the Sale of the Purchased Assets, secured credit parties, which hold perfected security interests in the Purchased Assets, may seek to submit Credit Bids for such Purchased Assets.  The Stalking Horse Bid Agreement is, in part, a Credit Bid.  Subject to a Bid and Competing Qualified Bid satisfying the requirements of these Bidding Procedures, the Debtors shall treat comparable Credit Bids and cash bids as equivalent and no Credit Bids shall be considered inferior to a cash bid merely because it is a Credit Bid.

Notwithstanding anything to the contrary contained herein, but subject in all respects to the challenge period as set forth in any Interim DIP Order or Final DIP Order, the Administrative Agent for the Prepetition Lenders and/or the Administrative Agent for the DIP Lenders shall have the right to Credit Bid all or any portion of the aggregate amount of their respective applicable outstanding secured obligations to the maximum extent permitted by section 363(k) of the Bankruptcy Code, notwithstanding any earlier or lower Credit Bid of any portion of their respective applicable outstanding secured obligations.

## V.    __The Auction__.

If one or more Competing Qualified Bids (other than the Stalking Horse Bid Agreement submitted by the Stalking Horse Bidder) are received by the Bid Deadline, the Debtors will conduct an auction (the "<u>Auction</u>") to determine the highest or otherwise best Competing Qualified Bid. If no Competing Qualified Bid (other than the Stalking Horse Bid Agreement) is received by the Bid Deadline, no Auction shall be conducted and the Stalking Horse Bid Agreement shall be deemed to be the Successful Bid and the Stalking Horse Bidder shall be deemed to be the Successful Bidder.  Only Competing Qualified Bidders (including, but not limited to the Stalking Horse Bid) may participate in the Auction.

No later than **March 26, 2023 at 5:00 p.m. (prevailing Eastern Time)**, the Debtors will notify all Competing Qualified Bidders of the highest or otherwise best pre-Auction, Competing Qualified Bid, as determined by the Debtors in the reasonable exercise of their business judgment, in consultation with the Consultation Parties (the "<u>Auction Baseline Bid</u>"), and will provide copies of the documents supporting the Auction Baseline Bid to all Competing Qualified Bidders.

The determination of which Competing Qualified Bid constitutes the Auction Baseline Bid and which Competing Qualified Bid constitutes the Successful Bid (defined herein) shall take into account any factors that the Debtors deem in their sole discretion to be relevant to the value of the Competing Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Purchased Assets (or assets) sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Competing Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Auction Baseline Bid; (e) the tax consequences of such Competing Qualified Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; (h) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed, including the assumption of collective bargaining agreements; and (i) regulatory authorizations from any relevant government agency and all other applicable governmental entities relating to the services and products provided by or on behalf of the Debtors, including approvals, authorizations, certificates, registrations, licenses, exemptions, permits, clearances, and consents (collectively, the "<u>Bid Assessment Criteria</u>").

The Auction (if any) shall take place on **March 27, 2023 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, or such other date and time and/or place or by electronic means (e.g., Zoom) as selected by the Debtors (in consultation with the Consultation Parties), and the Debtors shall

notify all Competing Qualified Bidders, including the Stalking Horse Bidder, counsel for the Stalking Horse Bidder, and other invitees of the time and place of the Auction in accordance with these Bidding Procedures, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date.

The Auction shall be conducted according to the following procedures:

a.      The Debtors Shall Conduct the Auction.

The Debtors and their professionals, including but not limited to the Debtors' Advisors, shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall announce which Competing Qualified Bid is deemed to be the Auction Baseline Bid.

Only (i) the Debtors, (ii) the Stalking Horse Bidder, (iii) other Competing Qualified Bidders, (iv) the Consultation Parties, and (v) with respect to (i) through (iv), each of their respective representatives and legal and financial advisors, shall be entitled to attend the Auction, and the Competing Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.

b.      No Collusion; Good-Faith *Bona Fide* Offer.

Each Competing Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding or sale of the Purchased Assets, and (ii) its Competing Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed transaction for the Purchased Assets if selected as the Successful Bidder.

c.      Terms of Overbids.

