

**ORDERED in the Southern District of Florida on March 29, 2023.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| DELPHI BEHAVIORAL HEALTH GROUP, LLC, *et al.*,[1] | Case No. 23-10945-PDR |
| | (Jointly Administered) |
| Debtors. | |

_____/

### ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING STALKING HORSE BID AGREEMENT AND AUTHORIZING

---

[1]    The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474); (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

**THE SALE OF CERTAIN ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL CLAIMS AND ENCUMBRANCES EXCEPT FOR PERMITTED LIENS AND ASSUMED LIABILITIES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court on March 28, 2023 at 10:00 a.m. (the "Sale Hearing") upon the *Debtors' Motion for Entry of an Order (I) Approving Stalking Horse Bid Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Claims and Liens Except for Permitted Liens, Encumbrances and Assumed Liabilities, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [ECF No. 23] (the "Sale Motion")[2] filed by the above-captioned, affiliated, debtors and debtors-in-possession (collectively, the "Debtors"), by the authority granted to the Debtors by chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The Sale Motion requests the entry of an order (this "Order"): (i) approving that certain *Asset Purchase Agreement*, dated February 19, 2023 (as may be amended or otherwise modified from time to time and including all related instruments, documents, exhibits, schedules, and agreements thereto, collectively, the "Stalking Horse Bid Agreement"), substantially in the form attached as Exhibit "A" to the *Debtors' Notice of Filing (I) Revised Stalking Horse Bid Agreement and (II) Sellers' Disclosure Schedules* [ECF No. 111][3] (the "Stalking Horse Bid Agreement/Schedules Notice"),

---

[2]    Any capitalized term not explicitly defined herein shall have the meaning ascribed to it, as applicable, in (i) the Sale Motion, (ii) the Bidding Procedures Motion (as defined herein), (iii) the Bidding Procedures (as defined herein), or (iv) the Stalking Horse Bid Agreement (as defined herein).

[3]    The Stalking Horse Bid Agreement also includes the schedules filed as a part of the (i) *Debtors' Notice of Filing Schedule Supplement to Sellers' Disclosure Schedules*, filed on March 6, 2023 [ECF No. 182], (ii) the *Debtors' Notice of Filing Second Schedule Supplement to Sellers' Disclosure Schedules*, filed on March 24, 2023 [ECF No. 234], (iii) the *Debtors' Notice of Filing Third Schedule Supplement to Sellers' Disclosure Schedules*, filed on March 28, 2023 [ECF No. 267], and (iv) such other Schedule Supplements (as defined in the Stalking Horse Bid Agreement) that the Debtors may file from time to time prior to Closing.

between and among (a) three of the above-captioned, affiliated, debtors and debtors-in-possession (each, a "Seller" and collectively, the "Sellers"),[4] (b) Delphi Lender AcquisitionCo LLC (together with each of its permitted successors, assigns and designees, the "Stalking Horse Bidder"), (c) DR Parent, LLC (solely for the purposes stated expressly in the Stalking Horse Bid Agreement, the "Parent"), and (d) Brightwood Loan Services LLC, in its capacity as the administrative agent under that certain Prepetition Credit Agreement (the "Administrative Agent"), signing solely for the purposes stated expressly in the Stalking Horse Bid Agreement, and authorizing the sale of the Purchased Assets outside of the ordinary course of business pursuant to the terms of the Stalking Horse Bid Agreement and this Order (the "Sale"); (ii) authorizing the Sale of the Purchased Assets to the Purchaser (defined herein) free and clear of all Liens, Claims, and Liabilities (each as defined in the Stalking Horse Bid Agreement), encumbrances, and other interests (together and collectively with the Liens, Claims, and Liabilities but, other than, as applicable, the Assumed Liabilities, the Permitted Liens and the Assumed Debt that the Stalking Horse Bidder has agreed to permit to survive the Closing pursuant to the express terms of the Stalking Horse Bid Agreement, the "Claims and Encumbrances"); (iii) authorizing the assumption and assignment of the Assumed Contracts; (iv) determining that the appointment of a consumer privacy ombudsman is not required; and (v) granting related relief, all as more fully set forth in the Sale Motion; and pursuant to this Court's *Order Granting Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to*

---

[4]    The Sellers are the following Debtors: (i) Union Fresh Start LLC (d/b/a Serenity at Summit); (ii) Summit Behavioral Health Limited Liability Company (d/b/a Summit Behavioral Health); and (iii) SBH Haverhill, LLC (d/b/a Serenity at Summit).

*Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (VIII) Granting Related Relief* [ECF No. 191] (the "Bidding Procedures Order"), this Court having authorized the applicable Debtors to enter into the Stalking Horse Bid Agreement pursuant to which the Stalking Horse Bidder (together with its permitted successors, designees and assigns, whether by sale, contribution, merger or otherwise, and each of their respective affiliates, collectively the "Purchaser") agreed to serve as the Stalking Horse Bidder with respect to the Purchased Assets, free and clear of any Claims and Encumbrances, with such sale to be in accordance with the terms and conditions of the Bidding Procedures Order and the Stalking Horse Bid Agreement; and the Bidding Procedures Order having authorized the Debtors to conduct, and approved the terms and conditions of, an auction, if applicable, as required and as set forth in the Bidding Procedures Order (the "Auction") to consider higher or otherwise better offers for the Purchased Assets, establishing a date for the Auction, and approving, among other things: (i) certain Bidding Procedures (the "Bidding Procedures") to be used in connection with the Auction, if applicable; (ii) the form and manner of notice of the Auction and Bidding Procedures; (iii) the form of Sale Notice (defined below); (iv) the form of Assumption Notice (defined below); (v) the procedures relating to the assumption and assignment of the Assumed Contracts; and (vi) the Expense Reimbursement); and this Court having established the date of the Sale Hearing; and *Oracle's Limited Objection to and Reservation of Rights Regarding: (1) Debtors' Motion for Entry of an Order (I) Approving Stalking Horse Bid Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Claims and Liens Except for Permitted*

