UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

DELPHI BEHAVIORAL HEALTH
GROUP, LLC, *et al.*,[1]

Debtors.

_____/

Chapter 11 Cases

Case No. 23-10945-PDR

(Jointly Administered)

**NOTICE OF FILING
OF (I) THE DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION
AND (II) A COMPARISON REFLECTING REVISIONS TO THE DEBTORS'
JOINT PLAN OF LIQUIDATION, DATED FEBRUARY 16, 2023 [ECF NO. 103]**

The above-captioned, affiliated, debtors and debtors-in-possession (collectively, the

"Debtors"), by and through their undersigned counsel, file (i) the *Debtors' Amended Joint Plan of*

*Liquidation*, attached hereto as **Exhibit "A"** (the "Plan"), and (ii) a comparison, attached hereto as

---

[1]     The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

**Exhibit "B"**, of the Plan against the original *Debtors' Joint Plan of Liquidation*, dated February 16,

2023 [ECF No. 103].

Dated: March 29, 2023                                    Respectfully submitted,

                                                        BERGER SINGERMAN LLP
                                                        *Counsel for the Debtors and*
                                                        *Debtors-in-Possession*
                                                        1450 Brickell Avenue, Suite 1900
                                                        Miami, FL  33131
                                                        Telephone: (305) 755-9500
                                                        Facsimile: (305) 714-4340

                                                        By:  *Christopher Andrew Jarvinen*
                                                               Paul Steven Singerman
                                                               Florida Bar No. 0378860
                                                               singerman@bergersingerman.com
                                                               Christopher Andrew Jarvinen
                                                               Florida Bar No. 021745
                                                               cjarvinen@bergersingerman.com

2

## Exhibit "A"

*Debtors' Amended Joint Plan of Liquidation (the "Plan")*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

DELPHI BEHAVIORAL HEALTH                                  Case No. 23-10945-PDR
GROUP, LLC, *et al.*,[1]

                                                          (Jointly Administered)

            Debtors.
_____/

## **DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION**

**BERGER SINGERMAN LLP**
Paul Steven Singerman, Esq.
Christopher Andrew Jarvinen, Esq.
Paul A. Avron, Esq.
Robin J. Rubens, Esq.
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

*Counsel to the Debtors*
*and Debtors in Possession*

Dated: March 29, 2023

---

[1]  The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309. The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

# TABLE OF CONTENTS

**Page**

**ARTICLE I.    DEFINITIONS AND INTERPRETATION** ................................................ 1

    A.    Definitions ............................................................................................. 1

    B.    Interpretation; Application of Definitions and Rules of Construction ............... 13

    C.    Controlling Document. ........................................................................ 14

**ARTICLE II.    ADMINISTRATIVE EXPENSE, PRIORITY & DIP CLAIMS** ............ 14

    A.    Administrative Expense Claims ........................................................... 14

    B.    Fee Claims. ........................................................................................ 15

    C.    Priority Tax Claims .............................................................................. 15

    D.    DIP Claims .......................................................................................... 15

**ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS** ........................ 16

    A.    Classification in General. .................................................................... 16

    B.    Formation of Debtor Groups for Convenience Only. ........................... 16

    C.    Summary of Classification. ................................................................. 16

    D.    Special Provisions Governing Unimpaired Claims. ............................ 17

    E.    Elimination of Vacant Classes. .......................................................... 17

    F.    Voting Classes; Presumed Acceptance by Non-Voting Classes ......... 17

    G.    Voting Classes; Acceptance and Rejection ........................................ 17

    H.    Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the
        Bankruptcy Code. ............................................................................... 18

**ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS** .................................. 18

    A.    Other Secured Claims (Class 1). ........................................................ 18

    B.    Other Priority Claims (Class 2) ........................................................... 19

    C.    Protective Advance Secured Claims (Class 3) .................................... 19

    D.    Senior Credit Agreement Term Loan Secured Claims (Class 4). ........ 19

    E.    HoldCo Credit Agreement Term Loan Unsecured Claims (Class 5). ... 20

    F.    General Unsecured Claims (Class 6). .................................................. 20

    G.    Intercompany Claims (Class 7) ........................................................... 21

    H.    Subordinated Claims (Class 8) ........................................................... 21

    I.    Existing Equity Interests (Class 9) ...................................................... 21

**ARTICLE V.    MEANS FOR IMPLEMENTATION OF THE PLAN** ........................... 22

**TABLE OF CONTENTS**
(continued)

**Page**

A. Joint Chapter 11 Plan. ....................................................................... 22

B. Corporate Action. ............................................................................. 22

C. Effectuating Documents; Further Transactions. ................................. 22

D. Withholding and Reporting Requirements. ........................................ 22

E. Exemption From Certain Transfer Taxes. .......................................... 23

F. Preservation of Rights of Action. ...................................................... 23

G. Closing of the Chapter 11 Cases. ...................................................... 24

H. Notice of Effective Date. ................................................................... 24

**ARTICLE VI.    CORPORATE GOVERNANCE** .................................................... 24

A. Corporate Form. ................................................................................ 24

B. Post-Effective Date Governance of the Debtors. ............................... 25

C. Corporate Existence. ......................................................................... 25

D. Certificates of Formation and By-Laws. ............................................ 25

**ARTICLE VII.    DISTRIBUTIONS** ..................................................................... 26

A. Distributions Generally. .................................................................... 26

B. Distribution Record Date. .................................................................. 26

C. Date of Distributions. ........................................................................ 26

D. Reserve on Account of Disputed Claims. ........................................... 26

E. Delivery of Distributions & Unclaimed Property. .............................. 27

F. Manner of Distribution. ..................................................................... 27

G. No Postpetition Interest on Claims. ................................................... 28

H. Time Bar to Cash Payments. .............................................................. 28

I. Manner of Payment Under the Plan. ................................................... 28

J. Satisfaction of Claims. ....................................................................... 28

K. Minimum Cash Distributions. ............................................................ 28

L. Setoffs and Recoupments. ................................................................. 29

M. Distributions After Effective Date. .................................................... 29

N. Allocation of Distributions Between Principal and Interest. .............. 29

O. Payment of Disputed Claims. ............................................................ 29

**ARTICLE VIII.  PROCEDURES FOR DISPUTED CLAIMS** .................................. 29

## TABLE OF CONTENTS
(continued)

Page

A.    Allowance of Claims..................................................................... 29

B.    Objections to Claims..................................................................... 30

C.    Estimation of Claims..................................................................... 30

D.    No Distributions Pending Allowance. .......................................... 30

E.    Resolution of Claims..................................................................... 30

F.    Disallowed Claims. ...................................................................... 31

G.    Claims Paid and Payable by Third Parties.................................... 31

H.    Amendments to Proofs of Claim.................................................. 31

**ARTICLE IX.    EXECUTORY CONTRACTS** .......................................... 31

A.    Rejection of Executory Contracts. ............................................... 31

B.    Cure of Defaults for Assumed Executory Contracts..................... 32

C.    Claims Based Upon Rejection of Executory Contracts. ............... 32

D.    Modifications, Amendments, Supplements, Restatements, or Other
        Agreements. .............................................................................. 33

E.    Insurance Policies. ...................................................................... 33

F.    Survival of Debtors' Indemnification Obligations. ...................... 33

G.    Reservation of Rights................................................................... 34

**ARTICLE X.    LIQUIDATING TRUST** ....................................................... 34

A.    Establishment of the Liquidating Trust......................................... 34

B.    Purpose of the Liquidating Trust. ................................................ 34

C.    Liquidating Trust Assets. ............................................................ 35

D.    Non-Transferability of Liquidating Trust Interests........................ 35

E.    Administration of Liquidating Trust............................................. 35

F.    Liquidating Trustee's Tax Power for Debtors. .............................. 36

G.    Cash Investments. ...................................................................... 36

H.    Distribution of Liquidating Trust Assets. .................................... 36

I.    Federal Income Tax Treatment of Liquidating Trust. ................... 36

J.    Tax Reporting. ........................................................................... 37

K.    Dissolution. ............................................................................... 38

**ARTICLE XI.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ............... 38

# TABLE OF CONTENTS
(continued)

**Page**

A.    Conditions Precedent to the Effective Date. ........................................................ 38

B.    Waiver of Conditions Precedent. ....................................................................... 39

C.    Effect of Failure of Conditions to Effective Date. .............................................. 39

**ARTICLE XII.   EFFECT OF CONFIRMATION** .................................................. 39

A.    Vesting of Assets. ................................................................................................ 39

B.    Release of Liens. ................................................................................................. 40

C.    Subordinated Claims. .......................................................................................... 40

D.    Binding Effect. .................................................................................................... 40

E.    Sale Order. .......................................................................................................... 40

F.    Term of Injunctions or Stays ............................................................................. 40

G.    Compromise and Settlement. ............................................................................. 41

H.    Debtor Release. ................................................................................................... 41

I.    Releases by Holders of Claims and Interests (i.e., Third-Party Release). .......... 42

J.    Exculpation. ........................................................................................................ 44

K.    Temporary Injunction. ....................................................................................... 45

L.    Waiver of Statutory Limitation on Releases. ...................................................... 45

M.    Other Limitations of Releases and Exculpation; Florida Rules of
Professional Conduct. ......................................................................................... 46

**ARTICLE XIII.  RETENTION OF JURISDICTION** .......................................................... 46

**ARTICLE XIV.  MISCELLANEOUS PROVISIONS** ............................................................ 48

A.    Payment of Statutory Fees. ................................................................................. 48

B.    Post-Confirmation Reporting. ............................................................................. 48

C.    Request for Expedited Determination of Taxes. .................................................. 48

D.    Substantial Consummation. ................................................................................. 48

E.    Amendments. ...................................................................................................... 48

F.    Revocation or Withdrawal of the Plan. ............................................................... 49

G.    Severability of Plan Provisions Upon Confirmation. .......................................... 49

H.    Governing Law. .................................................................................................. 50

I.    Time. ................................................................................................................... 50

J.    Additional Documents. ....................................................................................... 50

11912265-8

# TABLE OF CONTENTS
(continued)

**Page**

K.      Dates of Actions to Implement the Plan. .............................................................. 50

L.      Immediate Binding Effect. ................................................................................... 50

M.     Deemed Acts. ....................................................................................................... 51

N.      Successor and Assigns. ........................................................................................ 51

O.      Solicitation of the Plan. ....................................................................................... 51

P.      Plan Supplement. ................................................................................................. 51

Q.      Entire Agreement. ................................................................................................ 51

R.      Exhibits to Plan. .................................................................................................. 52

S.      Notices. ................................................................................................................ 52

11912265-8

Each of (i) Delphi Behavioral Health Group, LLC, (ii) 61 Brown Street Holdings, LLC, (iii) Aloft Recovery LLC, (iv) Banyan Recovery Institute, LLC, (v) Breakthrough Living Recovery Community, LLC, (vi) California Addiction Treatment Center LLC, (vii) California Vistas Addiction Treatment LLC, (viii) DBHG Holding Company, LLC, (ix) Defining Moment Recovery Community, LLC, (x) Delphi Health BuyerCo, LLC, (xi) Delphi Health Group, LLC, (xii) Delphi Intermediate HealthCo, LLC, (xiii) Delphi Management LLC, (xiv) Desert View Recovery Community, LLC, (xv) DR Parent, LLC, (xvi) DR Sub, LLC, (xvii) Las Olas Recovery LLC, (xviii) Maryland House Detox, LLC, (xix) New Perspectives, LLC, (xx) Next Step Housing LLC, (xxi) Ocean Breeze Detox, LLC, (xxii) Ocean Breeze Recovery, LLC, (xxiii) Onward Living Recovery Community, LLC, (xxiv) Palm Beach Recovery, LLC, (xxv) Peak Health NJ, LLC, (xxvi) QBR Diagnostics, LLC, (xxvii) Rogers Learning, LLC, (xxviii) SBH Haverhill, LLC, (xxix) SBH Union IOP LLC, (xxx) Summit at Florham Park, LLC, (xxxi) Summit Behavioral Health Limited Liability Company, (xxxii) Summit Health BuyerCo, LLC, (xxxiii) Summit IOP Limited, and (xxxiv) Union Fresh Start LLC (each, a "**Debtor**" and, collectively, the "**Debtors**") respectfully proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Article I.A below.

## ARTICLE I.  DEFINITIONS AND INTERPRETATION

A.     **Definitions.**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Administrative Expense Claim*" means any Claim for costs or expenses of administration incurred during the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estates and operating the Debtors' businesses, including wages, salaries, or commissions for services and payments for goods and other services and leased premises; (b) claims under section 503(b)(9) of the Bankruptcy Code; (c) Fee Claims; and (d) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, and all allowed claims entitled to administrative expense priority status pursuant to a final order of the Bankruptcy Court.

2.      "*Administrative Expense Claims Bar Date*" means the first Business Day that is twenty-one (21) calendar days following the Effective Date, except as otherwise specifically set forth in the Plan or ordered by the Bankruptcy Court.

3.      "*Administrative Expense Claims Objection Bar Date*" means the first Business Day that is seventy-five (75) calendar days following the Effective Date, except as otherwise specifically set forth in the Plan; *provided that* the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee after notice and a hearing.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1

5. "*Allowed*" means, with reference to any Claim, a Claim: (i) against the Debtors that has been listed in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed; (ii) listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Article VIII.B of the Plan or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder; (iii) that is compromised, settled, or otherwise resolved pursuant to the authority of, as applicable, the Debtors or the Liquidating Trustee; or (iv) expressly allowed by a Final Order or pursuant to the terms of the Plan.

6. "*Asset Purchase Agreement*" means that certain Asset Purchase Agreement, dated February 19, 2023, by and among the Sellers, the Buyer, DR Parent, LLC (solely with respect to the limited purposes set forth therein), and the Senior Credit Agreement Agent (solely in its capacity as the Senior Credit Agreement Agent and for the limited purposes set forth therein) and related schedules [ECF Nos. 111, 182, and 234].

7. "*Avoidance Actions*" means those actual and/or potential claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, but excluding any Insider Avoidance Actions.

8. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable in the Chapter 11 Cases.

9. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

10. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated by the United States Supreme Court under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

11. "*Bar Date Order*" means that certain *"Notice of Chapter 11 Bankruptcy Case"* dated as of February 13, 2023 [ECF No. 90], establishing April 17, 2023 as the general bar date for non-governmental entities to file proofs of Claim in the Chapter 11 Cases.

12. "*Bidding Procedures Order*" means that *Order Granting Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which Are*

2

*Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (*VII*) Granting Related Relief* [ECF No. 191].

13. "*Business Day*" means any day, other than a Saturday, a Sunday, a "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)), or any other day on which banking institutions in Miami, Florida are required to close by law or executive order.

14. "*Buyer*" means Delphi Lender AcquisitionCo LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, whether by sale, contribution, merger or otherwise, and each of their respective affiliates), solely in its capacity as the buyer under the Asset Purchase Agreement.

15. "*Cash*" means legal tender of the United States of America.

16. "*Causes of Action*" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Causes of Action includes: (i) any Insider Avoidance Action (but not any other Avoidance Action); (ii) any right of setoff, counterclaim or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity; (iii) the right to object to Claims or Interests; (iv) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any Claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar Claims.

17. "*Chapter 11 Cases*" means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and which are jointly administered under lead case number 23-10945-PDR.

18. "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

19. "*Claims Objection Bar Date*" means the first Business Day that is seventy-five (75) calendar days after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee.

20. "*Class*" means any group of Claims or Interests classified pursuant to Article III of the Plan.

21. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

22.     "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

23.     "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

24.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan in form and substance reasonably acceptable to the Debtors, the DIP Agent and the Senior Credit Agreement Agent.

25.     "*Consummation*" means the occurrence of the Effective Date of the Plan.

26.     [Deleted].

27.     "*D&O Policy*" means any insurance policy for directors, members, trustees, and officers liability maintained by any of the Estates as of the Effective Date (including any "tail" policy).

28.     "*Debtor Released Parties*" means, collectively, and in each case solely in their capacity as such: (i) the holders of all Claims that vote to accept the Plan; (ii) the holders of Claims who are entitled to vote on the Plan and abstain from voting on the Plan <u>and</u> who do not affirmatively opt out of the releases provided by the Plan on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan; and (iii) each of the Released Parties (other than the Debtors).

29.     "*Debtors*" has the meaning set forth in the introductory paragraph the Plan.

30.     "*Debtor's Power of Attorney*" means one or more powers of attorney acceptable to the Debtors, the DIP Agent, the Senior Credit Agreement Agent, and the Liquidating Trustee that may be provided by one or more of the Debtors to the Liquidating Trustee, effective as of the Effective Date, with respect to the Existing Equity Interests or any other matter involving the Debtors.

31.     "*DIP Agent*" has the meaning set forth in the Final DIP Order together with its permitted successors and assigns.

32.     "*DIP Cash Paydown Amount*" means the sum of (i) all of the Debtors' Cash on the Effective Date *less* Cash held in reserve in the amount sufficient to pay Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and the Prepetition Lenders Unsecured Claims Pool, *plus* (ii) the Cash proceeds of any Winddown Assets received by the Debtors prior to the Effective Date.

33.     "*DIP Claims*" means all Claims of the DIP Lenders arising under or related to the DIP Loan Agreement, the DIP Documents, DIP Facility, or the Final DIP Order.

34.     "*DIP Collateral*" has the meaning set forth in the Final DIP Order.

35.     "*DIP Documents*" has the meaning set forth in the Final DIP Order.

36.     "*DIP Facility*" has the meaning set forth in the Final DIP Order.

37.     "*DIP Lenders*" means, as the context requires, "DIP Lenders", each in its capacity as a lender under the DIP Documents, as defined in the Final DIP Order.

38.     "*DIP Loan Agreement*" means that certain *Superpriority Secured Debtor-In-Possession Credit Agreement* dated February 6, 2023, as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, by and among, DR Sub, LLC, as holdings, Delphi Intermediate HealthCo, LLC, as borrower, each other loan party which is a party thereto, the DIP Lenders, and the DIP Agent.

39.     "*Disclosure Statement*" means the Disclosure Statement for this Plan, which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

40.     "*Disputed Claim*" means with respect to a Claim or Interest, any such Claim or Interest (i) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (ii) for which a Proof of Claim or Interest has been filed, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

41.     "*Distribution Date*" means a date or dates, including the Initial Distribution Date, as determined by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement, on which the Liquidating Trustee makes a distribution to the holders of Allowed Claims.

42.     "*Distribution Record Date*" means the Effective Date of the Plan.

43.     "*Effective Date*" means the first Business Day after the date on which all conditions to the effectiveness of the Plan set forth in Article XI of the Plan have been either satisfied or waived in accordance with the terms of the Plan.

44.     "*Eighth Amendment Super Priming Protective Advances*" means all "Obligations" (as that term is defined in the Senior Credit Agreement Loan Documents), including, without limitation, all interest, fees and expenses whether accrued or paid in kind, owed by the Debtors with respect to the Eighth Amendment Super Priming Protective Advances under, and as defined in, the Senior Credit Agreement Loan Documents.

45.     "*Eighth Amendment Super Priming Protective Advance Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders

5

or included in any Final DIP Order, related to the Eighth Amendment Super Priming Protective Advances.

46.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

47.     "*Estate*" or "*Estates*" means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

48.     "*Exculpated Parties*" means, collectively, each in their capacities as such: (i) the Debtors; (ii) the Estates; (iii) the Prepetition Lenders; (iv) the Prepetition Agent; (v) the DIP Lenders; (vi) the DIP Agent; (vii) the Buyer; (viii) the Liquidating Trustee (solely with respect to the period prior to the Effective Date); (ix) with respect to each of the foregoing Persons in clauses "(i)" through "(viii)", such Persons' respective predecessors, successors, assigns, direct and indirect subsidiaries, and affiliates; (x) with respect to each of the foregoing Persons in clauses "(i)" through "(ix)", such Persons' current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, financial advisors, attorneys, Interim Chief Executive Officer, interim officers, accountants, investment bankers, investment managers, investment advisors, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such and whether currently serving or having previously served postpetition; and (xi) any other Person entitled to the protections of section 1125(e) of the Bankruptcy Code; **provided however that notwithstanding anything in this Plan to the contrary, each of the Insider Avoidance Actions Targets, in any capacity, shall not be an Exculpated Party**.

49.     "*Executory Contract*" means a contract or lease to which one of more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

50.     "*Existing Equity Claim*" means any Claim arising from an Existing Equity Interest.

51.     "*Existing Equity Interest*" means any Interest in any of the Debtors, including but not limited to, any common stock, preferred stock, limited liability company or membership interest, warrants, profits interests units or other ownership interest that are outstanding immediately prior to the Effective Date.

52.     "*Fee Claim*" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

53.     "*Final DIP Order*" means that certain *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Senior Secured Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Senior Secured Lenders, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief*, entered by the Bankruptcy Court in the Chapter 11 Cases on March 7, 2023 at ECF No. 189.

54.     "*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed,

vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because a motion pursuant to sections 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

55.      "*General Unsecured Claim*" means any unsecured Claim against any Debtor, other than a HoldCo Credit Agreement Term Loan Unsecured Claim, an Intercompany Claim or a Subordinated Claim, that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, and shall, for the avoidance of doubt, (i) include claims on account of damages arising from the rejection of unexpired leases of non-residential, real property and (ii) exclude any unsecured deficiency claim, pursuant to section 506(a)(1) of the Bankruptcy Code or otherwise, related to Protective Advances and Senior Credit Agreement Term Loans.

56.      "*General Unsecured Claim Cash Recovery*" means a Cash distribution in the amount of $250,000.00, funded by the Prepetition Lenders Unsecured Claims Pool to be shared on a *pari passu* basis by holders of Allowed General Unsecured Claims (Class 6).

57.      "*GHA*" means Getzler Henrich & Associates LLC.

58.      "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

59.      "*HoldCo Credit Agreement*" means that certain Credit Agreement, dated as of April 8, 2020 (and as further amended, restated, supplemented and/or otherwise modified from time to time), by and among DR Parent, LLC, as borrower, the HoldCo Credit Agreement Lenders, and the HoldCo Credit Agreement Agent.

60.      "*HoldCo Credit Agreement Agent*" means Brightwood Loan Services LLC, in its capacity as administrative agent for the HoldCo Credit Agreement Lenders under the HoldCo Credit Agreement.

61.      "*HoldCo Credit Agreement Lenders*" means the lender parties to the HoldCo Credit Agreement from time to time.

62.      "*HoldCo Credit Agreement Loan Documents*" means the HoldCo Credit Agreement and all other "Loan Documents" under and as defined therein.

63.      "*HoldCo Credit Agreement Term Loans*" means the Loans under, and as defined in, the HoldCo Credit Agreement Documents.

64.      "*HoldCo Credit Agreement Term Loan Unsecured Claims*" mean all Claims arising from the HoldCo Credit Agreement Term Loans.

65.     "*Impaired"* means, with respect to a Claim, Interest or Class of Claims or Interests, "*impaired*" within the meaning of section 1124 of the Bankruptcy Code.

66.     "*Initial Distribution*" means the first distribution that is made by, as applicable, the Debtors or the Liquidating Trustee, to holders of Allowed Claims, which shall include the General Unsecured Claim Cash Recovery.

67.     "*Initial Distribution Date*" means the date selected by, as applicable, the Debtors or the Liquidating Trustee, on or as soon as reasonably practicable after the Effective Date.

68.     "*Insider Avoidance Actions*" means any actual and/or potential Avoidance Actions or other Claims and Causes of Action, as of the Petition Date, by the Debtors against the Insider Avoidance Actions Targets, including but not limited to, as described on **Exhibit "B"** to the Plan.

69.     "*Insider Avoidance Actions Targets*" means those Entities and Persons listed on **Exhibit "B"** to the Plan.