An "Overbid" means any bid made at the Auction by a Competing Qualified Bidder subsequent to the Debtors' announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(i)     Minimum Overbid Increment.    Any Overbid following the Auction Baseline Bid shall be no less than the value of the $500,000.00, as determined by the Debtors in the reasonable exercise of their business judgment.  Additional consideration in excess of the amount set forth in an Auction Baseline Bid, including each Overbid, may include cash, credit bids and/or other noncash consideration, or any combination of the foregoing, as determined by the Debtors in the reasonable exercise of their business judgment.  For purposes of the Overbid, the Stalking Horse Bidder shall be entitled to a dollar for dollar credit in the amount of the Expense Reimbursement.

(ii)    <u>Remaining terms are the same as for Competing Qualified Bids</u>.  Except as modified herein, an Overbid must comply with the conditions for a Competing Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid or have a Backup Bidder (as defined below).  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Competing Qualified Bid or Overbid, as determined by the Debtors in the reasonable exercise of their business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

d.    <u>Consideration of Overbids</u>.

The Debtors reserve the right, in the reasonable exercise of their business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times, to, among other things, to (i) facilitate discussions between the Debtors and the Competing Qualified Bidders, (ii) allow Competing Qualified Bidders to consider how they wish to proceed, and (iii) provide Competing Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in the reasonable exercise of their business judgment, may require, that the relevant Competing Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed purchase of the Purchased Assets at the prevailing Overbid amount.

Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in the reasonable exercise of their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Auction Baseline Bid, or, (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Competing Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

e.    <u>Backup Bidder</u>.

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Competing Qualified Bid at the Auction, as determined by the Debtors, in the reasonable exercise of their business judgment (in consultation with the Consultation Parties), will be designated as the backup bidder (the "<u>Backup Bidder</u>").  The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "<u>Backup Bid</u>") open and irrevocable until the earlier of 4:00 p.m. (prevailing Eastern Time) on the date that is the earlier of

13

sixty (60) days after the conclusion of the Auction (the "Outside Backup Date") or the closing of the Alternate Transaction with the Successful Bidder.  For the avoidance of doubt, the Debtors may not designate the Stalking Horse Bidder as a Backup Bidder without its express written consent.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, the Debtors may designate (in consultation with the Consultation Parties) the Backup Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder.  A hearing to authorize a sale to the Backup Bidder will be held by the Bankruptcy Court on no less than three (3) days' notice, with supplemental objections due at least two (2) days prior to such hearing (the "Backup Sale Hearing").  For the avoidance of doubt, only parties who timely filed an objection to the Sale by the Sale Objection Deadline may supplement their original objection with respect to the Backup Bidder and all such issues shall be limited to issues relating to the identity of the Backup Bidder.  In such case, the defaulting Successful Bidder's Earnest Money Deposit shall be forfeited to the Debtors.  The Debtors also specifically reserve the right to seek all available damages from the defaulting Successful Bidder.  The Earnest Money Deposit of the Backup Bidder shall be held by the Debtors until the earlier of one (1) business day after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.

    f.    Additional and Modified Procedures.

The Debtors (in consultation with the Consultation Parties and the Stalking Horse Bidder) may announce at the Auction additional or modified rules and procedures that are reasonable under the circumstances (e.g., limitations on the amount of time to make subsequent Overbids, changes in minimum Overbid increments, etc.) for conducting the Auction so long as such rules are not inconsistent with the Bidding Procedures or the Stalking Horse Bid Agreement.

    g.    Consent to Jurisdiction as Condition to Bidding.

The Stalking Horse Bidder and all Competing Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection any disputes relating to these Bidding Procedures, the Auction, or the construction and enforcement of any documents relating to an Alternate Transaction.

    h.    Closing the Auction.

The Auction shall continue until the Debtors determine, in the reasonable exercise of their business judgment (in consultation with the Consultation Parties), that there is a highest or otherwise best Competing Qualified Bid or Competing Qualified Bids at the Auction for all or substantially all of the Purchased Assets (each a "Successful Bid" and each Bidder submitting such Successful Bid, a "Successful Bidder").  The Auction shall not close unless and until all Bidders who have submitted Competing Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbids and the Successful Bidder has submitted fully executed sale and transaction documents memorializing the terms of the Successful Bid.

Within one (1) business day following the conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket in the lead case for the Debtors identifying the Successful Bidder for the Purchased Assets and any applicable Backup Bidders. The Debtors shall not consider any Bids submitted after the conclusion of the Auction and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Competing Qualified Bid.

Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Auction Baseline Bid, all Overbids, all Prevailing Highest Bids, the Successful Bid and any Backup Bid.