4

*Liens, Encumbrances and Assumed Liabilities, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief; and (2) Notice of Assumption and Cure Amount With Respect to Executory Contracts or Unexpired Leases Potentially to be Assumed and Assigned in Connection with Sale of Debtors' Assets* [ECF No. 216] (the "Oracle Limited Objection") and the *Objection of NWI Haverhill Hospital LP to Notice of Assumption and Cure Amount with Respect to Executory Contracts or Unexpired Leases Potentially to be Assumed and Assigned in Connection with Sale of Debtors' Assets* (ECF No. 193) [ECF No. 231] ("Haverhill Objection", and together with the Oracle Limited Objection, collectively, the "Objections") having been settled, withdrawn or overruled; and this Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Sale Motion, the relief requested therein, and the Objections thereto, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties to the Sale Motion and the Objections having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in these bankruptcy cases; and this Court having found that the relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Sale and the Sale Motion and opportunity for a hearing on the Sale Motion, including the Sale Notice and the Assumption Notice, were appropriate and no other notice need be provided; and this Court having reviewed the Sale Motion, the Objections, and all related pleadings, and having heard the statements in support of the relief requested in the Sale Motion at the Sale Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the

relief granted herein; and upon all of the proceedings had before this Court and at the Sale Hearing, including the testimony of Harvey Tepner and the exhibits contained in the *Exhibit Register (Amended)* [ECF No. 269], each of which was admitted into evidence without objection; and after due deliberation and sufficient cause appearing therefor, does for the reasons stated in the Sale Motion and on the record of the Sale Hearing, as well as the findings of fact and conclusions of law made by the Court in its oral ruling announced on March 28, 2023, all of which are expressly incorporated herein in their entirety:

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      This Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Stalking Horse Bid Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).  Venue of these bankruptcy cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds

11848526-20

that there is no just reason for delay in the implementation of this Order, and expressly directs entry of this Order as set forth herein and the closing of all Transactions contemplated hereby without regard to any stay or delay in its implementation.

E.      The statutory and rule-based predicates for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) sections 105, 363, 365, 503 and 507 of the Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014 and (iii) Local Rules 2002-1(C)(2) and 6004-1.

F.      Proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding: the Sale Motion, the Auction, the Sale Hearing, and the Transactions contemplated by the Stalking Horse Bid Agreement, including, without limitation, the Sale of the Purchased Assets free and clear of the Claims and Encumbrances, have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008, and 9014, the Local Rules of the Court, the procedural due process requirements of the United States Constitution, in compliance with the Bidding Procedures Order and in accordance with the Debtors' fiduciary duties.  The Debtors also gave due and proper notice of the potential assumption and assignment of each executory Contract available to be assumed and assigned by the Debtors to the Purchaser to each non-debtor counter party under each such Contract (collectively, the "Non-Debtor Counterparties") as reflected on the *Notice of Assumption and Cure Amount with Respect to Executory Contracts or Unexpired Leases Potentially to be Assumed and Assigned in Connection with the Sale of Debtors' Assets*, filed on March 7, 2023 [ECF No. 193] (the "Assumption Notice").  Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Assumed Contracts are hereby deemed to consent to the relief granted herein unless otherwise provided in this Order.

7

No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Assumption Notice, or of the entry of this Order is necessary or shall be required.

G. The Debtors gave due and proper notice of the Sale by means of the *Notice of Sale of Certain Assets at Auction*, filed on March 7, 2023 (the "Sale Notice") [ECF No. 192]. The Sale Notice constituted good, sufficient, and appropriate notice of the Sale under the particular circumstances and no further notice need be given with respect to the proposed Sale. As provided by the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Purchased Assets, (ii) the Office of the United States Trustee for the Southern District of Florida, (iii) counsel to the Stalking Horse Bidder, (iv) counsel to the Administrative Agent for the Prepetition Lenders, (v) counsel to the Administrative Agent for the DIP Lenders, (vi) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002, (vii) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that to the Debtors' knowledge, as a result of the sale of the Purchased Assets, may reasonably have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets or any known interest in the relief requested in the Sale Motion, including the attorneys general for the states of California, Florida, Maryland, Massachusetts, and New Jersey, (viii) all counterparties to any executory contract or unexpired leases currently known to exist by the Debtors, including but not limited to, all Non-Debtor Counterparties to Assumed Contracts assumed and assigned pursuant to this Order; and (ix) all potential bidders previously identified or

11848526-20

otherwise known to the Debtors that heretofore entered into non-disclosure agreements with the Debtors with respect to the potential purchase of the Debtors' businesses and assets.  Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

H.    The Purchased Assets are property of the Debtors' estates and good title thereto is vested in the Debtors' estates.  Except as may be otherwise set forth in the Stalking Horse Bid Agreement, the Debtors are the sole and lawful owners of the Purchased Assets, and no other person has any ownership right, title, or interest therein.

I.    The Debtors, in a reasonable exercise of their business judgment, have demonstrated a sufficient basis and the existence of reasonable, appropriate and compelling circumstances requiring them to enter into the Stalking Horse Bid Agreement, to transfer the Purchased Assets and to assume and to assign the Assumed Contracts to the Purchaser under sections 363 and 365 of the Bankruptcy Code, and such actions are entirely fair and appropriate exercises of the Debtors' reasonable business judgment and in the best interests of the Debtors, their estates and their stakeholders.  The Debtors board of managers includes an additional independent manager (who is also the sole member of the Special Committee[5] to which such board's authority to authorize and to approve all restructuring matters has been delegated) who has complied with all of his fiduciary duties, and approval of the Sale to the Purchaser is a proper exercise of the Debtors' fiduciary duties.

---

[5]    As such term is defined in the *Declaration of Edward A. Phillips in Support of Chapter 11 Petitions and First Day Filings* [ECF No. 9] (the "First Day Declaration").  *See* First Day Declaration, ¶ 16.

J.      The Debtors, the Purchaser, and their respective professionals have complied, in good faith, in all respects with the Bidding Procedures Order, and the bidding process was free of any fraud, collusion, or unfair dealing.  As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration at or prior to the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded all potentially interested investors a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Purchased Assets, (b) provided all interested investors, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (c) considered any bids submitted on or before the deadline to submit bids as set forth in the Bidding Procedures (the "Bid Deadline").

K.      The Stalking Horse Bid Agreement was not entered into, and the Sale is not being consummated for the purpose of, hindering, delaying, or defrauding present or future creditors of the Debtors.  The Debtors and the Purchaser were each represented by separate and independent advisors throughout the negotiation of the terms of the Stalking Horse Bid Agreement.  All payments and other consideration to be made by the Purchaser in connection with the Transactions have been disclosed.  Neither the Debtors nor the Purchaser are proposing to consummate the Sale fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims whether under the Bankruptcy Code, under the laws of the United States, any state, territory, possession thereof, the District of Colombia or otherwise.

L.      (i) The Debtors and their advisors conducted a fair, extensive, and open sale process that complied with the Bidding Procedures and the Bidding Procedures Order in all respects; (ii)

11848526-20

the sale process and the Bidding Procedures set forth in the Bidding Procedures Order were (a) non-collusive, (b) substantively and procedurally fair to all parties in interest, (c) duly noticed, (d) provided a full, fair, and reasonable opportunity for any potentially interested party to make an offer to purchase the Purchased Assets, and (e) resulted in a fair bidding process; (iii) the process conducted by the Debtors pursuant to the Bidding Procedures obtained the highest or otherwise best value for the Purchased Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result; (iv) the Purchaser has put forth the highest or otherwise best offer for the Purchased Assets pursuant to the terms of the Bidding Procedures Order; (v) the Purchase Price received by the Debtors for the Purchased Assets, after considering all of the relevant facts and circumstances of the Sale as a whole, is fair; and (vi) the Bidding Procedures obtained the highest or best value for the Purchased Assets for the Debtors and their estates.