70.     "*Interests*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including but not limited to, all common stock, preferred stock, common units, subordinated units, limited liability company or membership interests, incentive distribution rights, membership units, warrants, profit interests units or other instruments evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in a Debtor that are outstanding immediately before the Effective Date.

71.     "*Intercompany Claim*" means any Claim held by one Debtor against the other Debtor arising at any time prior to the Effective Date.

72.     "*Interim Chief Executive Officer*" means, collectively, Edward A. Phillips, GHA and certain GHA support personnel, pursuant to a corrected Final Order of the Bankruptcy Court granting GHA's retention application [ECF No. 205].

73.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

74.     "*Liquidating Trust*" means the liquidating trust created on the Effective Date with the consent of the  DIP Agent and the Senior Credit Agreement Agent in accordance with the provisions of Article X of the Plan and a Liquidating Trust Agreement, for the benefit of holders of Allowed Claims or Interests, as determined by the Liquidating Trustee consistent with the purposes of any such Liquidating Trust pursuant to Article X of the Plan.

75.     "*Liquidating Trust Agreement*" means the agreement acceptable to the Debtors and the DIP Agent and the Senior Credit Agreement Agent evidencing the terms and provisions governing the Liquidating Trust dated as of the Effective Date establishing the terms and conditions of the Liquidating Trust and pursuant to which the Liquidating Trustee shall manage and administer the Liquidating Trust Assets and distribute the proceeds realized from the Liquidating Trust Assets in accordance with the Plan and the Recovery Waterfall.  The Liquidating Trust Agreement will be filed with the Plan Supplement.

76.    "*Liquidating Trust Assets*" means from and after the Effective Date all assets of the Debtors that are not sold or distributed on or prior to the Effective Date (including, for the avoidance of doubt, the Winddown Assets), or otherwise dealt with pursuant to the terms of the Plan including, but not limited to, with respect to any Debtor's Power of Attorney, to be transferred to a Liquidating Trust, after consultation with the DIP Agent, and the Senior Credit Agreement Agent.

77.    "*Liquidating Trust Beneficiaries*" means the holders of Allowed Claims against or Interests in a Debtor to the extent such holders receive Liquidating Trust Interests.

78.    "*Liquidating Trust Budget*" means a budget detailing the anticipated costs and expenses with respect to the administration of the Liquidating Trust, which shall be in form and substance acceptable to the Debtors, the DIP Agent, the Senior Credit Agreement Agent, and the Liquidating Trustee, and shall have an initial funding in Cash on the Effective Date in the amount of $250,000.00 (i.e., the Winddown Funding Amount).

79.    "*Liquidating Trust Interests*" means the non-certificated beneficial interests in the Liquidating Trust allocable to Liquidating Trust Beneficiaries in accordance with the terms, conditions, and priorities set out in the Plan and the Liquidating Trust Agreement entitling each Liquidating Trust Beneficiary to distributions or proceeds (if any) of the Liquidating Trust in accordance with the Recovery Waterfall.

80.    "*Liquidating Trustee*" means the person or entity appointed by the Debtors that is acceptable to the DIP Agent and the Senior Credit Agreement Agent prior to the creation of a Liquidating Trust to administer such Liquidating Trust in accordance with the provisions of Article X of the Plan and the Liquidating Trust Agreement.

81.    "*Other Priority Claim*" means any Claim against any of the Debtors entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

82.    "*Other Secured Claim*" means a Secured Claim other than the DIP Claims, the Protective Advance Secured Claims, and the Senior Credit Agreement Term Loan Secured Claims.

83.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code, including any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other entity.

84.    "*Petition Date*" means February 6, 2023.

85.    "*Plan*" means this joint chapter 11 plan of liquidation, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Article XIV.F of the Plan.

86.    "*Plan Supplement*" means the compilation of documents, each of which shall be in form and substance acceptable to the Debtors, the DIP Agent and the Senior Credit Agreement Agent, containing, among other things, information required to be disclosed in accordance with

section 1129(a)(5) of the Bankruptcy Code and filed pursuant to Article XIV.Q of the Plan and the Liquidating Trust Agreement; *provided that*, through the Effective Date, the Debtors shall have the right to amend any schedules, exhibits, or amendments to any of the documents contained in, and exhibits to, the Plan Supplement with the consent of the DIP Agent and the Senior Credit Agreement Agent.

87.    "*Prepetition Agent*" means, collectively, the Senior Credit Agreement Agent and the HoldCo Credit Agreement Agent.

88.    "*Prepetition Collateral*" has the meaning set forth in the Final DIP Order.

89.    "*Prepetition Lenders*" means the Senior Credit Agreement Lenders and the HoldCo Credit Agreement Lenders.

90.    "*Prepetition Lenders Unsecured Claims Pool*" means $500,000.00 in Cash contributed by or on behalf of the Prepetition Lenders, including, to the extent applicable, a carve-out from the DIP Collateral and/or the Prepetition Collateral, to fund (i) the General Unsecured Claim Cash Recovery and (ii) the Winddown Funding Amount.

91.    "*Prior Priming Protective Advances*" means all "Obligations" (as that term is defined in the Senior Credit Agreement Loan Documents), including, without limitation, all interest, fees and expenses whether accrued or paid in kind, owed by the Debtors with respect to the Prior Priming Protective Advances under, and as defined in, the Senior Credit Agreement Loan Documents.

92.    "*Prior Priming Protective Advance Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders or included in any Final DIP Order, related to the Prior Priming Protective Advances.

93.    "*Prior Protective Advances*" means all "Obligations" (as that term is defined in the Senior Credit Agreement Loan Documents), including, without limitation, all interest, fees and expenses whether accrued or paid in kind, owed by the Debtors with respect to the Prior Protective Advances under, and as defined in, the Senior Credit Agreement Loan Documents.

94.    "*Prior Protective Advance Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders or included in any Final DIP Order, related to the Prior Protective Advances.

95.    "*Priority Tax Claim*" means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

96.     "*Pro Rata*" means the proportion that an Allowed Claim (i) in a particular Class bears to the aggregate amount of all Allowed Claims and Disputed Claims within such Class, or (ii) in a particular group of Classes bears to the aggregate amount of all Allowed Claims and Disputed Claims within such group of Classes.

97.     "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

98.     "*Protective Advances*" means, collectively, the Eighth Amendment Super Priming Protective Advances, the Prior Priming Protective Advances, and the Prior Protective Advances.

99.     "*Protective Advance Secured Claims*" means, collectively, the Eighth Amendment Super Priming Protective Advance Secured Claims, the Prior Priming Protective Advance Secured Claims, and the Prior Protective Advance Secured Claims.

100.    "*Purchase Price*" has the meaning set forth in Section 3.2 of the Asset Purchase Agreement.

101.    "*Purchased Assets*" has the meaning set forth in Section 2.1 of the Asset Purchase Agreement.

102.    "*Recovery Waterfall*" means the provisions set forth in **Exhibit "A"** of the Plan setting forth the priority for distributions of the proceeds realized from the Liquidating Trust Assets.

103.    "*Released Parties*" means, collectively, and in each case solely in their capacities as such: (i) the Debtors; (ii) the Estates; (iii) the Prepetition Lenders; (iv) the Prepetition Agent; (v) the DIP Lenders; (vi) the DIP Agent; (vii) the Buyer; (viii) with respect to each of the foregoing Persons in clauses "(i)" through "(vii)", each of their respective affiliates, predecessors, successors, assigns, direct and indirect subsidiaries, affiliated investment funds or investment vehicles, managed accounts, funds and other entities, investment advisors, subadvisors and managers with discretionary authority; and (ix) with respect to each of the foregoing Persons in clauses "(i)" through "(viii)", each of their respective current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, financial advisors, attorneys, Interim Chief Executive Officer, accountants, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such; **provided however that notwithstanding anything in this Plan to the contrary, each of the Insider Avoidance Actions Targets, in any capacity, shall not be a Released Party**.

104.    "*Releasing Parties*" means, collectively, and in each case solely in their capacity as such: (i) the holders of all Claims that vote to accept the Plan; (ii) the holders of Claims who are entitled to vote on the Plan and abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan; and (iii) the Released Parties.

105.    "*Sale Order*" means that certain *Order Granting Debtors' Motion for Entry of an Order (I) Approving Stalking Horse Bid Agreement and Authorizing the Sale of Certain Assets of*

*the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Claims and Encumbrances Except for Permitted Liens and Assumed Liabilities, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [ECF No. 305] entered on March 29, 2023.

106.    "*Sale Transaction*" means the sale of the Purchased Assets pursuant to the Sale Order.

107.    "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms and Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time.

108.    "*Secured Claim*" means a Claim to the extent: (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (a) as set forth in the Plan, (b) as agreed to by, on the one hand, the holder of such Claim, and on the other and as applicable, the Debtors or the Liquidating Trustee, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

109.    "*Sellers*" means the Debtors named, and in their capacity, as sellers under the Asset Purchase Agreement.

110.    "*Senior Credit Agreement*" means that certain Credit Agreement, dated as of April 8, 2020 (as amended by that certain First Amendment to Credit Agreement and Forbearance Agreement, dated as of August 3, 2021, that certain Second Amendment to Credit Agreement and Forbearance Agreement, dated as of January 18, 2022, that certain Third Amendment to Credit Agreement and Forbearance Agreement, dated as of April 29, 2022, that certain Fourth Amendment to Credit Agreement and Forbearance Agreement, dated as of June 14, 2022, that certain Fifth Amendment to Credit Agreement, dated as of September 16, 2022, that certain Sixth Amendment to Credit Agreement, dated as of November 7, 2022, that certain Seventh Amendment to Credit Agreement, dated as of December 6, 2022, that certain Eighth Amendment to Credit Agreement, dated as of January 10, 2023, and as further amended, restated, supplemented and/or otherwise modified from time to time), by and among Delphi Intermediate Healthco, LLC, as borrower, the Senior Credit Agreement Lenders, and the Senior Credit Agreement Agent.

111.    "*Senior Credit Agreement Agent*" means Brightwood Loan Services LLC, in its capacity as administrative agent for the Senior Credit Agreement Lenders under the Senior Credit Agreement together with its permitted successors and assigns.

112.    "*Senior Credit Agreement Lenders*" means the lender parties to the Senior Credit Agreement from time to time.

113.    "*Senior Credit Agreement Loan Documents*" means the Senior Credit Agreement and all other "Loan Documents" under and as defined therein.

114.    "*Senior Credit Agreement Term Loans*" means the Loans (other than the Protective Advances) under, and as defined in, the Senior Credit Agreement Loan Documents.

115.    "*Senior Credit Agreement Term Loan Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders, related to the Senior Credit Agreement Term Loans.

116.    "*Subordinated Claims*" means any Claim of any Person or Entity, and any lien securing such Claim (if applicable), (a) of the type described in and subject to subordination under section 510 of the Bankruptcy Code, (b) of the type described in and subject to subordination under section 509(c) of the Bankruptcy Code, (c) for penalties or punitive damages and any other Claim of the type described in section 726(a)(4) of the Bankruptcy Code (notwithstanding the general inapplicability of chapter 7 of the Bankruptcy Code), or (d) subordinated per the terms of the Plan or otherwise by Final Order of the Bankruptcy Court.

117.    "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

118.    "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the Southern District of Florida.

119.    "*Unimpaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

120.    "*Winddown Assets*" means the (i) Winddown Funding Amount, (ii) Insider Avoidance Actions, and (iii) remaining assets of the Debtors' Estates.

121.    "*Winddown Funding Amount*" means Cash in the amount of $250,000.00, funded by the Prepetition Lenders Unsecured Claims Pool to be used exclusively to fund the Liquidating Trust Budget and distributions pursuant to the Recovery Waterfall.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, supplemented, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively.  The words "includes" and "including" are not limiting and shall be deemed to be followed by the words "without limitation."  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (c) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      **Controlling Document.**

Except as otherwise set forth in the Final DIP Order or the Sale Order, in the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document or instrument.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II. ADMINISTRATIVE EXPENSE, PRIORITY & DIP CLAIMS

A.      **Administrative Expense Claims.**

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that the Fee Claims shall receive the treatment provided in Article II.B of the Plan; provided further that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of operating or liquidating the business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court, or as provided by Article II.D hereof, requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtors and the DIP Agent no later than the Administrative Expense Claims Bar Date pursuant to any procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

**Unless otherwise permitted by the Bankruptcy Court pursuant to Section 503(a) of the Bankruptcy Code, holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and permanently enjoined from asserting such Administrative Expense Claims against the Debtors, their Estates or their property, and such Administrative Expense Claims shall be deemed compromised, settled, and released in their entirety as of the Effective Date.** The Liquidating Trustee must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.  For the avoidance of doubt, the Administrative Expense Claims Bar Date shall not apply to any DIP Claims.

B.      **Fee Claims.**

All entities seeking an award by the Bankruptcy Court of Fee Claims (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date by the date that shall be set by order of the Bankruptcy Court, and (b) subject to the terms of the Final DIP Order, shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and, as applicable, the Debtors or the Liquidating Trustee. All entities employed by the Debtors, shall provide in their final fee applications to be filed in connection with confirmation of the Plan an estimate of their accrued and unpaid fees and expenses through the Effective Date (including an estimate for fees and expenses expected to be incurred prior to the Effective Date to prepare and prosecute allowance of final fee applications). Subject to the terms of the Final DIP Order, from and after the Confirmation Date until the Effective Date, the Debtors, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, may pay the reasonable fees and expenses during such period incurred by Berger Singerman LLP (bankruptcy counsel to the Debtors) in accordance with the *Order Granting Debtors' Motion for Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Professionals,* dated March 10, 2023 [ECF No. 200] (the "Interim Compensation Order"), provided, however, that the Interim Compensation Order is hereby modified to provide for payment of one hundred (100%) percent of both the reasonable fees and the expenses incurred during the period from after the Confirmation Date until the Effective Date; and (b) the Interim Chief Executive Officer (including GHA) in accordance with the *Corrected Final Order Granting Debtors' Application for Approval of Agreement with Getzler Henrich & Associates to Provide the Services of (I) Edward A. Phillips as Interim Chief Executive Officer and (II) Certain Support Personnel, Effective as of the Petition Date,* dated March 13, 2023 [ECF No. 205]. The Liquidating Trustee is authorized to pay compensation for services rendered or reimbursement of expenses incurred on and after the Effective Date in the ordinary course and in compliance with the Liquidating Trust Budget and without the need for Bankruptcy Court approval.

C.      **Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Claim becomes an Allowed Priority Claim, and (c) the date such Allowed Priority Claim is due and payable in the ordinary course.

D.      **DIP Claims.**

The DIP Claims shall be Allowed (without the need to file a Proof of Claim pursuant to the Final DIP Order), as of the Effective Date, in the full amount due and owing under the DIP Documents and the Final DIP Order. Except to the extent that the DIP Agent agrees in writing to a different treatment, the DIP Lenders shall receive on account of the DIP Claims on the Effective

Date (i) the DIP Cash Paydown Amount (or such lesser amount agreed to by the DIP Agent), and (ii) to the extent the DIP Cash Paydown Amount is insufficient to satisfy the DIP Claims in full, a first priority interest in, and an entitlement to receive distributions under the Plan up to the amount satisfying the DIP Claims prior to any distributions being made under the Plan to the holders of Allowed Claims and Interests in Classes 3-6 and 9 of the Plan, but subject to the Recovery Waterfall; *provided, however*, that the DIP Claims have not been previously assumed in full in the Buyer's sole discretion on the terms set forth in the Asset Purchase Agreement and the Sale Order. Upon assumption or the indefeasible payment in full in Cash of all DIP Claims, the DIP Claims shall be deemed to be fully satisfied, settled, released, and compromised and all Liens and security interests granted pursuant to the DIP Loan Agreement will be cancelled and be of no further force and effect.  Pursuant to the DIP Documents, all payments pursuant to this Article II.D of the Plan shall be made to the DIP Lenders in accordance with the DIP Documents.

## ARTICLE III.       CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    Classification in General.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### B.    Formation of Debtor Groups for Convenience Only.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, tabulating votes, and making distributions with respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, constitute a substantive consolidation of any of the Debtors, or cause the transfer of any assets. Except as otherwise provided by or permitted under the Plan, all Debtors continue to exist as separate legal entities.  The Plan constitutes a separate chapter 11 plan of liquidation for each Debtor.

### C.    Summary of Classification.

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are: (a) Impaired or Unimpaired under the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.  All of the

potential Classes for the Debtors are set forth in the Plan.

| Class | Designation | Treatment | Entitled to Vote? |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Other Priority Claims | Unimpaired | No; Deemed to Accept the Plan |
| 3 | Protective Advance Secured Claims | Impaired | Yes; Entitled To Vote |
| 4 | Senior Credit Agreement Term Loan Secured Claims | Impaired | Yes; Entitled To Vote |
| 5 | HoldCo Credit Agreement Term Loan Unsecured Claims | Impaired | Yes; Entitled To Vote |
| 6 | General Unsecured Claims | Impaired | Yes; Entitled To Vote |
| 7 | Intercompany Claims | Impaired | No; As plan proponents, deemed to accept |
| 8 | Subordinated Claims | Impaired and No Distribution | No; Deemed To Reject the Plan |
| 9 | Existing Equity Interests | Impaired | No; Deemed To Reject the Plan |

**D.      Special Provisions Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of, as applicable, the Debtors or the Liquidating Trustee in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**E.      Elimination of Vacant Classes.**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class. Any Claim or Interest in a Class that is considered vacant under the Plan shall receive no distribution.

**F.      Voting Classes; Presumed Acceptance by Non-Voting Classes.**

If a Class contains Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

**G.      Voting Classes; Acceptance and Rejection.**

a.      *Acceptance by Certain Impaired Classes*:  Only holders of Allowed Claims in Classes 3, 4, 5, and 6 are entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to

11912265-8

accept the Plan.  Holders of Claims in Classes 3, 4, 5, and 6 will receive ballots containing detailed voting instructions.

b.      *Deemed Accepted by Impaired Classes*:  Holders of Claims in Classes 1, 2, and 7 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote, and the votes of such holders will not be solicited with respect to those Claims.

c.      *Deemed Rejection by Impaired Classes*:  Holders of Claims or Interests in Classes 8 and 9 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to those Claims.

### H.      Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code.

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan, with the consent of the DIP Agent and the Senior Credit Agreement Agent, in accordance with Article XIV.F and G of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.      TREATMENT OF CLAIMS AND INTERESTS

### A.      Other Secured Claims (Class 1).

**(a)      Classification**:  Class 1 consists of the Allowed Other Secured Claims.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 1.

**(b)      Treatment**:  Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder of an Allowed Other Secured Claim shall receive, at the option of, as applicable, the Debtors or the Liquidating Trustee, in either case with the consent of the DIP Agent and the Senior Credit Agreement Agent, in full and final satisfaction of such Allowed Other Secured Claim, (i) payment in full in Cash, payable on the later of the Effective Date and the first Business Day after thirty (30) calendar days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

**(c)      Voting**:  Class 1 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Secured Claims are not entitled to vote

18

to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Other Secured Claims.

**B.      Other Priority Claims (Class 2).**

       **(a)      Classification:** Class 2 consists of the Allowed Other Priority Claims.

       **(b)      Treatment**: Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Allowed Other Priority Claim, each such holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, payable on or as soon as reasonably practicable after the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter.

       **(c)      Voting**: Class 2 is Unimpaired, and the holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Other Priority Claims.

**C.      Protective Advance Secured Claims (Class 3).**

       **(a)      Classification**: Class 3 consists of the Allowed Protective Advance Secured Claims.

       **(b)      Treatment**:  The Protective Advance Secured Claims shall be Allowed (without the need to file a Proof of Claim as reflected in the Final DIP Order), as of the Effective Date, in the full amount due and owing under the Senior Credit Agreement Loan Documents and the Final DIP Order less any amounts paid or assumed prior to or on the Effective Date (such amount to be disclosed in the Plan Supplement).  On Effective Date, or as soon thereafter as is reasonably practicable, each holder of Protective Advance Secured Claims shall receive, in full and final satisfaction of such Claim (including with respect to any related deficiency claim), its Pro Rata share of the amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall.

       **(c)      Voting**: Class 3 is Impaired and, the holders of Protective Advance Secured Claims are entitled to vote to accept or reject the Plan.

**D.      Senior Credit Agreement Term Loan Secured Claims (Class 4).**

       **(a)      Classification**: Class 4 consists of the Allowed Senior Credit Agreement Term Loan Secured Claims.

       **(b)      Treatment**:  The Senior Credit Agreement Term Loan Secured Claims shall be Allowed (without the need to file a Proof of Claim as reflected in the Final DIP Order), as of the Effective Date, in the full amount due and owing under the Senior Credit Agreement Loan Documents and Final DIP Order less any amounts paid or assumed prior

to or on the Effective Date (such amount to be disclosed in the Plan Supplement). On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Senior Credit Agreement Term Loan Secured Claim agrees to less favorable treatment of such Allowed Senior Credit Agreement Term Loan Secured Claim, each holder of an Allowed Senior Credit Agreement Term Loan Secured Claim shall receive, in full and final satisfaction of such Claim (including with respect to any related deficiency claim), its Pro Rata share of the amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall.

(c)     **Voting**: Class 4 is Impaired and, the holders of Senior Credit Agreement Term Loan Secured Claims are entitled to vote to accept or reject the Plan.

E.     **HoldCo Credit Agreement Term Loan Unsecured Claims (Class 5).**

(a)     **Classification**: Class 5 consists of the Allowed HoldCo Credit Agreement Term Loan Unsecured Claims.

(b)     **Treatment**: The HoldCo Credit Agreement Term Loan Unsecured Claims shall be Allowed (without the need to file a Proof of Claim as reflected in the Final DIP Order), as of the Effective Date, in the full amount due under the HoldCo Credit Agreement Loan Documents and the Final DIP Order less any amounts paid or assumed prior to or on the Effective Date (such amount to be disclosed in the Plan Supplement). On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed HoldCo Credit Agreement Term Loan Unsecured Claim agrees to less favorable treatment of such Allowed HoldCo Credit Agreement Term Loan Unsecured Claim, each holder of an Allowed HoldCo Credit Agreement Term Loan Unsecured Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of the amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall. In no event shall the holder of a HoldCo Credit Agreement Term Loan Unsecured Claim receive distributions on account of such Claim in excess of the Allowed amount of such Claim plus accrued postpetition interest, if any.

(c)     **Voting**: Class 5 is Impaired and, the holders of HoldCo Credit Agreement Term Loan Unsecured Claims are entitled to vote to accept or reject the Plan.

F.     **General Unsecured Claims (Class 6).**

(a)     **Classification**: Class 6 consists of General Unsecured Claims.

(b)     **Treatment**: On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or such Allowed General Unsecured Claim has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of (i) the General Unsecured Claim Cash Recovery, and (ii) amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall. In no event shall the holder of a General Unsecured Claim receive

distributions on account of such Claim in excess of the Allowed amount of such Claim plus accrued postpetition interest, if any.

    **(c)**    **Voting**: Class 6 is Impaired and, the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**G.**    **Intercompany Claims (Class 7).**

    **(a)**    **Classification**: Class 7 consists of Intercompany Claims against the Debtors.

    **(b)**    **Treatment**:  The holders of Intercompany Claims shall not receive or retain any property under the Plan on account of such Claims.

    **(c)**    **Voting**:  Class 7 is Impaired by the Plan.  As proponents of the Plan, the holders of Intercompany Claims are conclusively presumed to accept the Plan.

**H.**    **Subordinated Claims (Class 8).**

    **(a)**    **Classification**: Class 8 consists of Subordinated Claims.

    **(b)**    **Treatment**:  Holders of Allowed Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims.

    **(c)**    **Voting**:  Class 8 is Impaired by the Plan and the holders of the Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Subordinated Claims.