**VI.    Expense Reimbursement.**

The Stalking Horse Bidder is entitled to payment of the Expense Reimbursement pursuant to the terms of the Stalking Horse Bid Agreement; provided, however that the amount of the Expense Reimbursement that a Preliminary Interested Investor shall use solely for the purpose of the amount of the "Expense Reimbursement" referenced in the "Amount of Bid" set forth in paragraph II.b of these Bidding Procedures is set at $375,000.00; provided further, the Stalking Horse Bidder shall provide the Debtors and the U.S. Trustee with documentation supporting the payment of the Expense Reimbursement up to $500,000.00 five business days prior to the Sale Hearing; provided further, that the U.S. Trustee may seek to challenge the Expense Reimbursement on the grounds of lack of sufficient supporting documentation and/or reasonableness; provided further, that the Stalking Horse Bidder may only seek reimbursement of fees incurred in connection to the Stalking Horse Bid Agreement and the Sale Hearing. Nothing herein precludes the right of the Stalking Horse Bidder to seek reimbursement in excess of $500,000.00 in establishing the reasonableness of the Expense Reimbursement (to the extent applicable), however it shall only be entitled to actual payment and reimbursement up to $500,000.00.

The Debtors recognize the value and benefits that the Stalking Horse Bidder has provided to the Debtors' estates by entering into the Stalking Horse Bid Agreement, as well as the Stalking Horse Bidder's expenditure of time, energy and resources. Therefore, subject to the terms of the Stalking Horse Bid Agreement, the Debtors shall pay the Expense Reimbursement on the terms set forth in the Stalking Horse Bid Agreement and shall be paid to the Stalking Horse Bidder prior to the payment of the proceeds of such sale to any third party asserting a lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Expense Reimbursement.)

The Expense Reimbursement shall constitute an allowed administrative expense claim against the each of the Debtors pursuant to section 503(b) and 507 of the Bankruptcy Code (without the need to file a proof of claim).

Except for the Stalking Horse Bidder, no other party submitting an offer or Bid for the Purchased Assets or a Competing Qualifying Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

In the event no Competing Qualified Bid, other than the Stalking Horse Bid, is received, the Debtors reserve the right to request (in consultation with the Consultation Parties) that the Bankruptcy Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

The Sale Hearing may be adjourned or rescheduled from time to time.

**VII.**    **Sale Hearing**.

Objections, if any, to the Sale and/or the sale of the Purchased Assets to the Successful Bidder and the transaction contemplated by the Stalking Horse Bid Agreement must be: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Procedure and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March 21, 2023** (the "Sale Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); and (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130.

If no Auction is to be held, the Debtors will file a notice **no later than 3:00 p.m. (prevailing Eastern Time) on March 26, 2023** with the Court in the lead case for the Debtors stating that there will be no Auction (the notice will be posted at the Court's website https://ecf.flsb.uscourts.gov/ which requires a court-issued login and passcode to access the notice).

The Debtors will seek a hearing (the "Sale Hearing") on **March 28, 2023 at 10:00 a.m. (prevailing Eastern Time)**, at which the Debtors will seek approval of the transactions contemplated by the Stalking Horse Bid Agreement (or Alternate Transaction) with the Successful Bidder, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court.

**The Sale Hearing may be continued to a later date by the Debtors by either filing a notice with the Bankruptcy Court prior to, or making an announcement in open court at,**

16

the Sale Hearing.  **No further notice of any such continuance will be required to be provided to any party.**

The approved Sale shall close not later than **April 19, 2023**, unless the Debtors, with the consent of the Stalking Horse Bidder, agree to a later date.

## VIII.   Return of Earnest Money Deposit.

The Earnest Money Deposit for each Competing Qualified Bidder (i) shall be held by the Escrow Agent in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion, (ii) shall not become property of the Debtors' estates absent further order of the Bankruptcy Court, and (iii) shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) by the Escrow Agent on the date that is three (3) business days after the Sale Hearing, or as soon as is reasonably practicable thereafter.

The Earnest Money Deposits of any Competing Qualified Bidder shall be forfeited if any such Competing Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures and the Debtors are not in violation of these Bidding Procedures.  The Debtors and their estates shall be entitled to retain the Competing Qualified Bidder's Earnest Money Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of the Competing Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid. In the event that a Competing Qualified Bidder's Earnest Money Deposit is deemed forfeited, such Competing Qualified Bidder's Earnest Money Deposit shall be released by the Escrow Agent by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after receipt of written notice to the Escrow Agent by an authorized office of the Debtors stating that the applicable Competing Qualified Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Qualified Bid.