M.      The offer of the Purchaser, upon the terms and conditions set forth in the Stalking Horse Bid Agreement, including the form and total consideration (including the Credit Bid Amount) to be realized by the Debtors pursuant to the Stalking Horse Bid Agreement, (i) is the highest or best offer received by the Debtors and their estates, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors' stakeholders and estates, (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets, and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.  Unless the Sale is concluded expeditiously as provided for in the Motion and pursuant to the Stalking Horse Bid Agreement, recoveries of creditors will be diminished.

N.      The Debtors received no Competing Qualified Bids (other than the Stalking Horse Bid).  As such, the Auction was cancelled and the Debtors identified the bid by the Purchaser as the highest or otherwise best offer for the Purchased Assets pursuant to the terms of the Bidding Procedures Order.  The Debtors have provided reasonable and adequate notice of the cancellation of the Auction and of the Purchaser being designated the Successful Bidder pursuant to the terms of the Bidding Procedures Order.

O.      As set forth in paragraph D of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Senior Secured Lenders, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [ECF No. 189] (the "Final DIP Order"), the Debtors have stipulated (i) to the Senior Secured Lenders' and the Prepetition Agent's valid, binding, perfected and enforceable, first priority liens over the Prepetition Collateral (as defined in the Final DIP Order) that secure the Senior Secured Loan Obligations (as defined in the Final DIP Order) and (ii) that the Prepetition Agent (as defined in the Final DIP Order) has the right to credit bid the entirety of the Senior Secured Loan Obligations pursuant to section 363(k) of the Bankruptcy Code without further challenges from the Debtors or any other party in interest.

P.      For the avoidance of doubt, nothing herein shall affect the status of the DIP Agent, DIP Lenders, Senior Credit Agreement Lenders or the Senior Credit Agreement Agent as secured creditors in so far as claims and relevant treatment in the Debtors' Joint Plan of Liquidation  [ECF No. 103] (the "Plan").

Q.      The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and relevant decisions and is entitled to the protections of section 363(m) and (n) of the Bankruptcy Code with respect to the Purchased Assets.  The sales process engaged in by the

Debtors and the Purchaser, including, without limitation, the Auction and the negotiation and execution of the Stalking Horse Bid Agreement, was in good faith, based upon arm's length bargaining, without collusion or fraud of any kind and was substantively and procedurally fair to all parties in interest in all respects.  Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Stalking Horse Bid Agreement or to the consummation of the Sale and transfer of the Purchased Assets and the Assumed Contracts to the Purchaser.  The Purchaser is purchasing the Purchased Assets (including the Assumed Contracts) in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser fully complied with all of the provisions of the Bankruptcy Code, the Bidding Procedures Order, and the Bidding Procedures; (iii) there was no fraud, collusion, or unfair dealing in connection with the bidding process and the sale of the Purchased Assets; (iv) the Purchaser has fully disclosed all of its connections with the Debtors; (v) all consideration to be paid or provided to the Debtors by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (vi) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vii) the negotiations and execution of the Stalking Horse Bid Agreement and any other agreements or instruments related thereto were in good faith and free from any collusion, fraud, or unfair dealing.  The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale, and the Purchaser would not consummate the Sale without such protections.

R.      The Debtors have full corporate power and authority to execute the Stalking Horse Bid Agreement (and all other documents contemplated thereby) and to consummate the Transactions contemplated therein, and the sale or transfer of the Purchased Assets has been duly and validly authorized by all necessary corporate actions on the part of the Debtors' estates.  No consents or approvals, other than as may be expressly provided for in the Stalking Horse Bid Agreement, are required by the Debtors' estates to consummate such Transactions.

S.      The Debtors have advanced sound business reasons for entering into the Stalking Horse Bid Agreement and transferring, or assuming and assigning (with respect to the Assumed Contracts), the Purchased Assets, as more fully set forth in the Sale Motion and the Stalking Horse Bid Agreement and as demonstrated at the Sale Hearing, and it is entirely fair to all parties in interest, and a reasonable exercise by the Debtors of the Debtors' business judgment to transfer, or assume and assign (with respect to the Assumed Contracts), the Purchased Assets to the Purchaser and to consummate the Transactions contemplated by the Stalking Horse Bid Agreement with the Purchaser.  The Sale and the Purchase Price were negotiated in good faith and are entirely fair and the product of good faith negotiations among the parties.  Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Purchaser under this Stalking Horse Bid Agreement and this Order and the assumption and assignment of the Assumed Contracts represent a legal, valid, and effective transfer of the Purchased Assets to the Purchaser, with all right, title, and interest of the Debtors to the Purchased Assets free and clear of any Claims and Encumbrances.  The Purchaser shall not assume or become liable for any Claims and Encumbrances relating to the Purchased Assets being sold by the Debtors.

T.      Except with respect to the Permitted Liens that the Stalking Horse Bidder has agreed to permit to survive the Closing pursuant to the express terms of the Stalking Horse Bid Agreement, the Liens shall attach to the consideration to be received by the Debtors (if any) in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the Transactions contemplated by the Stalking Horse Bid Agreement (the "Closing"), and the Purchaser would not enter into the Stalking Horse Bid Agreement to purchase the Purchased Assets or proceed to the Closing otherwise.

U.      The transfer of the Purchased Assets to the Purchaser free and clear of any Claims and Encumbrances will not result in any undue burden or prejudice to any holders of any Liens, because all such Liens of any kind or nature whatsoever shall attach to the net proceeds (if any) of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force, and effect as existed prior to Closing as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens of any kind or nature whatsoever against or in any of the Debtors and/or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens (subject to the Permitted Liens that the Stalking Horse Bidder has agreed to permit to survive the Closing pursuant to the express terms of the Stalking Horse Bid Agreement) against the Purchaser Parties (as defined below), any of their respective assets, property, successors or assigns, or the Purchased Assets.

V.      The Debtors may sell the Purchased Assets free and clear of any Claims and Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  The (i) holders of Liens and (ii) the Non-Debtor Counterparties, who did not object, or who withdrew their objections, to the

sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Except as set forth below, any objections to the Sale Motion, including objections by the Non-Debtor Counterparties, have been overruled or resolved. Those holders of Liens who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the proceeds, if any, of the Sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Liens, with such Liens being subject to treatment as prescribed in an order of this Court, including an order confirming any chapter 11 plan.