**I.**    **Existing Equity Interests (Class 9).**

    **(a)**    **Classification**: Class 9 consists of Existing Equity Interests.

    **(b)**    **Treatment**:  Solely in the event that all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Existing Equity Interest may receive its amount of proceeds realized from the Liquidating Trust Assets consistent with such holder's rights of payment existing immediately prior to the Petition Date and solely in accordance with the Recovery Waterfall.  The Liquidating Trustee shall determine, in the Liquidating Trustee's sole discretion, whether and when, to: (i) cancel and extinguish the Existing Equity Interests; (ii) transfer the Existing Equity Interests into the Liquidating Trust; or (iii) provide other treatment for the Existing Equity Interests consistent with the terms of this Plan and the Sale Order.

    **(c)**    **Voting**:  Class 9 is Impaired by the Plan and the holders of the Existing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of Existing Equity Interests are not entitled

to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Existing Equity Interests.

## ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Joint Chapter 11 Plan.

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor.

### B.    Corporate Action.

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by, as applicable, the Debtors or the Liquidating Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, including but not limited to any Interest in any of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Interest holders, directors, members, managers, or officers of the Debtors, the Liquidating Trust, or the Liquidating Trustee.  On or (as applicable) before the Effective Date, the authorized officers of the Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, instruments, and Debtor's Power of Attorney contemplated by the Plan (or as necessary or desirable to effectuate the transactions contemplated by the Plan).  The authorizations and approvals contemplated by this Article V.B shall be effective notwithstanding any requirements under non-bankruptcy law.

### C.    Effectuating Documents; Further Transactions.

(a)    On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

(b)    The Debtors and the Liquidating Trustee, as applicable, shall be authorized to implement the Plan in the manner most tax efficient to the Buyer, the DIP Lenders, the Senior Credit Agreement Agent, and the Debtors as determined by the Debtors in their business judgment and with the consent of the DIP Agent, the Senior Credit Agreement Agent, and the Buyer, given the totality of the circumstances.

### D.    Withholding and Reporting Requirements.

(a)    *Withholding Rights.*  In connection with the Plan, any party making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all

distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

      **(b)** *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Liquidating Trustee or such other Person designated by the Liquidating Trustee (which entity shall subsequently deliver to the Liquidating Trustee any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8. If such request is made by the Liquidating Trustee or such other Person designated by the Liquidating Trustee and the holder fails to comply before the date that is 180 calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidating Trust and, the holder shall be forever barred from asserting any right to such distribution against any Debtor, the Debtors' Estates and the Liquidating Trust.

## E.      Exemption From Certain Transfer Taxes.

      To the maximum extent provided by section 1146(a) of the Bankruptcy Code, (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, or (3) any sale by any Debtor consummated post-Confirmation, and any other transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to the Sale Transaction.

## F.      Preservation of Rights of Action.

      **<u>Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order of the Bankruptcy Court, the Debtors expressly reserve any and all such Causes of Action</u>**. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Liquidating Trust will not pursue any and all available Causes of Action against them, including, but not limited to, the Insider Avoidance Actions.

23

Except as otherwise provided in the Plan or a Final Order of the Bankruptcy Court, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that each Debtor had immediately prior to the Effective Date on behalf of the Debtor's Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor (including, but not limited to, the Insider Avoidance Actions), other than the Debtor Released Parties and the Released Parties.

On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement and the Sale Order, the Liquidating Trustee may pursue such Causes of Action in consultation with the DIP Agent and the Senior Credit Agreement Agent.

Subject to the Sale Order, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent, notice to or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

## G.    Closing of the Chapter 11 Cases.

After the Chapter 11 Cases of the Debtors have been fully administered, the Liquidating Trustee shall promptly seek authority from the Bankruptcy Court to close the Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Nothing in the Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered. Any request for *nunc pro tunc* relief shall be made on motion served on the U.S. Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing.

## H.    Notice of Effective Date.

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors or the Liquidating Trustee shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE VI.        CORPORATE GOVERNANCE

## A.    Corporate Form.

On the Effective Date, the corporate form of the Debtors shall be as it was immediately prior to the Effective Date.

11912265-8

## B.      Post-Effective Date Governance of the Debtors.

Effective as of immediately prior to the Effective Date, automatically and without further action, each existing member of the board of managers of the Debtors will be deemed to have resigned or will be deemed to have been terminated.  On and after the Effective Date, but subject to the terms of the Liquidating Trustee Agreement, (a) the Liquidating Trustee, in substitution for the management and the board of managers of the Debtors, shall be authorized and empowered, without action of the Debtors' respective members, or boards of managers, or managers (if any), to take any and all such actions as the Liquidating Trustee may determine are necessary or appropriate in the Liquidating Trustee's business judgment to implement, effectuate, consummate and perform any and all actions, documents, or transactions contemplated by the Plan or the Confirmation Order as reasonably required to implement the Plan and the wind up the Debtors, and (b) the Liquidating Trustee shall act for the Debtors in the same fiduciary capacity as applicable to the board of managers of the Debtors existing immediately prior to the Effective Date.  Prior to the Effective Date, one or more of the Debtors may provide the Liquidating Trustee with one or more Debtor's Power of Attorney.  On and after the Effective Date, the Liquidating Trustee shall elect such additional managers and officers, in consultation with the DIP Agent and the Senior Credit Agreement Agent, as the Liquidating Trustee deems necessary to implement the Plan and the actions contemplated in the Plan.  The Liquidating Trustee shall also have the power, in consultation with the DIP Agent and the Senior Credit Agreement Agent, to act by written consent to remove any managers or officer at any time with or without cause.

## C.      Corporate Existence.

On and after the Effective Date, the Liquidating Trustee shall take commercially reasonable actions as required, consistent with applicable non-bankruptcy law and consistent with the implementation of the Plan, and when appropriate in the discretion of the Liquidating Trustee, to dissolve, liquidate, strike off or take such other similar action with respect to each Debtor (including the cancellation of all Interests in a Debtor pursuant to the Confirmation Order) and complete the winding down of such Debtor as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Debtor or its shareholders or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities or complying with the laws and procedures governing the winding down of any such Debtor; provided, however, that the foregoing does not limit the Liquidating Trustee's ability to otherwise abandon an Interest in a Debtor or to transfer any Interest in a Debtor, including any Existing Equity Interest, into the Liquidating Trust.  The Liquidating Trustee may, to the extent required by applicable non-bankruptcy law, maintain a Debtor as a limited liability company in good standing until such time as all aspects of the Plan pertaining to such Debtor and the winding down of such Debtor is complete.

## D.      Certificates of Formation and By-Laws.

As of the Effective Date, the certificates of formation, operating agreements, by-laws, and any other organizational document, of the Debtors shall be amended to the extent necessary to carry out the provisions of the Plan.

# ARTICLE VII.        DISTRIBUTIONS

### A.        Distributions Generally.

On or after the Effective Date, the Liquidating Trust shall make distributions only in accordance with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement to holders of Allowed Claims, net of any reserve(s) for Disputed Claims, and only to the extent that the Liquidating Trust has sufficient Liquidating Trust Assets (or income and/or proceeds realized from Liquidating Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order and the Liquidating Trust Agreement.  The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined by the Liquidating Trustee in its reasonable discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.

### B.        Distribution Record Date.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, the Liquidating Trustee or their respective agents, shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record of holders of any of the Claims or Interests.  The Debtors or the Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

### C.        Date of Distributions.

Except as otherwise provided in the Plan, the Debtor or the Liquidating Trustee, as applicable shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Liquidating Trustee shall from time to time determine the subsequent Distribution Dates, if any.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.        Reserve on Account of Disputed Claims.

The Liquidating Trustee shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Liquidating Trustee shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Administrative Expense Claim that is actually payable in accordance with the Plan.

11912265-8

E.      **Delivery of Distributions & Unclaimed Property.**

Subject to Bankruptcy Rule 9010, distributions to any holder or permitted designee of an Allowed Claim shall be made by the Liquidating Trustee who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims on behalf of the Debtors or the Liquidating Trust.  With respect to holders of Allowed: (i) DIP Claims, the Liquidating Trustee shall make any distributions to the DIP Agent; (ii) Protective Advance Secured Claims, the Liquidating Trustee shall make any distributions to the Senior Credit Agreement Agent; (iii) Senior Credit Agreement Term Loan Secured Claims, the Liquidating Trustee shall make any distributions to the Senior Credit Agreement Agent; and (iv) HoldCo Credit Agreement Term Loan Unsecured Claims, the Liquidating Trustee shall make any distributions to the HoldCo Credit Agreement Agent.

In the event that any distribution to any holder is returned as undeliverable or is otherwise unclaimed, no further distribution to such holder shall be made unless and until the Liquidating Trustee is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest; *provided, however*, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in such property shall be released, settled, compromised, and forever barred.  Nothing herein shall require the Liquidating Trust to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, to assist in any way such holders or permitted designees, as applicable. Notwithstanding any provisions in the Plan to the contrary, all distributions to holders of Claims shall be deemed completed,  and the obligations of the Liquidating Trust to make such distributions under the Plan and the Liquidating Trust Agreement shall be deemed satisfied, when made by the Liquidating Trust.

F.      **Manner of Distribution.**

At the option of the Debtors or the Liquidating Trustee, any Cash payment to be made under the Plan may be made by a check or wire transfer.  The wire transfer fee will be deducted from the amount of the distribution that a holder of an Allowed Claim or Interest would otherwise receive.

In order to receive a distribution under the Plan, a holder of an Allowed Claim must submit to the Liquidating Trustee both (a) the applicable Form W-9, or if the payee is a foreign person, Form W-8, and (b) a form certifying that neither the holder nor, to the best of their knowledge, any Person or Entity for whom they may be acting or who may be the beneficial owner of a Claim or Interest that is in their name or control is a person or entity with whom it is illegal for a U.S. Person to transact under (i) the Office of Foreign Assets Control sanctions regulations, or (ii) the list of Specially Designated Nationals and Blocked Persons.  Unless the Liquidating Trustee receives

original, properly completed copies of each form with an amount of time sufficient, in the Liquidating Trustee's sole discretion (as applicable), to process in advance of a scheduled Distribution Date, the holder of an Allowed Claim that would otherwise be entitled to a Distribution shall not receive any Distribution on the applicable Distribution Date.

### G.    No Postpetition Interest on Claims.

Except as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### H.    Time Bar to Cash Payments.

Checks issued by the Liquidating Trust in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Liquidating Trust, notwithstanding any federal or state escheat laws to the contrary, and the Person to whom such voided check was issued shall be forever barred from asserting any right to the amount represented by such voided check against any Debtor, the Debtors' Estates and the Liquidating Trust. Requests for re-issuance of any check shall be made to the Liquidating Trustee by the holder of the Allowed Claim to whom such check was originally issued.

### I.    Manner of Payment Under the Plan.

Except as otherwise specifically provided in the Plan, at the option of the Liquidating Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### J.    Satisfaction of Claims.

Except as otherwise specifically provided in the Plan, distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in partial satisfaction for such Allowed Claims to the extent of such distribution and/or delivery.

### K.    Minimum Cash Distributions.

The Liquidating Trust shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; *provided that*, if any distribution is not made pursuant to this Article VII.K of the Plan, such distribution shall be added to any subsequent distribution to be made on behalf of such holder's Allowed Claim. If either (i) all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full or (ii) the amount of any final distributions to holders of Allowed Claims would be $100.00 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $25,000.00, then no further distribution shall be made by the Liquidating Trustee and any surplus Cash shall be donated and distributed to one or more of the following organizations (each of which qualifies as a tax-exempt organization under

Section 501(c)(3) of the Tax Code), (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (ii) The Eleanor R. Cristol and Judge A. Jay Cristol Bankruptcy Pro Bono Assistance Clinic at the University of Miami School of Law.

**L.    Setoffs and Recoupments.**

The Debtors and the Liquidating Trust, as applicable, may, but shall not be required to, set off or recoup against any Claim, any claims of any nature whatsoever that the Debtors or the Liquidating Trustee, as applicable, may have against the holder of such Claim; *provided that*, neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claim the Debtors or the Liquidating Trustee may have against the holder of such Claim.

**M.    Distributions After Effective Date.**

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

**N.    Allocation of Distributions Between Principal and Interest.**

Except as otherwise provided in the Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest through the Petition Date.

**O.    Payment of Disputed Claims.**

As Disputed Claims are resolved pursuant to Article VIII.E of the Plan, the Liquidating Trustee shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.  Such distributions shall be made on the first Distribution Date that is at least forty-five (45) calendar days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Liquidating Trustee in the Liquidating Trustee's sole discretion. No holder of a Disputed Claim shall have any Claim against the Liquidating Trust, the Debtors or the Estates with respect to such Claim until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest, dividends, or other distributions on account of such Disputed Claim except as provided in the Plan.

## ARTICLE VIII.    PROCEDURES FOR DISPUTED CLAIMS

**A.    Allowance of Claims.**

On and after the Effective Date, and subject to any order of the Bankruptcy Court, the Liquidating Trustee shall be entitled to reconcile, object to, or settle Claims filed against the Debtors.  On and after the Effective Date, the Liquidating Trustee shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to

any Claim deemed Allowed under the Plan.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order and the Final DIP Order, in the Chapter 11 Cases allowing such Claim.

**B.      Objections to Claims.**

On and after the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Liquidating Trustee.  Such objections and requests for estimation shall be served and filed (i) on or before the seventy-fifth (75th) calendar day following the later of (a) the Effective Date and (b) the date that a proof of Claim is properly filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) such later date as ordered by the Bankruptcy Court upon a motion filed by the Liquidating Trustee.

**C.      Estimation of Claims.**

The Liquidating Trustee may determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court.  The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**D.      No Distributions Pending Allowance.**

If an objection to a Claim is filed as set forth in Article VIII.B of the Plan, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**E.      Resolution of Claims.**

Except as otherwise provided in the Plan, the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all

Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court.  The Liquidating Trustee or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

**F.**      **Disallowed Claims.**

All Claims held by persons or entities against whom or which any of the Debtors or the Liquidating Trustee has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this Article VIII.F shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Liquidating Trustee from such party have been paid.

**G.**      **Claims Paid and Payable by Third Parties.**

A Claim shall be disallowed without an objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full in Cash on account of such Claim from a party that is not the Debtors or the Liquidating Trustee.  To the extent that a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such holder shall repay, return, or deliver any distribution held by or transferred to the holder to the applicable Debtor or Liquidating Trustee to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Allowed Claim as of the date of any such distribution.

**H.**      **Amendments to Proofs of Claim.**

On or after the Effective Date, unless otherwise authorized by the Confirmation Order or other Final Order of the Bankruptcy Court, a Proof of Claim may not be filed or amended without the prior written consent of the Liquidating Trustee, the DIP Agent, and the Senior Credit Agreement Agent, and any such underlying filed Proof of Claim, prior to any such amendment as authorized by this Article VIII.H, shall be deemed disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court, to the maximum extent provided by applicable law.

### ARTICLE IX.              EXECUTORY CONTRACTS

**A.**      **Rejection of Executory Contracts.**

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) is identified for assumption in the Plan Supplement; (ii) as of the Effective Date is subject to a

pending motion to assume such Executory Contract; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy.

**B.     Cure of Defaults for Assumed Executory Contracts.**

Any Cure due under each Executory Contract to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date, subject to the limitation described below, by the Debtors or the Liquidating Trustee, as applicable, or on such other terms as the parties to such Executory Contracts may otherwise agree.

In the event of a dispute regarding (i) the amount of the Cure; (ii) the ability of the Debtors or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract; or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); *provided, however*, that the Debtors or the Liquidating Trustee, as applicable, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time before the Effective Date of such assumption and/or assignment.

**C.     Claims Based Upon Rejection of Executory Contracts.**

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Plan, must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) calendar days after the filing and service of the notice of the occurrence of the Effective Date.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

**Any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court and served on the Liquidating Trustee on or before the latter of either (i) 30 days after the filing and service of the notice of the occurrence of the Effective Date or (ii) 30 days after the effective date of the rejection of the contract or lease, will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trust, the Debtors' Estates, or the property of any of the foregoing without the need for any objection by the Liquidating Trust or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

11912265-8

D.      **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all Executory Contracts related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.      **Insurance Policies.**

Notwithstanding anything to the contrary in the Plan, each insurance policy, including any D&O Policies to which the Debtors are a party as of the Effective Date, shall be deemed executory and shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

In addition, on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies.

F.      **Survival of Debtors' Indemnification Obligations.**

Subject to the applicable limits in the Debtors' D&O Policies, to the fullest extent permitted by applicable law, any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements to indemnify current and former (limited solely to those individuals who are receiving the benefit of the releases in Article XII, but excluding, for the avoidance of doubt, the Insider Avoidance Action Targets) officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; *provided that*, notwithstanding anything herein, the Debtors shall not indemnify officers, directors, agents, or employees of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission (i) that is a criminal act unless such officer, director, agent, or employee had no reasonable cause to believe its conduct was unlawful; (ii) that is determined by a Final Order to be the result of fraud, gross negligence, or willful misconduct; (iii) for any other acts or omissions

33

that are excluded under the terms of the foregoing organizational documents; or (iv) related to, or in connection with the Insider Avoidance Actions.  All such obligations, unless otherwise described in (i)-(iv) above, shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan unless such obligation previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date.

### G.    Reservation of Rights.

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or that the Debtors or the Estates have any liability thereunder. Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and the Liquidating Trust under any executory or non-executory contract or any unexpired or expired lease.  Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## ARTICLE X. LIQUIDATING TRUST

### A.    Establishment of the Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be established and become effective for the benefit of the Liquidating Trust Beneficiaries. The powers, authority, responsibilities, and duties of the Liquidating Trust, and the Liquidating Trustee are set forth in and shall be governed by the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall provide for the distribution of the Liquidation Trust Assets to the Liquidating Trust Beneficiaries in accordance with the Recovery Waterfall.  In the event of any conflict between the terms of this Article X.A and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this Article X.A shall govern.  The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

### B.    Purpose of the Liquidating Trust.

The Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the sole purpose of liquidating and administering the Liquidating Trust Assets and making distributions on account thereof as provided for under the Plan and shall be structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of the holders of Liquidating Trust Beneficiaries, and the sole purpose of the Liquidating Trust shall be liquidating and distributing the assets of the Debtor contributed to such Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), including the resolution of Claims, with no objective to continue or engage in the conduct of a trade or

business. The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

### C.      Liquidating Trust Assets.

The Liquidating Trust shall consist of Liquidating Trust Assets. On the Effective Date, and in accordance with sections 1123 and 1141 of the Bankruptcy Code, all title and interest in all of the Liquidating Trust Assets, which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date or otherwise subject to a Debtor's Power of Attorney, including without limitation all Winddown Assets and Insider Avoidance Actions, as well as the rights and powers of each Debtor in such Liquidating Trust Assets, shall irrevocably and automatically vest in the Liquidating Trust, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or Liquidating Trust. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their respective predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust in accordance with this Article X.C. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146 of the Bankruptcy Code. In connection with the transfer of such Liquidating Trust Assets, any attorney client privilege, work product privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives, and the Debtors and the Liquidating Trustee are directed to take all necessary actions to effectuate the transfer of such privileges. The Liquidating Trustee shall agree to accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the terms of the Plan and the Liquidating Trust Agreement. The Debtors, the Liquidating Trustee, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. Any distribution of the Liquidating Trust Assets shall be made in accordance with the Recovery Waterfall.

### D.      Non-Transferability of Liquidating Trust Interests.

The Liquidating Trust Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

### E.      Administration of Liquidating Trust.

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

11912265-8

### F. Liquidating Trustee's Tax Power for Debtors.

The Liquidating Trustee shall have the same authority in respect of all taxes of the Debtors, and to the same extent, as if the Liquidating Trustee were the Debtors.

### G. Cash Investments.

The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

### H. Distribution of Liquidating Trust Assets.

The Liquidating Trustee shall distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, in accordance with the Recovery Waterfall, on a semi-annual basis, Cash representing its net income plus all net proceeds from the sale of its assets (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this Article X.H), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this Article X.H of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

### I. Federal Income Tax Treatment of Liquidating Trust.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for the related Liquidating Trust Interests. Accordingly, except in the event of contrary definitive guidance, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. For the purpose of this Article X.I, the terms "party" and "Liquidating Trust Beneficiary" shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

**J.      Tax Reporting.**

(a)      The Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Article X.J.  The Liquidating Trustee also shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes.

(b)      Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidating Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust.  Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)      As soon as reasonably practicable after the Liquidating Trust Assets are transferred to a Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)      Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if such Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), such Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including such Liquidating Trustee, the Debtors and Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)      The Liquidating Trustee shall be responsible for payment, out of the respective Liquidating Trust Assets, of any taxes imposed on the respective Liquidating Trust or its assets.

**(f)**      The Liquidating Trustee may request an expedited determination of taxes of a Liquidating Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Liquidating Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Liquidating Trust or the Debtor for all taxable periods through the dissolution of such Liquidating Trust.

**K.      Dissolution.**

**(a)**      The Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, (ii) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidation Trust proceeds to justify further pursuit, or (iii) all distributions required to be made by the Liquidating Trustee under the Plan and a Liquidating Trust Agreement have been made; *provided*, *however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to Article X of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

**(b)**      If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering a Liquidating Trust so as to make a final distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to one or more of the following organizations (each of which qualifies as an I.R.C. § 501(c)(3) tax-exempt organization), (*y*) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (*z*) The Eleanor R. Cristol and Judge A. Jay Cristol Bankruptcy Pro Bono Assistance Clinic at the University of Miami School of Law, and (iii) dissolve such Liquidating Trust.

## ARTICLE XI.      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.      Conditions Precedent to the Effective Date**.

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

11912265-8

(a)      the Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

(b)      the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

(c)      the Plan Supplement and all of the Schedules, documents, and exhibits contained therein, and all other relevant schedules, documents, supplements and exhibits to the Plan, shall have been filed with the Bankruptcy Court and shall be acceptable to the relevant persons in accordance with the applicable consent and approval rights provided in the Plan; and

(d)      all actions, documents, and agreements necessary to implement and consummate the Plan, and the other transactions and other matters contemplated in the Plan, shall have been effected or executed.

## B.      Waiver of Conditions Precedent.

Each of the conditions precedent in Article XI.A of the Plan may be waived in writing by the Debtors with the consent of the DIP Agent and the Senior Credit Agreement Agent and without notice to or authorization of the Bankruptcy Court.

## C.      Effect of Failure of Conditions to Effective Date.

If the conditions listed in Article XI.A of the Plan are not satisfied on or before the first Business Day that is more than ninety (90) calendar days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, upon filing a notice with the Bankruptcy Court, the Debtors may deem the Plan null and void in all respects and in such a case, nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against or any Interests in the Debtor; (ii) prejudice in any manner the rights of any Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Entity.

## ARTICLE XII.      EFFECT OF CONFIRMATION

## A.      Vesting of Assets.

On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, all property of the Estates shall vest in the Liquidating Trust, except as provided pursuant to the Plan and the Confirmation Order.  On and after the Effective Date, the Liquidating Trust may take any action, including,  without limitation, the operation of its businesses; the use, acquisition, sale, lease and disposition of property;  and the  entry  into transactions, agreements, understandings, or arrangements, pursue the Insider Avoidance Actions, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of

any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Liquidating Trust may pay the charges that the Liquidating Trust incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**B.      Release of Liens.**

Except as otherwise provided in the Sale Order, Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Liquidating Trust.

**C.      Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Liquidating Trust reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**D.      Binding Effect.**

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, notwithstanding whether any such holders were (i) Impaired or Unimpaired under the Plan; (ii) deemed to accept or reject the Plan; (iii) failed to vote to accept or reject the Plan; or (iv) voted to reject the Plan.

**E.      Sale Order.**

Nothing contained in the Plan, the Disclosure Statement, or the Confirmation Order, constitutes or shall be construed to be inconsistent with the terms of the Sale Order or any modification or amendment to the Sale Order.