The Earnest Money Deposit of the Backup Bidder shall be returned to the Backup Bidder by the Escrow Agent on the date that is the earlier of one (1) business day after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.  If the Successful Bidder timely closes its winning transaction, its Earnest Money Deposit shall be credited towards its purchase price.

Upon the return of the Earnest Money Deposit, the applicable Competing Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors and the Escrow Agent will not have any obligation to return the Earnest Money Deposit deposited by such Successful Bidder, which may be retained by the Debtors' estates as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed Alternate Transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

IX. **Consultation Parties**.

Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.  The term "Consultation Parties" as used in these Bidding Procedures shall mean (a) the Administrative Agent for the DIP Lenders (and its advisors), and (b) the Administrative Agent for the Prepetition Lenders (and its advisors). During any period in which a Consultation Party or an affiliate thereof (i) has submitted a Qualified Bid and has become a Qualified Bidder hereunder, or (ii) submits (or indicates its intent to submit) a credit bid, such Consultation Party shall no longer be considered a Consultation Party for purposes of these Bidding Procedures unless and until such party unequivocally revokes its Bid and waives its right to continue in the Auction process.

X. **Free and Clear Sale**.

Except as otherwise provided in the Stalking Horse Bid Agreement, the applicable purchase agreement of a different Successful Bidder, or the Sale Order, all of the Debtors' rights, title, and interests in the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Encumbrances") in accordance with section 363 of the Bankruptcy Code and any definitive agreement entered into by the Debtors with the Successful Bidder with respect to a Sale, with such Encumbrances to attach to the net proceeds (if any) of the sale of the Purchased Assets.

XI. **Fiduciary Duties**.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law.

XII. **Reservation of Rights**.

Except as otherwise provided in Stalking Horse Bid Agreement, or the Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine at any time, whether before, during or after the Auction, in the exercise of the Debtors' business judgment (in consultation with the Consultation Parties) to: (a) determine which Bidders are Competing Qualified Bidders; (b) determine which Bids are Competing Qualified Bids and reject any or all Bids or Competing Qualified Bids; (c) determine which Competing Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Stalking Horse Bidder; (f) modify these Bidding Procedures and/or implement additional procedural rules that the Debtors determine will better promote the goals of the bidding process, including but not limited to adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (g) extend the deadlines set forth in these Bidding Procedures; and (h) adjourn or cancel the Auction at the

18

Auction and/or the Sale Hearing in open court without further notice or by filing a notice on the docket (in consultation with the Stalking Horse Bidder and the Consultation Parties).

19

## Schedule 1

## SUDs in the Stalking Horse Bid

| # | Debtor | Doing Business As (d/b/a) | Inpatient or Outpatient | Street Address | City | State | Zip Code |
|---|--------|--------------------------|-------------------------|----------------|------|-------|----------|
| 1 | Union Fresh Start LLC | Serenity at Summit | Inpatient | 1000 Galloping Hill Road | Union | NJ | 07083 |
| 2 | Summit Behavioral Health Limited Liability Company | Summit Behavioral Health | Outpatient | 4065 Quakerbridge Road Suite 102 | Princeton Junction | NJ | 08550 |
| 3 | SBH Haverhill, LLC | Serenity at Summit | Inpatient | 61 Brown Street | Haverhill | MA | 01830 |

11843540-15

## EXHIBIT "2"

### Bidding Procedures Key Dates

### Key Dates

| Event | Date |
|---|---|
| Hearing on the Motion for Bidding Procedures | March 6, 2023 at 11:00 a.m. (prevailing Eastern Time) |
| Service of (i) Bidding Procedures Order, and (ii) Assumption Notice | Within one (1) business day after the Bankruptcy Court's entry of the Bidding Procedures Order. |
| Contract Objection Deadline | **March 21, 2023 at 4:00 p.m.** (prevailing Eastern Time) |
| Sale Objection Deadline | **March 21, 2023 at 4:00 p.m.** (prevailing Eastern Time) |
| Bid Deadline | **March 23, 2023 at 5:00 p.m.** (prevailing Eastern Time) |
| Notice of No Auction to be Held (if applicable) | **March 26, 2023 at 3:00 p.m.** (prevailing Eastern Time) |
| Notification of Auction Baseline Bid to all Competing Qualified Bidders | **March 26, 2023 at 5:00 p.m.** (prevailing Eastern Time) |
| Auction | **March 27, 2023 at 10:00 a.m.** (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date. If an Auction is to be held, it shall take place at the offices of the Debtors' counsel, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131), and/or by electronic means (e.g., Zoom). |
| Debtors File Notice Identifying the Successful Bidder and any Backup Bidders | Within one (1) business days following the conclusion of the Auction. |
| Sale Hearing | **March 28, 2023 at 10:00 a.m.** (prevailing Eastern Time), subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court. |
| Adequate Assurance Objection (in the event the Stalking Horse Bidder is not the Successful Bidder) | At or before the Sale Hearing. |
| Deadline to Close the Sale | **April 19, 2023**, subject to the right of the Debtors, in the reasonable exercise of their business judgment and the consent of the Stalking Horse Bidder, to agree to a later date. |