W.    The Purchaser would not have entered into the Stalking Horse Bid Agreement and would not consummate the Transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, (i) if the sale of the Purchased Assets was not free and clear of all Claims and Encumbrances, including, without limitation, any rights, Liens, or Claims based on any successor or transferee liability, or (ii) if Purchaser would, or in the future could, be liable for any Claims and Encumbrances, including, without limitation, any rights, Liens, or Claims based on any successor or transferee liability. The Purchaser will not consummate the Transactions unless this Court expressly orders that none of the Purchaser, its affiliates, or their respective lenders or financing sources, and each of their respective present or contemplated members or shareholders (the "Purchaser Parties"), will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims and Encumbrances, including rights or claims based on any successor or transferee liability.

X.    Not selling the Purchased Assets free and clear of all Claims and Encumbrances would adversely impact the Debtors' estates, and the sale of Purchased Assets other than one free

16

and clear of all Claims and Encumbrances would be of substantially less value to the Debtors' estates.

Y.      The sale of the Purchased Assets outside of a plan of reorganization pursuant to the Stalking Horse Bid Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan or reorganization of the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

Z.      The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including subsections 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

AA.      The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Stalking Horse Bid Agreement and is in the best interests of the Debtors, their estates, their stakeholders and other parties in interest, and represents the exercise by the Debtors of their sound and prudent business judgment on behalf of the Debtors' estates.

BB.      The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary.

CC.      The notice and opportunity to object provided to all parties in interest, as set forth in the Bidding Procedures Order and the Stalking Horse Bid Agreement, fairly and reasonably protect any rights of any party in interest.

DD.      The Debtors and the Purchaser will be acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the Transactions contemplated by the Stalking Horse Bid Agreement at any time on or after the entry of this Order and cause has been shown as to why

17

this Order should not be subject to any stay, including, without limitation, as provided by Bankruptcy Rules 6004(h) and 6006(d) and any applicable Local Rule.

EE.     The Transactions contemplated under the Stalking Horse Bid Agreement do not amount to a consolidation, merger, or *de facto* merger of the Purchaser, on the one hand, and the Debtors and/or the Debtors' estates, on the other, there is not substantial continuity between the Purchaser or the Purchaser Parties, on the one hand, and the Debtors and/or the Debtors' estates, on the other, there is no continuity of enterprise between the Debtors and/or the Debtors' estates and the Purchaser or the Purchaser Parties, neither are the Purchaser or the Purchaser Parties an alter ego or a mere continuation of the Debtors or the Debtors' estates, and the Purchaser and the Purchaser Parties are not successors to the Debtors or the Debtors' estates.

FF.     The total consideration provided by the Purchaser for the Purchased Assets constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) entirely fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, entirely fair consideration, and fair value under any other applicable laws, including the laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

GG.     Time is of the essence in consummating the Sale.  In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Stalking Horse Bid Agreement.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

HH.     After the Closing, the Debtors shall have no liability whatsoever with respect to the Assumed Liabilities.  The Purchaser and the Purchaser Parties shall have no obligations with respect to any Claims and Encumbrances of the Debtors.

11848526-20

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale Motion is **GRANTED** as set forth herein and the Stalking Horse Bid Agreement is approved, subject to the terms and conditions contained herein.

2.      Except as otherwise set forth herein, all objections, responses, reservations of rights, and requests for continuance concerning the Sale Motion, including but not limited to the Objections, are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response, reservation of rights, or request for continuance, including but not limited to the Objections, was not otherwise withdrawn, waived, or settled, such are hereby overruled and denied on the merits with prejudice.

3.      Notice of the Sale Hearing including as set forth in the Sale Notice and the Assumption Notice was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, and 6006, the Local Rules, and the Bidding Procedures Order and no further notice is required.

4.      The Debtors, in transferring the Purchased Assets pursuant to this Order and section 363 of the Bankruptcy Code, are deemed, under section 1107(a) of the Bankruptcy Code, to have all rights and powers to perform all the functions and duties of a trustee serving in a bankruptcy case, and will transfer the property pursuant to this Order.

5.      Subject to the terms of this Order, the sale of the Purchased Assets, the terms and conditions of the Stalking Horse Bid Agreement (including all schedules and exhibits affixed thereto), and the Transactions contemplated thereby shall be, and hereby are, authorized and approved in all respects, and shall be enforceable against each of the Parties thereto.

11848526-20

6.      The failure specifically to include any particular provisions of the Stalking Horse Bid Agreement or any of the related documents, ancillary documents, or instruments executed in connection therewith in this Order shall not diminish or impair the effectiveness and force of such provision, document, Stalking Horse Bid Agreement, or instrument, it being the intent of the Court, the Debtors, and the Purchaser, that the Stalking Horse Bid Agreement and each related document, ancillary document, or instrument be authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with the Stalking Horse Bid Agreement and this Order prior to the Closing Date, and each such provision of the Stalking Horse Bid Agreement shall be enforceable by or against each of the Parties thereto.

7.      The Stalking Horse Bid Agreement and any related ancillary document(s), or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided, that any such modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Stalking Horse Bid Agreement and any related ancillary documents.

8.      The sale of the Purchased Assets and the consideration provided by the Purchaser under the Stalking Horse Bid Agreement are entirely fair and reasonable, represent the highest or otherwise best offer for the Purchased Assets and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law as the result of a fair bidding process.  The Sale of the Purchased Assets to the Purchaser is a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent of any entity.

9.      The Purchaser is hereby granted and is entitled to all the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code, including with respect to the

11848526-20

transfer of the Assumed Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

10.     The Debtors and their employees, professional advisors, and agents shall be, and hereby are, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Stalking Horse Bid Agreement together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Stalking Horse Bid Agreement, this Order, and/or the sale of the Purchased Assets, including, without limitation, the certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets, or Assumed Liabilities as may be necessary or appropriate to the performance of the obligations of the Debtors' estates in accordance with, or as contemplated by, the Stalking Horse Bid Agreement, without any further corporate action or orders of this Court.

11.     The Debtors and each other person or entity having duties or responsibilities under the Stalking Horse Bid Agreement, any agreements or instruments related thereto or this Order, and their respective directors, officers, managers, employees, members, agents, representatives, attorneys, and other retained professionals are authorized and empowered, subject to the terms and conditions contained in the Stalking Horse Bid Agreement and this Order, to carry out all of the provisions of the Stalking Horse Bid Agreement and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Stalking Horse Bid Agreement and any related agreements or instruments; to take any and all actions contemplated by the Stalking Horse Bid Agreement, any related

21

agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, each as applicable, and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Stalking Horse Bid Agreement, any related agreements or instruments, and this Order and the Transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, managers, employees, members, agents, representatives, and attorneys of such entities. The Interim Chief Executive Officer, on behalf of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors and the Purchaser are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Entity any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Transactions contemplated by the Stalking Horse Bid Agreement, any related agreements and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Entities or as the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate laws of the states of

11848526-20

formation of each corporate Debtor and all other applicable business, corporation, trust, and other laws of the applicable Governmental Entities to the fullest extent permitted by law with respect to the implementation and consummation of the Stalking Horse Bid Agreement, any related agreements or instruments and this Order, and the Transactions contemplated thereby and hereby.