**F.      Term of Injunctions or Stays.**

Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### G.      Compromise and Settlement.

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Interests (other than Causes of Action that have not been waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court).  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Interests (other than Causes of Action that have not been waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court), as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Interests.

### H.      Debtor Release.

**AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE FINAL DIP ORDER OR THE SALE ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, ANY DEBTOR RELEASED PARTY IS DEEMED RELEASED BY THE DEBTORS, THE RESPECTIVE ESTATES, THE LIQUIDATING TRUST, AND ANY PERSON OR ENTITY, SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS OR THEIR ESTATES AND THEIR RESPECTIVE PROPERTY (AND EACH SUCH DEBTOR RELEASED PARTY SHALL BE DEEMED RELEASED BY EACH DEBTOR AND ITS ESTATE AND ITS RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO, THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE**

41

PLAN, THE PREPARATION, FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY DEBTOR RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE CONFIRMATION DATE; PROVIDED, HOWEVER, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.H SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTORS OR THEIR RESPECTIVE CHAPTER 11 ESTATES AGAINST A DEBTOR RELEASED PARTY ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTORS THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THE PLAN; PROVIDED, FURTHER HOWEVER, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.H SHALL NOT RELEASE ANY PERSON OR ENTITY, INCLUDING WITHOUT LIMITATION, THE INSIDER AVOIDANCE ACTION TARGETS,  FROM ANY INSIDER AVOIDANCE ACTION, OR CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, PROVIDED THAT EACH SUCH DEBTOR RELEASED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND THE OPPORTUNITY FOR A HEARING; AND (6) A BAR TO ANY OF THE DEBTORS' ESTATES, OR THE LIQUIDATING TRUSTEE, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

I.     Releases by Holders of Claims and Interests (i.e., Third-Party Release).

EFFECTIVE AS OF THE EFFECTIVE DATE, EACH OF THE RELEASING PARTIES, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING

42

PERSONS OR ENTITIES, SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES, AND THEIR RESPECTIVE PROPERTY, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE CONFIRMATION DATE; PROVIDED, HOWEVER, THE RELEASES SET FORTH ABOVE (I) DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, (II) ARE APPLICABLE ONLY TO THE MAXIMUM EXTENT PERMITTED BY LAW, AND (III) DO NOT RELEASE ANY RELEASING PARTY'S CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES UNDER ANY AGREEMENT ENTERED INTO BY THE DEBTORS AFTER THE PETITION DATE; PROVIDED FURTHER, HOWEVER, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.I SHALL NOT RELEASE ANY PERSON OR ENTITY, INCLUDING WITHOUT LIMITATION, THE INSIDER AVOIDANCE ACTION TARGETS, FROM ANY INSIDER AVOIDANCE ACTION, OR CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, PROVIDED THAT EACH SUCH DEBTOR RELEASED PARTY SHALL BE ENTITLED TO RELY UPON

THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION AND SUBSTANTIAL CONTRIBUTIONS PROVIDED BY THE RELEASED PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND THE OPPORTUNITY FOR A HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS AND REPRESENTATIVES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

J.     Exculpation.

TO THE EXTENT PERMITTED BY SECTION 1125(E) OF THE BANKRUPTCY CODE, NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, REMEDY, LOSS, AND LIABILITY FOR ANY CLAIM IN CONNECTION WITH OR ARISING OUT OF THE PREPARATION FOR, AND ADMINISTRATION OF, THE CHAPTER 11 CASES; THE NEGOTIATION, FORMULATION, PREPARATION, AND PURSUIT OF THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, AND THE SOLICITATION OF VOTES FOR, AND CONFIRMATION OF, THE PLAN; THE FUNDING AND CONSUMMATION OF THE PLAN, AND ANY RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (IN EACH CASE IN FURTHERANCE OF THE FOREGOING); THE MAKING OF DISTRIBUTIONS UNDER THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; NEGOTIATIONS REGARDING OR CONCERNING ANY OF THE FOREGOING, OR THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE EXCULPATION SET FORTH IN THIS ARTICLE XII.J SHALL NOT RELEASE ANY PERSON OR ENTITY FROM CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, PROVIDED THAT EACH SUCH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS; PROVIDED FURTHER, HOWEVER,  NOTHING IN THE PLAN SHALL LIMIT THE

**LIABILITY OF ATTORNEYS TO THEIR RESPECTIVE CLIENTS PURSUANT TO RULE 4-1.8(H) OF THE FLORIDA RULES OF PROFESSIONAL CONDUCT.  THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**K.    Temporary Injunction.**

On and after the Effective Date through and until the date upon which all remaining tangible and intangible property vested in the Liquidating Trust has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement, and the Plan and the Liquidating Trust have been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, all Persons and Entities other than the Liquidating Trustee (as applicable) are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right, or Cause of Action of the Debtors for which a Debtor retains sole and exclusive authority to pursue in accordance with the Plan.

Except as provided herein, on and after the Effective Date through and until the date upon which all remaining tangible and intangible property vested in the Liquidating Trust has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement, and the Plan and the Liquidating Trust have been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, all Persons and Entities shall be enjoined from  commencing or continuing any judicial or administrative proceeding, employing any process, or taking any action whatsoever against the Debtor, the Estate or the Liquidating Trustee that interferes with the consummation and implementation of the Plan, including the transfers, payments and distributions to be made in accordance with the Plan. For the avoidance of doubt nothing in this Article XII.K shall act as a release of any claims or Causes of Action; provided however, the Bankruptcy Court shall retain the authority, after notice and hearing, to lift the injunction set forth in this Article XII.K (to the extent necessary) upon request from any Person who holds a claim or Cause of Action not released, waived or otherwise satisfied under the Plan.

**L.    Waiver of Statutory Limitation on Releases.**

**EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER THIS ARTICLE XII.L OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE**

**FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542 (WHICH STATES, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY").   THE RELEASES CONTAINED IN THIS <u>ARTICLE XII.L</u> OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.**

**M.     Other Limitations of Releases and Exculpation; Florida Rules of Professional Conduct.**

Nothing in this <u>Article XII.M</u> shall (i) be construed to release or exculpate any person from, or require indemnification of any Person against losses arising from, the fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or (ii) limit the liability of the professionals of any of the Debtors or the Liquidating Trustee, to their respective clients under Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

### ARTICLE XIII.     RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan for, among other things, the following purposes

    **(a)**     to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

    **(b)**     to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including but not limited to the Insider Avoidance Actions;

    **(c)**     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

    **(d)**     to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date (e.g., Fee Claims);

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Asset Purchase Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(k)    to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(l)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)    to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)    to enter a final decree closing the Chapter 11 Cases;

**(r)**    to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings previously entered or approved by the Bankruptcy Court;

**(s)**    to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

**(t)**    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.    MISCELLANEOUS PROVISIONS

### A.    Payment of Statutory Fees.

On the Effective Date and thereafter as may be required, the Liquidating Trustee shall pay in full in Cash all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case; *provided, however*, that after the Effective Date such fees shall only be payable until such time as a final decree is entered closing the Chapter 11 Cases, a Final Order converting such cases to cases under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Chapter 11 Cases is entered.

### B.    Post-Confirmation Reporting.

After the Effective Date, in accordance with guidelines established by the United States Trustee, the Liquidating Trustee will file quarterly operating reports with the Bankruptcy Court.

### C.    Request for Expedited Determination of Taxes.

The Debtors or the Liquidating Trustee, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the liquidation of the Debtors as determined under applicable tax laws.

### D.    Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### E.    Amendments.

*Plan Modifications*.  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, with the prior written approval of the DIP Agent and the Senior

48

Credit Agreement Agent, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, with the prior written approval of the DIP Agent and the Senior Credit Agreement Agent, and upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, *prior to the Effective Date*, the Debtors, with the prior written approval of the DIP Agent and the Senior Credit Agreement Agent, and without the need for Bankruptcy Court approval, or *following the Effective Date*, the Liquidating Trust, with the prior written approval of the DIP Agent and the Senior Credit Agreement Agent, may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented

*Other Amendments*.  Before the Effective Date, with the prior written consent of the DIP Agent and the Senior Credit Agreement Agent, the Debtors may make appropriate technical adjustments and modifications to the Plan and any of the documents prepared in connection herewith without further order or approval of the Bankruptcy Court.

### F.    Revocation or Withdrawal of the Plan.

The Debtors reserve the right, after good-faith consultations with the DIP Agent and the Senior Credit Agreement Agent, to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors, after good-faith consultations with the DIP Agent and the Senior Credit Agreement Agent, revoke or withdraw the Plan, or if Confirmation or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

### G.    Severability of Plan Provisions Upon Confirmation.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, and subject to the prior written consent of the DIP Agent and the Senior Credit Agreement Agent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or

interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Liquidating Trustee (as the case may be); and (3) non-severable and mutually dependent.

**H.     Governing Law.**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof; provided, that corporate or entity governance matters relating to any Debtor shall be covered by the laws of the state of incorporation or organization of the applicable Debtor.

**I.      Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**J.      Additional Documents.**

On or before the Effective Date, the Debtors may issue, execute, deliver and file with the Bankruptcy Court or record, as applicable, with the consent of the DIP Agent and the Senior Credit Agreement Agent, such agreements and other documents (in form and substance satisfactory to the DIP Agent and the Senior Credit Agreement Agent) as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Liquidating Trustee, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**K.      Dates of Actions to Implement the Plan.**

In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**L.      Immediate Binding Effect.**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors

and assigns, including, without limitation, the Liquidating Trust. For the avoidance of doubt, confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Debtors and their Estates will be wound down in accordance with the Plan

**M.      Deemed Acts.**

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**N.      Successor and Assigns.**

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

**O.      Solicitation of the Plan.**

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have previously solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Debtors and each of their respective directors, officers, managers, members, shareholders, representatives, principals, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**P.      Plan Supplement.**

Unless otherwise ordered by the Bankruptcy Court, the Plan Supplement shall be filed with the Bankruptcy Court by not later than the objection deadline for filing objections with respect to the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained online at the website of the Debtors' court-appointed noticing, claims and solicitation agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/case/DelphiHealth/info.

**Q.      Entire Agreement.**

Except with respect to the consummation of the Sale Transaction, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, claims, and defenses, and such parties expressly reserve any and all of their respective rights, remedies, claims, and defenses.  The Plan and the documents comprising the Plan Supplement, including any drafts thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing) shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any party in interest of any claim or fault or liability or damages whatsoever.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to the Plan and the documents comprising the Plan Supplement are part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

R.     **Exhibits to Plan.**

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

S.     **Notices.**

All notices, requests and demands to or upon the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To the Debtors:**

> Delphi Behavioral Health Group, LLC *et al.*
> 1901 West Cypress Creek Road
> Fort Lauderdale, Florida 33309
> Attn:  Edward A. Phillips, Interim Chief Executive Officer
> Tel:  954.487.1270
> Email: ephillips@delphihealthgroup.com
>
> - and -
>
> Berger Singerman LLP
> 1450 Brickell Avenue
> Miami, Florida 33131
> Attn:   Paul Steven Singerman, Esq.
>           Christopher Andrew Jarvinen, Esq.
>           Paul A. Avron, Esq.
>           Robin J. Rubens, Esq.
> Tel:     305.755.9500
> Email: singerman@bergersingerman.com
>           cjarvinen@bergersingerman.com

11912265-8

pavron@bergersingerman.com
rrubens@bergersingerman.com

**To the Prepetition Lenders, the Prepetition Agent, the DIP Lenders and/or the DIP Agent:**

Brightwood Loan Services LLC
810 Seventh Avenue, 26th Floor
New York, N.Y. 10019
Attn: Kristan O'Connor
Tel: 646-957-9525
Email: oconnor@brightwoodlp.com

- and -

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, N.Y. 1036
Attn:  Roger Schwartz, Esq., Peter Montoni, Esq., and Robert Nussbaum, Esq.
Tel:    212.556.2100
Email: rschwartz@kslaw.com
        pmontoni@kslaw.com
        rnussbaum@kslaw.com

**To the Liquidating Trustee:**

Name [To Be Provided in the Plan Supplement]
Attn: [●]
Tel: [●]
Email: [●]

[THIS SECTION INTENTIONALLY LEFT BLANK]

53

     After the Effective Date, the Liquidating Trustee has the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those entities who have filed such renewed requests.

Dated:  March 29, 2023
        Miami, Florida

                Respectfully Submitted

                By:  /s/ Edward A. Phillips
                Name:  Edward A. Phillips
                Title: Interim Chief Executive Officer
                Delphi Behavioral Health Group, LLC *et al.*

**Exhibit "A"**

**Recovery Waterfall**

<u>Recovery Waterfall</u>

The proceeds of the Liquidating Trust Assets, if any, shall be distributed strictly in accordance with the distribution priorities set forth below.  All distributions shall be made pursuant to the Liquidating Trust Agreement and in consultation with the DIP Agent and the Senior Credit Agreement Agent.  Notwithstanding anything in the Plan to the contrary, without further notice or order of the Bankruptcy Court, the Debtors with the consent of the DIP Agent and the Senior Credit Agreement Agent, may amend this <u>Exhibit "A"</u>, if necessary and as applicable, to comply with section 1129(b) of the Bankruptcy Code and any applicable tax obligations of the Liquidating Trust.

1. *First*, to the Liquidating Trustee for the reasonable, documented, and out of pocket, fees and expenses incurred in connection with the administration of the Liquidating Trust, subject to, and in accordance with, the Liquidating Trust Budget (subject to the funds available from the Winddown Funding Amount and any Cash proceeds from Liquidating Trust Assets received by the Liquidating Trust on and after the Effective Date);

2. *Second*, $500,000.00 to the:

   a. holders of Allowed Protective Advance Secured Claims (Class 3)[2] solely to the extent such claims have not been credit bid for the Purchased Assets; *and*

   b. holders of Allowed General Unsecured Claims (Class 6), solely to the extent such claims have not been paid in full from the General Unsecured Claim Cash Recovery,

   to be shared (a) <u>50%</u> (to the holders of the Allowed Protective Advance Secured Claims (Class 3), and to be distributed pursuant to the order of priority of repayment under the terms of the Senior Credit Agreement Loan Documents) and (b) <u>50%</u> (to the holders of Allowed General Unsecured Claims (Class 6));

3. *Third*, to the:

   a. holders of Allowed Protective Advance Secured Claims (Class 3), solely to the extent such claims have not been credit bid for the Purchased Assets or paid in full from the *Second* priority of distributions in this Recovery Waterfall, *and*

   b. holders of Allowed Senior Credit Agreement Term Loan Secured Claims (Class 4), solely to the extent such claims have not been credit bid for the Purchased Assets, *and*

   c. holders of Allowed General Unsecured Claims (Class 6), solely to the extent such claims have not been paid in full from the General Unsecured Claim Cash Recovery and/or the *Third* priority of distributions in this Recovery Waterfall,

   to be shared (a) <u>50%</u> (to the holders of the Allowed Protective Advance Secured Claims (Class 3) and Allowed Senior Credit Agreement Term Loan Secured Claims

---

[2] Pursuant to the Sale Transaction, $5 million (in principal) of the Protective Advance Secured Claims represent the "Credit Bid Amount" under Section 3.2(a) ("Purchase Price") of the Asset Purchase Agreement, and therefore, $5 million of Protective Advance Secured Claims have been credit bid for the Purchased Assets.

(Class 4), and to be distributed pursuant to the order of priority of repayment under the terms of the Senior Credit Agreement Loan Documents) and (b) <u>50%</u> (to the holders of Allowed General Unsecured Claims (Class 6)), until the holders of (i) Allowed General Unsecured Claims (Class 6) have received a total distribution of 20% in Cash of the amount of their Allowed General Unsecured Claims and (ii) Allowed Protective Advance Secured Claims (Class 3) and Allowed Senior Credit Agreement Term Loan Secured Claims (Class 4) are each paid in full in Cash;

4.  *Fourth*, to holders of Allowed HoldCo Credit Agreement Term Loan Unsecured Claims (Class 5), until paid in full in Cash; and

5.  *Fifth*, to, holders of Existing Equity Interests (Class 9), consistent with such holder's rights of payment existing immediately prior to the Petition Date.

2

**Exhibit "B"**

**Non-Exclusive List of Insider Avoidance
Actions Targets and Insider Avoidance Actions**

## NON-EXCLUSIVE LIST[3] OF INSIDER AVOIDANCE
## ACTIONS TARGETS AND INSIDER AVOIDANCE ACTIONS[4]

**A.      Insider Avoidance Actions Targets.**

      1.      Infinity Behavioral Health Services, LLC  ("**Infinity**")

**B.      Potential Insider Avoidance Actions; Potential Insider and Non-Insider Claims or Causes of Action.**

      1.      Infinity Claims/Causes of Action.

Insider Avoidance Actions include Claims and Causes of Action, including but not limited to possible breaches of fiduciary duties and aiding and abetting breaches of fiduciary duties, such as violations of the duties of care, loyalty and good faith, as well as usurpation of corporate opportunities, against Infinity, with respect to transactions involving Infinity and one or more of the Debtors (collectively, the "**Infinity Claims/Causes of Action**"):

      2.      Preserved Claims.

With respect to the Infinity Claims/Causes of Action, the Debtors reserve the right to assert any Insider Avoidance Actions or add other parties to this **Exhibit "B"**, as well as other Claims and Causes of Action against insiders of the Debtors and non-insiders of the Debtors which are *not* being purchased by the Buyer of the Debtors' assets through the *Asset Purchase Agreement* attached to, and described in, ECF Nos. 111, 182, and 234 (as defined herein, collectively, the Stalking Horse Bid Agreement), and any other relevant document filed with the Court (collectively, the "**Preserved Claims**").[5]  Such Preserved Claims may include claims sounding in fraud and breach of contract, and also breach of fiduciary duty and aiding and abetting breach of fiduciary duty, such as violations of the duties of care, loyalty and good faith, as well as usurpation of corporate opportunities, against among others, any current or former (a)(i) insider of any of the Debtors, including but not limited to any insider landlord or (ii) purchaser of the Debtors' assets (other than the Stalking Horse Bidder), and (b) entity owned and/or controlled by any of the persons or entities described in this paragraph (other than the Stalking Horse Bidder), individually or collectively, and their respective Affiliates (as such term is defined above), for which directors

---

[3]   To the extent not defined herein, and with the sole exception of "Affiliate" (*see* note 2), all capitalized terms in this **Exhibit "B"** shall have the meanings ascribed to them in the Plan.

[4]   Notwithstanding anything else in the Agreement and solely for purposes of this **Exhibit "B"**, "Affiliate" shall mean, with respect to any Person (as defined in the Agreement), any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise, but shall not include any Debtors.

[5]   This same reservation of rights applies equally to the Avoidance Actions that are being purchased by Delphi Lender AcquisitionCo LLC (i.e., the Stalking Horse Bidder) pursuant to the Stalking Horse Bid Agreement or another asset purchase agreement entered into by and among each of the Debtor-Sellers, as sellers, and a successful bidder for the Debtors' assets *other than* Delphi Lender AcquisitionCo LLC, as buyer.

and officers liability insurance coverage maintained by any of the Debtors through any D&O Policy (as such term is defined in the Plan (defined herein)) may cover (including any "tail" policies).

All Preserved Claims are preserved and reserved for later prosecution and adjudication in accordance with the Plan, as may be amended from time to time, and therefore no preclusion doctrine, claim preclusion, estoppels (judicial, equitable or otherwise) or laches will apply to those Preserved Claims on or after the effective date of the Plan.  The failure to specifically list or otherwise sufficiently identify a Claim or Cause of Action in the Plan or Disclosure Statement, as may be amended from time to time, including this **Exhibit "B"** to the Disclosure Statement, is not intended to and shall not be deemed to (i) effect a release or waive of such Preserved Claims, and/or (ii) impair the right of the Liquidating Trustee (as such term is defined in the Plan) to pursue such Preserved Claims on or after the effective date of the Plan.

3

## Exhibit "B"

Comparison of the Plan against the *Debtors' Joint Plan of Liquidation*, dated February 16, 2023 [ECF No. 103]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

DELPHI BEHAVIORAL HEALTH
GROUP, LLC, *et al.*,[1]

Debtors.

_____/

Chapter 11 Cases

Case No. 23-10945-PDR

(Jointly Administered)

## **DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION**

**BERGER SINGERMAN LLP**
Paul Steven Singerman, Esq.
Christopher Andrew Jarvinen, Esq.
Paul A. Avron, Esq.
Robin J. Rubens, Esq.
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340

*Counsel to the Debtors
and Debtors in Possession*

Dated:  ~~February 16~~March 29, 2023

---

[1]   The address of the Debtors is 1901 West Cypress Creek Road, Suite 500, Fort Lauderdale, FL 33309.  The last four digits of the Debtors' federal tax identification numbers are: (i) Delphi Behavioral Health Group, LLC (2076), (ii) 61 Brown Street Holdings, LLC (0007), (iii) Aloft Recovery LLC (6674), (iv) Banyan Recovery Institute, LLC (6998), (v) Breakthrough Living Recovery Community, LLC (5966), (vi) California Addiction Treatment Center LLC (7655), (vii) California Vistas Addiction Treatment LLC (8272), (viii) DBHG Holding Company, LLC (6574), (ix) Defining Moment Recovery Community, LLC (3532), (x) Delphi Health BuyerCo, LLC (2325), (xi) Delphi Health Group, LLC (0570), (xii) Delphi Intermediate HealthCo, LLC (6378), (xiii) Delphi Management LLC (6474), (xiv) Desert View Recovery Community, LLC (7437), (xv) DR Parent, LLC (2700), (xvi) DR Sub, LLC (8183), (xvii) Las Olas Recovery LLC (9082), (xviii) Maryland House Detox, LLC (1626), (xix) New Perspectives, LLC (0508), (xx) Next Step Housing LLC (6975), (xxi) Ocean Breeze Detox, LLC (7019), (xxii) Ocean Breeze Recovery, LLC (9621), (xxiii) Onward Living Recovery Community, LLC (4735), (xxiv) Palm Beach Recovery, LLC (4459), (xxv) Peak Health NJ, LLC (7286), (xxvi) QBR Diagnostics, LLC (7835), (xxvii) Rogers Learning, LLC (1699), (xxviii) SBH Haverhill, LLC (0971), (xxix) SBH Union IOP LLC (4139), (xxx) Summit at Florham Park, LLC (8226), (xxxi) Summit Behavioral Health Limited Liability Company (3337), (xxxii) Summit Health BuyerCo, LLC (2762), (xxxiii) Summit IOP Limited (4567), and (xxxiv) Union Fresh Start LLC (6841).