**<u>EXHIBIT "3"</u>**

**Notice of Sale of Certain Assets at Auction**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                        Case No. 23-10945-PDR
GROUP, LLC, *et al.*,[1]
                                                (Jointly Administered)
        Debtors.
_____/

## NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE THAT:

1.      Pursuant to the *Order Granting Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. __] (the "Bidding Procedures Order")[2] entered by the United States Bankruptcy Court for the Southern District of Florida (the "Court") on March __, 2023, three of the above-captioned, affiliated, debtors and debtors-in-possession (each, a "Seller" and collectively, the "Sellers", and together with the remaining above-captioned, affiliated, debtors and debtors-in-possession, collectively, the "Debtors"), have entered into an *Asset Purchase Agreement*, dated February 19, 2023 [ECF No. 111] (the "Stalking Horse Bid Agreement") with Delphi Lender AcquisitionCo LLC (together with

---

[1]     The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309. The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

[2]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them, as applicable, in the Bidding Procedures Order, the Motion (as defined in the Bidding Procedures Order) or the Stalking Horse Bid Agreement (as defined in the Bidding Procedures Order).

each of its permitted successors, assigns and designees, the "Stalking Horse Bidder"), DR Parent, LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Parent"), and Brightwood Loan Services LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Administrative Agent"), for the (the "Sale") of three of the Debtors' inpatient and outpatient substance use disorder treatment facilities (each, a "SUD" and collectively, the "SUDs") located in Massachusetts and New Jersey, identified on **Schedule 1** hereof, and all related assets (collectively, the "Purchased Assets"), subject to a competitive bidding process as set forth in the Bidding Procedures Order.

2.      Copies of (i) the Motion, (ii) the Stalking Horse Bid Agreement, (iii) the proposed Sale Order, (iv) the Bidding Procedures, and (v) the Bidding Procedures Order can be obtained by contacting the Debtors at either (i) the Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com), or (ii) *the bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com).

3.      All interested parties are invited to make an offer to purchase the Purchased Assets in accordance with the terms and conditions approved by the Court (the "Bidding Procedures") by **5:00 p.m. (prevailing Eastern Time) on March 23, 2023**.  Pursuant to the Bidding Procedures, the Debtors may conduct an Auction for the Purchased Assets (the "Auction") beginning at **10:00 a.m. (prevailing Eastern Time) on March 27, 2023** at the offices of Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (or by other electronic means (e.g., Zoom)), or such later time or other place as the Debtors notify all Competing Qualified Bidders who have submitted Competing Qualified Bids, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date.  Interested bidders are encouraged to read the Bidding Procedures carefully and, for further information, are invited to contact the bankruptcy counsel for the Debtors at Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com) and Robin J. Rubens, Esq. (rrubens@bergersingerman.com), or the Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com).

4.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.

5.      If no Auction is held, the Debtors will file a notice **no later than 3:00 p.m. (prevailing Eastern Time) on March 26, 2023** with the Court in the above-referenced lead case of the Debtors' bankruptcy cases stating that there will be no Auction (the notice will be posted at the Court's website https://ecf.flsb.uscourts.gov/ (which requires a court-issued login and passcode to access the notice), and a copy of the notice will be posted on the case website for the Debtors which may be accessed free of charge at https://dm.epiq11.com/case/delphihealth/info).  The Debtors will seek approval of the Sale of the Purchased Assets to the Stalking Horse Bidder at a hearing before the Court proposed to be held, in Courtroom 301, United States Courthouse, 299