12.     To the fullest extent permitted by law, effective as of the Closing, (a) the transfer of the Purchased Assets to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any Person and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets, including, without limitation, with respect to intellectual property identified in the Stalking Horse Bid Agreement and all tangible and intangible assets, personal property, goodwill, brand and related likenesses constituting Purchased Assets, free and clear of any Claims and Encumbrances pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of the Assumed Liabilities shall constitute a legal, valid and effective assumption by Purchaser of all Assumed Liabilities.

13.     The sale of the Purchased Assets is not subject to avoidance pursuant to any statutory or common law fraudulent conveyance or fraudulent transfer theories whether under the Bankruptcy Code, including, without limitation, section 363(n), or under the laws of the United States, any state, territory, or possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

14.     At the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), and 365 of the Bankruptcy Code, to transfer any such Purchased Assets to the Purchaser.  The transfer of the Purchased Assets shall vest the Purchaser with all right, title and interest of the Debtors to the Purchased Assets, in each instance, free and

clear of any Claims and Encumbrances with all such Liens to attach only to the proceeds of the sale (if any) with the same priority, validity, force, and effect, if any, as they had prior to the Closing Date in or against the Purchased Assets, subject to all claims and defenses the Debtors may possess with respect thereto.  Following the Closing Date, no holder of any Claims or Encumbrances in the Purchased Assets shall interfere with the Purchaser's enjoyment of the Purchased Assets based on or related to such Liens or any actions that the Debtors may take in the Debtors' bankruptcy cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the Transactions contemplated in or by the Stalking Horse Bid Agreement or this Order and any such action is hereby forever barred, estopped and permanently enjoined by this Order.

15.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of any Claims and Encumbrances shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.  However, the Debtors, the Purchaser, and each of their respective officers, employees, attorneys, other retained professionals, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary, desirable or appropriate to implement and effectuate the terms of the Stalking Horse Bid Agreement and this Order, including amendments to the Stalking Horse Bid Agreement.

16.     On or before the Closing Date, each of the Debtors and the Debtors' creditors, as the case may be, are authorized to execute such documents and to take all other actions as may be necessary to release, effective as of the Closing, any Claims and Encumbrances (subject to the

24

Permitted Liens) of any kind against the Purchased Assets, if any, as may have been recorded or may otherwise exist.  If any Person that has filed financing statements or other documents or agreements evidencing any Liens in or against the Purchased Assets (subject to the Permitted Liens that the Stalking Horse Bidder has agreed to permit to survive the Closing pursuant to the express terms of the Stalking Horse Bid Agreement) shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases or agreements of similar import of all such Liens that the Person has with respect to the Purchased Assets, effective as of the Closing, the Debtors and the Purchaser are hereby authorized to execute such statements, instruments, releases, and other documents on behalf of such Person with respect to such Purchased Assets prior to the Closing, and the Debtors and the Purchaser are authorized to file such documents after Closing. The Debtors and the Purchaser are hereby authorized, but not required, to (i) file, register or otherwise record a certified copy of this Order in the applicable jurisdiction, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims and Encumbrances (subject to the Permitted Liens) against the Purchaser and the applicable Purchased Assets and (ii) seek in this Court or any other court to compel appropriate parties to execute termination statements, instructions of satisfaction and releases of all such Claims and Encumbrances (other than Permitted Liens) with respect to the Purchased Assets.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Claims and Encumbrances (other than Permitted Liens) shall be self-executing, and none of the Debtors, Debtors' former or current creditors or Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

25

11848526-20

17.     The Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any Governmental Entity relating to the Purchased Assets or held by the Debtors' estates, but solely with respect to those that are able to be transferred prior to the Closing Date and do not require further consent or authorization by a Government Entity to effect such transfer and maintain the related authorization.  To the greatest extent available under applicable law, all such licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like of any Governmental Entity are deemed to have been, and hereby are, deemed to be transferred to the Purchaser, as of the Closing Date.  Furthermore, for licenses, permits and authorizations unable to be transferred prior to the Closing Date and/or that do require further consent or authorization by a Government Entity, the business covered by the Purchased Assets shall continue operating under all such existing licenses, permits and authorizations of the Debtors in accordance with any agreements or arrangements as may be permitted and/or directed by the applicable and appropriate regulatory authority and mutually acceptable to the Debtors and Purchaser, with the advice of regulatory counsel, until such licenses, permits and authorizations have been transferred and changed to the name of the Purchaser by the appropriate Government Entity, including but not limited to local occupational licenses, and any other licenses needed to operate such business uninterrupted.  To the extent the Purchaser cannot operate under any such license, permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any Governmental Entity relating to the Purchased Assets in accordance with the preceding sentence, and those that are not able to be transferred, such shall remain in effect and with the Debtors while the Purchaser, with the assistance from the Debtors in accordance with any agreements or arrangements as may be permitted and/or directed by the

26

applicable and appropriate regulatory authority and mutually acceptable to the Debtors and Purchaser, with the advice of regulatory counsel, works promptly and diligently to apply for and secure all necessary governmental approvals for new issuances of such and approval to the Purchaser.

18.     The following sections of the Stalking Horse Bid Agreement are hereby amended as follows:

 a.  The definition of "Transition Services Agreement" as set forth in Section 1.1 of the Stalking Horse Bid Agreement, is hereby deleted in its entirety from the Stalking Horse Bid Agreement and any reference thereto is hereby deleted in its entirety from the Stalking Horse Bid Agreement.

 b.  Sections 3.1(b)(ii) and 3.1(c)(ii) of the Stalking Horse Bid Agreement are hereby amended and restated as follows: "[Reserved]."

 c.  The first section of Section 6.8 in the Stalking Horse Bid Agreement is hereby amended and restated as follows:

  i.  "At a time mutually agreed upon between the Sellers and Buyer, (a) each Seller shall deliver to Buyer a duly executed and acknowledged certificate of amendment to such Seller's certificate of formation or other organizational document which is required to change such Seller's entity name to a new name that is, in Buyer's reasonable judgment, sufficiently dissimilar to such Seller's present name and, in all cases, does not include the name "Delphi" so as to avoid confusion and to make each Seller's present name available to Buyer, and (b) each Seller shall deliver to Buyer appropriate documents, duly executed and acknowledged, which is required

to change such Seller's name to such new name in any jurisdiction in which such Seller is qualified to do business, in forms reasonably satisfactory to Buyer.

d.  The last sentence of Section 6.9 in the Stalking Horse Bid Agreement is hereby amended and restated as follows:

   i.  "If, as of the Closing Date, such consent is not obtained or such assignment is not attainable pursuant to sections 105, 363 or 365 of the Bankruptcy Code other than as a result of the failure by the Sellers to pay or otherwise satisfy all Cure Amounts, then the Sellers and Buyer will cooperate to the extent feasible, pursuant to a mutually agreed upon agreement or arrangement, under which Buyer would obtain the benefits and assume the obligations (to the extent otherwise constituting Assumed Liabilities hereunder) thereunder in accordance with this Agreement, including subcontracting, sublicensing or subleasing to Buyer, or under which the Sellers would enforce for the benefit of, and at the direction of, Buyer, with Buyer assuming all of the Sellers' obligations (to the extent constituting Assumed Liabilities hereunder), and any and all rights of the Sellers thereunder."

e.  The Stalking Horse Bid Agreement is hereby amended by including Section 6.17 Transition of Licenses, which shall be comprised of the language set forth in Section 17 herein.