11912265-8

# TABLE OF CONTENTS

**Page**

**ARTICLE I.    DEFINITIONS AND INTERPRETATION** ............................................... 1

    A.    Definitions ................................................................................................ 1

    B.    Interpretation; Application of Definitions and Rules of Construction ................ 13

    C.    Controlling Document. ................................................................................ 14

**ARTICLE II.    ADMINISTRATIVE EXPENSE, PRIORITY & DIP CLAIMS** ............ 14

    A.    Administrative Expense Claims ................................................................... 14

    B.    Fee Claims. ............................................................................................... 15

    C.    Priority Tax Claims .................................................................................... 16

    D.    DIP Claims ............................................................................................... ~~16~~16

**ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS** ......................... 16

    A.    Classification in General. ............................................................................ 16

    B.    Formation of Debtor Groups for Convenience Only. ....................................... 16

    C.    Summary of Classification. ......................................................................... ~~17~~17

    D.    Special Provisions Governing Unimpaired Claims. ........................................ 17

    E.    Elimination of Vacant Classes. .................................................................... 17

    F.    Voting Classes; Presumed Acceptance by Non-Voting Classes ......................... 18

    G.    Voting Classes; Acceptance and Rejection .................................................... ~~18~~18

    H.    Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code. ........................................................................................ 18

**ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS** .................................... 18

    A.    Other Secured Claims (Class 1). ................................................................. 18

    B.    Other Priority Claims (Class 2) ................................................................... 19

    C.    Protective Advance Secured Claims (Class 3) ................................................ 19

    D.    Senior Credit Agreement Term Loan Secured Claims (Class 4). ..................... ~~20~~20

    E.    HoldCo Credit Agreement Term Loan Unsecured Claims (Class 5). ................ 20

    F.    General Unsecured Claims (Class 6). ......................................................... ~~21~~21

    G.    Intercompany Claims (Class 7) ................................................................... 21

    H.    Subordinated Claims (Class 8) .................................................................... 21

    I.    Existing Equity Interests (Class 9) ............................................................... 22

**ARTICLE V.    MEANS FOR IMPLEMENTATION OF THE PLAN** ............................ 22

# TABLE OF CONTENTS
### (continued)

**Page**

A.      Joint Chapter 11 Plan. ........................................................................ 22

B.      Corporate Action. .............................................................................. 22

C.      Effectuating Documents; Further Transactions. ................................ 23

D.      Withholding and Reporting Requirements. .................................... ~~23~~23

E.      Exemption From Certain Transfer Taxes. .......................................... 23

F.      Preservation of Rights of Action.................................................... ~~24~~24

G.      Closing of the Chapter 11 Cases. ...................................................... 25

H.      Notice of Effective Date. ................................................................ ~~25~~25

**ARTICLE VI.    CORPORATE GOVERNANCE** .................................... ~~25~~25

A.      Corporate Form................................................................................ ~~25~~25

B.      Post-Effective Date Governance of the Debtors. ............................... 25

C.      Corporate Existence. .......................................................................... 25

D.      Certificates of Formation and By-Laws............................................ ~~26~~26

**ARTICLE VII.    DISTRIBUTIONS**................................................................ 26

A.      Distributions Generally..................................................................... 26

B.      Distribution Record Date. ................................................................. 26

C.      Date of Distributions. ........................................................................ 27

D.      Reserve on Account of Disputed Claims. ....................................... ~~27~~27

E.      Delivery of Distributions & Unclaimed Property. ............................. 27

F.      Manner of Distribution. .................................................................. ~~28~~28

G.      No Postpetition Interest on Claims. .................................................. 28

H.      Time Bar to Cash Payments.............................................................. 28

I.      Manner of Payment Under the Plan.................................................. 29

J.      Satisfaction of Claims. .................................................................... ~~29~~29

K.      Minimum Cash Distributions........................................................... ~~29~~29

L.      Setoffs and Recoupments. ................................................................. 29

M.      Distributions After Effective Date. ................................................... 29

N.      Allocation of Distributions Between Principal and Interest. .............. 29

O.      Payment of Disputed Claims. ........................................................ ~~30~~30

**ARTICLE VIII.  PROCEDURES FOR DISPUTED CLAIMS** ....................... ~~30~~30

11912265-8

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| A. | Allowance of Claims. | ~~30~~30 |
| B. | Objections to Claims. | 30 |
| C. | Estimation of Claims. | 30 |
| D. | No Distributions Pending Allowance. | ~~31~~31 |
| E. | Resolution of Claims. | ~~31~~31 |
| F. | Disallowed Claims. | 31 |
| G. | Claims Paid and Payable by Third Parties. | 31 |
| H. | Amendments to Proofs of Claim. | ~~32~~32 |

**ARTICLE IX.    EXECUTORY CONTRACTS** ~~32~~32

| | | |
|---|---|---|
| A. | Rejection of Executory Contracts. | ~~32~~32 |
| B. | Cure of Defaults for Assumed Executory Contracts. | 32 |
| C. | Claims Based Upon Rejection of Executory Contracts. | ~~33~~33 |
| D. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 33 |
| E. | Insurance Policies. | 33 |
| F. | Survival of Debtors' Indemnification Obligations. | ~~34~~34 |
| G. | Reservation of Rights. | 34 |

**ARTICLE X.    LIQUIDATING TRUST** 34

| | | |
|---|---|---|
| A. | Establishment of the Liquidating Trust. | 35 |
| B. | Purpose of the Liquidating Trust. | ~~35~~35 |
| C. | Liquidating Trust Assets. | 35 |
| D. | Non-Transferability of Liquidating Trust Interests. | ~~36~~36 |
| E. | Administration of Liquidating Trust. | ~~36~~36 |
| F. | Liquidating Trustee's Tax Power for Debtors. | 36 |
| G. | Cash Investments. | 36 |
| H. | Distribution of Liquidating Trust Assets. | 36 |
| I. | Federal Income Tax Treatment of Liquidating Trust. | ~~37~~37 |
| J. | Tax Reporting. | 37 |
| K. | Dissolution. | 38 |

**ARTICLE XI.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ~~39~~39

11912265-8

## TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| A. | Conditions Precedent to the Effective Date. | 3939 |
| B. | Waiver of Conditions Precedent. | 39 |
| C. | Effect of Failure of Conditions to Effective Date. | 40 |

**ARTICLE XII.    EFFECT OF CONFIRMATION** ............................................. 4040

| | | |
|---|---|---|
| A. | Vesting of Assets. | 4040 |
| B. | Release of Liens. | 40 |
| C. | Subordinated Claims. | 40 |
| D. | Binding Effect. | 41 |
| E. | Sale Order. | 4141 |
| F. | Term of Injunctions or Stays. | 4141 |
| G. | Compromise and Settlement. | 41 |
| H. | Debtor Release. | 41 |
| I. | Releases by Holders of Claims and Interests (i.e., Third-Party Release). | 4343 |
| J. | Exculpation. | 44 |
| K. | Temporary Injunction. | 45 |
| L. | Waiver of Statutory Limitation on Releases. | 46 |
| M. | Other Limitations of Releases and Exculpation; Florida Rules of Professional Conduct. | 46 |

**ARTICLE XIII.  RETENTION OF JURISDICTION** .......................................... 47

**ARTICLE XIV.  MISCELLANEOUS PROVISIONS** .......................................... 48

| | | |
|---|---|---|
| A. | Payment of Statutory Fees. | 48 |
| B. | Post-Confirmation Reporting. | 49 |
| C. | Request for Expedited Determination of Taxes. | 49 |
| D. | Substantial Consummation. | 4949 |
| E. | Dissolution of Creditors' Committee. | 49 |
| FE. | Amendments. | 4949 |
| GF. | Revocation or Withdrawal of the Plan. | 50 |
| HG. | Severability of Plan Provisions Upon Confirmation. | 5050 |
| IH. | Governing Law. | 50 |
| JI. | Time. | 51 |

11912265-8

# TABLE OF CONTENTS
### (continued)

**Page**

~~K~~J.    Additional Documents. ........................................................................... 51

~~L~~K.    Dates of Actions to Implement the Plan. ........................................ ~~51~~51

~~M~~L.    Immediate Binding Effect. ................................................................ ~~51~~51

~~N~~M.    Deemed Acts. ......................................................................................... 51

~~O~~N.    Successor and Assigns. ....................................................................... 51

~~P~~O.    Solicitation of the Plan. ...................................................................... 52

~~Q~~P.    Plan Supplement. ............................................................................. ~~52~~52

~~R~~Q.    Entire Agreement. ............................................................................ ~~52~~52

~~S~~R.    Exhibits to Plan. ................................................................................... 53

~~T~~S.    Notices. ................................................................................................. 53

11912265-8

Each of (i) Delphi Behavioral Health Group, LLC, (ii) 61 Brown Street Holdings, LLC, (iii) Aloft Recovery LLC, (iv) Banyan Recovery Institute, LLC, (v) Breakthrough Living Recovery Community, LLC, (vi) California Addiction Treatment Center LLC, (vii) California Vistas Addiction Treatment LLC, (viii) DBHG Holding Company, LLC, (ix) Defining Moment Recovery Community, LLC, (x) Delphi Health BuyerCo, LLC, (xi) Delphi Health Group, LLC, (xii) Delphi Intermediate HealthCo, LLC, (xiii) Delphi Management LLC, (xiv) Desert View Recovery Community, LLC, (xv) DR Parent, LLC, (xvi) DR Sub, LLC, (xvii) Las Olas Recovery LLC, (xviii) Maryland House Detox, LLC, (xix) New Perspectives, LLC, (xx) Next Step Housing LLC, (xxi) Ocean Breeze Detox, LLC, (xxii) Ocean Breeze Recovery, LLC, (xxiii) Onward Living Recovery Community, LLC, (xxiv) Palm Beach Recovery, LLC, (xxv) Peak Health NJ, LLC, (xxvi) QBR Diagnostics, LLC, (xxvii) Rogers Learning, LLC, (xxviii) SBH Haverhill, LLC, (xxix) SBH Union IOP LLC, (xxx) Summit at Florham Park, LLC, (xxxi) Summit Behavioral Health Limited Liability Company, (xxxii) Summit Health BuyerCo, LLC, (xxxiii) Summit IOP Limited, and (xxxiv) Union Fresh Start LLC (each, a "**Debtor**" and, collectively, the "**Debtors**") respectfully proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Article I.A below.

## ARTICLE I.  DEFINITIONS AND INTERPRETATION

### A.    Definitions.

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Expense Claim*" means any Claim for costs or expenses of administration incurred during the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estates and operating the Debtors' businesses, including wages, salaries, or commissions for services and payments for goods and other services and leased premises; (b) claims under section 503(b)(9) of the Bankruptcy Code; (c) Fee Claims; and (d) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, and all allowed claims entitled to administrative expense priority status pursuant to a final order of the Bankruptcy Court.

2.    "*Administrative Expense Claims Bar Date*" means the first Business Day that is twenty-one (21) calendar days following the Effective Date, except as otherwise specifically set forth in the Plan or ordered by the Bankruptcy Court.

3.    "*Administrative Expense Claims Objection Bar Date*" means the first Business Day that is seventy-five (75) calendar days following the Effective Date, except as otherwise specifically set forth in the Plan; *provided that* the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee after notice and a hearing.

4.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1

5.      "*Allowed*" means, with reference to any Claim, a Claim: (i) against the Debtors that has been listed in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed; (ii) listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Article VIII.B of the Plan or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder; (iii) that is compromised, settled, or otherwise resolved pursuant to the authority of, as applicable, the Debtors or the Liquidating Trustee; or (iv) expressly allowed by a Final Order or pursuant to the terms of the Plan.

6.      "*Asset Purchase Agreement*" means that certain Asset Purchase Agreement, dated February —19, 2023, by and among the Sellers, the Buyer, DR Parent, LLC (solely with respect to the limited purposes set forth therein), and the Senior Credit Agreement Agent (solely in its capacity as the Senior Credit Agreement Agent and for the limited purposes set forth therein) and related schedules [ECF Nos. 111, 182, and 234].

7.      "*Avoidance Actions*" means those actual and/or potential claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, but excluding any Insider Avoidance Actions.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable in the Chapter 11 Cases.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

10.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated by the United States Supreme Court under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

11.      "*Bar Date Order*" means that certain *"Notice of Chapter 11 Bankruptcy Case"* dated as of February —13, 2023 [ECF No. —90], establishing April —17, 2023 as the general bar date for non-governmental entities to file proofs of Claim in the Chapter 11 Cases.

12.      "*Bidding Procedures Order*" means that *Order Granting Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Approving a Deadline for Interested Parties to Submit Bids to Purchase Any of the Debtors' Remaining Assets Which*

11912265-8

*Are Not Purchased Assets Subject to the Stalking Horse Bid Agreement, and (*VII*) Granting Related Relief* [ECF No. ——191].

13.     "*Business Day*" means any day, other than a Saturday, a Sunday, a "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)), or any other day on which banking institutions in Miami, Florida are required to close by law or executive order.

14.     "*Buyer*" means Delphi Lender AcquisitionCo LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, whether by sale, contribution, merger or otherwise, and each of their respective affiliates), solely in its capacity as the buyer under the Asset Purchase Agreement.

15.     "*Cash*" means legal tender of the United States of America.

16.     "*Causes of Action*" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Causes of Action includes: (i) any Insider Avoidance Action (but not any other Avoidance Action); (ii) any right of setoff, counterclaim or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity; (iii) the right to object to Claims or Interests; (iv) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any Claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar Claims.

17.     "*Chapter 11 Cases*" means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and which are jointly administered under lead case number 23-10945-PDR.

18.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

19.     "*Claims Objection Bar Date*" means the first Business Day that is seventy-five (75) calendar days after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee.

20.     "*Class*" means any group of Claims or Interests classified pursuant to Article III of the Plan.

21.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

22.    "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

23.    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

24.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan in form and substance reasonably acceptable to the Debtors, the DIP Agent and the Senior Credit Agreement Agent.

25.    "*Consummation*" means the occurrence of the Effective Date of the Plan.

26.    "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as the same may be constituted from time to time and its members but only in such members' capacity as members of the Creditors' Committee.

26.    [Deleted].

27.    "*D&O Policy*" means any insurance policy for directors, members, trustees, and officers liability maintained by any of the Estates as of the Effective Date (including any "tail" policy).

28.    "*Debtor Released Parties*" means, collectively, and in each case solely in their capacity as such: (i) the holders of all Claims that vote to accept the Plan; (ii) the holders of Claims who are entitled to vote on the Plan and abstain from voting on the Plan <u>and</u> who do not affirmatively opt out of the releases provided by the Plan on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan; and (iii) each of the Released Parties (other than the Debtors).

29.    "*Debtors*" has the meaning set forth in the introductory paragraph the Plan.

30.    "*Debtor's Power of Attorney*" means one or more powers of attorney acceptable to the Debtors, the DIP Agent, the Senior Credit Agreement Agent, and the Liquidating Trustee that may be provided by one or more of the Debtors to the Liquidating Trustee, effective as of the Effective Date, with respect to the Existing Equity Interests or any other matter involving the Debtors.

31.    "*DIP Agent*" has the meaning set forth in the Final DIP Order together with its permitted successors and assigns.

32.    "*DIP Cash Paydown Amount*" means the sum of (i) all of the Debtors' Cash on the Effective Date *less* Cash held in reserve in the amount sufficient to pay Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and the Prepetition Lenders Unsecured Claims Pool, *plus* (ii) the Cash proceeds of any Winddown Assets received by the Debtors prior to the Effective Date.

4

33.    "*DIP Claims*" means all Claims of the DIP Lenders arising under or related to the DIP Loan Agreement, the DIP Documents, DIP Facility, or the Final DIP Order.

34.    "*DIP Collateral*" has the meaning set forth in the Final DIP Order.

35.    "*DIP Documents*" has the meaning set forth in the Final DIP Order.

36.    "*DIP Facility*" has the meaning set forth in the Final DIP Order.

37.    "*DIP Lenders*" means, as the context requires, "DIP Lenders", each in its capacity as a lender under the DIP Documents, as defined in the Final DIP Order.

38.    "*DIP Loan Agreement*" means that certain *Superpriority Secured Debtor-In-Possession Credit Agreement* dated February 6, 2023, as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, by and among, DR Sub, LLC, as holdings, Delphi Intermediate HealthCo, LLC, as borrower, each other loan party which is a party thereto, the DIP Lenders, and the DIP Agent.

39.    "*Disclosure Statement*" means the Disclosure Statement for this Plan, which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

40.    "*Disputed Claim*" means with respect to a Claim or Interest, any such Claim or Interest (i) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (ii) for which a Proof of Claim or Interest has been filed, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

41.    "*Distribution Date*" means a date or dates, including the Initial Distribution Date, as determined by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement, on which the Liquidating Trustee makes a distribution to the holders of Allowed Claims.

42.    "*Distribution Record Date*" means the Effective Date of the Plan.

43.    "*Effective Date*" means the first Business Day after the date on which all conditions to the effectiveness of the Plan set forth in Article XI of the Plan have been either satisfied or waived in accordance with the terms of the Plan.

44.    "*Eighth Amendment Super Priming Protective Advances*" means all "Obligations" (as that term is defined in the Senior Credit Agreement Loan Documents), including, without limitation, all interest, fees and expenses whether accrued or paid in kind, owed by the Debtors with respect to the Eighth Amendment Super Priming Protective Advances under, and as defined in, the Senior Credit Agreement Loan Documents.

45.    "*Eighth Amendment Super Priming Protective Advance Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders or included in any Final DIP Order, related to the Eighth Amendment Super Priming Protective Advances.

46.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

47.    "*Estate*" or "*Estates*" means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

48.    "*Exculpated Parties*" means, collectively, each in their capacities as such: (i) the Debtors; (ii) the Estates; (iii) the Prepetition Lenders; (iv) the Prepetition Agent; (v) the DIP Lenders; (vi) the DIP Agent; (vii) the Buyer; (viii) the ~~Creditors' Committee; (ix) the~~ Liquidating Trustee (solely with respect to the period prior to the Effective Date); (~~x~~ix) with respect to each of the foregoing Persons in clauses "(i)" through "(~~ix~~viii)", such Persons' respective predecessors, successors, assigns, direct and indirect subsidiaries, and affiliates; (~~xi~~x) with respect to each of the foregoing Persons in clauses "(i)" through "(~~x~~ix)", such Persons' current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, financial advisors, attorneys, Interim Chief Executive Officer, interim officers, accountants, investment bankers, investment managers, investment advisors, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such and whether currently serving or having previously served postpetition; and (~~xiii~~xi) any other Person entitled to the protections of section 1125(e) of the Bankruptcy Code; **provided however that notwithstanding anything in this Plan to the contrary, each of the Insider Avoidance Actions Targets, in any capacity, shall not be an Exculpated Party**.

49.    "*Executory Contract*" means a contract or lease to which one of more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

50.    "*Existing Equity Claim*" means any Claim arising from an Existing Equity Interest.

51.    "*Existing Equity Interest*" means any Interest in any of the Debtors, including but not limited to, any common stock, preferred stock, limited liability company or membership interest, warrants, profits interests units or other ownership interest that are outstanding immediately prior to the Effective Date.

52.    "*Fee Claim*" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors ~~or the Creditors' Committee~~ by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

53.    "*Final DIP Order*" means that certain *Final Order* ~~*Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, And 364 And Rules 2002, 4001, And 9014 Of The Federal Rules Of Bankruptcy Procedure* ~~*(I) Authorizing* ~~*Incurrence By The*~~ *Debtors* ~~*Of*~~ *to (A) Obtain Postpetition Senior*

6

Secured ~~Indebtedness~~*Financing and (B) Use Cash Collateral, (II) Granting ~~Liens~~Adequate Protection to Senior Secured Lenders, (III) ~~Authorizing Use Of Cash Collateral By The Debtors And Providing For Adequate Protection~~Granting Liens and Superpriority Claims, ~~And~~ (IV) Modifying ~~The~~ the Automatic Stay, and (V) Granting Related Relief,* entered by the Bankruptcy Court in the Chapter 11 Cases on March ~~—~~7, 2023 at ECF No. ~~——~~189.

54.      "*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because a motion pursuant to sections 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

55.      "*General Unsecured Claim*" means any unsecured Claim against any Debtor, other than a HoldCo Credit Agreement Term Loan Unsecured Claim, an Intercompany Claim or a Subordinated Claim, that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, and shall ~~include~~, for the avoidance of doubt, (i) include claims on account of damages arising from the rejection of unexpired leases of non-residential, real property and (ii) exclude any unsecured deficiency claim, pursuant to section 506(a)(1) of the Bankruptcy Code or otherwise, related to Protective Advances and Senior Credit Agreement Term Loans.

56.      "*General Unsecured Claim Cash Recovery*" means a Cash distribution in the amount of $250,000.00, funded by the Prepetition Lenders Unsecured Claims Pool to be shared on a *pari passu* basis by holders of ~~(i)~~ Allowed ~~HoldCo Credit Agreement Term Loan~~ General Unsecured Claims (Class ~~4) and (ii) Allowed General Unsecured Claims (Class 5~~6).

57.      "*GHA*" means Getzler Henrich & Associates LLC.

58.      "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

59.      "*HoldCo Credit Agreement*" means that certain Credit Agreement, dated as of April 8, 2020 (and as further amended, restated, supplemented and/or otherwise modified from time to time), by and among DR Parent, LLC, as borrower, the HoldCo Credit Agreement Lenders, and the HoldCo Credit Agreement Agent.

60.      "*HoldCo Credit Agreement Agent*" means Brightwood Loan Services LLC, in its capacity as administrative agent for the HoldCo Credit Agreement Lenders under the HoldCo Credit Agreement.

61.      "*HoldCo Credit Agreement Lenders*" means the lender parties to the HoldCo Credit Agreement from time to time.

62. "*HoldCo Credit Agreement Loan Documents*" means the HoldCo Credit Agreement and all other "Loan Documents" under and as defined therein.

63. "*HoldCo Credit Agreement Term Loans*" means the Loans under, and as defined in, the HoldCo Credit Agreement Documents.

64. "*HoldCo Credit Agreement Term Loan Unsecured Claims*" mean all Claims arising from the HoldCo Credit Agreement Term Loans.

65. "*Impaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, "*impaired*" within the meaning of section 1124 of the Bankruptcy Code.

66. "*Initial Distribution*" means the first distribution that is made by, as applicable, the Debtors or the Liquidating Trustee, to holders of Allowed Claims, which shall include the ~~Prepition Lenders~~ General Unsecured ~~Claims Pool~~ Claim Cash Recovery.

67. "*Initial Distribution Date*" means the date selected by, as applicable, the Debtors or the Liquidating Trustee, on or as soon as reasonably practicable after the Effective Date.

68. "*Insider Avoidance Actions*" means any actual and/or potential Avoidance Actions or other Claims and Causes of Action, as of the Petition Date, by the Debtors against the Insider Avoidance Actions Targets, including but not limited to, as described on **Exhibit "B"** to the Plan.

69. "*Insider Avoidance Actions Targets*" means those Entities and Persons listed on **Exhibit "B"** to the Plan.

70. "*Interests*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including but not limited to, all common stock, preferred stock, common units, subordinated units, limited liability company or membership interests, incentive distribution rights, membership units, warrants, profit interests units or other instruments evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in a Debtor that are outstanding immediately before the Effective Date.

71. "*Intercompany Claim*" means any Claim held by one Debtor against the other Debtor arising at any time prior to the Effective Date.

72. "*Interim Chief Executive Officer*" means, collectively, Edward A. Phillips, GHA and certain GHA support personnel, pursuant to a corrected Final Order of the Bankruptcy Court granting GHA's retention application [ECF No. ~~__~~205].

73. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

74. "*Liquidating Trust*" means the liquidating trust created on the Effective Date with the consent of the  DIP Agent and the Senior Credit Agreement Agent in accordance with the provisions of Article X of the Plan and a Liquidating Trust Agreement, for the benefit of holders of Allowed Claims or Interests, as determined by the Liquidating Trustee consistent with the purposes of any such Liquidating Trust pursuant to Article X of the Plan.

8

75.    "*Liquidating Trust Agreement*" means the agreement acceptable to the Debtors and the DIP Agent and the Senior Credit Agreement Agent, ~~after consultation with the Creditors' Committee,~~ evidencing the terms and provisions governing the Liquidating Trust dated as of the Effective Date establishing the terms and conditions of the Liquidating Trust and pursuant to which the Liquidating Trustee shall manage and administer the Liquidating Trust Assets and distribute the proceeds realized from the Liquidating Trust Assets in accordance with the Plan and the Recovery Waterfall.  The Liquidating Trust Agreement will be filed with the Plan Supplement.

76.    "*Liquidating Trust Assets*" means from and after the Effective Date all assets of the Debtors that are not sold or distributed on or prior to the Effective Date (including, for the avoidance of doubt, the Winddown Assets), or otherwise dealt with pursuant to the terms of the Plan including, but not limited to, with respect to any Debtor's Power of Attorney, to be transferred to a Liquidating Trust, after consultation with the DIP Agent, and the Senior Credit Agreement Agent, ~~and the Creditors' Committee~~.