East Broward Blvd., Ft. Lauderdale, Florida 33301, before the Honorable Peter D. Russin, United States Bankruptcy Judge, at **10:00 a.m. (prevailing Eastern Time) on March 28, 2023** (the "Sale Hearing").  The Sale Hearing may be adjourned without notice other than adjournment in open court or as identified on the agenda, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Sale Hearing to a later date, subject to the availability of the Court.  Any party opposing the relief sought at the Sale Hearing must appear at the Sale Hearing or any objections or defenses may be deemed waived.   You are reminded that Local Rule 5072-2 restricts the entry of cellular telephones, cameras, recording devices or other electronic devices (such as computers or MP3 players) into the Courthouse absent a specific order of authorization issued beforehand by the presiding judge, a valid Florida Bar identification card, or *pro hac vice* order.  Please take notice that as an additional security measure a photo ID is required for entry into the Courthouse.

      6.    **Objections, if any, to the proposed Sale and/or the sale of the Purchased Assets to the Successful Bidder and the transaction contemplated by the Stalking Horse Bid Agreement must be: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before 4:00 p.m. (prevailing Eastern Time) on March 21, 2023 (the "Sale Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon**: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (i) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); and (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130.

      7.    This notice is qualified in its entirety by the Bidding Procedures Order.

Dated: March __, 2023  
Miami, Florida

**BERGER SINGERMAN LLP**  
*Counsel for the Debtors and*  
*Debtors-in-Possession*  
1450 Brickell Avenue, Suite 1900  
Miami, Florida 33131  
Telephone: (305) 755-9500  
Facsimile: (305) 714-4340

By:   <u>Christopher Andrew Jarvinen</u>  
      Paul Steven Singerman  
      Florida Bar No. 0378860  
      singerman@bergersingerman.com  
      Christopher Andrew Jarvinen  
      Florida Bar No. 021745  
      cjarvinen@bergersingerman.com

**Schedule 1**

**SUDs in the Stalking Horse Bid**

| # | Debtor | Doing Business As (d/b/a) | Inpatient or Outpatient | Street Address | City | State | Zip Code |
|---|--------|--------------------------|-------------------------|----------------|------|-------|----------|
| 1 | Union Fresh Start LLC | Serenity at Summit | Inpatient | 1000 Galloping Hill Road | Union | NJ | 07083 |
| 2 | Summit Behavioral Health Limited Liability Company | Summit Behavioral Health | Outpatient | 4065 Quakerbridge Road Suite 102 | Princeton Junction | NJ | 08550 |
| 3 | SBH Haverhill, LLC | Serenity at Summit | Inpatient | 61 Brown Street | Haverhill | MA | 01830 |

## EXHIBIT "4"

**Notice of Assumption and Cure Amount with Respect to Available Contracts
(i.e., Executory Contracts or Unexpired Lease Potentially to be Assumed and Assigned in
Connection with Sale of Debtors' Assets)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                          Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                                         Case No. 23-10945-PDR
GROUP, LLC, *et al.*,[3]

                                                                (Jointly Administered)

    Debtors.

_____/

**NOTICE OF ASSUMPTION AND CURE AMOUNT WITH RESPECT TO
EXECUTORY CONTRACTS OR UNEXPIRED LEASES POTENTIALLY TO BE
<u>ASSUMED AND ASSIGNED IN CONNECTION WITH SALE OF DEBTORS' ASSETS</u>**

| |
|---|
| **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.** |

PLEASE TAKE NOTICE THAT:

    1.    Pursuant to the *Order Granting Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. __] (the

---

[3]    The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309. The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery, LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center, LLC (7655), (vii) California Vistas Addiction Treatment, LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery, LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing, LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP, LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health, LLC (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start, LLC (6841).

"Bidding Procedures Order")[4] entered by the United States Bankruptcy Court for the Southern District of Florida (the "Court") on March __, 2023, three of the above-captioned, affiliated, debtors and debtors-in-possession (each, a "Seller" and collectively, the "Sellers", and together with the remaining affiliated, debtors and debtors-in-possession, collectively, the "Debtors"), have entered into an *Asset Purchase Agreement*, dated February 19, 2023 [ECF No. 111] (the "Stalking Horse Bid Agreement") with Delphi Lender AcquisitionCo LLC (together with each of its permitted successors, assigns and designees, the "Stalking Horse Bidder"), DR Parent, LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Parent"), and Brightwood Loan Services LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Administrative Agent"), for the (the "Sale") of three of the Debtors' inpatient and outpatient substance use disorder treatment facilities (each, a "SUD" and collectively, the "SUDs") located in Massachusetts and New Jersey, identified on **Schedule 1** hereof, and all related assets (collectively, the "Purchased Assets"), subject to a competitive bidding process as set forth in the Bidding Procedures Order.