19.  The Purchased Assets to be acquired by the Purchaser under the Stalking Horse Bid Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to

and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interest in and to the Purchased Assets under the Stalking Horse Bid Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in and to the Purchased Assets to the Purchaser.

20. Other than the Assumed Debt and the Assumed Liabilities, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any Liabilities of the Debtors in any way whatsoever, including any Liabilities relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the Closing Date, or any Liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which Liabilities are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser.

21. Except as otherwise expressly provided in the Stalking Horse Bid Agreement, all persons presently or on or after the Closing Date in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser, as applicable, on the Closing Date or at such time thereafter as the Purchaser may request.

22. Subject to the terms of the Stalking Horse Bid Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts, as provided for or contemplated by the Stalking Horse Bid Agreement and the Assumption Notice, shall be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code, which may be subsequently modified at any time prior to the date that is three (3) business days prior to the Closing Date and upon Purchaser's delivery of written notice to the Debtors, to add or

11848526-20

remove certain contracts pursuant to the terms of the Stalking Horse Bid Agreement, to the Purchaser free and clear of all Claims and Encumbrances and (b) execute and deliver to the Purchaser such documents or other instruments as may be reasonably requested by the Purchaser to assign and transfer the Assumed Contracts to the Purchaser.

23.    Any party to a personal services contract that has not objected to the assignment thereof is deemed to consent to such assignment pursuant to section 365(c) of the Bankruptcy Code to the extent that such contract is an Assumed Contract.  Furthermore, all parties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtors or the Purchaser for, any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the sale of the Purchased Assets.

24.    The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of the Cure Amounts (if any) solely to the extent set forth in the Assumption Notice.

25.    Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in and to each Assumed Contract.  The Debtors shall reasonably cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

26.    Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, on the Closing Date, the Debtors shall pay or cause to be paid to the Non-Debtor Counterparties the requisite Cure Amounts, if any, set forth on the Assumption

Notice, except to the extent that (i) the Non-Debtor Counterparty is listed on **Exhibit "A"** hereto, (ii) a Cure Amount was amended on the record of the Sale Hearing with the Purchaser's consent, (iii) a different cure amount is agreed as between the Non-Debtor Counterparties and the Purchaser, or (iv) as to be determined by Court order.  The Cure Amounts (if any) are binding on all Non-Debtor Counterparties and are hereby fixed at the amounts (including any amount listed as $0.00) set forth on the Assumption Notice, as set forth on the record of the Sale Hearing, as otherwise agreed between the Non-Debtor Counterparties and the Purchaser, or as determined by Court order, as the case may be, and the Non-Debtor Counterparties are forever barred from asserting any other claims, including but not limited to the propriety or effectiveness of the assumption and assignment of the Assumed Contract against the Debtors, the Purchaser or the property of any of them in respect of the Assumed Contract.

27.    All defaults or other obligations under the Assumed Contracts arising prior to the Closing Date (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts (if any) on the Assumption Notice and the counterparties to the Assumed Contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any amounts are due or other defaults exist under such Assumed Contract as of the date of the assignment of such Assumed Contract.

28.    Any provision in any Assumed Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amounts, if any.  No sections or provisions of any Assumed

Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the Non-Debtor Counterparties shall have any force and effect with respect to the Sale and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code, and no assignment of any Assumed Contract pursuant to the terms of the Stalking Horse Bid Agreement shall in any respect constitute a default under any Assumed Contract.  The Non-Debtor Counterparty shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the Debtors' rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such Non-Debtor Counterparty's written consent to the assumption or assignment thereof.

29.    The Debtors and the Purchaser have satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under all of the Assumed Contracts.

30.    The Debtors and their estates shall have no liability for any claims accruing from and after the Closing under any of the Assumed Contracts, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

31.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred, estopped and permanently enjoined from raising or asserting against the Debtors or the Purchaser any claim or cause of action of any kind or nature relating to any assignment fee, Cure Amounts, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of

32

the Closing Date or arising by reason of the Closing Date, except for any amounts that are Assumed Liabilities.

32.     In the event that the Sale does not close, none of the Assumed Contracts shall be assumed by virtue of this Order and shall remain subject to further administration in the Debtors' bankruptcy cases.

33.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Stalking Horse Bid Agreement and this Order. This Order and the Stalking Horse Bid Agreement shall be binding upon and govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

34.     To the extent permitted by section 525 of the Bankruptcy Code, no Governmental Entity may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of the Debtors' bankruptcy cases or the consummation of the Transactions contemplated by the Stalking Horse Bid Agreement.

35.     Other than the Assumed Liabilities or the Assumed Debt, the Purchaser has not assumed and is otherwise not obligated for any of the Debtors liabilities, and the Purchaser has not purchased any of the Debtors' assets expressly excluded from the Purchased Assets, as provided for in section 2.2 of the Stalking Horse Bid Agreement.  Consequently, all persons, Governmental

33

Entities and Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens (other than subject to the Permitted Liens) based upon or arising out of liabilities retained by the Debtors may not take any action against any of the Purchaser Parties or the Purchased Assets to recover on account of any liabilities of the Debtors (other than on account of the Assumed Debt and the Assumed Liabilities).  All persons holding or asserting any Liens in the Excluded Assets may not assert or prosecute such Liens or any cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets or any other Excluded Liability (as defined in the Stalking Horse Bid Agreement).