77.    "*Liquidating Trust Beneficiaries*" means the holders of Allowed Claims against or Interests in a Debtor to the extent such holders receive Liquidating Trust Interests.

78.    "*Liquidating Trust Budget*" means a budget detailing the anticipated costs and expenses with respect to the administration of the Liquidating Trust, which shall be in form and substance acceptable to the Debtors, the DIP Agent, the Senior Credit Agreement Agent, and the Liquidating Trustee, ~~after consultation with the Creditors' Committee,~~ and shall have an initial funding in Cash on the Effective Date ~~of not less than [$_____ ]~~ in the amount of $250,000.00 (i.e., the Winddown Funding Amount).

79.    "*Liquidating Trust Interests*" means the non-certificated beneficial interests in the Liquidating Trust allocable to Liquidating Trust Beneficiaries in accordance with the terms, conditions, and priorities set out in the Plan and the Liquidating Trust Agreement entitling each Liquidating Trust Beneficiary to distributions or proceeds (if any) of the Liquidating Trust in accordance with the Recovery Waterfall.

80.    "*Liquidating Trustee*" means the person or entity appointed by the Debtors that is acceptable to the DIP Agent and the Senior Credit Agreement Agent, ~~after consultation with the Creditors' Committee,~~ prior to the creation of a Liquidating Trust to administer such Liquidating Trust in accordance with the provisions of Article X of the Plan and the Liquidating Trust Agreement.

81.    "*Other Priority Claim*" means any Claim against any of the Debtors entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

82.    "*Other Secured Claim*" means a Secured Claim other than the DIP Claims, the Protective Advance Secured Claims, and the Senior Credit Agreement Term Loan Secured Claims.

83.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code, including any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other entity.

11912265-8

84.    "*Petition Date*" means February 6, 2023.

85.    "*Plan*" means this joint chapter 11 plan of liquidation, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with <u>Article XIV.F</u> of the Plan.

86.    "*Plan Supplement*" means the compilation of documents, each of which shall be in form and substance acceptable to the Debtors, the DIP Agent and the Senior Credit Agreement Agent, ~~after consultation with the Creditors' Committee~~, containing, among other things, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code and filed pursuant to <u>Article XIV.Q</u> of the Plan and the Liquidating Trust Agreement; *provided that*, through the Effective Date, the Debtors shall have the right to amend any schedules, exhibits, or amendments to any of the documents contained in, and exhibits to, the Plan Supplement with the consent of the DIP Agent and the Senior Credit Agreement Agent.

87.    "*Prepetition Agent*" means, collectively, the Senior Credit Agreement Agent and the HoldCo Credit Agreement Agent.

88.    "*Prepetition Collateral*" has the meaning set forth in the Final DIP Order.

89.    "*Prepetition Lenders*" means the Senior Credit Agreement Lenders and the HoldCo Credit Agreement Lenders.

90.    "*Prepetition Lenders Unsecured Claims Pool*" means ~~[$    ]~~ $500,000.00 in Cash contributed by or on behalf of the Prepetition Lenders, including, to the extent applicable, a carve-out from the DIP Collateral and/or the Prepetition Collateral, to fund (i) the General Unsecured Claim Cash Recovery and (ii) the Winddown Funding Amount.

91.    "*Prior Priming Protective Advances*" means all "Obligations" (as that term is defined in the Senior Credit Agreement Loan Documents), including, without limitation, all interest, fees and expenses whether accrued or paid in kind, owed by the Debtors with respect to the Prior Priming Protective Advances under, and as defined in, the Senior Credit Agreement Loan Documents.

92.    "*Prior Priming Protective Advance Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders or included in any Final DIP Order, related to the Prior Priming Protective Advances.

93.    "*Prior Protective Advances*" means all "Obligations" (as that term is defined in the Senior Credit Agreement Loan Documents), including, without limitation, all interest, fees and expenses whether accrued or paid in kind, owed by the Debtors with respect to the Prior Protective Advances under, and as defined in, the Senior Credit Agreement Loan Documents.

94.    "*Prior Protective Advance Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the

other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders or included in any Final DIP Order, related to the Prior Protective Advances.

95.    "*Priority Tax Claim*" means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

96.    "*Pro Rata*" means the proportion that an Allowed Claim (i) in a particular Class bears to the aggregate amount of all Allowed Claims and Disputed Claims within such Class, or (ii) in a particular group of Classes bears to the aggregate amount of all Allowed Claims and Disputed Claims within such group of Classes.

97.    "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

98.    "*Protective Advances*" means, collectively, the Eighth Amendment Super Priming Protective Advances, the Prior Priming Protective Advances, and the Prior Protective Advances.

99.    "*Protective Advance Secured Claims*" means, collectively, the Eighth Amendment Super Priming Protective Advance Secured Claims, the Prior Priming Protective Advance Secured Claims, and the Prior Protective Advance Secured Claims.

100.    "*Purchase Price*" has the meaning set forth in Section 3.2 of the Asset Purchase Agreement.

101.    "*Purchased Assets*" has the meaning set forth in Section 2.1 of the Asset Purchase Agreement.

102.    "*Recovery Waterfall*" means the provisions set forth in **Exhibit "A"** of the Plan setting forth the priority for distributions of the proceeds realized from the ~~Liquidation~~ Liquidating Trust Assets.

103.    "*Released Parties*" means, collectively, and in each case solely in their capacities as such: (i) the Debtors; (ii) the Estates; (iii) the Prepetition Lenders; (iv) the Prepetition Agent; (v) the DIP Lenders; (vi) the DIP Agent; (vii) the Buyer; (viii) with respect to each of the foregoing Persons in clauses "(i)" through "(vii)", each of their respective affiliates, predecessors, successors, assigns, direct and indirect subsidiaries, affiliated investment funds or investment vehicles, managed accounts, funds and other entities, investment advisors, subadvisors and managers with discretionary authority; and (ix) with respect to each of the foregoing Persons in clauses "(i)" through "(viii)", each of their respective current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, financial advisors, attorneys, Interim Chief Executive Officer, accountants, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such; **provided however that notwithstanding anything in this Plan to the contrary, each of the Insider Avoidance Actions Targets, in any capacity, shall not be a Released Party**.

104.    "*Releasing Parties*" means, collectively, and in each case solely in their capacity as such: (i) the holders of all Claims that vote to accept the Plan; (ii) the holders of Claims who are entitled to vote on the Plan and abstain from voting on the Plan <u>and</u> who do not affirmatively opt out of the releases provided by the Plan on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan; and (iii) the Released Parties.

105.    "*Sale Order*" means that certain *Order Granting Debtors' Motion for Entry of an Order (I) Approving Stalking Horse Bid Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Claims and ~~Liens~~ Encumbrances Except for Permitted Liens, ~~Encumbrances~~ and Assumed Liabilities, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [ECF No. ~~__~~305] entered on March ~~__~~29, 2023.

106.    "*Sale Transaction*" means the sale of the Purchased Assets pursuant to the Sale Order.

107.    "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms and Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time.

108.    "*Secured Claim*" means a Claim to the extent: (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (a) as set forth in the Plan, (b) as agreed to by, on the one hand, the holder of such Claim, and on the other and as applicable, the Debtors or the Liquidating Trustee, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

109.    "*Sellers*" means the Debtors named, and in their capacity, as sellers under the Asset Purchase Agreement.

110.    "*Senior Credit Agreement*" means that certain Credit Agreement, dated as of April 8, 2020 (as amended by that certain First Amendment to Credit Agreement and Forbearance Agreement, dated as of August 3, 2021, that certain Second Amendment to Credit Agreement and Forbearance Agreement, dated as of January 18, 2022, that certain Third Amendment to Credit Agreement and Forbearance Agreement, dated as of April 29, 2022, that certain Fourth Amendment to Credit Agreement and Forbearance Agreement, dated as of June 14, 2022, that certain Fifth Amendment to Credit Agreement, dated as of September 16, 2022, that certain Sixth Amendment to Credit Agreement, dated as of November 7, 2022, that certain Seventh Amendment to Credit Agreement, dated as of December 6, 2022, that certain Eighth Amendment to Credit Agreement, dated as of January 10, 2023, and as further amended, restated, supplemented and/or otherwise modified from time to time), by and among Delphi Intermediate Healthco, LLC, as borrower, the Senior Credit Agreement Lenders, and the Senior Credit Agreement Agent.

111.    "*Senior Credit Agreement Agent*" means Brightwood Loan Services LLC, in its capacity as administrative agent for the Senior Credit Agreement Lenders under the Senior Credit Agreement together with its permitted successors and assigns.

112.    "*Senior Credit Agreement Lenders*" means the lender parties to the Senior Credit Agreement from time to time.

113.    "*Senior Credit Agreement Loan Documents*" means the Senior Credit Agreement and all other "Loan Documents" under and as defined therein.

114.    "*Senior Credit Agreement Term Loans*" means the Loans (other than the Protective Advances) under, and as defined in, the Senior Credit Agreement Loan Documents.

115.    "*Senior Credit Agreement Term Loan Secured Claims*" mean the Secured Claims of the Senior Credit Agreement Lenders arising under the Bankruptcy Code, the Senior Credit Agreement, the other Senior Credit Agreement Loan Documents and the Final DIP Order, including but not limited to, adequate protection Liens and Claims, and including any Claims asserted in any proof of Claim filed by or on behalf of the Senior Credit Agreement Lenders, related to the Senior Credit Agreement Term Loans.

116.    "*Subordinated Claims*" means any Claim of any Person or Entity, and any lien securing such Claim (if applicable), (a) of the type described in and subject to subordination under section 510 of the Bankruptcy Code, (b) of the type described in and subject to subordination under section 509(c) of the Bankruptcy Code, (c) for penalties or punitive damages and any other Claim of the type described in section 726(a)(4) of the Bankruptcy Code (notwithstanding the general inapplicability of chapter 7 of the Bankruptcy Code), or (d) subordinated per the terms of the Plan or otherwise by Final Order of the Bankruptcy Court.

117.    "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

118.    "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the Southern District of Florida.

119.    "*Unimpaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

120.    "*Winddown Assets*" means the (i) Winddown Funding Amount, (ii) Insider Avoidance Actions, and (iii) remaining assets of the Debtors' Estates.

121.    "*Winddown Funding Amount*" means ~~an~~ Cash in the amount ~~equal to~~ of $250,000.00, funded by the Prepetition Lenders Unsecured Claims Pool ~~less the General Unsecured Claim Cash Recovery~~ to be used exclusively to fund the Liquidating Trust Budget and distributions pursuant to the Recovery Waterfall.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, supplemented, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively. The words "includes" and "including" are not limiting and shall be deemed to be followed by the words "without limitation." The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (c) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      **Controlling Document.**

Except as otherwise set forth in the Final DIP Order or the Sale Order, in the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document or instrument. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II. ADMINISTRATIVE EXPENSE, PRIORITY & DIP CLAIMS

A.      **Administrative Expense Claims.**

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that the Fee Claims shall receive the treatment provided in Article II.B of the Plan; provided further that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of operating or liquidating the business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court, or as provided by Article II.D hereof, requests for payment of Administrative Expense Claims,

other than requests for payment of Fee Claims, must be filed and served on the Debtors and the DIP Agent no later than the Administrative Expense Claims Bar Date pursuant to any procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

~~Holders~~ **Unless otherwise permitted by the Bankruptcy Court pursuant to Section 503(a) of the Bankruptcy Code, holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and permanently enjoined from asserting such Administrative Expense Claims against the Debtors, their Estates or their property, and such Administrative Expense Claims shall be deemed compromised, settled, and released in their entirety as of the Effective Date.** The Liquidating Trustee must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date. For the avoidance of doubt, the Administrative Expense Claims Bar Date shall not apply to any DIP Claims.

### B.    Fee Claims.

All entities seeking an award by the Bankruptcy Court of Fee Claims (a) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date by the date that shall be set by order of the Bankruptcy Court, and (b) subject to the terms of the Final DIP Order, shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and, as applicable, the Debtors or the Liquidating Trustee. All entities employed by the Debtors ~~or the Creditors' Committee~~, shall provide in their final fee applications to be filed in connection with confirmation of the Plan an estimate of their accrued and unpaid fees and expenses through the Effective Date (including an estimate for fees and expenses expected to be incurred prior to the Effective Date to prepare and prosecute allowance of final fee applications). Subject to the terms of the Final DIP Order, from and after the Confirmation Date until the Effective Date, the Debtors, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, may pay the reasonable fees and expenses during such period incurred by~~: (a) (i)~~ Berger Singerman LLP (bankruptcy counsel to the Debtors)~~, (ii) _____ (bankruptcy counsel to the Creditors' Committee) and (iii) _____ (financial advisors to the Creditors' Committee),~~ in accordance with the *Order Granting Debtors' Motion for Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Professionals,* dated ~~February~~ March 10, 2023 [ECF No. ~~—~~200] (the "Interim Compensation Order"), provided, however, that the Interim Compensation Order is hereby modified to provide for payment of one hundred (100%) percent of both the reasonable fees and the expenses incurred during the period from after the Confirmation Date until the Effective Date; and (b) the Interim Chief Executive Officer (including GHA) in accordance with the *Corrected Final Order Granting Debtors' Application for Approval of Agreement with Getzler Henrich & Associates to Provide~~, on an Interim and Final Basis,~~ the Services of (I) Edward A. Phillips as Interim Chief Executive Officer and (II) Certain Support Personnel, Effective as of the Petition Date,* dated ~~February —~~March 13, 2023 [ECF No. ~~—~~205]. The Liquidating Trustee is authorized to pay compensation for services rendered or reimbursement of expenses incurred on and after the Effective Date in the

ordinary course and in compliance with the Liquidating Trust Budget and without the need for Bankruptcy Court approval.

### C.    Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Claim becomes an Allowed Priority Claim, and (c) the date such Allowed Priority Claim is due and payable in the ordinary course.

### D.    DIP Claims.

The DIP Claims shall be Allowed (without the need to file a Proof of Claim pursuant to the Final DIP Order), as of the Effective Date, in the full amount due and owing under the DIP Documents and the Final DIP Order.  Except to the extent that the DIP Agent agrees in writing to a different treatment, the DIP Lenders shall receive on account of the DIP Claims on the Effective Date (i) the DIP Cash Paydown Amount (or such lesser amount agreed to by the DIP Agent), and (ii) to the extent the DIP Cash Paydown Amount is insufficient to satisfy the DIP Claims in full, a first priority interest in, and an entitlement to receive distributions under the Plan up to the amount satisfying the DIP Claims prior to any distributions being made under the Plan to the holders of Allowed Claims and Interests in Classes 3-6 and 9 of the Plan, but subject to the Recovery Waterfall; *provided, however*, that the DIP Claims have not been previously assumed in full in the Buyer's sole discretion on the terms set forth in the Asset Purchase Agreement and the Sale Order. Upon assumption or the indefeasible payment in full in Cash of all DIP Claims, the DIP Claims shall be deemed to be fully satisfied, settled, released, and compromised and all Liens and security interests granted pursuant to the DIP Loan Agreement will be cancelled and be of no further force and effect.  Pursuant to the DIP Documents, all payments pursuant to this <u>Article II.D</u> of the Plan shall be made to the DIP Lenders in accordance with the DIP Documents.

### ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    Classification in General.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### B.    Formation of Debtor Groups for Convenience Only.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, tabulating votes, and making distributions with respect of Claims against and Interests in

11912265-8

the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, constitute a substantive consolidation of any of the Debtors, or cause the transfer of any assets. Except as otherwise provided by or permitted under the Plan, all Debtors continue to exist as separate legal entities.  The Plan constitutes a separate chapter 11 plan of liquidation for each Debtor.

### C.    Summary of Classification.

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are: (a) Impaired or Unimpaired under the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.  All of the potential Classes for the Debtors are set forth in the Plan.

| Class | Designation | Treatment | Entitled to Vote? |
|-------|-------------|-----------|-------------------|
| 1 | Other Secured Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Other Priority Claims | Unimpaired | No; Deemed to Accept the Plan |
| 3 | Protective Advance Secured Claims | Impaired | Yes; Entitled To Vote |
| 4 | Senior Credit Agreement Term Loan Secured Claims | Impaired | Yes; Entitled To Vote |
| 5 | HoldCo Credit Agreement Term Loan Unsecured Claims | Impaired | Yes; Entitled To Vote |
| 6 | General Unsecured Claims | Impaired | Yes; Entitled To Vote |
| 7 | Intercompany Claims | Impaired | No; As plan proponents, deemed to accept |
| 8 | Subordinated Claims | Impaired and No Distribution | No; Deemed To Reject the Plan |
| 9 | Existing Equity Interests | Impaired | No; Deemed To Reject the Plan |

### D.    Special Provisions Governing Unimpaired Claims.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of, as applicable, the Debtors or the Liquidating Trustee in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### E.    Elimination of Vacant Classes.

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies

11912265-8

section 1129(a)(8) of the Bankruptcy Code with respect to such Class.  Any Claim or Interest in a Class that is considered vacant under the Plan shall receive no distribution.

### F.    Voting Classes; Presumed Acceptance by Non-Voting Classes.

If a Class contains Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

### G.    Voting Classes; Acceptance and Rejection.

a.    *Acceptance by Certain Impaired Classes*:  Only holders of Allowed Claims in Classes 3, 4, 5, and 6 are entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Holders of Claims in Classes 3, 4, 5, and 6 will receive ballots containing detailed voting instructions.

b.    *Deemed Accepted by Impaired Classes*:  Holders of Claims in Classes 1, 2, and 7 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote, and the votes of such holders will not be solicited with respect to those Claims.

c.    *Deemed Rejection by Impaired Classes*:  Holders of Claims or Interests in Classes 8 and 9 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to those Claims.

### H.    Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code.

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan, with the consent of the DIP Agent and the Senior Credit Agreement Agent, in accordance with <u>Article XIV.F and G</u> of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS

### A.    Other Secured Claims (Class 1).

**(a)    Classification**:  Class 1 consists of the Allowed Other Secured Claims. To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 1.

     **(b)**    **Treatment**: Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder of an Allowed Other Secured Claim shall receive, at the option of, as applicable, the Debtors or the Liquidating Trustee, in either case with the consent of the DIP Agent and the Senior Credit Agreement Agent, in full and final satisfaction of such Allowed Other Secured Claim, (i) payment in full in Cash, payable on the later of the Effective Date and the first Business Day after thirty (30) calendar days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

     **(c)**    **Voting**: Class 1 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Other Secured Claims.

**B.**    **Other Priority Claims (Class 2).**

     **(a)**    **Classification:** Class 2 consists of the Allowed Other Priority Claims.

     **(b)**    **Treatment**: Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Allowed Other Priority Claim, each such holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, payable on or as soon as reasonably practicable after the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter.

     **(c)**    **Voting**: Class 2 is Unimpaired, and the holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Other Priority Claims.

**C.**    **Protective Advance Secured Claims (Class 3).**

     **(a)**    **Classification**: Class 3 consists of the Allowed Protective Advance Secured Claims.

     **(b)**    **Treatment**:  The Protective Advance Secured Claims shall be Allowed (without the need to file a Proof of Claim as reflected in the Final DIP Order), as of the Effective Date, in the full amount due and owing under the Senior Credit Agreement Loan Documents and the Final DIP Order less any amounts paid or assumed prior to or on the Effective Date (such amount to be disclosed in the Plan Supplement).  On Effective Date, or as soon thereafter as is reasonably practicable, each holder of Protective Advance

Secured Claims shall receive, in full and final satisfaction of such Claim, its (including with respect to any related deficiency claim), its Pro Rata share of the amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall.

    **(c)**    **Voting**: Class 3 is Impaired and, the holders of Protective Advance Secured Claims are entitled to vote to accept or reject the Plan.

**D.**    **Senior Credit Agreement Term Loan Secured Claims (Class 4).**

    **(a)**    **Classification**: Class 4 consists of the Allowed Senior Credit Agreement Term Loan Secured Claims.

    **(b)**    **Treatment**: The Senior Credit Agreement Term Loan Secured Claims shall be Allowed (without the need to file a Proof of Claim as reflected in the Final DIP Order), as of the Effective Date, in the full amount due and owing under the Senior Credit Agreement Loan Documents and Final DIP Order less any amounts paid or assumed prior to or on the Effective Date (such amount to be disclosed in the Plan Supplement). On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Senior Credit Agreement Term Loan Secured Claim agrees to less favorable treatment of such Allowed Senior Credit Agreement Term Loan Secured Claim, each holder of an Allowed Senior Credit Agreement Term Loan Secured Claim shall receive, in full and final satisfaction of such Claim, its (including with respect to any related deficiency claim), its Pro Rata share of the amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall.

    **(c)**    **Voting**: Class 4 is Impaired and, the holders of Senior Credit Agreement Term Loan Secured Claims are entitled to vote to accept or reject the Plan.

**E.**    **HoldCo Credit Agreement Term Loan Unsecured Claims (Class 5).**

    **(a)**    **Classification**: Class 5 consists of the Allowed HoldCo Credit Agreement Term Loan Unsecured Claims.

    **(b)**    **Treatment**: The HoldCo Credit Agreement Term Loan Unsecured Claims shall be Allowed (without the need to file a Proof of Claim as reflected in the Final DIP Order), as of the Effective Date, in the full amount due under the HoldCo Credit Agreement Loan Documents and the Final DIP Order less any amounts paid or assumed prior to or on the Effective Date (such amount to be disclosed in the Plan Supplement). On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed HoldCo Credit Agreement Term Loan Unsecured Claim agrees to less favorable treatment of such Allowed HoldCo Credit Agreement Term Loan Unsecured Claim, each holder of an Allowed HoldCo Credit Agreement Term Loan Unsecured Claim shall receive, in full and final satisfaction of such Claim, (i) its Pro Rata share of the General Unsecured Claim Cash Recovery (with the amount of such General Unsecured Claims Cash Recovery to be shared *pari passu* with the holders of Allowed General Unsecured Claims in Class 6 of the Plan), and (ii) its amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall. In no event shall the holder of a HoldCo Credit Agreement Term Loan Unsecured Claim receive distributions

11912265-8

on account of such Claim in excess of the Allowed amount of such Claim plus accrued postpetition interest, if any.

(c)      **Voting**: Class 5 is Impaired and, the holders of HoldCo Credit Agreement Term Loan Unsecured Claims are entitled to vote to accept or reject the Plan.

F.      **General Unsecured Claims (Class 6).**

(a)      **Classification**: Class 6 consists of General Unsecured Claims.

(b)      **Treatment**:  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or such Allowed General Unsecured Claim has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, ~~(i)~~ its Pro Rata share of (i) the General Unsecured Claim Cash Recovery ~~(with the amount of such General Unsecured Claims Cash Recovery to be shared *pari passu* with the holders of Allowed HoldCo Credit Agreement Term Loan Unsecured Claims in Class 5 of the Plan), and (ii) its~~, and (ii) amount of proceeds realized from the Liquidating Trust Assets in accordance with the Recovery Waterfall.  In no event shall the holder of a General Unsecured Claim receive distributions on account of such Claim in excess of the Allowed amount of such Claim plus accrued postpetition interest, if any.

(c)      **Voting**: Class 6 is Impaired and, the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

G.      **Intercompany Claims (Class 7).**

(a)      **Classification**: Class 7 consists of Intercompany Claims against the Debtors.

(b)      **Treatment**:  The holders of Intercompany Claims shall not receive or retain any property under the Plan on account of such Claims.

(c)      **Voting**:  Class 7 is Impaired by the Plan.  As proponents of the Plan, the holders of Intercompany Claims are conclusively presumed to accept the Plan.

H.      **Subordinated Claims (Class 8).**

(a)      **Classification**: Class 8 consists of Subordinated Claims.