2.      Copies of (i) the Motion, (ii) the Stalking Horse Bid Agreement, (iii) the proposed Sale Order, (iv) the Bidding Procedures, and (v) the Bidding Procedures Order can be obtained by contacting the Debtors at either (i) the Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com), or (ii) *the bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com).

3.      The Debtors hereby provide notice of their intent to potentially assume and assign the prepetition executory contracts or unexpired leases (collectively, the "Available Contracts") listed on **Exhibit "A"** hereto to the Stalking Horse Bidder or the Successful Bidder, as the case may be.  The inclusion of any executory contract or unexpired lease on **Exhibit "A"** hereto does not require or guarantee that such executory contract or unexpired lease will be assumed or assigned (i.e., be an Assumed Contract under the Stalking Horse Bid Agreement), or that said contact or lease is executory, and all rights of the Debtors with respect thereto are reserved.

4.      Pursuant to the terms of the Stalking Horse Bid Agreement (or any asset sale and purchase agreement that the Debtors may enter into with the Successful Bidder), the Debtors may seek to assume and assign one or more of the Available Contracts to the Stalking Horse Bidder or the Successful Bidder, as the case may be, subject to approval at the hearing proposed to be held at **10:00 a.m. (prevailing Eastern Time) on March 28, 2023** (the "Sale Hearing") before the Court.  On the date of the closing of the transactions contemplated by the Stalking Horse Bid Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, the Debtors will pay the amount the Debtors' records reflect is owing for prepetition arrearages, if any, as set forth on **Exhibit A** hereto (the "Cure Amount").  The Debtors' records reflect that all post-petition amounts owing under the Available Contracts have been paid and will continue to be paid until the assumption and assignment of the Available Contracts (i.e., if an Available Contract becomes

---

[4]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them, as applicable, in the Bidding Procedures Order, the Motion (as defined in the Bidding Procedures Order) or the Stalking Horse Bid Agreement (as defined in the Bidding Procedures Order).

an Assumed Contract) and that, other than the Cure Amount, there are no other defaults under the Assumed Contracts.

5.  **Objections, if any, to the Cure Amount or to the assumption and assignment of an Available Contract to the Stalking Horse Bidder or a different Successful Bidder, including with respect to adequate assurance of future performance of the Stalking Horse Bidder or a different Successful Bidder (collectively, a "Contract Objection"), must: (a) be in writing; (b) state the basis of such objection with specificity, including, if applicable, the Cure Amount asserted to be required; (c) include appropriate documentation thereof; (d) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (e) be filed with the Court on or before 4:00 p.m. (prevailing Eastern Time) on March 21, 2023 (the "Contract Objection Deadline"); and (e) be served, so as to be received the same day as the objection is filed, upon**: (1) *the Debtors*, c/o (i) Interim Chief Executive Officer, c/o Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, New York 10017 (Attn: Edward A. Phillips, ephillips@getzlerhenrich.com) and (ii) *bankruptcy counsel for the Debtors*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com), Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com), and Robin J. Rubens, Esq. (rrubens@bergersingerman.com)); (2) *counsel for (i) the Administrative Agent for the Prepetition Lenders, (ii) the Administrative Agent for the DIP Lenders, and (iii) the Stalking Horse Bidder*, King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, New York 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Timothy M. Fesenmyer, Esq. (tfesenmyer@kslaw.com), and Robert Nussbaum, Esq. (rnussbaum@kslaw.com)); and (3) *the Office of the United States Trustee*, 51 SW First Avenue, Room 1204, Miami, Florida 33130.

6.  **Objections, if any, related solely to the adequate assurance of future performance provided by the Successful Bidder, if the Successful Bidder is not the Stalking Horse Bidder, must be made prior to or at the Sale Hearing.**

7.  If an objection to the assumption and assignment of an Available Contract is timely submitted in accordance with paragraphs 5 and 6 hereof, a hearing with respect to the objection will be held before the Court at the Sale Hearing, or as may be continued by the Debtors and noticed on the agenda filed on the docket, or such date and time as the Court may schedule.  If no objection is timely received, the Non-Debtor Counterparty to the Available Contract will be deemed to have consented to the assumption and assignment of the Available Contract with the Cure Amount set forth herein and the Non-Debtor Counterparty will forever will be barred from asserting any other claims, including but not limited to the propriety or effectiveness of the assumption and assignment of the Available Contract, against the Debtors, the Stalking Horse Bidder, the Successful Bidder or the property of any of them in respect of the Available Contract.