36.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchase shall not assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, or similar liability.  Neither the transfer of the Purchased Assets to the Purchaser, nor the fact that the Purchaser is using any of the Purchased Assets previously owned by the Debtors, will cause the Purchaser Parties or any of their affiliates, to be deemed a successor in any respect to the Debtors' business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

37.     Further, except as otherwise provided in the Stalking Horse Bid Agreement, the transfer of title and possession of the Purchased Assets shall be free and clear of any Claims and Encumbrances pursuant to any successor or successor-in-interest liability theory, and, for the avoidance of doubt, the Purchaser and the Purchaser Parties, and each of their affiliates,

11848526-20

transferees, successors and assigns and each of their respective members, partners, officers, directors, principals, advisors and shareholders shall have no liability whatsoever for any Claims and Encumbrances, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on Purchaser's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever, including Claims and Encumbrances based on, relating to, and/or arising under, without limitation: (i) any employment or labor agreement; (ii) any pension, welfare, compensation or other employee plan, agreements, practices, and programs, including, without limitation, any pension or employee plan of or related to any of the Debtors or any Debtors' affiliates or predecessors or any current or former employees of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; (v) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, any claims, rights, or causes of action that might arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") (including, but not limited to, (i) claims asserted by any individual who is not or was not (or whose alleged COBRA "qualifying event" is not or was not in connection with) a covered employee whose last employment prior to his or her alleged COBRA "qualifying event" was associated with the Purchased Assets (as defined in the Stalking Horse Bid

Agreement), and/or (ii) excise taxes, penalties, and fees with respect to such individuals for periods on or after Closing), (j) the Multiemployer Pension Plan Amendments Act of 1980; (k) state and local discrimination laws, (l) state and local unemployment compensation laws or any other similar state and local laws, (m) state workers' compensation laws, and/or (n) any other state, local, or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any of their predecessors; (vi) any antitrust laws; (vii) any product liability or similar laws, whether state, federal, or otherwise; (viii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (ix) Perishable Agricultural Commodities Act; (x) any bulk sales or similar laws; (xi) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xii) any common law doctrine of *de facto* merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in-interest liability theory, and/or any other theory of or related to successor liability.

38.     Nothing herein is intended to, nor shall it be deemed to, preclude the National Labor Relations Board or any court from finding that Delphi Lender AcquisitionCo LLC, or any other purchaser of the Debtors' assets, is subject to a successor collective bargaining obligation under the National Labor Relations Act in accordance with *NLRB* v. *Burns International Security Services*, 406 U.S. 272 (1972) and applicable law.

39.     Except as otherwise provided in the Stalking Horse Bid Agreement, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons including, but not limited to, the Debtors, all debt holders, equity security holders, the Debtors' employees or former employees,

36

Governmental Entities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Claim and Encumbrance of any kind or nature whatsoever against, in, or with respect to any of the Debtors or the Purchased Assets, arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser in accordance with the Stalking Horse Bid Agreement and this Order, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Claim and Encumbrance, including assertion of any right of setoff or subrogation, and enforcement, attachment, or collection of any judgment, award, decree, or order, against the Purchaser Parties or any of their respective affiliates, transferees, successors or assigns thereof and each of their respective current and former members, officers, directors, attorneys, employees, partners, affiliates, financial advisors, and representatives (each of the foregoing in their individual capacity), with respect to the Purchased Assets.

40.     Without limiting the generality of the foregoing, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation Liabilities of the Debtors arising pursuant to state law or otherwise, and this Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation Claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation Claims filed or to be filed, or any reopening of such Claims, by or on behalf of any of the Debtors' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums,

37

assessments, or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability.

41.      Subject to the terms of the Stalking Horse Bid Agreement, the Stalking Horse Bid Agreement and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors' estates and substantially conforms to, and effectuates, the Stalking Horse Bid Agreement and any related agreements and/or instruments and this Order.

42.      Notwithstanding anything in the Bidding Procedures Order or the Stalking Horse Bid Agreement to the contrary but subject to the terms of the Final DIP Order, on the date of the Closing, the Debtors shall pay the reasonable and documented out of pocket fees and expenses incurred by the Purchaser or the DIP Lenders in an amount not greater than the amount provided for in the Approved Budget (as such term is defined in the Final DIP Order) and not already received by the DIP Lender pursuant to the Final DIP Order (provided, however, notwithstanding anything to the contrary herein, nothing in this Order shall limit the rights of the Lender or the DIP Lender under the Final DIP Order).

43.      Upon the commencement of the Debtors' bankruptcy cases, and to the extent necessary and applicable, the Interim Chief Executive Officer, not in his individual capacity but solely in his capacity as the Interim Chief Executive Officer of the Debtors, shall be deemed admitted as a member of each of the Limited Liability Company (such entities, collectively, the "Debtor LLCs"). To the extent that the commencement of the Debtors' bankruptcy cases caused any Debtor LLCs to dissolve under applicable non-bankruptcy law, such dissolution is hereby revoked as if it never occurred, and the Interim Chief Executive Officer, not in his individual

11848526-20

capacity but solely in his capacity as the Interim Chief Executive Officer of the Debtors and on behalf of the Debtors, shall be deemed a member of the Debtor LLCs, with the power and authority to transfer the subject assets to the Purchaser.  The Interim Chief Executive Officer shall not bear any personal liability, including but not limited to legal, financial or tax, with respect to acting in the limited capacity as set forth in this paragraph.

44.    No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the Transactions contemplated by the Stalking Horse Bid Agreement.

45.    The Debtors are authorized to transfer personally identifiable information, as defined in section 101(41)(A) of the Bankruptcy Code, as a part of the Sale.  No consumer privacy ombudsman need be appointed under section 363(b)(1) of the Bankruptcy Code.

46.    Notwithstanding anything to the contrary in this Order or the Stalking Horse Bid Agreement, no contract between the Debtors and Oracle America, Inc., successor in interest to NetSuite, Inc., ("Oracle"), will be assumed and/or assigned without: (1) Oracle's prior written consent; (2) cure of any default under such contract, if any; (3) the provision to Oracle of satisfactory adequate assurance of future performance by the assignee; and (4) execution by the Debtors or their successors and the assignees of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order.  In addition, no provision of this Order or the Stalking Horse Bid Agreement shall authorize: (1) the transfer of any Oracle license agreement to any third party; or (2) the use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent.

47.    The *Objection of NWI Haverhill Hospital LP to Notice of Assumption and Cure Amount With Respect to Executory Contracts or Unexpired Leases Potentially to be Assumed and*

*Assigned in Connection With Sale of Debtors' Assets (ECF No. 193)* (the "NWI Haverhill Objection") [ECF No. 231] is continued for evidentiary hearing to **March 30, 2023 at 2:30 p.m.** and any evidence of adequate assurance of future performance at such hearing shall be considered on a *de novo* basis notwithstanding, and without consideration of, any evidence presented in connection with and in support of entry of this Order.  Entry of this Order is without prejudice to the respective rights of the Debtors and NWI Haverhill Hospital LP with respect the proposed assumption and assignment of the Haverhill Lease (as that term is defined in the NWI Haverhill Objection) and the NWI Haverhill Objection, all of which are fully preserved.  Notwithstanding anything to the contrary herein, the Haverhill Lease is and shall not be assumed and assigned by this Order.