(b)      **Treatment**:  Holders of Allowed Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims.

(c)      **Voting**:  Class 8 is Impaired by the Plan and the holders of the Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of Subordinated Claims are not entitled to vote to accept

or reject the Plan, and the votes of such holders will not be solicited with respect to the Subordinated Claims.

I. **Existing Equity Interests (Class 9).**

(a) **Classification**: Class 9 consists of Existing Equity Interests.

(b) **Treatment**: Solely in the event that all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Existing Equity Interest may receive its amount of proceeds realized from the Liquidating Trust Assets consistent with such holder's rights of payment existing immediately prior to the Petition Date and solely in accordance with the Recovery Waterfall. The Liquidating Trustee shall determine, in the Liquidating Trustee's sole discretion, whether and when, to: (i) cancel and extinguish the Existing Equity Interests; (ii) transfer the Existing Equity Interests into the Liquidating Trust; or (iii) provide other treatment for the Existing Equity Interests consistent with the terms of this Plan and the Sale Order.

(c) **Voting**: Class 9 is Impaired by the Plan and the holders of the Existing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to the Existing Equity Interests.

## ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN

A. **Joint Chapter 11 Plan.**

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor.

B. **Corporate Action.**

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by, as applicable, the Debtors or the Liquidating Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, including but not limited to any Interest in any of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Interest holders, directors, members, managers, or officers of the Debtors, the Liquidating Trust, or the Liquidating Trustee. On or (as applicable) before the Effective Date, the authorized officers of the Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, instruments, and Debtor's Power of Attorney contemplated by the Plan (or as necessary or desirable to effectuate the transactions contemplated by the Plan). The authorizations and approvals contemplated by this Article V.B shall be effective notwithstanding any requirements under non-bankruptcy law.

C.      **Effectuating Documents; Further Transactions.**

(a)      On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

(b)      The Debtors and the Liquidating Trustee, as applicable, shall be authorized to implement the Plan in the manner most tax efficient to the Buyer, the DIP Lenders, the Senior Credit Agreement Agent, and the Debtors as determined by the Debtors in their business judgment and with the consent of the DIP Agent, the Senior Credit Agreement Agent, and the Buyer, given the totality of the circumstances.

D.      **Withholding and Reporting Requirements.**

(a)      *Withholding Rights.*  In connection with the Plan, any party making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)      *Forms.*  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Liquidating Trustee or such other Person designated by the Liquidating Trustee (which entity shall subsequently deliver to the Liquidating Trustee any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8.  If such request is made by the Liquidating Trustee or such other Person designated by the Liquidating Trustee and the holder fails to comply before the date that is 180 calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidating Trust and ~~any Claim in respect of such distribution~~, the holder  shall be ~~discharged and~~ forever barred from ~~assertion~~ asserting any right to such distribution against any Debtor, the Debtors' Estates and the Liquidating Trust.

E.      **Exemption From Certain Transfer Taxes.**

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments,

or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, or (3) any sale by any Debtor consummated post-Confirmation, and any other transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to the Sale Transaction.

F.      **Preservation of Rights of Action.**

**Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order of the Bankruptcy Court, the Debtors expressly reserve any and all such Causes of Action**.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Liquidating Trust will not pursue any and all available Causes of Action against them, including, but not limited to, the Insider Avoidance Actions.

Except as otherwise provided in the Plan or a Final Order of the Bankruptcy Court, nothing contained in the Plan or the Confirmation  Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that each Debtor had immediately prior to the Effective Date on behalf of the Debtor's Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor (including, but not limited to, the Insider Avoidance Actions), other than the Debtor Released Parties and the Released Parties.

On and after the Effective Date, subject to the terms of the Liquidating Trust Agreement and the Sale Order, the Liquidating Trustee may pursue such Causes of Action in consultation with the DIP Agent and the Senior Credit Agreement Agent.

Subject to the Sale Order, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent, notice to or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

G.      **Closing of the Chapter 11 Cases.**

After the Chapter 11 Cases of the Debtors have been fully administered, the Liquidating Trustee shall promptly seek authority from the Bankruptcy Court to close the Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Nothing in the Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered.  Any request for *nunc pro tunc* relief shall be made on motion served on the U.S. Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing.

H.      **Notice of Effective Date.**

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors or the Liquidating Trustee shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**ARTICLE VI.         CORPORATE GOVERNANCE**

A.      **Corporate Form.**

On the Effective Date, the corporate form of the Debtors shall be as it was immediately prior to the Effective Date.

B.      **Post-Effective Date Governance of the Debtors.**

Effective as of immediately prior to the Effective Date, automatically and without further action, each existing member of the board of managers of the Debtors will be deemed to have resigned or will be deemed to have been terminated.  On and after the Effective Date, but subject to the terms of the Liquidating Trustee Agreement, (a) the Liquidating Trustee, in substitution for the management and the board of managers of the Debtors, shall be authorized and empowered, without action of the Debtors' respective members, or boards of managers, or managers (if any), to take any and all such actions as the Liquidating Trustee may determine are necessary or appropriate in the Liquidating Trustee's business judgment to implement, effectuate, consummate and perform any and all actions, documents, or transactions contemplated by the Plan or the Confirmation Order as reasonably required to implement the Plan and the wind up the Debtors, and (b) the Liquidating Trustee shall act for the Debtors in the same fiduciary capacity as applicable to the board of managers of the Debtors existing immediately prior to the Effective Date.  Prior to the Effective Date, one or more of the Debtors may provide the Liquidating Trustee with one or more Debtor's Power of Attorney.  On and after the Effective Date, the Liquidating Trustee shall elect such additional managers and officers, in consultation with the DIP Agent and the Senior Credit Agreement Agent, as the Liquidating Trustee deems necessary to implement the Plan and the actions contemplated in the Plan.  The Liquidating Trustee shall also have the power, in consultation with the DIP Agent and the Senior Credit Agreement Agent, to act by written consent to remove any managers or officer at any time with or without cause.

C.      **Corporate Existence.**

25

On and after the Effective Date, the Liquidating Trustee shall take commercially reasonable actions as required, consistent with applicable non-bankruptcy law and consistent with the implementation of the Plan, and when appropriate in the discretion of the Liquidating Trustee, to dissolve, liquidate, strike off or take such other similar action with respect to each Debtor (including the cancellation of all Interests in a Debtor pursuant to the Confirmation Order) and complete the winding down of such Debtor as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Debtor or its shareholders or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities or complying with the laws and procedures governing the winding down of any such Debtor; provided, however, that the foregoing does not limit the Liquidating Trustee's ability to otherwise abandon an Interest in a Debtor or to transfer any Interest in a Debtor, including any Existing Equity Interest, into the Liquidating Trust.  The Liquidating Trustee may, to the extent required by applicable non-bankruptcy law, maintain a Debtor as a limited liability company in good standing until such time as all aspects of the Plan pertaining to such Debtor and the winding down of such Debtor is complete.

**D.      Certificates of Formation and By-Laws.**

As of the Effective Date, the certificates of formation, operating agreements, by-laws, and any other organizational document, of the Debtors shall be amended to the extent necessary to carry out the provisions of the Plan.

## ARTICLE VII.      DISTRIBUTIONS

**A.      Distributions Generally.**

On or after the Effective Date, the Liquidating Trust shall make distributions only in accordance with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement to holders of Allowed Claims, net of any reserve(s) for Disputed Claims, and only to the extent that the Liquidating Trust has sufficient Liquidating Trust Assets (or income and/or proceeds realized from Liquidating Trust Assets) to make such payments  in accordance with and to the extent provided for in the Plan, the Confirmation Order and the Liquidating Trust Agreement.  The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined by the Liquidating Trustee in its reasonable discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.

**B.      Distribution Record Date.**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, the Liquidating Trustee or their respective agents, shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record of holders of any of the Claims or Interests.  The Debtors or the Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

C.      **Date of Distributions.**

Except as otherwise provided in the Plan, the Debtor or the Liquidating Trustee, as applicable shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Liquidating Trustee shall from time to time determine the subsequent Distribution Dates, if any.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

D.      **Reserve on Account of Disputed Claims.**

The Liquidating Trustee shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Liquidating Trustee shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Administrative Expense Claim that is actually payable in accordance with the Plan.

E.      **Delivery of Distributions & Unclaimed Property.**

Subject to Bankruptcy Rule 9010, distributions to any holder or permitted designee of an Allowed Claim shall be made by the Liquidating Trustee who shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims on behalf of the Debtors or the Liquidating Trust.  With respect to holders of Allowed: (i) DIP Claims, the Liquidating Trustee shall make any distributions to the DIP Agent; (ii) Protective Advance Secured Claims, the Liquidating Trustee shall make any distributions to the Senior Credit Agreement Agent; (iii) Senior Credit Agreement Term Loan Secured Claims, the Liquidating Trustee shall make any distributions to the Senior Credit Agreement Agent; and (iv) HoldCo Credit Agreement Term Loan Unsecured Claims, the Liquidating Trustee shall make any distributions to the HoldCo Credit Agreement Agent.

In the event that any distribution to any holder is returned as undeliverable or is otherwise unclaimed, no further distribution to such holder shall be made unless and until the Liquidating Trustee is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest; *provided, however*, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the

11912265-8

Plan and the Claim of any such holder to such property or interest in such property shall be released, settled, compromised, and forever barred. Nothing herein shall require the Liquidating Trust to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, to assist in any way such holders or permitted designees, as applicable. Notwithstanding any provisions in the Plan to the contrary, all distributions to holders of Claims shall be deemed completed, and the obligations of the Liquidating Trust to make such distributions under the Plan and the Liquidating Trust Agreement shall be deemed satisfied, when made by the Liquidating Trust.

### F.    Manner of Distribution.

At the option of the Debtors or the Liquidating Trustee, any Cash payment to be made under the Plan may be made by a check or wire transfer. The wire transfer fee will be deducted from the amount of the distribution that a holder of an Allowed Claim or Interest would otherwise receive.

In order to receive a distribution under the Plan, a holder of an Allowed Claim must submit to the Liquidating Trustee both (a) the applicable Form W-9, or if the payee is a foreign person, Form W-8, and (b) a form certifying that neither the holder nor, to the best of their knowledge, any Person or Entity for whom they may be acting or who may be the beneficial owner of a Claim or Interest that is in their name or control is a person or entity with whom it is illegal for a U.S. Person to transact under (i) the Office of Foreign Assets Control sanctions regulations, or (ii) the list of Specially Designated Nationals and Blocked Persons. Unless the Liquidating Trustee receives original, properly completed copies of each form with an amount of time sufficient, in the Liquidating Trustee's sole discretion (as applicable), to process in advance of a scheduled Distribution Date, the holder of an Allowed Claim that would otherwise be entitled to a Distribution shall not receive any Distribution on the applicable Distribution Date.

### G.    No Postpetition Interest on Claims.

Except as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### H.    Time Bar to Cash Payments.

Checks issued by the Liquidating Trust in respect of Allowed Claims shall be null and void if not negotiated within one hundred and ~~twenty~~ eighty (~~120~~180) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Liquidating Trust, ~~and any Claim in respect of such voided check shall be discharged and forever barred,~~ notwithstanding any federal or state escheat laws to the contrary, and the Person to whom such voided check was issued shall be forever barred from asserting any right to the amount represented by such voided check against any Debtor, the Debtors' Estates and the Liquidating Trust. Requests for re-issuance of any check shall be made to the Liquidating Trustee by the holder of the Allowed Claim to whom such check was originally issued.

28

I.      **Manner of Payment Under the Plan.**

Except as otherwise specifically provided in the Plan, at the option of the Liquidating Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

J.      **Satisfaction of Claims.**

Except as otherwise specifically provided in the Plan, distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in ~~complete and final~~ partial satisfaction, ~~settlement, and discharge of and exchange~~ for such Allowed Claims to the extent of such distribution and/or delivery.

K.      **Minimum Cash Distributions.**

The Liquidating Trust shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; *provided that*, if any distribution is not made pursuant to this Article VII.K of the Plan, such distribution shall be added to any subsequent distribution to be made on behalf of such holder's Allowed Claim.  If either (i) all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full or (ii) the amount of any final distributions to holders of Allowed Claims would be $100.00 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $25,000.00, then no further distribution shall be made by the Liquidating Trustee and any surplus Cash shall be donated and distributed to one or more of the following organizations (each of which qualifies as a tax-exempt organization under Section 501(c)(3) of the Tax Code), (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (ii) The Eleanor R. Cristol and Judge A. Jay Cristol Bankruptcy Pro Bono Assistance Clinic at the University of Miami School of Law.

L.      **Setoffs and Recoupments.**

The Debtors and the Liquidating Trust, as applicable, may, but shall not be required to, set off or recoup against any Claim, any claims of any nature whatsoever that the Debtors or the Liquidating Trustee, as applicable, may have against the holder of such Claim; *provided that*, neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claim the Debtors or the Liquidating Trustee may have against the holder of such Claim.

M.      **Distributions After Effective Date.**

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

N.      **Allocation of Distributions Between Principal and Interest.**

11912265-8

Except as otherwise provided in the Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest through the Petition Date.

## O.    Payment of Disputed Claims.

As Disputed Claims are resolved pursuant to Article VIII.E of the Plan, the Liquidating Trustee shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) calendar days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Liquidating Trustee in the Liquidating Trustee's sole discretion. No holder of a Disputed Claim shall have any Claim against the Liquidating Trust, the Debtors or the Estates with respect to such Claim until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest, dividends, or other distributions on account of such Disputed Claim except as provided in the Plan.

## ARTICLE VIII.    PROCEDURES FOR DISPUTED CLAIMS

## A.    Allowance of Claims.

On and after the Effective Date, and subject to any order of the Bankruptcy Court, the Liquidating Trustee shall be entitled to reconcile, object to, or settle Claims filed against the Debtors. On and after the Effective Date, the Liquidating Trustee shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order and the Final DIP Order, in the Chapter 11 Cases allowing such Claim.

## B.    Objections to Claims.

On and after the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Liquidating Trustee. Such objections and requests for estimation shall be served and filed (i) on or before the seventy-fifth (75th) calendar day following the later of (a) the Effective Date and (b) the date that a proof of Claim is properly filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) such later date as ordered by the Bankruptcy Court upon a motion filed by the Liquidating Trustee.

## C.    Estimation of Claims.

The Liquidating Trustee may determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court. The Liquidating Trustee may at any

30

time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### D.    No Distributions Pending Allowance.

If an objection to a Claim is filed as set forth in Article VIII.B of the Plan, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### E.    Resolution of Claims.

Except as otherwise provided in the Plan, the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court.  The Liquidating Trustee or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

### F.    Disallowed Claims.

All Claims held by persons or entities against whom or which any of the Debtors or the Liquidating Trustee has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this Article VIII.F shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Liquidating Trustee from such party have been paid.

### G.    Claims Paid and Payable by Third Parties.

A Claim shall be disallowed without an objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the

holder of such Claim receives payment in full in Cash on account of such Claim from a party that is not the Debtors or the Liquidating Trustee. To the extent that a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such holder shall repay, return, or deliver any distribution held by or transferred to the holder to the applicable Debtor or Liquidating Trustee to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Allowed Claim as of the date of any such distribution.

**H.    Amendments to Proofs of Claim.**

On or after the Effective Date, unless otherwise authorized by the Confirmation Order or other Final Order of the Bankruptcy Court, a Proof of Claim may not be filed or amended without the prior written consent of the Liquidating Trustee, the DIP Agent, and the Senior Credit Agreement Agent, and any such underlying filed Proof of Claim, prior to any such amendment as authorized by this <u>Article VIII.H,</u> shall be deemed disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court, to the maximum extent provided by applicable law.

## ARTICLE IX.        EXECUTORY CONTRACTS

**A.    Rejection of Executory Contracts.**

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) is identified for assumption in the Plan Supplement; (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy.

**B.    Cure of Defaults for Assumed Executory Contracts.**

Any Cure due under each Executory Contract to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date, subject to the limitation described below, by the Debtors or the Liquidating Trustee, as applicable, or on such other terms as the parties to such Executory Contracts may otherwise agree.

In the event of a dispute regarding (i) the amount of the Cure; (ii) the ability of the Debtors or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract; or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); *provided, however*, that the Debtors or the Liquidating Trustee, as applicable, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time before the Effective Date of such assumption and/or assignment.

**C.    Claims Based Upon Rejection of Executory Contracts.**

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Plan, must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) calendar days after the filing and service of the notice of the occurrence of the Effective Date.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

**Any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court ~~within thirty~~ and served on the Liquidating Trustee on or before the latter of either (~~30~~i) 30 days after the filing and service of the notice of the occurrence of the Effective Date or (ii) 30 days after the effective date of the rejection of the contract or lease, will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidating Trust, the Debtors' Estates, or the property of any of the foregoing without the need for any objection by the Liquidating Trust or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

**D.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all Executory Contracts related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**E.    Insurance Policies.**

Notwithstanding anything to the contrary in the Plan, each insurance policy, including any D&O Policies to which the Debtors are a party as of the Effective Date, shall be deemed executory and shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the

11912265-8

Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

In addition, on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies.

## F.    Survival of Debtors' Indemnification Obligations.

Subject to the applicable limits in the Debtors' D&O Policies, to the fullest extent permitted by applicable law, any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements to indemnify current and former (limited solely to those individuals who are receiving the benefit of the releases in <u>Article XII, but excluding, for the avoidance of doubt, the Insider Avoidance Action Targets</u>) officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; *provided that*, notwithstanding anything herein, the Debtors shall not indemnify officers, directors, agents, or employees of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission (i) that is a criminal act unless such officer, director, agent, or employee had no reasonable cause to believe its conduct was unlawful; (ii) that is determined by a Final Order to be the result of fraud, gross negligence, or willful misconduct; (iii) for any other acts or omissions that are excluded under the terms of the foregoing organizational documents; or (iv) related to, or in connection with the Insider Avoidance Actions.  All such obligations, unless otherwise described in (i)-(iv) above, shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan unless such obligation previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date.

## G.    Reservation of Rights.

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or that the Debtors or the Estates have any liability thereunder. Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and the Liquidating Trust under any executory or non-executory contract or any unexpired or expired lease.  Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

## ARTICLE X. LIQUIDATING TRUST

11912265-8

A.    **Establishment of the Liquidating Trust.**

On the Effective Date, the Liquidating Trust shall be established and become effective for the benefit of the Liquidating Trust Beneficiaries. The powers, authority, responsibilities, and duties of the Liquidating Trust, and the Liquidating Trustee are set forth in and shall be governed by the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement shall provide for the distribution of the Liquidation Trust Assets to the Liquidating Trust Beneficiaries in accordance with the Recovery Waterfall. In the event of any conflict between the terms of this Article X.A and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this Article X.A shall govern. The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

B.    **Purpose of the Liquidating Trust.**

The Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the sole purpose of liquidating and administering the Liquidating Trust Assets and making distributions on account thereof as provided for under the Plan and shall be structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code of the holders of Liquidating Trust Beneficiaries, and the sole purpose of the Liquidating Trust shall be liquidating and distributing the assets of the Debtor contributed to such Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), including the resolution of Claims, with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

C.    **Liquidating Trust Assets.**

The Liquidating Trust shall consist of Liquidating Trust Assets. On the Effective Date, and in accordance with sections 1123 and 1141 of the Bankruptcy Code, all title and interest in all of the Liquidating Trust Assets, which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date or otherwise subject to a Debtor's Power of Attorney, including without limitation all Winddown Assets and Insider Avoidance Actions, as well as the rights and powers of each Debtor in such Liquidating Trust Assets, shall irrevocably and automatically vest in the Liquidating Trust, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or Liquidating Trust. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their respective predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust in accordance with this Article X.C. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from

any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146 of the Bankruptcy Code. In connection with the transfer of such Liquidating Trust Assets, any attorney client privilege, work product privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives, and the Debtors and the Liquidating Trustee are directed to take all necessary actions to effectuate the transfer of such privileges. The Liquidating Trustee shall agree to accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the terms of the Plan and the Liquidating Trust Agreement. The Debtors, the Liquidating Trustee, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. Any distribution of the Liquidating Trust Assets shall be made in accordance with the Recovery Waterfall.

### D.      Non-Transferability of Liquidating Trust Interests.

The Liquidating Trust Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

### E.      Administration of Liquidating Trust.

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

### F.      Liquidating Trustee's Tax Power for Debtors.

The Liquidating Trustee shall have the same authority in respect of all taxes of the Debtors, and to the same extent, as if the Liquidating Trustee were the Debtors.

### G.      Cash Investments.

The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

### H.      Distribution of Liquidating Trust Assets.

The Liquidating Trustee shall distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, in accordance with the Recovery Waterfall, on a semi-annual basis, Cash representing its net income plus all net proceeds from the sale of its assets (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this Article X.H), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets),

36

or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this <u>Article X.H</u> of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

## I.    Federal Income Tax Treatment of Liquidating Trust.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for the related Liquidating Trust Interests. Accordingly, except in the event of contrary definitive guidance, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. For the purpose of this <u>Article X.I</u>, the terms "party" and "Liquidating Trust Beneficiary" shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

## J.    Tax Reporting.

(a)    The Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this <u>Article X.J</u>. The Liquidating Trustee also shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes.

(b)    Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidating Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust. Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair

market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)     As soon as reasonably practicable after the Liquidating Trust Assets are transferred to a Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if such Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), such Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including such Liquidating Trustee, the Debtors and Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)     The Liquidating Trustee shall be responsible for payment, out of the respective Liquidating Trust Assets, of any taxes imposed on the respective Liquidating Trust or its assets.

(f)     The Liquidating Trustee may request an expedited determination of taxes of a Liquidating Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Liquidating Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Liquidating Trust or the Debtor for all taxable periods through the dissolution of such Liquidating Trust.

K.     **Dissolution.**

(a)     The Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, (ii) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidation Trust proceeds to justify further pursuit, or (iii) all distributions required to be made by the Liquidating Trustee under the Plan and a Liquidating Trust Agreement have been made; *provided*, *however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to Article X of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any

prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

        **(b)** If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, that the expense of administering a Liquidating Trust so as to make a final distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to one or more of the following organizations (each of which qualifies as an I.R.C. § 501(c)(3) tax-exempt organization), (y) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (z) The Eleanor R. Cristol and Judge A. Jay Cristol Bankruptcy Pro Bono Assistance Clinic at the University of Miami School of Law, and (iii) dissolve such Liquidating Trust.

## ARTICLE XI.      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**      **Conditions Precedent to the Effective Date**.

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

        **(a)** the Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

        **(b)** the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

        **(c)** the Plan Supplement and all of the Schedules, documents, and exhibits contained therein, and all other relevant schedules, documents, supplements and exhibits to the Plan, shall have been filed with the Bankruptcy Court and shall be acceptable to the relevant persons in accordance with the applicable consent and approval rights provided in the Plan; and

        **(d)** all actions, documents, and agreements necessary to implement and consummate the Plan, and the other transactions and other matters contemplated in the Plan, shall have been effected or executed.

**B.**      **Waiver of Conditions Precedent.**

Each of the conditions precedent in <u>Article XI.A</u> of the Plan may be waived in writing by the Debtors with the consent of the DIP Agent and the Senior Credit Agreement Agent and without notice to or authorization of the Bankruptcy Court.

11912265-8

C.      **Effect of Failure of Conditions to Effective Date.**

If the conditions listed in <u>Article XI.A</u> of the Plan are not satisfied on or before the first Business Day that is more than ninety (90) calendar days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, upon filing a notice with the Bankruptcy Court, the Debtors may deem the Plan null and void in all respects and in such a case, nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against or any Interests in the Debtor; (ii) prejudice in any manner the rights of any Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Entity.