8.  Pursuant to Bankruptcy Code section 365, there is adequate assurance of future performance that the Cure Amount set forth in the Assumption Notice will be paid in accordance with the terms of the Stalking Horse Bid Agreement and the Sale Order.  There is adequate assurance of the Stalking Horse Bidder's future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Stalking Horse Bidder.  If necessary, the Debtors will adduce facts at the hearing on any objection demonstrating the financial wherewithal of the Successful Bidder, and its willingness and ability

to perform under the Available Contracts to be assumed and assigned to it (i.e., the Assumed Contracts).

9.     If an objection to the Cure Amount is timely filed and received and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365, if any, with respect to such objection will be determined at a hearing to be requested by the Debtors.  At the Stalking Horse Bidder's or the Successful Bidder's discretion, and provided the Debtors escrow the disputed portion of the Cure Amount, the hearing regarding the Cure Amount may be continued until after the Closing Date and the Available Contract(s) subjected to such Cure Amount shall, with the consent of the Stalking Horse Bidder or the Successful Bidder, be assumed and assigned to the Stalking Horse Bidder or the Successful Bidder at or following the closing of the Sale per the procedures set forth in Section 2.5 of the Stalking Horse Bid Agreement and the Sale Order.

10.     **If no objection is timely received, the Cure Amount set forth in Exhibit "A" hereto will be controlling, notwithstanding anything to the contrary in any Available Contract or any other related document, and the Non-Debtor Counterparty to the Available Contract will be deemed to have consented to the Cure Amount for the purposes of the Sale and will be forever barred from asserting any other claims in respect of such Available Contract or the Cure Amount against the Debtors, the Stalking Horse Bidder, or the Successful Bidder (as appropriate), or the property of any of them.  The failure of any objecting person or entity to timely file its objection will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Sale or the Debtors' consummation of and performance under the Stalking Horse Bid Agreement (including the transfer of the Purchased Assets and the Assumed Contracts free and clear of all claims, liens, encumbrances, and interests), if authorized by the Court**.

11.     **Unless a Non-Debtor Counterparty to any Available Contract files a timely Contract Objection to the assumption and assignment of the applicable Available Contract by the Stalking Horse Bidder or the other Successful Bidder, then such Non-Debtor Counterparty shall be deemed to have (i) consented to the assumption and assignment of the applicable Available Contract to the Stalking Horse Bidder or the other Successful Bidder with the Cure Amount set forth in the Assumption Notice and (ii) waived and released any and all other rights to object to the Cure Amount or the assumption and assignment of the Available Contract to the Stalking Horse Bidder or the other Successful Bidder**.

[This section intentionally left blank]

12.     Prior to the date of the closing of the Sale, the Debtors may amend their decision with respect to the assumption and assignment of any Available Contract, including amending the Cure Amount, and provide a new notice amending the information provided in this notice, including, without limitation, a determination not to assume certain contracts.

Dated: March ___, 2023
Miami, Florida

**BERGER SINGERMAN LLP**
*Counsel for the Debtors and*
*Debtors-in-Possession*
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:    Christopher Andrew Jarvinen
       Paul Steven Singerman
       Florida Bar No. 0378860
       singerman@bergersingerman.com
       Christopher Andrew Jarvinen
       Florida Bar No. 021745
       cjarvinen@bergersingerman.com

## Schedule 1

## SUDs in the Stalking Horse Bid

| # | Debtor | Doing Business As (d/b/a) | Inpatient or Outpatient | Street Address | City | State | Zip Code |
|---|--------|--------------------------|-------------------------|----------------|------|-------|----------|
| 1 | Union Fresh Start LLC | Serenity at Summit | Inpatient | 1000 Galloping Hill Road | Union | NJ | 07083 |
| 2 | Summit Behavioral Health Limited Liability Company | Summit Behavioral Health | Outpatient | 4065 Quakerbridge Road Suite 102 | Princeton Junction | NJ | 08550 |
| 3 | SBH Haverhill, LLC | Serenity at Summit | Inpatient | 61 Brown Street | Haverhill | MA | 01830 |

**<u>Exhibit "A"</u>**

**Available Contracts and Cure Amounts**