48.    This Order and the Stalking Horse Bid Agreement shall be binding upon, enforceable against, and govern the acts of all persons including, without limitation, the Debtors and their estates, the Purchaser Parties, their respective affiliates, transferees, successors, and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates, any statutory committee appointed in the Debtors' bankruptcy cases or any trustee appointed in a Chapter 7 case if the cases of the Debtors are converted from Chapter 11 to a case under Chapter 7 of the Bankruptcy Code, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to the Purchaser hereunder

shall remain effective and, notwithstanding such conversion or dismissal, shall remain binding on all parties in interest. For the avoidance of doubt, the Debtors' inability to satisfy in full all administrative expense claims of the Debtors' estates shall not be a basis for termination, rejection or avoidance (as applicable) of the Stalking Horse Bid Agreement or the Sale.

49.    This Order (i) shall be effective as a determination that, as of the Closing, all Claims, except as assumed as Assumed Debt or an Assumed Liability by the Purchaser under the Stalking Horse Bid Agreement, have been unconditionally released, discharged and terminated as to the Purchaser Parties and the Purchased Assets and that the conveyances and transfers described herein have been effected, and (ii) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Purchased Assets, and ownership of the Purchased Assets is free and clear of any Claims and Encumbrances or any Person who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized to strike recorded encumbrances, claims, liens, and other interests against the Purchased Assets owned by the Debtors recorded prior to the date of this Order.  A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, Claims, Liens, pledges, and other interests against the Purchased Assets owned by the Debtors recorded prior to the date of this Order.  All Recording Officers are hereby authorized to accept for filing any and all of the documents and

41

instruments necessary, advisable or appropriate, and appropriate to consummate the transactions contemplated by the Stalking Horse Bid Agreement.

50.     Upon entry of this Order, the releases provided in Section 10.19 of the Stalking Horse Bid Agreement are hereby approved in their entirety.

51.     Nothing in any other order of this Court or contained in any plan of reorganization or liquidation that may be confirmed in the cases of the Debtors, or in any subsequent or converted cases of the Debtors to cases under Chapter 7 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Stalking Horse Bid Agreement or the terms of this Order.

52.     Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon its entry and its provisions shall be self-executing. The Debtors and the Purchaser are free to close under the Stalking Horse Bid Agreement at any time, subject to the express terms of the Stalking Horse Bid Agreement.  If the Debtors and the Purchaser close under the Stalking Horse Bid Agreement, the Debtors and the Purchaser shall be deemed to be acting in "good faith" and the Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the Transactions under and pursuant to the Stalking Horse Bid Agreement.

53.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Stalking Horse Bid Agreement and the provisions of this Order.

54.     Notwithstanding any provision in this Order, the determination of any disputed Cure Amounts (unless such Cure Amounts were resolved at or prior to the Sale Hearing) or adequate assurance of future performance as to only those parties listed on **Exhibit "A"** hereto, shall be reserved for further proceedings pending Purchaser's further determination whether to

assume and have assigned the contract or lease the Debtors have with such parties, at which time Purchaser and each such listed objecting parties may schedule a further hearing before the Court on the issue of appropriate Cure Amounts and/or adequate assurance of future performance on at least seven (7) days' prior notice to the parties affected as set forth on the attached **Exhibit "A"** (collectively, the "Objecting Parties"); provided, however, nothing herein shall alter or amend any scheduled hearing on Cure Amounts although any such hearing may be continued with the consent of the Debtors or the Purchaser; provided, further that unless a Non-Debtor Counterparty is an Objecting Party listed on **Exhibit "A"** hereto, all the Non-Debtor Counterparties shall be fully and finally bound by the Cure Amount listed on the Assumption Notice and any challenge to such Cure Amount is deemed waived and released. Pending such further determinations, no assets associated with the Objecting Parties' contracts and leases shall be deemed sold or assigned to Purchaser. Until such time as a contract or lease of an Objecting Party is assumed and assigned to Purchaser, such Objecting Party's contract or lease may be rejected, including, without limitation, following the Court's determination of the Cure Amounts relating thereto. Furthermore, nothing in this Order shall prejudice the right of any party to object to the assumption and assignment of any Contract in the event that the Debtors breach their obligations under the Contract after the date hereof and prior to the assumption and assignment of the Assumed Contract; provided, however, that the counter party to any such Contract must give notice in writing by email to counsel to the Debtors, Paul Steven Singerman, Esq. at singerman@bergersingerman.com, Christopher Andrew Jarvinen, Esq. at cjarvinen@bergersingerman.com and Robin J. Rubens, Esq. rrubens@bergersingerman.com, and counsel to the Purchaser, Roger Schwartz, Esq. (rschwartz@kslaw.com), Peter Montoni, Esq. (pmontoni@kslaw.com), Robert Nussbaum, Esq. (rnussbaum@kslaw.com) and Michelle Muscara, Esq. (mmuscara@kslaw.com), of the breach

11848526-20

within three (3) business days of such counter party having knowledge of the occurrence of the breach.

55.      The provisions of this Order shall be binding on and inure to the benefit of all successors and assignees of the Debtors and the Purchaser.

56.      The Debtors are authorized to enforce their rights under any confidentiality agreements they entered into with (i) other potential bidders with respect to the Purchased Assets for the benefit of the Purchaser or (ii) any other interested parties with respect to these bankruptcy cases or pre-petition information that is otherwise confidential for the benefit of other protected parties in interest, in each case for the term of each respective confidentiality agreement.

57.      In the event there is any inconsistency between the Sale Motion or this Order, this Order shall govern. In the event there is any inconsistency between the terms of this Order and the terms of the Stalking Horse Bid Agreement, the terms of this Order shall govern.

58.      This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Stalking Horse Bid Agreement in all respects and to decide any disputes concerning this Order, the Bidding Procedures Order, the Stalking Horse Bid Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Stalking Horse Bid Agreement, the Bidding Procedures Order and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assumed Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of any Claims and Encumbrances and any actions, efforts and/or conduct designed to deprive the Purchaser of the Purchased Assets, including any and all tangible and intangible assets, personal property, goodwill, brand and related

44

likenesses acquired under the Stalking Horse Bid Agreement; provided, however, that, in the event the Court abstains from exercising or declines to exercise such jurisdiction with respect to the Stalking Horse Bid Agreement, the Bidding Procedures Order, or this Order, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

59.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

60.    The provisions of this Order are non-severable and mutually dependent.

#    #    #

**Submitted by:**
Christopher Andrew Jarvinen, Esq.
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Tel. (305) 755-9500
Fax (305) 714-4340
Email:  cjarvinen@bergersingerman.com

**Copy to:**

*(Attorney Jarvinen is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11848526-20

## Exhibit "A"

Oracle America, Inc., successor in interest to NetSuite, Inc.