## ARTICLE XII.        EFFECT OF CONFIRMATION

A.      **Vesting of Assets.**

On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, all property of the Estates shall vest in the Liquidating Trust, except as provided pursuant to the Plan and the Confirmation Order.  On and after the Effective Date, the Liquidating Trust may take any action, including,  without limitation, the operation of its businesses; the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, pursue the Insider Avoidance Actions, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, the Liquidating Trust may pay the charges that the Liquidating Trust incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

B.      **Release of Liens.**

Except as otherwise provided in the Sale Order, Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Liquidating Trust.

C.      **Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Liquidating Trust reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination

relating thereto.

**D.      Binding Effect.**

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, notwithstanding whether any such holders were (i) Impaired or Unimpaired under the Plan; (ii) deemed to accept or reject the Plan; (iii) failed to vote to accept or reject the Plan; or (iv) voted to reject the Plan.

**E.      Sale Order.**

Nothing contained in the Plan, the Disclosure Statement, or the Confirmation Order, constitutes or shall be construed to be inconsistent with the terms of the Sale Order or any modification or amendment to the Sale Order.

**F.      Term of Injunctions or Stays.**

Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**G.      Compromise and Settlement.**

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Interests (other than Causes of Action that have not been waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court). The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Interests (other than Causes of Action that have not been waived, relinquished, exculpated, released, compromised or settled in the Plan by Final Order of the Bankruptcy Court), as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Interests.

**H.      Debtor Release.**

**AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE FINAL DIP ORDER OR THE SALE ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, ANY DEBTOR RELEASED PARTY IS DEEMED RELEASED BY THE DEBTORS, THE RESPECTIVE ESTATES, THE LIQUIDATING TRUST, AND ANY PERSON OR ENTITY, SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS OR THEIR ESTATES AND THEIR RESPECTIVE PROPERTY (AND EACH SUCH DEBTOR RELEASED PARTY SHALL BE DEEMED RELEASED BY EACH DEBTOR**

41

AND ITS ESTATE AND ITS RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO, THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PREPARATION, FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY DEBTOR RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE CONFIRMATION DATE; PROVIDED, HOWEVER, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.H SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTORS OR THEIR RESPECTIVE CHAPTER 11 ESTATES AGAINST A DEBTOR RELEASED PARTY ARISING UNDER ANY CONTRACTUAL OBLIGATION OWED TO THE DEBTORS THAT IS ENTERED INTO OR ASSUMED PURSUANT TO THE PLAN; PROVIDED, FURTHER HOWEVER, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.H SHALL NOT RELEASE ANY PERSON OR ENTITY, INCLUDING WITHOUT LIMITATION, THE INSIDER AVOIDANCE ACTION TARGETS,  FROM ANY INSIDER AVOIDANCE ACTION, OR CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, PROVIDED THAT EACH SUCH DEBTOR RELEASED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASED PARTIES; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND THE OPPORTUNITY FOR A HEARING; AND (6) A BAR TO ANY OF THE DEBTORS' ESTATES, OR THE LIQUIDATING TRUSTEE, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

I.      Releases by Holders of Claims and Interests (i.e., Third-Party Release).

EFFECTIVE AS OF THE EFFECTIVE DATE, EACH OF THE RELEASING PARTIES, IN EACH CASE ON BEHALF OF ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING PERSONS OR ENTITIES, SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES, AND THEIR RESPECTIVE PROPERTY, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE HOLDCO CREDIT AGREEMENT, THE SENIOR CREDIT AGREEMENT, THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SUBJECT MATTER OF, OR

43

THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE CONFIRMATION DATE; PROVIDED, HOWEVER, THE RELEASES SET FORTH ABOVE (I) DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, (II) ARE APPLICABLE ONLY TO THE MAXIMUM EXTENT PERMITTED BY LAW, AND (III) DO NOT RELEASE ANY RELEASING PARTY'S CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES UNDER ANY AGREEMENT ENTERED INTO BY THE DEBTORS AFTER THE PETITION DATE; PROVIDED FURTHER, HOWEVER, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.I SHALL NOT RELEASE ANY PERSON OR ENTITY, INCLUDING WITHOUT LIMITATION, THE INSIDER AVOIDANCE ACTION TARGETS, FROM ANY INSIDER AVOIDANCE ACTION, OR CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, PROVIDED THAT EACH SUCH DEBTOR RELEASED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION AND SUBSTANTIAL CONTRIBUTIONS PROVIDED BY THE RELEASED PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND THE OPPORTUNITY FOR A HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS AND REPRESENTATIVES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

J.      Exculpation.

TO THE EXTENT PERMITTED BY SECTION 1125(E) OF THE BANKRUPTCY CODE, NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION,

44

SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, REMEDY, LOSS, AND LIABILITY FOR ANY CLAIM IN CONNECTION WITH OR ARISING OUT OF THE PREPARATION FOR, AND ADMINISTRATION OF, THE CHAPTER 11 CASES; THE NEGOTIATION, FORMULATION, PREPARATION, AND PURSUIT OF THE DIP LOAN AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, AND THE SOLICITATION OF VOTES FOR, AND CONFIRMATION OF, THE PLAN; THE FUNDING AND CONSUMMATION OF THE PLAN, AND ANY RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (IN EACH CASE IN FURTHERANCE OF THE FOREGOING); THE MAKING OF DISTRIBUTIONS UNDER THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; NEGOTIATIONS REGARDING OR CONCERNING ANY OF THE FOREGOING, OR THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE EXCULPATION SET FORTH IN THIS <u>ARTICLE XII.J</u> ~~OF THE PLAN~~ SHALL NOT RELEASE ANY PERSON OR ENTITY FROM CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, PROVIDED THAT EACH SUCH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS; <u>PROVIDED</u> <u>FURTHER</u>, <u>HOWEVER</u>,  NOTHING IN THE PLAN SHALL LIMIT THE LIABILITY OF ATTORNEYS TO THEIR RESPECTIVE CLIENTS PURSUANT TO RULE 4-1.8(H) OF THE FLORIDA RULES OF PROFESSIONAL CONDUCT.  THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

### K.    <u>Temporary</u> Injunction.

On and after the Effective Date <u>through and until the date upon which all remaining tangible and intangible property vested in the Liquidating Trust has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement, and the Plan and the Liquidating Trust have been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved</u>, all Persons and Entities other than the Liquidating Trustee (as applicable) are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right, or Cause of Action of the Debtors for which a Debtor retains sole and exclusive authority to pursue in accordance with the Plan.

Except as provided herein, ~~upon the Effective Date~~ <u>on and after the Effective Date</u> <u>through and until the date upon which all remaining tangible and intangible property vested in the Liquidating Trust has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement, and the Plan and the Liquidating Trust have been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved,</u>

45

all Persons and Entities shall be enjoined from  commencing or continuing any judicial or administrative proceeding, employing any process, or taking any action whatsoever against the Debtor, the Estate or the Liquidating Trustee that interferes with the consummation and implementation of the Plan, including the transfers, payments and distributions to be made in accordance with the Plan. For the avoidance of doubt nothing in this <u>Article XII.K</u> shall act as a release of any claims or Causes of Action; provided however, the Bankruptcy Court shall retain the authority, after notice and hearing, to lift the injunction set forth in this <u>Article XII.K</u> (to the extent necessary) upon request from any Person who holds a claim or Cause of Action not released, ~~discharged,~~ waived or otherwise satisfied under the Plan.

**L.    Waiver of Statutory Limitation on Releases.**

**EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER THIS <u>ARTICLE XII.L</u> OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542 (WHICH STATES, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY").  THE RELEASES CONTAINED IN THIS <u>ARTICLE XII.L</u> OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.**

**M.    Other Limitations of Releases and Exculpation; Florida Rules of Professional Conduct.**

Nothing in this <u>Article XII.M</u> shall (i) be construed to release or exculpate any person from, or require indemnification of any Person against losses arising from, the fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of such Person, or (ii) limit the liability of the professionals of any of the Debtors~~, the Creditors' Committee,~~ or the Liquidating Trustee, to their respective clients under Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

46

## ARTICLE XIII.    RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan for, among other things, the following purposes

(a)    to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including but not limited to the Insider Avoidance Actions;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date (e.g., Fee Claims);

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Asset Purchase Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

**(k)** to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

**(l)** to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**(m)** to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

**(n)** to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

**(o)** to adjudicate any and all disputes arising from or relating to distributions under the Plan;

**(p)** to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

**(q)** to enter a final decree closing the Chapter 11 Cases;

**(r)** to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings previously entered or approved by the Bankruptcy Court;

**(s)** to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

**(t)** to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.    MISCELLANEOUS PROVISIONS

### A.    Payment of Statutory Fees.

On the Effective Date and thereafter as may be required, the Liquidating Trustee shall pay in full in Cash all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case; *provided, however*, that after the Effective Date such fees shall only be payable until such time as a final decree is entered closing the Chapter 11 Cases, a Final Order converting such cases to cases under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Chapter 11 Cases is entered.

11912265-8

**B.    Post-Confirmation Reporting.**

After the Effective Date, in accordance with guidelines established by the United States Trustee, the Liquidating Trustee will file quarterly operating reports with the Bankruptcy Court.

**C.    Request for Expedited Determination of Taxes.**

The Debtors or the Liquidating Trustee, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the liquidation of the Debtors as determined under applicable tax laws.

**D.    Substantial Consummation.**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

~~**E.    Dissolution of Creditors' Committee.**~~

~~On the Effective Date, any Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases. The Debtors or the Liquidating Trust, as applicable, shall not be responsible for paying the fees or expenses incurred by the members of or advisors to the Creditors' Committee on and after the Effective Date.~~

**~~F.~~E.    Amendments.**

*Plan Modifications*.  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, with the prior written approval of the DIP Agent and the Senior Credit Agreement Agent, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, with the prior written approval of the DIP Agent and the Senior Credit Agreement Agent, and upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, *prior to the Effective Date*, the Debtors, with the prior written approval of the DIP Agent and the Senior Credit Agreement Agent, and ~~after consultation with the Creditors' Committee and~~ without the need for Bankruptcy Court approval, or *following the Effective Date*, the Liquidating Trust, with the prior written approval of the DIP Agent and the Senior Credit Agreement Agent, may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented

*Other Amendments*.  Before the Effective Date, with the prior written consent of the DIP

Agent and the Senior Credit Agreement Agent, and after consultation with the Creditors' Committee, the Debtors may make appropriate technical adjustments and modifications to the Plan and any of the documents prepared in connection herewith without further order or approval of the Bankruptcy Court.

### ~~G.~~F.   Revocation or Withdrawal of the Plan.

The Debtors reserve the right, after good-faith consultations with the DIP Agent, and the Senior Credit Agreement Agent, and the Creditors' Committee, to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors, after good-faith consultations with the DIP Agent, and the Senior Credit Agreement Agent, and the Creditors' Committee, revoke or withdraw the Plan, or if Confirmation or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

### ~~H.~~G.   Severability of Plan Provisions Upon Confirmation.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, and subject to the prior written consent of the DIP Agent and the Senior Credit Agreement Agent, and after consultation with the Creditors' Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Liquidating Trustee (as the case may be); and (3) non-severable and mutually dependent.

### ~~I.~~H.   Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof; provided, that corporate or entity governance matters relating to any Debtor shall be covered by the laws of the state of

incorporation or organization of the applicable Debtor.

**~~J.~~I.    Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**~~K.~~J.    Additional Documents.**

On or before the Effective Date, the Debtors may issue, execute, deliver and file with the Bankruptcy Court or record, as applicable, with the consent of the DIP Agent and the Senior Credit Agreement Agent, such agreements and other documents (in form and substance satisfactory to the DIP Agent and the Senior Credit Agreement Agent) as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Liquidating Trustee, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**~~L.~~K.    Dates of Actions to Implement the Plan.**

In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**~~M.~~L.    Immediate Binding Effect.**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Liquidating Trust.  For the avoidance of doubt, confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Debtors and their Estates will be wound down in accordance with the Plan

**~~N.~~M.    Deemed Acts.**

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**~~O.~~N.    Successor and Assigns.**

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan

11912265-8

shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

**~~P.~~O.    Solicitation of the Plan.**

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have previously solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Debtors and each of their respective directors, officers, managers, members, shareholders, representatives, principals, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

**~~Q.~~P.    Plan Supplement.**

Unless otherwise ordered by the Bankruptcy Court, the Plan Supplement shall be filed with the Bankruptcy Court by not later than the objection deadline for filing objections with respect to the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained online at the website of the Debtors' court-appointed noticing, claims and solicitation agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/case/DelphiHealth/info.

**~~R.~~Q.    Entire Agreement.**

Except with respect to the consummation of the Sale Transaction, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan. If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, claims, and defenses, and such parties expressly reserve any and all of their respective rights, remedies, claims, and defenses.  The Plan and the documents comprising the Plan Supplement, including any drafts thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing) shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any party in interest of any claim or fault or liability or damages whatsoever.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to the Plan and the documents comprising the Plan Supplement are part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

S.R.    **Exhibits to Plan.**

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

T.S.    **Notices.**

All notices, requests and demands to or upon the Debtors, the Creditors' Committee, the Liquidating Trust, and the Liquidating Trustee, as applicable, to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To the Debtors:**

Delphi Behavioral Health Group, LLC *et al.*
c/o Getzler Henrich & Associates LLC
295 Madison Avenue
1901 West Cypress Creek Road
Fort Lauderdale, Florida 33309
20th Floor
New York, N.Y. 10017
Attn:  Edward A. Phillips, Interim Chief Executive Officer
Tel:  212.697.2400954.487.1270
Email: ephillips@getzlerhenrich.comephillips@delphihealthgroup.com

- and -

Berger Singerman LLP
1450 Brickell Avenue
Miami, Florida 33131
Attn:   Paul Steven Singerman, Esq.
        Christopher Andrew Jarvinen, Esq.
        Paul A. Avron, Esq.
        Robin J. Rubens, Esq.
Tel:    305.755.9500
Email: singerman@bergersingerman.com
        cjarvinen@bergersingerman.com
        pavron@bergersingerman.com
        rrubens@bergersingerman.com

**To the Prepetition Lenders, the Prepetition Agent, the DIP Lenders and/or the DIP Agent:**

Brightwood Loan Services LLC
810 Seventh Avenue, 26th Floor

New York, N.Y. 10019
Attn: Kristan O'Connor
Tel: 646-957-9525
Email: oconnor@brightwoodlp.com

- and -

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, N.Y. 1036
Attn:   Roger Schwartz, Esq., Peter Montoni, Esq., and Robert
        Nussbaum, Esq.
Tel:    212.556.2100
Email: rschwartz@kslaw.com
        pmontoni@kslaw.com
        rnussbaum@kslaw.com

**To the Liquidating Trustee:**

~~**To the Creditors' Committee:**~~

~~Law Firm~~
~~[●]~~
~~Attn: [●]~~
~~Tel: [●]~~
~~Email: [●]~~

Name [To Be Provided in the Plan Supplement]
~~[●]~~
Attn: [●]
Tel: [●]
Email: [●]

[THIS SECTION INTENTIONALLY LEFT BLANK]

After the Effective Date, the Liquidating Trustee has the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those entities who have filed such renewed requests.

Dated: ~~February 16~~March 29, 2023
      Miami, Florida

                Respectfully Submitted


                By: /s/ Edward A. Phillips
                Name: Edward A. Phillips
                Title: Interim Chief Executive Officer
                Delphi Behavioral Health Group, LLC *et al.*

**<u>Exhibit "A"</u>**

**Recovery Waterfall**

Recovery Waterfall

The proceeds of the Liquidating Trust Assets, if any, shall be distributed strictly in accordance with the distribution priorities set forth below.  All distributions shall be made pursuant to the Liquidating Trust Agreement and in consultation with the DIP Agent and the Senior Credit Agreement Agent.  Notwithstanding anything in the Plan to the contrary, without further notice or order of the Bankruptcy Court, the Debtors in consultation with the Creditors' Committee and the consent of the DIP Agent and the Senior Credit Agreement Agent, may amend this Exhibit "A", if necessary and as applicable, to comply with section 1129(b) of the Bankruptcy Code and any applicable tax obligations of the Liquidating Trust.

1.  *First*, to the Liquidating Trustee for the reasonable, documented, and out of pocket, fees and expenses incurred in connection with the administration of the Liquidating Trust, subject to, and in accordance with, the Liquidating Trust Budget (subject to the funds available from the Winddown Funding Amount and any Cash proceeds from Liquidating Trust Assets received by the Liquidating Trust on and after the Effective Date);

2.  *Second*, to the DIP Lenders on account of the DIP Claims, solely to the extent such claims have not (i) been assumed or (ii) paid in full from the net proceeds of the Sale Transaction, until all DIP Claims have been paid in full in Cash;

2.  *Second*, $500,000.00 to the:

  a.  *Third*, to holders of Allowed Protective Advance Secured Claims, solely to the extent such claims have not (i) been credit bid for the Purchased Assets or (ii) paid in full from the net proceeds of the Sale Transaction, until paid in full in Cash; (Class 3)[2] solely to the extent such claims have not been credit bid for the Purchased Assets; *and*

  b.  holders of Allowed General Unsecured Claims (Class 6), solely to the extent such claims have not been paid in full from the General Unsecured Claim Cash Recovery,

  to be shared (a) 50% (to the holders of the Allowed Protective Advance Secured Claims (Class 3), and to be distributed pursuant to the order of priority of repayment under the terms of the Senior Credit Agreement Loan Documents) and (b) 50% (to the holders of Allowed General Unsecured Claims (Class 6));

3.  *Third*, to the:

  a.  holders of Allowed Protective Advance Secured Claims (Class 3), solely to the extent such claims have not been credit bid for the Purchased Assets or paid in full from the *Second* priority of distributions in this Recovery Waterfall, *and*

  b.  *Fourth*, to holders of Allowed Senior Credit Agreement Term Loan Secured Claims (Class 4), solely to the extent such claims have not (i) been credit bid for the

---

[2]  Pursuant to the Sale Transaction, $5 million (in principal) of the Protective Advance Secured Claims represent the "Credit Bid Amount" under Section 3.2(a) ("Purchase Price") of the Asset Purchase Agreement, and therefore, $5 million of Protective Advance Secured Claims have been credit bid for the Purchased Assets.

Purchased Assets ~~or (ii) paid in full from the net proceeds of the Sale Transaction, until paid in full in Cash;~~*and*

~~c.~~ ~~Fifth to~~ holders of Allowed ~~(i) HoldCo Credit Agreement Term Loan Unsecured Claims and (ii)~~ General Unsecured Claims (~~as between "(i)" and "(ii)" of this sub-paragraph on a *pari passu* basis~~Class 6), solely to the extent such claims have not been paid in full from the ~~net proceeds of the Sale Transaction, until all such Claims in "(i)" and "(ii)" of this subparagraph are paid in full in Cash; and~~General Unsecured Claim Cash Recovery and/or the *Third* priority of distributions in this Recovery Waterfall,

to be shared (a) 50% (to the holders of the Allowed Protective Advance Secured Claims (Class 3) and Allowed Senior Credit Agreement Term Loan Secured Claims (Class 4), and to be distributed pursuant to the order of priority of repayment under the terms of the Senior Credit Agreement Loan Documents) and (b) 50% (to the holders of Allowed General Unsecured Claims (Class 6)), until the holders of (i) Allowed General Unsecured Claims (Class 6) have received a total distribution of 20% in Cash of the amount of their Allowed General Unsecured Claims and (ii) Allowed Protective Advance Secured Claims (Class 3) and Allowed Senior Credit Agreement Term Loan Secured Claims (Class 4) are each paid in full in Cash;

4.   *Fourth*, to holders of Allowed HoldCo Credit Agreement Term Loan Unsecured Claims (Class 5), until paid in full in Cash; and

~~6.~~5.~~*Sixth,*~~ *Fifth,* to, holders of Existing Equity Interests (Class 9), consistent with such holder's rights of payment existing immediately prior to the Petition Date.

**Exhibit "B"**

**Non-Exclusive List of Insider Avoidance**
**Actions Targets and Insider Avoidance Actions**

**NON-EXCLUSIVE LIST[3] OF INSIDER AVOIDANCE
ACTIONS TARGETS AND INSIDER AVOIDANCE ACTIONS[4]**

~~**NOTE:  The Non-Exclusive List of Insider Avoidance Action Targets and**~~ **A.** ~~**Insider Avoidance Actions will be filed not later than five (5) calendar days prior to the deadline to object to the approval of the Disclosure Statement.**~~ **Targets.**

>    1.        Infinity Behavioral Health Services, LLC  ("**Infinity**")

**B.        Potential Insider Avoidance Actions; Potential Insider and Non-Insider Claims or Causes of Action.**

>    1.        Infinity Claims/Causes of Action.

Insider Avoidance Actions include Claims and Causes of Action, including but not limited to possible breaches of fiduciary duties and aiding and abetting breaches of fiduciary duties, such as violations of the duties of care, loyalty and good faith, as well as usurpation of corporate opportunities, against Infinity, with respect to transactions involving Infinity and one or more of the Debtors (collectively, the "**Infinity Claims/Causes of Action**"):

>    2.        Preserved Claims.

With respect to the Infinity Claims/Causes of Action, the Debtors reserve the right to assert any Insider Avoidance Actions or add other parties to this **Exhibit "B"**, as well as other Claims and Causes of Action against insiders of the Debtors and non-insiders of the Debtors which are *not* being purchased by the Buyer of the Debtors' assets through the *Asset Purchase Agreement* attached to, and described in, ECF Nos. 111, 182, and 234 (as defined herein, collectively, the Stalking Horse Bid Agreement), and any other relevant document filed with the Court (collectively, the "**Preserved Claims**").[5]  Such Preserved Claims may include claims sounding in fraud and breach of contract, and also breach of fiduciary duty and aiding and abetting breach of fiduciary duty, such as violations of the duties of care, loyalty and good faith, as well as usurpation of corporate opportunities, against among others, any current or former (a)(i) insider of any of the

---

[3]    To the extent not defined herein, and with the sole exception of "Affiliate" (*see* note 2), all capitalized terms in this **Exhibit "B"** shall have the meanings ascribed to them in the Plan.

[4]    Notwithstanding anything else in the Agreement and solely for purposes of this **Exhibit "B"**, "Affiliate" shall mean, with respect to any Person (as defined in the Agreement), any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise, but shall not include any Debtors.

[5]    This same reservation of rights applies equally to the Avoidance Actions that are being purchased by Delphi Lender AcquisitionCo LLC (i.e., the Stalking Horse Bidder) pursuant to the Stalking Horse Bid Agreement or another asset purchase agreement entered into by and among each of the Debtor-Sellers, as sellers, and a successful bidder for the Debtors' assets *other than* Delphi Lender AcquisitionCo LLC, as buyer.

11912265-8

Debtors, including but not limited to any insider landlord or (ii) purchaser of the Debtors' assets (other than the Stalking Horse Bidder), and (b) entity owned and/or controlled by any of the persons or entities described in this paragraph (other than the Stalking Horse Bidder), individually or collectively, and their respective Affiliates (as such term is defined above), for which directors and officers liability insurance coverage maintained by any of the Debtors through any D&O Policy (as such term is defined in the Plan (defined herein)) may cover (including any "tail" policies).

All Preserved Claims are preserved and reserved for later prosecution and adjudication in accordance with the Plan, as may be amended from time to time, and therefore no preclusion doctrine, claim preclusion, estoppels (judicial, equitable or otherwise) or laches will apply to those Preserved Claims on or after the effective date of the Plan.  The failure to specifically list or otherwise sufficiently identify a Claim or Cause of Action in the Plan or Disclosure Statement, as may be amended from time to time, including this **Exhibit "B"** to the Disclosure Statement, is not intended to and shall not be deemed to (i) effect a release or waive of such Preserved Claims, and/or (ii) impair the right of the Liquidating Trustee (as such term is defined in the Plan) to pursue such Preserved Claims on or after the effective date of the Plan.

11912265-8